**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | CRIMINAL NO.: 1:16-CR-229 |
| ) | |
| RUBEN OSEGUERA-GONZALEZ, ) | |
|     also known as "Menchito," ) | |
|     "Rubencito," "Rojo," "Ruso," ) | |
|     "Junior," and "El Nino," ) | |
| ) | |
| Defendant. ) | |

## GOVERNMENT'S MOTION FOR PRE-TRIAL DETENTION

The United States respectfully moves to detain the Defendant, Ruben Oseguera-Gonzalez, pending trial, pursuant to 18 U.S.C. § 3142(e)(1). The Defendant is alleged to have been a high-ranking member of an international drug trafficking organization ("DTO"). As discussed below, the Defendant is charged with drug trafficking offenses that carry a presumption that no condition or combination of conditions will sufficiently guarantee the Defendant's presence in court and protect the safety of the community. Further, the Defendant faces significant jail time, including a mandatory minimum sentence of ten years on Count One of the Superseding Indictment, and a mandatory minimum sentence of five years to run consecutively on Count Two of the Superseding Indictment; potentially has access to substantial amounts of drug proceeds in the form of untraceable cash; and has the resources and connections necessary to allow him to flee the jurisdiction if possible. Accordingly, the Defendant presents a serious risk of flight and danger to the community that cannot be mitigated by any condition or combination of conditions and should be detained pending trial.

**BACKGROUND**

On February 1, 2017, a federal grand jury sitting in the District of Columbia returned and filed a Superseding Indictment against the Defendant, charging him with the following offenses: in Count One, with conspiracy to distribute five kilograms or more of cocaine, and 500 grams or more of methamphetamine, knowing and intending that these controlled substances would be unlawfully imported into the United States, in violation of Title 21, United States Code, Sections 963, 959(a), 960(b)(1)(B)(ii), and 960(b)(1)(H); and in Count Two, with use and possession of a firearm during and in relation to one or more drug trafficking crimes, in violation of Title 18, United States Code, Section 924(c)(1)(A)(i), 924(c)(1)(A)(ii), 924(c)(1)(B)(ii), and 2.

Based on the charges in a previous Indictment, the United States District Court for the District of Columbia issued a warrant for the Defendant's arrest on December 14, 2016.  On July 3, 2015, the Defendant had been arrested by Mexican law enforcement authorities.  The Defendant was extradited to Washington, D.C. on February 20, 2020.  The Defendant made his initial appearance before the Honorable G. Michael Harvey on February 21, 2020, and was arraigned. At arraignment, the government requested that the Defendant be detained pending trial, and the Court scheduled a detention hearing for February 26, 2020.

The Indictment in this case is the product of an extensive, long-term and ongoing investigation conducted by the Drug Enforcement Administration ("DEA") into the operations of large-scale drug trafficking organization ("DTO") known as the Cartel de Jalisco Nueva Generacion (the "Cartel" or "CJNG"), based in Jalisco, Mexico.  If this matter were to proceed to trial, the Government intends to prove that the Defendant was a participant in a conspiracy centered on the CJNG's operations that spanned over a decade and extended from Colombia, through Central America, and into the United States.

The Government's evidence at trial will consist of testimony from cooperating witnesses with direct communications with the Defendant to discuss drug trafficking and drug-trafficking related activities; lawfully intercepted communications in which the Defendant reveals his participation in drug trafficking, violence, and weapons trafficking; and testimony from foreign law enforcement about narcotics seizures.

The Defendant was extradited from Mexico and paroled into the United States to face prosecution on the Superseding Indictment.

## ARGUMENT

### The Bail Reform Act

Under the Bail Reform Act, 18 U.S.C. §§ 3141 et seq., federal courts must order a defendant's pre-trial detention upon determining that "no condition or combination of conditions would reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). A finding of dangerousness must be supported by clear and convincing evidence. § 3142(f); *see United States v. Simpkins*, 826 F.2d 94, 96 (D.C. Cir. 1987). A finding of risk of flight must be supported by a preponderance of the evidence. *See Simpkins*, 826 F.2d at 96. If the Court finds that no conditions will reasonably assure both the appearance of the defendant and the safety of any other person and the community, he or she shall order the defendant detained. § 3142(e)(1). Thus, detention is appropriate where a defendant is either a danger to the community or a flight risk; it is not necessary to prove both.

The Bail Reform Act lists the following factors as relevant to the determination of whether detention is appropriate: (1) the nature and circumstances of the crimes charged, (2) the history and characteristics of the defendant, (3) the seriousness of the danger posed by the defendant's release, and (4) the evidence of the defendant's guilt. *See* § 3142(g). And under governing case

3

law, the government may proceed by factual proffer in lieu of presenting live witnesses at a detention hearing pursuant to the Bail Reform Act. *See United States v. Smith*, 79 F.3d 1208, 1209-10 (D.C. Cir. 1996).

### **Statutory Presumption of Dangerousness and Risk of Flight**

Under § 3142(e)(3)(A), there is a rebuttable presumption that no conditions will assure a defendant's presence as to both flight risk and danger if the defendant is charged with a Controlled Substances Act offense with a statutory maximum of 10 years or more. In this case, in count one of the Indictment, the Defendant is charged with an offense for which the maximum term of imprisonment is life as prescribed by the Controlled Substance Act. Additionally, under § 3142(e)(3)(B), there is a rebuttable presumption that no conditions will assure the defendant's presence and the safety of the community where the defendant is charged with an offense under 18 U.S.C. § 924(c). In this case, in count one of the Superseding Indictment, the Defendant is charged with an offense for which the maximum term of imprisonment is life and the minimum term is ten years as prescribed by the Controlled Substance Act, and in count two of the Superseding Indictment, the Defendant is charged with a violation of 924(c). Thus, the presumptions of Section 3142(e) apply here.

An indictment charging a qualifying offense, as is the case here, is sufficient to trigger this rebuttable presumption. *See Smith*, 79 F.3d at 1210-11; *United States v. Mosuro*, 648 F. Supp. 316, 318 (D.D.C. 1986). When the presumption is triggered, it operates "at a minimum to impose a burden of production on the defendant to offer some credible evidence contrary to the statutory presumption." *United States v. Alatishe*, 768 F.2d 364, 371 (D.C. Cir. 1985). However, the presumption is not erased when a defendant proffers evidence to rebut it; rather the presumption remains as an evidentiary finding militating against release and to be weighed along with all the

4

evidence relating to the factors listed in § 3142(g). *See United States v. Cherry*, 221 F. Supp. 3d 26, 32 (D.D.C. 2016) (citing *United States v. Ali*, 793 F. Supp. 2d 386, 391 (D.D.C. 2011) and *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986)). In other words, "it does not follow that the effect of the presumption disappears as soon as the defendant produced some contrary evidence. Congress framed the flight presumption in light of its general finding, based on extensive testimony, that flight to avoid prosecution is particularly high among those charged with major drug offenses." *United States v. Martir*, 782 F.2d 1141, 1144 (2d Cir. 1985); *see also Cherry*, 221 F. Supp. 3d at 32; *Ali*, 793 F. Supp. 2d at 391. Indeed, the concept of "dangerousness" in relation to serious drug crimes encompasses not only the effect of a defendant's release on the safety of identifiable individuals, such as victims and witnesses, but also "harm to society caused by [continued] narcotics trafficking." *United States v. Leon*, 766 F.2d 77, 81 (2d Cir. 1985); *see* S. Rep. No. 225, 98th Cong., 1st Sess. 12 (1983), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3195 ("[L]anguage referring to safety of the community refers to the danger that the defendant might engage in criminal activity to the detriment of the community . . . . The Committee intends that the concern about safety be given a broader construction than merely danger of harm involving physical violence."). For the reasons addressed below, the Defendant is unable to rebut the presumption that no condition or combination of conditions will reasonably assure the appearance of the Defendant and the safety of the community.

### Nature and Circumstances of the Offenses Charged

The factual proffer detailed herein is derived from a Drug Enforcement Administration (DEA) investigation into the Defendant, his co-conspirators, and criminal associates. Throughout the course of the investigation, federal law enforcement agents employed a variety of investigative techniques to investigate the DTO of which the Defendant is a member, including Title III wiretap

interceptions, debriefings of confidential sources and cooperating witnesses, and surveillance. Potential witnesses against the Defendant include co-conspirators who worked with him in connection with the production, transportation, and trafficking of illicit narcotics.

At trial, the government would show that the Defendant was a high-ranking member of the CJNG, a major Mexican drug trafficking organization. The CJNG is one of the largest, most dangerous drug cartels currently operating in Mexico, and it is responsible for trafficking tonnage quantities of cocaine, methamphetamine, and heroin into the United States, as well as violence and significant loss of life in Mexico.

The Defendant's father, Nemesio Oseguera-Cervantes, also known as "Mencho," is the leader of the CJNG. The DEA investigation has revealed that because the Defendant's father is the leader of CJNG, the Defendant rose to have a significant amount of power within the Cartel, and at the time of his arrest was a high-ranking leader of the CJNG. As one of the leaders of the Cartel, the Defendant employed and supervised dozens, if not more, people who worked at his behest to facilitate: (a) the manufacture and production of methamphetamine on a large scale, including securing precursor chemicals to manufacture methamphetamine, which is unlawfully manufactured and distributed outside of the United States, and then imported into the United States for further distribution; (b) the unlawful importation of cocaine into Mexico for the further unlawful importation of the cocaine into the United States; (c) the laundering of drug proceeds; (d) the trafficking of weapons; and (e) acts of violence, including murder and kidnappings. Law enforcement authorities have determined that since approximately 2007, the Defendant participated in trafficking and importing tonnage quantities of cocaine and methamphetamine into the United States from Mexico, first as a member of the Milenio Cartel, a precursor organization to the CJNG, and then as a leader for CJNG.

## History and Characteristics of the Defendant

The Defendant's prior history and characteristics establish his serious risk of flight in this case. A determination of risk of flight must be supported by a preponderance of the evidence. *United States v. Xulam*, 84 F.3d 441, 442 (D.C. Cir. 1996). Here, there is a significant risk of flight in this case due to the potential sentence the Defendant faces, as well as his lack of ties to this District or the United States.

The possibility of a severe sentence is an important factor in assessing a defendant's incentive to flee. *See United States v. Hong Vo*, 978 F. Supp. 2d 41, 43 (D.D.C. 2013) (holding the nature and circumstances of the offenses charged against defendant strongly favor detention because of the substantial incentive to flee the United States); *United States v. Anderson*, 384 F.Supp.2d 32, 36 (D.D.C. 2005) (holding the gravity of the offenses and the potential prison term create a considerable incentive for the defendant to avoid prosecution and the likelihood of imprisonment in the event of a conviction); *see also United States v. Ali*, 793 F. Supp. 2d at 392. As discussed above, the Defendant faces a mandatory minimum sentence of 10 years if convicted on the count charged in the Indictment.

Federal courts have repeatedly recognized that "[f]light to avoid prosecution is particularly high among persons charged with major drug offenses," because "drug traffickers often have established ties outside the United States . . . [and] have both the resources and foreign contacts to escape to other countries." *See, e.g., United States v. Alatishe*, 768 F.2d 364, 370 n.13 (D.C. Cir. 1985) (citing S. Rep. No. 98-225 at 20 (1983), reprinted in 1984 U.S.C C.A.N. 1, 23). This is nowhere more evident than in the type of transnational organized crime which the Defendant has engaged in, which often spans multiple countries and has the potential to generate millions of dollars in gross proceeds from the sale of potent controlled substances. Indeed, "Congress made

'risk of flight' a grounds for detention because it believed that there were major drug dealers to whom the posting and losing of even large amounts of money bond were not a deterrent, but a mere cost of doing business." *United States v. Battle*, 59 F.Supp.2d 17, 19 (D.D.C. 1999).

There is a serious risk that the Defendant would attempt to leave the United States if given the opportunity.  He has no known lawful contacts in this federal district or in the United States, and thus, no reason to remain in this country.[1]  Furthermore, the Defendant has no known assets, no employment, no property, and no immediate family here.  The Defendant has been brought here under the authority of this Court solely for the purpose of federal prosecution.  In short, the Defendant has no reason to remain in this country other than this criminal case, and he therefore represents an overwhelming risk of flight if released from custody.  Additionally, other members of the Defendant's powerful DTO may aid and assist him in fleeing justice, as the CJNG exerts a high degree of corrupt control over various municipalities and states in Mexico, and could be able to assure the Defendant with a certain measure of freedom from arrest if he returned to Mexico.

In sum, the Defendant has the means, motive, and opportunity to flee the country and should be detained without bail.  *See Hong Vo*, 978 F. Supp. 2d at 43 (finding detention warranted because not only was defendant indicted on serious charges carrying a severe punishment potential, but defendant had ability to flee the United States); *see also United States v. Anderson*, 384 F. Supp. 2d 32, 36 (D.D.C. 2005) (finding detention warranted because not only did the defendant have the ability to flee D.C. and the United States, but also had the ability to live comfortably in foreign jurisdiction and evade capture due to his substantial assets abroad).

---

[1] The defendant was born in the United States and, as such, is a citizen, but on information and belief was raised in and maintained his primary residence in Mexico beginning at a young age, and has few if any current close familial ties to the United States.

## Safety of the Community

A determination of dangerousness to the community must be supported by clear and convincing evidence. 18 U.S.C. § 3142(f). Federal courts have recognized that drug traffickers, particularly those in positions of authority, are likely to continue engaging in drug related activities if released on bail and thus constitute a danger to the community. *See, e.g., Alatishe*, 768 F.2d at 370 n.13 (citing S. Rep. No. 98-225 at 20 (1983), reprinted in 1984 U.S.C C.A.N. 1, 23); *accord United States v. Creekmore*, 1997 W.L. 732435 (D.D.C. 1997) (Facciola, J.). The Defendant was a high-level leader of an international drug transportation and distribution organization which imported cocaine, methamphetamine, heroin, and fentanyl, dangerous controlled substances, into the United States for distribution to the United States public at large. If he were released and continued in this conduct, he would pose a significant risk to the safety of the community, both here in the United States and abroad.

## Weight of the Evidence

Where the evidence of guilt is strong, it provides a considerable additional incentive to flee. *See United States v. Medina*, 255 F. Supp. 2d 3, 4 (D.D.C. 2006) (finding detention warranted because government's evidence was strong against the defendant); *see also United States v. Vergara*, 612 F. Supp. 2d 36, 37 (D.D.C. 2009).

The evidence against the Defendant here is particularly strong. The evidence includes statements of multiple witnesses with personal knowledge of the Defendant's role in this international drug trafficking conspiracy who are prepared to testify; recorded communications among the Defendant and his co-conspirators regarding the conspiracy; and testimony and evidence about narcotics seizures.

Given the strength of the evidence against him, there is no condition or combination of conditions that would assure the Defendant's appearance in court or the safety of the community.

## Conclusion

For the foregoing reasons, the government respectfully submits that the Defendant cannot rebut the government's proof and proffer that supports the presumption that "no condition or combination of conditions will reasonably assure [his] appearance . . . as required and the safety of the community." 18 U.S.C. § 3142(e). Accordingly, he should be detained pending trial.

Respectfully submitted this 25th day of February, 2020.

                MARLON COBAR, Acting Chief
                Narcotic and Dangerous Drug Section
                Criminal Division
                United States Department of Justice

By:    /s/_____
        Brett Reynolds, Trial Attorney
        Kaitlin Sahni, Trial Attorney
        Anthony Nardozzi, Assistant Deputy Chief
        United States Department of Justice
        Narcotic and Dangerous Drug Section
        145 N Street, Northeast
        East Wing, Second Floor
        Washington, D.C. 20530
        Brett.Reynolds@usdoj.gov
        (202) 598-2950