```
                    UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF COLUMBIA

   *  *  *  *  *  *  *  *  *  *  *  *  *  *  *
UNITED STATES OF AMERICA,          )  Criminal Action
                                   )  No. 16-229
vs.                                )
                                   )
RUBEN OSEGUERA-GONZALEZ,           )  May 12, 2023
              Defendant.           )  9:48 a.m.
                                   )  Washington, D.C.
   *  *  *  *  *  *  *  *  *  *  *  *  *  *  *
```

**TRANSCRIPT OF PROCEEDING**
**BEFORE THE HONORABLE BERYL A. HOWELL,**
**UNITED STATES DISTRICT COURT JUDGE**

<u>**APPEARANCES**</u>:

FOR THE UNITED STATES:

> KAITLIN J. SAHNI
> KATE M. NASEEF
> U.S. Department of Justice
> 145 N Street, NE
> Washington, DC 20530
> (202) 598-2493
> Email: kaitlin.sahni@usdoj.gov

FOR THE DEFENDANT:   DANNY ONORATO
(Via Zoom)

> STUART SEARS
> Schertler Onorato Mead & Sears
> 555 13th Street, NW, Suite 500 West
> Washington, DC 20004
> (202) 628-4199
> Email: donorato@schertlerlaw.com

(Via Zoom)

> ARTURO CORSO
> The Washington International
> 1300 Pennsylvania Avenue NW
> Washington, DC 20004
> (202) 628-4199
> Email: arturo@washingtonilc.com

**(<u>APPEARANCES CONTINUED</u>)**

**APPEARANCES** (Continued)

                    ARTURO HERNANDEZ-M
                    10050 Machado Lane
                    San Jose, CA 95127
                    (408) 729-5785
                    Email: artlawoff@aol.com


                    A.J. KRAMER (Conflicts Counsel)
                    Federal Public Defender
                    625 Indiana Avenue NW
                    Washington, D.C.
                    (202) 208-7500



ALSO PRESENT:  ARTURO DAVID HERNANDEZ
                    VICTORIA DOPAZO, Spanish Language Interpreter


Court Reporter: Elizabeth Saint-Loth, RPR, FCRR
                    Official Court Reporter


                Proceedings reported by machine shorthand.
            Transcript produced by computer-aided transcription.

1                    **P R O C E E D I N G S**

2              THE COURTROOM DEPUTY:  Matter before the Court,

3    Criminal Case No. 16-229, United States of America versus

4    Ruben Oseguera-Gonzalez.

5              Your Honor, for the record, the interpreter has

6    been sworn.

7              Counsel, please come forward and state your names

8    for the record, starting with the government.

9              MS. SAHNI:  Good morning, Your Honor.

10   Kaitlin Sahni and Kate Naseef for the United States.

11             THE COURT:  Yes, good morning.

12             For the defense?

13             MR. HERNANDEZ:  Good morning, Your Honor.

14   Arturo Hernandez appearing on behalf of Mr. Ruben

15   Oseguera-Gonzalez, who is present in court, in custody,

16   being assisted by a certified court interpreter.

17             For the record, my assistant is Arturo David

18   Hernandez; he is my son.  He is a law graduate, and he

19   hopefully will pass his bar fast.

20             THE COURT:  Okay.  He has passed the bar, or he --

21             MR. HERNANDEZ:  No.  He has not.  He is graduating

22   next month -- I mean, in two weeks.

23             THE COURT:  I see.

24             Okay.  And could you say his name more slowly for

25   my court reporter.

```
 1              MR. HERNANDEZ:  Yeah.  Arturo David Hernandez.
 2              THE COURT:  All right.  Okay.
 3              MR. HERNANDEZ:  Thank you, Your Honor.
 4              THE COURT:  And also, so the record is complete --
 5              MR. KRAMER:  Good morning, Your Honor.
 6    A.J. Kramer.  Your Honor appointed me as conflicts counsel,
 7    so I am present, Your Honor.
 8              THE COURT:  Thank you very much for being here,
 9    Mr. Kramer, for your service to the Court.
10              THE COURTROOM DEPUTY:  And also on Zoom.
11              THE COURT:  And on Zoom, Mr. Onorato, I see you.
12    Could you speak --
13              MR. ONORATO:  Good morning.  Good morning.  Nice
14    to see you.  Danny Onorato.
15              THE COURT:  And who else is --
16              MR. ONORATO:  So I have Mr. Sears.  Mr. Sears is
17    on the line with me --
18              MR. SEARS:  Your Honor, I think -- I think there
19    may be some technical difficulties with Mr. Onorato's audio,
20    at least on my end.
21              I am Stuart Sears, I am in the same law film as
22    Mr. Onorato.  I am present here with him.  And Mr. Corso is
23    here as well.  I don't know if you can see him on the --
24              THE COURT:  Thank you so much for stepping in
25    because I thought it wasn't just me having trouble
```

1    understanding Mr. Onorato.

2          All right.  So we have now received the report of

3    Mr. Kramer, as independent conflicts counsel, which appears,

4    you know, quite thorough.  Mr. Kramer reviewed all of the

5    relevant paperwork; he talked to the government; he talked

6    to Mr. Onorato; he talked to the defendant; he talked to

7    Mr. Hernandez in order to evaluate thoroughly all of the

8    potential conflicts that may be present here given that

9    Mr. Hernandez has been retained and is being paid for by an

10   unidentified close family member of the defendant when the

11   defendant has at least eight, by my count, family members

12   currently under indictment and charged with either the same

13   or related conspiracy.

14          So I am going to start with the conclusion of

15   Mr. Kramer's report, which is that to the extent that there

16   may be any potential conflict of interest here where

17   Mr. Hernandez may have conflicted loyalties for the zealous

18   representation that the defendant is entitled to under our

19   Constitution, it is waivable in that he wants to waive any

20   potential conflict and proceed with representation in this

21   case by Mr. Hernandez.

22          So let me just start by asking whether the

23   government or Mr. Hernandez have any -- wish to comment or

24   pursue any other avenues of inquiry with respect to

25   potential conflict that is not already considered in what

1    appears to me to be a fairly quite thorough report by

2    Mr. Kramer.

3              MS. SAHNI:  Your Honor, the government doesn't

4    have anything to add.  We're satisfied with that analysis.

5              THE COURT:  Okay.  Mr. Hernandez?

6              MR. HERNANDEZ:  Thank you, Your Honor.

7              I don't have any comments at this time.  I would

8    like to address one concern of mine that was brought up in

9    the -- in the government's response, the latest response to

10   Mr. Kramer's report correcting some factual issue.

11             I would not -- I cannot -- I am not able to

12   address it at this time, it is under seal; but I would like

13   to reserve that issue for further response, if necessary.

14             THE COURT:  I don't know what there would be to

15   respond on.  I think the government was just clarifying what

16   its understanding was.  Mr. Onorato had a different

17   understanding of what the government understood that the

18   government corrected.  And based on the facts, as relayed by

19   both Mr. Kramer and in the government's sealed filing, I can

20   appreciate why Mr. Onorato understood what he did, and I can

21   understand why the government didn't have as full an

22   understanding as Mr. Onorato believed.

23             So I don't know what else you could make of that,

24   Mr. Hernandez; and I don't like my time wasted.  So I would

25   say that if you have something to say about that, you'd

1    better say it now.

2              MR. HERNANDEZ:  I don't have anything at this

3    time, Your Honor.  I just --

4              THE COURT:  What else could you say at any time?

5              MR. HERNANDEZ:  I don't know until I review the

6    discovery and see what the correspondences were between

7    Officer -- Agent Kyle [sic] and Mr. Onorato back then.  I

8    don't know.  I am just reserving that -- that issue.  It was

9    only my concern.

10             THE COURT:  Well, I see no issue.  You are not

11   articulating an issue, so you may be seated.

12             MR. HERNANDEZ:  Thank you, Your Honor.

13             THE COURT:  Okay.

14             All right.  Well, I have already had a

15   conversation with the defendant, Mr. Ruben

16   Oseguera-Gonzalez, over the last two hearings on the issue

17   of Mr. Hernandez's representation.

18             I think what I am going to do is I am just going

19   to -- I have one question I want to ask to the government in

20   terms of clarifying something, and then I am going to review

21   with Mr. Hernandez all -- a sort of a summary of relevant

22   conflicts points to make sure he has discussed that

23   thoroughly, as Mr. Kramer has already with Mr. Ruben

24   Oseguera-Gonzalez.  And then we'll proceed with the status

25   conference and scheduling conference.

1          My question to the government is this:  In

2     different paperwork that has been submitted to the Court,

3     some with Mr. Oseguera-Gonzalez's signature on it, I have

4     seen different treatments of Federal Rule of Evidence 410.

5     And so what I really was interested in hearing from the

6     government is its view of how any statements made by this

7     defendant to the government, either orally or signed in a

8     written statement as part of any plea discussions that

9     occurred, may be used against him in this case.

10          I would just like some clarification of that

11    directly from the government.

12          What is your view of that?

13          MS. SAHNI:  Yes, Your Honor.

14          With regard to the statement of facts in

15    particular, the government's position is that that signed

16    statement could be used against the defendant as admissions

17    by the defendant.

18          In terms of any other statements that may have

19    been made during plea negotiations --

20          THE COURT:  And that is based on?

21          MR. HERNANDEZ:  We believe that, under Rule 410,

22    the defendant has made that admission; that it's not

23    protected by other information.

24          THE COURT:  Well, Rule 410 certainly says that

25    statements made in connection with plea negotiations can't

1    be used against the defendant.  But that's an evidentiary

2    right, procedural right that can be waived; and courts

3    scrutinize what the terms of the waiver are pretty plainly

4    and clearly based on the terms.

5           So I take it that you think that the statement of

6    facts that was signed by this defendant in connection with

7    the plea agreement that he also signed -- but for a plea

8    that never actually went through because he got

9    Mr. Hernandez retained the night before the plea.

10          So I take it that you think the statement of facts

11   can be used against him due to a provision in the plea

12   agreement that he also signed?

13          MS. SAHNI:  Yes, Your Honor.

14          Ms. Naseef is very comfortable --

15          THE COURT:  Okay.

16          MS. SAHNI:  -- speaking to this, so I will let her

17   take over.

18          THE COURT:  Okay.

19          MS. NASEEF:  I apologize, Your Honor.  This might

20   just be a little faster.

21          So our position is that -- because the plea

22   paperwork is signed, that Mr. Oseguera-Gonzalez is

23   withdrawing, and that the statements -- the signed statement

24   of facts is no longer a statement that is made in

25   furtherance of plea negotiations.  It is, in fact, the

1    result of the plea negotiations.  It's the final statement,

2    and he signed it.  And, therefore, if he chooses to withdraw

3    from that plea agreement which has been signed, then that

4    statement that he signed can be used against him.

5            All of the statements he may or may not have made

6    before that in furtherance of the plea negotiations are

7    covered by the other language that Mr. Kramer pointed out in

8    his filing.

9            THE COURT:  Okay.  Well, I just wanted to have the

10   government's position on that laid out.

11           I am not making any kind of ruling about that at

12   all; I don't have any relevant motion pending for me about

13   that.  But I did want to hear from the government on its

14   position in the presence of both Mr. Hernandez and Mr. Ruben

15   Oseguera-Gonzalez so they understood what the government's

16   position is going to be about all of the signed paperwork

17   and other oral statements that may have been made in

18   connection with the plea.

19           MS. NASEEF:  Yes, Your Honor.

20           And that -- as far as the government's

21   understanding is -- because the plea agreement does not

22   itself have a deadline by which the plea needs to be

23   entered, we consider ourselves and the defendant still bound

24   by it.  Obviously, there needs to be some end date put on

25   that where the defendant makes a decision whether he is

1      going to plead guilty before Your Honor.

2                  THE COURT:  All right.  And then that's moving on

3      to the next stage of scheduling.

4                  MS. NASEEF:  Yes, Your Honor.

5                  THE COURT:  So just hold that thought.

6            All right.  Mr. Hernandez, could you step up?

7                  MR. HERNANDEZ:  Thank you, Your Honor.

8                  THE COURT:  All right.  So I am just going to

9      review, Mr. Hernandez -- with all of the various issues that

10     are at issue when there is a potential conflict to make sure

11     that you have discussed each of those points thoroughly with

12     Mr. Oseguera-Gonzalez.

13                 Mr. Oseguera-Gonzalez, I want you to listen

14     carefully because I am going to ask you, at the end of this,

15     whether you want to -- understanding all of those same

16     points I am going to review with Mr. Hernandez -- that you

17     want to continue with the retention of Mr. Hernandez.

18                 Then, Mr. Onorato, I will deal with your motion to

19     withdraw, and let you and your team off the hook.

20                 So, Mr. Hernandez, you have reviewed with your new

21     client, Mr. Oseguera-Gonzalez, that, if you are retained,

22     you are going to receive all of the discovery in this case

23     that has already been provided to Mr. Onorato; is that

24     correct?

25                 MR. HERNANDEZ:  That is correct, Your Honor.

```
1          THE COURT:  And you have also discussed with your
2    new client that you will also receive all of the documents
3    generated as part of the process to reach a plea agreement
4    in this case, including any statements that Mr. Ruben
5    Oseguera-Gonzalez has made orally or signed?
6          MR. HERNANDEZ:  Yes, I have, Your Honor.
7          THE COURT:  And you have discussed that with him.
8          And you have also discussed with him that any
9    statement that the defendant has made orally or signed as
10   part of the process to reach the plea agreement may be used
11   against him in some way if he decides to go to trial in this
12   case?
13         Have you discussed that with him?
14         MR. HERNANDEZ:  That is correct, Your Honor.
15         And I further advised my client that there were
16   some issues with that, as I indicated previously, that those
17   documents were read to him by a noncertified court
18   interpreter.  I understand that it was one of the attorneys
19   that paraphrased the document.
20         I don't know if the document in Spanish that was
21   translated was brought to him days after the English
22   spoken -- the English-written statement was signed.  And I
23   checked, as I indicated previously, with the records with
24   the jail, and there was a visit by three attorneys but no
25   interpreter.
```

1          There is no document signed by a certified court

2     interpreter, so I take issue with that.  And we're going to

3     be filing a motion to suppress that in -- in due time.  If I

4     can find all of the evidence, I will submit it to the Court.

5          THE COURT:  All right.  And you have also

6     discussed with him that under the plea agreement that would

7     have allowed the defendant to enter a plea to charges in a

8     superseding information that did not carry, in Count 2, a

9     30-year mandatory minimum but only a 10-year mandatory

10    minimum?

11         Have you discussed that with him?

12         MR. HERNANDEZ:  Yes, Your Honor, extensively.

13         THE COURT:  And --

14         MR. HERNANDEZ:  And for the record -- I'm sorry,

15    Your Honor.

16         For the record, Your Honor, I am totally

17    bilingual.  I was born and raised in California.  I lived in

18    Mexico for many years.

19         I was certified as a court interpreter and worked

20    my way through law school some 40 years ago in Santa Clara

21    County, both federal and state.  And there is no issue with

22    my communications with my client.

23         THE COURT:  Have you maintained your certification

24    as an interpreter?

25         MR. HERNANDEZ:  Well, as soon as I became an

1    attorney, I stopped working as a -- as a court interpreter.

2              THE COURT:  I see.

3              MR. HERNANDEZ:  But --

4              THE COURT:  So of course you don't have your

5    certification as an interpreter; is that right?

6              MR. HERNANDEZ:  That was some 40 years ago, Your

7    Honor.  That was -- I think it was number 111 out of 20,000

8    now.

9              THE COURT:  Right.  So, Mr. Hernandez, I should

10   trust your ability to interpret in Spanish to this

11   defendant?

12             MR. HERNANDEZ:  Yes, Your Honor.

13             THE COURT:  But not Mr. Onorato's co-counsel in

14   this case, who is also fluent in Spanish?

15             MR. HERNANDEZ:  Well, I don't know the extent of

16   her abilities, Your Honor.  But the point is this --

17             THE COURT:  His abilities.

18             MR. HERNANDEZ:  -- in my -- in my situation, I am

19   explaining to the Court and advising my client there is no

20   question about my communications with him.

21             Now, if I was going to sign a document that was

22   going to be submitted to the Court, and it is going to be a

23   plea agreement, it has to be with a certified court

24   interpreter.  There is plenty of case law on that.  And I

25   even cannot do that in the last 40 years.

1          THE COURT:  Okay.  So have you also told him, your

2     new client, that the plea agreement and plea offer contained

3     within it may be withdrawn and not offered again?

4          MR. HERNANDEZ:  That is correct, Your Honor.  We

5     also discussed the government's position -- and I -- and I

6     can be corrected if I am wrong -- that we would have a

7     substantial amount of time so I can review, and that offer

8     would remain -- remain open until and when our client has

9     been advised properly, once we see the evidence and see if

10     he wants to go to trial or if he wants to take the plea.

11          THE COURT:  You have already been assured by the

12     government they're going to leave the plea offer open for a

13     long time?

14          MR. HERNANDEZ:  That was a statement made by them

15     and submitted to the Court indicating that they would --

16     they would ask me to have a deadline before we can say go to

17     trial or --

18          THE COURT:  Okay.  That's reasonable.

19          All right.  Have you also advised your new client

20     that he has a right to conflict-free counsel, and may also

21     waive that right to conflict-free counsel?

22          MR. HERNANDEZ:  That is correct, Your Honor.

23          As I indicated before, in my contract, in Spanish,

24     there is a very specific paragraph that indicates that a

25     person has paid my fees at my request and at -- with my

1    consent, and that I am the attorney for him; my loyalties

2    are to him.  I have been working for 40 years, I have not

3    had a problem with -- with that issue.

4              THE COURT:  Okay.

5              MR. HERNANDEZ:  And I know --

6              THE COURT:  And my last point is that -- have you

7    discussed with Mr. Ruben Oseguera-Gonzalez that, in order to

8    give you time to get up to speed in this case, any trial in

9    this case may be postponed for many months, and that will

10   require exclusion of time under a Speedy Trial Act?

11             MR. HERNANDEZ:  Absolutely.  He does understand

12   that, Your Honor.  He indicated that he would be satisfied

13   with work provided to him in whatever amount of time it

14   would take.  It would -- it would be okay with him.

15             THE COURT:  Mr. Onorato, at one of our hearings,

16   estimated that it could take up to a year to review all of

17   the very voluminous discovery in this case in order to be

18   ready for trial in this case.  And is that a time frame that

19   you have discussed with your client?

20             MR. HERNANDEZ:  At -- at least one year, Your

21   Honor, we would need.

22             I was going to propose perhaps a 90-day status

23   conference so that we can have discovery provided.  And we

24   had discussed with Mr. Onorato last time -- I was ready with

25   a big pickup truck so I could pick up 19 boxes of -- of

```
 1    discovery.  Obviously, he is not in his office today, but I

 2    would ask if they can be FedExed as soon as possible.

 3              THE COURT:  Okay.  Well, that's something you can

 4    take up with --

 5              MR. ONORATO:  Your Honor --

 6              THE COURT:  That's something we're going to take

 7    up later.

 8              (Overlapping speakers.  Mr. Onorato was

 9    indiscernible due to poor audio connection.)

10              THE COURT:  You have discussed all of those

11    matters with your client?

12              MR. HERNANDEZ:  Yes, Your Honor.

13              THE COURT:  And, Mr. Ruben Oseguera-Gonzalez, do

14    you understand all of those points that I have just reviewed

15    with Mr. Hernandez?

16              THE DEFENDANT:  Yes, Your Honor.

17              THE COURT:  And is it your wish to continue with

18    the retention as your lawyer in this case, Mr. Hernandez?

19              THE DEFENDANT:  Yes, Your Honor.

20              THE COURT:  Okay.  You may be seated.

21              MR. HERNANDEZ:  Thank you, Your Honor.

22              THE COURT:  All right.  Just so the record is

23    absolutely clear, I do find that -- notwithstanding any

24    potential conflict presented in Mr. Hernandez due to loyalty

25    to the defendant because he is being paid by a member of his
```

1    family -- the defendant seems fully aware of that and waives

2    any potential conflict in this case.

3            I do find that the waiver is voluntary, knowing,

4    and intelligent.  He has been well educated about this both

5    by the Court; by Mr. Kramer, as independent conflicts

6    counsel.

7            I will grant the motion to withdraw as counsel by

8    Mr. Onorato and Mr. Corso; that motion is granted.

9            You may be excused.

10           I will leave it to you to confer with

11   Mr. Hernandez about the delivery of discovery in this case.

12   Although, I think that can't be turned over probably until a

13   protective order is entered with Mr. Hernandez.

14           Has that been done?

15           I am asking the government.

16           MS. SAHNI:  Your Honor, the government has

17   provided the prior protective order to defense counsel.  We

18   can provide -- or to Mr. Hernandez, I should say.  And we

19   can provide that same protective order.  So he is familiar

20   with the contours of it.  And, hopefully, we should be able

21   to file that fairly quickly.

22           THE COURT:  Well, I mean, I haven't looked at this

23   protective order in a really long time.  I am sure

24   counsel -- both former counsel and government counsel -- are

25   more familiar with it.  Is that -- it's not transferable, I

 1    would think.

 2                Do you need a new protective order with

 3    Mr. Hernandez, or is it transferable?

 4                MS. SAHNI:  I believe it -- I don't have it in

 5    front of me.

 6                I believe it is transferable.  I don't believe

 7    that it specifies Mr. Onorato --

 8                THE COURT:  A specific counsel?

 9                MS. SAHNI:  Yes.  But we will double-check and

10    make sure to get that on the record before any transfer.

11                THE COURT:  It's the government's protective order

12    for information of the government, so I will leave that to

13    you-all to figure out.

14                I will leave it to Mr. Hernandez and Mr. Onorato

15    and his team to make sure that the discovery is delivered to

16    Mr. Hernandez.

17                All right.  Let's proceed -- Mr. Kramer, thank you

18    very much.  You are excused.  Again, thank you for your

19    service to the Court.

20                MR. SEARS:  Your Honor, are we excused as well?  I

21    apologize.

22                THE COURT:  Yes.  You are excused.

23                MR. SEARS:  Thank you, Your Honor.

24                THE COURT:  Okay.  So let's proceed to scheduling.

25                Mr. Hernandez suggested 90 days and -- to have a

1    status conference in about 90 days in the case to see where

2    we're all at.  And I think it would probably be helpful

3    if -- well, you-all will figure out discovery.

4          What I don't like is, when there is a transfer of

5    voluminous discovery to a new lawyer, to hear a couple

6    months later:  I never saw that.  It wasn't in the materials

7    given to me by the defense lawyer.

8          So you are going to have to figure out, government

9    counsel, how you are going to make sure that all the right

10   stuff is being turned over to Mr. Hernandez since it's going

11   through a third party -- responsible lawyers but, you know,

12   a third party -- to make sure there isn't a belated issue

13   raised about not having seen discovery.

14         MS. SAHNI:  Yes, Your Honor.

15         The government can provide a discovery log with

16   Bates numbers of everything that we have turned over to

17   Mr. Onorato so that Mr. Hernandez can identify anything that

18   may not be there.

19         THE COURT:  Perfect.  Okay.

20         All right.  So I would suggest the next status

21   conference on August 11, which is about 90 days, at 9:30.

22         MR. HERNANDEZ:  Excuse me, Your Honor.

23         Can we have September 11th?

24         THE COURT:  That's a little over 90 days.

25         No.  I hold my criminal calendar on Fridays,

1    Mr. Hernandez.

2              You could have September 15th.

3              MR. HERNANDEZ:  That would work, Your Honor.

4              THE COURT:  Is that convenient for the government?

5              MS. SAHNI:  That's fine with the government.

6              THE COURT:  All right.  I will set this down for a

7    status conference at 9 a.m. on September 15th.  I am in the

8    middle of a trial that week -- actually, I have two trials

9    scheduled for that week.  I am going to do this as early as

10   possible so I can get back to my jury trials, one or the

11   other.

12             Mr. Hernandez, you have said you have already

13   discussed exclusion of time under the Speedy Trial Act, so I

14   will exclude time between today and August 15th [sic] under

15   the Speedy Trial Act to find that it is in the interest of

16   justice to exclude that time and that those interests

17   outweigh the interests of the public and the defendant in a

18   speedier trial in order for brand-new counsel to start -- to

19   receive and to start reviewing all of the voluminous

20   discovery in this case and to confer with his client about

21   how the client would like to proceed in this case.

22             Is that sufficient for the Speedy Trial Act

23   finding from the government's perspective?

24             MS. SAHNI:  Your Honor, I believe you said

25   August 15th --

```
 1                    THE COURT:  Oh.  Did I say August?  I'm so sorry.
 2     September 15th.  Yes.
 3                    MS. SAHNI:  Then yes.
 4                    THE COURT:  August was my initial thought.
 5     September 15th at 9 a.m.
 6                    Thank you very much for that correction.
 7                    MS. SAHNI:  Thank you.
 8                    THE COURT:  Is there anything further from the
 9     government today?
10                    MS. SAHNI:  No, Your Honor.
11                    THE COURT:  Anything further, Mr. Hernandez?
12                    MR. HERNANDEZ:  Just briefly, Your Honor.
13                    I would propose to the government that if they
14     could give me a list of the things that they provided
15     previous counsel, and that way I can start --
16                    THE COURT:  Mr. Hernandez, they have already said
17     they are going to do that.
18                    MR. HERNANDEZ:  Okay.  Thank you.
19                    THE COURT:  So what is your issue?
20                    All right.  Thank you.
21                    MR. HERNANDEZ:  Thank you.
22                    THE COURT:  If that's it, there is nothing
23     further.
24                    All right.  You are all excused.  Thank you.
25                    (Whereupon, the proceeding concludes, 10:17 a.m.)
```

1                        **<u>CERTIFICATE</u>**

2

3              I, ELIZABETH SAINT-LOTH, RPR, FCRR, do hereby

4     certify that the foregoing constitutes a true and accurate

5     transcript of my stenographic notes, and is a full, true,

6     and complete transcript of the proceedings to the best of my

7     ability.

8              This certificate shall be considered null and void

9     if the transcript is disassembled and/or photocopied in any

10    manner by any party without authorization of the signatory

11    below.

12

13        Dated this 23rd day of May, 2023.

14

          <u>/s/ Elizabeth Saint-Loth, RPR, FCRR</u>
15        Official Court Reporter

16

17

18

19

20

21

22

23

24

25