UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
 *  *  *  *  *  *  *  *  *  *  *  *  *  *  *
UNITED STATES OF AMERICA,          )  Criminal Action
                                   )  No. 16-229
vs.                                )
                                   )
RUBEN OSEGUERA GONZALEZ,           )  April 21, 2023
              Defendant.           )  11:02 a.m.
                                   )  Washington, D.C.
  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *
```

**TRANSCRIPT OF PROCEEDING**
**BEFORE THE HONORABLE BERYL A. HOWELL,**
**UNITED STATES DISTRICT COURT JUDGE**

**<u>APPEARANCES</u>:**

FOR THE UNITED STATES:
          KAITLIN J. SAHNI
          KATE M. NASEEF
          U.S. Department of Justice
          145 N Street, NE
          Washington, DC 20530
          (202) 598-2493
          Email: kaitlin.sahni@usdoj.gov

FOR THE DEFENDANT:  DANNY ONORATO
          STUART SEARS
          Schertler Onorato Mead & Sears
          555 13th Street, NW, Suite 500 West
          Washington, DC 20004
          (202) 628-4199
          Email: donorato@schertlerlaw.com

          ARTURO HERNANDEZ
          10050 Machado Lane
          San Jose, CA 95127
          (408) 729-5785
          Email: artlawoff@aol.com

ALSO PRESENT:       TERESA SALAZAR, Spanish Language Interpreter

Court Reporter:     Elizabeth Saint-Loth, RPR, FCRR
          Official Court Reporter

Proceedings reported by machine shorthand.
Transcript produced by computer-aided transcription.

**P R O C E E D I N G S**

1

2          THE COURTROOM DEPUTY:  Matter before the Court,

3   Criminal Case No. 16-229, United States of America versus

4   Ruben Oseguera Gonzalez.

5          Your Honor, for the record, the interpreter today

6   is Ms. Teresa Salazar.

7          Counsel, please come forward and state your names

8   for the record, starting with the government.

9          MS. SAHNI:  Good morning, Your Honor.

10  Kaitlin Sahni, and my co-counsel Kate Naseef, for the

11  United States.

12          THE COURT:  Yes.  Good morning.

13          MR. HERNANDEZ:  May I approach the bench, Your

14  Honor?

15          THE COURT:  If your foot is hurt -- okay.  Go

16  ahead.

17          MR. HERNANDEZ:  Good morning, Your Honor.

18  For the record, Arturo Hernandez appearing on behalf of

19  Mr. Oseguera, who is present in court in custody, being

20  assisted by the Court interpreter.  And thank you for

21  allowing me to proceed in this court proceeding.

22          THE COURT:  Yes.  Well, now you have filed your

23  pro hac vice motion.

24          MR. HERNANDEZ:  First of all, I would like to

25  apologize if I inconvenienced the Court in any way or

1    counsel for the government.  I did not mean to do that.  I

2    was retained at the last minute.  I appreciate it, Your

3    Honor.

4              THE COURT:  Right.

5              Mr. Onorato, I know you have got your motion to

6    withdraw pending.

7              MR. ONORATO:  Yes, Your Honor.  Good morning.

8              THE COURT:  I know you just flew in.  Thank you.

9              MR. ONORATO:  Thank you.

10             We were scared, but we made it.

11             THE COURT:  I'm sorry.  What?

12             MR. ONORATO:  We were scared, but we made it.

13             THE COURT:  All right.  Well, I understood you

14   were flying in.  I would have given you some leeway there,

15   Mr. Onorato.

16             Okay.  So pending before me are a couple of

17   motions; one is Mr. Onorato's motion to withdraw as counsel

18   given Mr. Hernandez's notice that he's making his appearance

19   on behalf of Mr. Oseguera Gonzalez.

20             I also have the government's motion to do a

21   conflicts inquiry, and also their latest motion to appoint

22   independent conflicts counsel.

23             Let me just lay on the record the basis, as I

24   understand it, for the government's motion; and that is that

25   Mr. Hernandez is being retained and being paid by the

1    defendant's family members, and a number of those family

2    members are charged in related cases in this court, raising

3    a potential conflict of interest or divided loyalties that

4    Mr. Hernandez may have to the people who may not have

5    Mr. Oseguera Gonzalez's interests at heart.

6            Among the defendant's family members charged in

7    related cases to Mr. Oseguera Gonzalez's -- or, by my

8    count -- and I may not have all of them -- eight family

9    members, his father, Nemesio Oseguera Cervantes, who

10   allegedly leads this Jalisco cartel in Mexico, the CJNG, and

11   is a fugitive; his half brother, Juan Carlos Valencia

12   Gonzalez, who is also allegedly a CJNG member and a fugitive

13   charged in this district; his uncle, Abigael Gonzalez

14   Valencia, who is detained in Mexico pending extradition to

15   this district; his uncles, Gerardo and Jose Gonzalez

16   Valencia, who are awaiting sentencing before this Court, and

17   charged in connection with a large drug conspiracy just over

18   some of the same period as Mr. Oseguera Gonzalez; his uncle,

19   Antonio Oseguera Cervantes, who is also charged in this

20   district and currently detained in Mexico pending

21   extradition; his mother, Rosalinda Gonzalez Valencia, who is

22   detained in Mexico on, I think, local Mexican money

23   laundering charges; and his sister Jessica Johanna Oseguera

24   Gonzalez -- who I know because she pled guilty in front of

25   me.  I have already sentenced her, and I understand that

1    she's already been released from jail.

2    So any one of those family members may be the

3    family members that Mr. Hernandez has referred to him as

4    retaining him and paying him to represent this defendant.

5    It is important for Mr. Oseguera Gonzalez to

6    understand what all of the consequences are if Mr. Hernandez

7    has divided loyalties in representing him.  Among those

8    consequences are that Mr. Hernandez will receive all of the

9    discovery in this case produced to Mr. Onorato; all

10   documents generated as part of the process of the plea

11   agreement in this case that are in Mr. Onorato's hands; any

12   such document that the defendant has signed.

13   Mr. Hernandez may want to share any and all of

14   that discovery with the people who are paying him.  And the

15   plea agreement to which Mr. Oseguera Gonzalez was scheduled

16   to enter a plea to, to a superseding information that did

17   not carry a 30-year mandatory minimum charge, as in the

18   indictment against him, it would have been to a lesser

19   charge of only a 10-year mandatory minimum.  And should he

20   proceed to trial, that terms -- it will be on the terms of

21   the indictment in this case with the 30-year mandatory

22   minimum, the government will likely -- will not proceed to

23   trial on the information which was part of the plea offer in

24   the case.

25   So these are all very significant consequences for

1    Mr. Oseguera Gonzalez that he needs to fully understand

2    before I allow Mr. Onorato to withdraw from this case --

3    sorry Mr. Onorato -- and have Mr. Oseguera on the record

4    clearly waive all of those conflicts to proceed with

5    Mr. Hernandez.

6            And the reason for that is:  Once we reach a final

7    disposition in this case, whether it's through a plea,

8    whether it's through a trial, up to Mr. Oseguera Gonzalez, I

9    don't want him to come back in sometime later and say:  Undo

10   all of that work, undo all of that because I didn't have

11   competent counsel; I didn't have counsel who was zealously

12   representing me, and I didn't understand he had divided

13   loyalties.

14           No one has time -- particularly me -- I am a very

15   busy judge, I don't have time to redo things because

16   Mr. Oseguera Gonzalez sometime after the fact may claim:  I

17   didn't fully understand.

18           So I appreciate the government's request to make

19   sure he fully understands the consequences of the potential

20   conflict that Mr. Hernandez has and to have an independent

21   conflicts counsel come in to give Mr. Oseguera Gonzalez,

22   basically, a second opinion, and to report to the Court

23   about whether this is an actual conflict or I have a duty

24   not to allow it, or it's a potential conflict that he can

25   waive; meaning, proceed with his choice.

```
 1          So let me just -- let me just hear from the
 2   government for a minute.
 3          Do you have anything else to add to the actual or
 4   potential conflicts that Mr. Hernandez may have in this
 5   case?
 6          MS. SAHNI:  No, Your Honor.  I think that was
 7   accurately summarized from the motions.
 8          THE COURT:  All right.  And at the last hearing, I
 9   mean, I did ask Mr. Oseguera Gonzalez pretty clearly if he
10   wanted to proceed with Mr. Hernandez, knowing that
11   Mr. Hernandez had been retained by the defendant's family
12   members who have their own legal problems with their own
13   best interest at heart rather than his; and he said very
14   clearly, "Yes, Your Honor."
15          In the government's view, is that insufficient to
16   support a knowing and intelligent waiver of conflicts?
17          MS. SAHNI:  Yes, Your Honor.
18          I believe that to be absolutely sure that the
19   defendant understands the consequences both of potential
20   divided loyalties and, also, the consequences of potentially
21   withdrawing from the plea agreement that he has signed.
22   Conflicts counsel --
23          THE COURT:  More needs to happen?
24          MS. SAHNI:  I believe so, Your Honor.  Yes.
25          THE COURT:  Okay.
```

```
 1              So, Mr. Hernandez, I know you have a boot on your

 2     foot so I don't want to exacerbate that --

 3              MR. HERNANDEZ:  It's fine.  I appreciate it.

 4              Just for the record, Your Honor, it happened at my

 5     second job, which is helping my daughter, who is a vet, with

 6     an injured horse, and I got stepped on.

 7              THE COURT:  Oh, my goodness.

 8              MR. HERNANDEZ:  The broken bone will heal.

 9              Just for the record, Your Honor, the Court has

10     already inquired from my client directly on the record.  He

11     signed the contract that is specifically in Spanish that I

12     have used for 40 years, that I have used many, many times --

13     hundreds, if not thousands of times, where I specifically

14     state -- and he read it, and he initialed and he signed the

15     entire contract -- that he knows that a third-party person

16     paid for his fees -- for initial fees, and that he knows

17     that person and that person paid up on his request; not the

18     innuendo that the government or the media or somebody else

19     is trying to impute on me and cause some havoc saying

20     that --

21              THE COURT:  Let me just interrupt you,

22     Mr. Hernandez.  Because in the conflict situation, there are

23     certain conflicts that the defendant has a right to waive.

24     I think the courts have said defendants are allowed to be as

25     foolish as they want to be in some circumstances.
```

1        But in a conflict situation, I really do have an

2   obligation to assure myself that there is no actual conflict

3   here because that goes to the integrity of the judicial

4   proceedings.

5        MR. HERNANDEZ:  Absolutely.

6        THE COURT:  And if I don't inquire about actual

7   conflict situations and let this just go forward, I am not

8   doing my job.

9        So of the eight people whose names I listed -- and

10  I can repeat them if you want.

11       MR. HERNANDEZ:  No.  No, Your Honor.

12       THE COURT:  -- do you have -- do you currently

13  represent or have you ever represented any of those eight

14  family members who are charged?

15       MR. HERNANDEZ:  No, Your Honor.  And,

16  unfortunately, I could have made some money, but no, I have

17  never represented, I have never had any dealings with them.

18  This is my first client --

19       THE COURT:  And to be specific, that means you

20  have never represented and you don't currently represent:

21  Nemesio Oseguera Cervantes, Juan Carlos Valencia Gonzalez,

22  Abigael Gonzalez Valencia, Gerardo and Jose Gonzalez

23  Valencia, Antonio Oseguera Cervantes, Rosalinda Gonzalez

24  Valencia, or Jessica Johanna Oseguera Gonzalez?

25       MR. HERNANDEZ:  No, Your Honor.  Absolutely not.

1          THE COURT:  And have you ever represented or do

2     you currently represent any of the other family members of

3     this defendant?

4          MR. HERNANDEZ:  Like I said, unfortunately not,

5     because I could have made some money.  But no, absolutely

6     not.

7          THE COURT:  And that's not just his current family

8     members, but people who may be related to him through

9     current or prior marriages.

10          MR. HERNANDEZ:  Well, as the government did

11     specify, I did a motion in San Francisco for Mr. Valencia to

12     undo or finish the -- shorten the probation and release;

13     that was it.

14          THE COURT:  And who is that person?

15          MR. HERNANDEZ:  That would be the person that

16     Mr. Valencia -- that the government alleges that is a

17     relationship of his mother some 40 years ago.  That he was

18     married -- I don't think they were married, but there was a

19     relationship between that client and his mother some 40

20     years ago.  So I don't see any relevance to this --

21          THE COURT:  Are you currently representing that

22     family member?

23          MR. HERNANDEZ:  No.

24          THE COURT:  Okay.  And when did --

25          MR. HERNANDEZ:  Well, he actually is not --

```
 1              THE COURT:  When did -- I'm sorry?

 2              MR. HERNANDEZ:  I'm sorry.  He is not a family

 3     member.  He was -- allegedly had a relationship with his

 4     mother some 40 years ago.

 5              THE COURT:  But you are unaware of what that

 6     relationship is.

 7              MR. HERNANDEZ:  Well, from the government stating

 8     that, that's how I know.  I mean, I assume it's true if they

 9     stated it on the record in their pleadings.

10              THE COURT:  Okay.  And you don't currently

11     represent that person?

12              MR. HERNANDEZ:  No.  No, ma'am.  No, Your Honor.

13              THE COURT:  And who is it who is paying you from

14     the defendant's family?

15              MR. HERNANDEZ:  There is an uncle from California

16     that wishes to remain anonymous for obvious reasons.  And he

17     asked that uncle to help him because the plea agreement that

18     he had signed had been read by one of the attorneys.  And

19     the statement by counsel is that he had an interpreter -- I

20     checked the records for the dates and times that they

21     allegedly went to the jail, and there was no interpreter.

22     There is no signature, there is no sworn statement by an

23     interpreter that said:  I translated the document; so that's

24     another issue.  I will address that in future motions, but

25     he was asking --
```

1           THE COURT:  Future motions about what?

2           MR. HERNANDEZ:  Well, the government is saying

3    that they will use it -- use that signed statement against

4    my client.  I think it's illegally obtained because it was

5    based on a statement that is not correct.

6           THE COURT:  Mr. Onorato, you have in your future

7    becoming a potential witness.

8           MR. HERNANDEZ:  Well, I am saying that those are

9    things my client needs to be helped with.  I will conduct

10   due diligence, obviously.  I will do all my work before I

11   can say to the government if we can continue with the plea

12   or not.  But I have to work on --

13          THE COURT:  So do you -- maybe I should just cut

14   to the chase here.

15          Given the number of Mr. Oseguera's family members

16   involved in related charges and -- do you have any objection

17   to having an independent conflicts counsel do an inquiry

18   here and make a report to the Court and have an independent

19   conflicts counsel give Mr. Oseguera Gonzalez a second

20   opinion about all of the consequences of proceeding with you

21   who might have divided loyalties?

22          MR. HERNANDEZ:  For the record, I would object,

23   Your Honor.  I have explained that to my client.  He said

24   there is absolutely not a problem.  He would advise the

25   attorney about the factual basis.  We want to have -- make

1     sure that it's sealed, why he changed lawyers.

2            It was not because somebody told him change

3     lawyers because you are going to hurt my case or you are

4     going to hurt my situation.  No.

5            He was asking his family for two or three weeks

6     prior to me being retained.  They were looking for somebody

7     because he called them and said:  Hey, something is terrible

8     here; they're crucifying me.  That's what he told them.

9            THE COURT:  All right.  I understand you have an

10    objection to it.

11            Mr. Onorato, do you have any independent

12    objection?

13            MR. ONORATO:  Your Honor, given the

14    representations that counsel made, I don't think it would be

15    appropriate for me to comment, especially with the Court's

16    observation.  And I think that should seal our motion to

17    withdraw just based on what he said.

18            THE COURT:  Yeah.  Well, I am not going to grant

19    your motion to withdraw yet, Mr. Onorato, because I want to

20    make sure that Mr. Oseguera Gonzalez understands precisely

21    what the consequences are here.

22            MR. ONORATO:  Understood.

23            THE COURT:  And with the representation that

24    Mr. Hernandez is being paid by a family member who is

25    anonymous, so I don't know -- and, Mr. Hernandez, you will

1    have to share that with the conflicts counsel so that we can

2    understand what is going on here.

3         I am going to grant the government's motion to

4    appoint conflicts counsel.  I am going to appoint a totally

5    independent person, A.J. Kramer, who is our Federal Public

6    Defender here, who has an assistant public defender who

7    speaks Spanish; and I am going to be issuing an order to

8    that effect.

9         I am going to set this down for another status

10   conference in approximately three weeks so that Mr. Kramer

11   can talk to you, Mr. Hernandez; talk to Mr. Oseguera

12   Gonzalez, with a Spanish-speaking FPD; and also talk to the

13   government; and provide a report to the Court as to the full

14   appraisal of all of the consequences of proceeding with you,

15   Mr. Hernandez, you know, is all -- clearly laid out before I

16   will grant your motion to withdraw and I'm assured that any

17   waiver of any potential conflict is knowing and intelligent.

18        MR. ONORATO:  Your Honor, just to be clear, we'll

19   just appear on the record but we're not doing any legal work

20   on behalf of Mr. Oseguera Gonzalez.

21        THE COURT:  Of course.  Of course.  But you know

22   A.J. --

23        MR. ONORATO:  I know A.J. very well.

24        THE COURT:  You will talk to A.J.

25        MR. HERNANDEZ:  May I?

1          THE COURT:  Yes, Mr. Hernandez.

2          MR. HERNANDEZ:  Thank you, Your Honor.

3          I would just clarify, on the record, my objection

4     is based on the fact that my client has been delayed in his

5     trial.  I would make a note that the government has

6     indicated in their motion that they are not asking me to --

7          THE COURT:  Are you going to be prepared to go to

8     trial on the scheduled date on May 2?

9          MR. HERNANDEZ:  No.

10         THE COURT:  That is a surprise.

11         MR. HERNANDEZ:  No.  I have done some crazy things

12    like that, but not this time.  So a motion --

13         THE COURT:  Excuse me, Mr. Hernandez.

14         So what is your complaint about a delay in the

15    trial?

16         MR. HERNANDEZ:  That the client has already

17    agreed, the government has agreed that they don't have a

18    problem with me participating.  And he has already, on the

19    record, established that he knows who is paying for it; that

20    he asked that person, and that it's not any of the above

21    that was a questionable character in this case.

22         I would also point out that his limited resources

23    will be diminished by having to come back before starting to

24    work.

25         The other question is when I can get the discovery

```
 1    so I can start --

 2              THE COURT:  Before starting to work, what do you

 3    mean?

 4              MR. HERNANDEZ:  Well, if I am going to have to

 5    wait for another three weeks to look at discovery, can I

 6    have the discovery now --

 7              THE COURT:  Would you prefer to have all of this

 8    done -- I think Mr. Kramer is available to do this, we can

 9    move this up.

10              MR. HERNANDEZ:  No.  I am just saying can I have

11    discovery?

12              THE COURT:  Excuse me.

13              Instead of three weeks, I can ask Mr. Kramer to

14    have these conversations with everybody and get a report

15    back to the Court in ten days.

16              MR. HERNANDEZ:  No.  Three weeks is fine, Your

17    Honor.  Maybe my foot would get better.

18              THE COURT:  I'm sorry.  I am confused.

19              You are complaining about the three weeks because

20    of the delay, but three weeks is okay.  Which is it,

21    Mr. Hernandez?

22              MR. HERNANDEZ:  Personally, for my foot, three

23    weeks is better.  For my client, I have to establish on the

24    record that a delay is a delay, and it's hard for the

25    government --
```

1              THE COURT:  Well, I mean, I have heard of a

2    conflict with other people involved who you may have a

3    relationship with and represent, but that's a separate kind

4    of conflict than a conflict with your foot; so I am not sure

5    what I can do about your foot conflict.

6              But I will ask Mr. Kramer to get a report to the

7    Court within ten days.  You will see the order.

8              Ms. Gumiel, could you just tell me what the date

9    is in ten days from now?

10             (Whereupon, the Court and staff confer.)

11             THE COURT:  I know the jury trial is scheduled

12   here for May 2.  Have you conferred with the government

13   about when you are going to be ready for trial?

14             MR. HERNANDEZ:  No.  We have discussed that on the

15   record that I think that it was obvious that I wasn't going

16   to be ready to go to trial, and that the Court indicated

17   something like a year.  And you had the client acknowledge

18   that it would be at least a year before we can come back --

19             THE COURT:  Well, it's only based on what I

20   understand to be the volume of discovery in this case, and

21   it's in different languages, and it's very complicated.  I

22   think Mr. -- I think I understood that from Mr. Onorato,

23   that it would take about a year to get fully up to speed

24   with all of -- did I understand that correctly, Mr. Onorato?

25             MR. ONORATO:  Your Honor, we have been provided --

1    I can't even tell the Court how many intercepts, but there

2    are a lot.  And to understand all of the players and develop

3    a rapport with Mr. Oseguera Gonzalez, it will take him

4    substantial time to get ready.  I can't -- I don't know how

5    many other cases he has.  But given my other workload, it

6    took me a long time to get up to speed, but I can't speak to

7    Mr. Hernandez.

8            THE COURT:  I thought you had said a year, that's

9    where I got it.

10           MR. ONORATO:  I think a year -- I mean, it took

11   us -- the whole COVID period, I was reading this discovery

12   and meeting with the client, so it took a long time.

13           THE COURT:  So I didn't make that up out of thin

14   air; I thought I heard it from somebody with experience --

15           MR. ONORATO:  Correct.  Your Honor, my only --

16           THE COURT:  -- living through this, which is why I

17   suggested a year.

18           You are right, Mr. Onorato, Mr. Hernandez, if you

19   can do this in -- sooner than that, that will be great.

20           Mr. Onorato, I'm sorry.  I interrupted you.

21           MR. ONORATO:  My only other question is --

22   Mr. Hernandez referred to discovery.  If the Court will

23   permit, I have 18 boxes of documents and, literally, disks

24   and disks and disks of discovery; I also have a private

25   vendor hosting data.  I would love to be able to give all of

1    that stuff to counsel.  I don't know if the Court is going

2    to wait for Mr. Kramer to rule.

3            THE COURT:  I am going to wait to get the report

4    from independent conflicts counsel; make sure that this

5    waiver of any potential conflict is unstickable.

6            MR. ONORATO:  Understood.  But I just want the

7    record to be clear that we have our file ready to transfer

8    and will cooperate with them.  We will await guidance from

9    the Court.

10           THE COURT:  Okay.

11           MR. HERNANDEZ:  That is correct, Your Honor.  We

12   had spoken about that; I was ready to go pick it up in a

13   truck tomorrow.

14           Just for the record, Your Honor, I have advised my

15   client that if there is any problems with the payment, I

16   will do it pro bono.  He agrees that I can provide him

17   services pro bono as I have done in many, many cases, like

18   the Night Stalker; like five different murder cases, the

19   last one was a month ago; I mean, a year ago we got a

20   verdict of not guilty in 45 minutes.  I have done a lot of

21   pro bono work.  I even did some pro bono work for El Chapo

22   Guzman.  So it's not unusual for me to do pro bono, but if

23   there is going to be a problem with payment --

24           THE COURT:  You did pro bono work for whom?

25           MR. HERNANDEZ:  El Chapo Guzman; I did some work

```
1     for him through his attorney.  So it's not unusual for me to
2     do that for the last 40 years.
3               THE COURT:  Chapo Guzman can't afford a lawyer?
4               MR. HERNANDEZ:  I'm sorry?
5               THE COURT:  Chapo Guzman needs pro bono work?
6               MR. HERNANDEZ:  Well, I did it.  I did it pro
7     bono.  It's good for business.  You know what I am saying.
8               THE COURT:  I actually don't.
9               MR. HERNANDEZ:  Publicity is --
10              THE COURT:  Don't attribute to me knowledge I
11    don't have.
12              MR. HERNANDEZ:  Thank you, Judge.
13              THE COURT:  I am going to be issuing an order for
14    Mr. Kramer.
15              May 5th.  May 5th, at 9:30.
16              I am going to get a report from Mr. Kramer
17    beforehand.  If he thinks that -- if his report is clear, I
18    will -- I may not have to proceed with that hearing.  But I
19    want you all to be available for the hearing in case he
20    raises questions that he thinks further elaboration would be
21    necessary or helpful.  All right.
22              MR. HERNANDEZ:  Excuse me, Your Honor.
23              With all due respect, Cinco de Mayo is a national
24    Mexican holiday that we celebrate.  If possible, could we
25    have the following week?
```

 1              THE COURT:  That's more delay.

 2              MR. HERNANDEZ:  Well, that's necessary for me.  If

 3     possible, can we have the following week?

 4              And the other question is, how is that going to

 5     work?  Am I going to be able to participate in that, be

 6     present, or is that independent?

 7              THE COURT:  No.  You absolutely should be present.

 8              MR. HERNANDEZ:  Okay.  So he will have an

 9     interpreter or he will have somebody to communicate with my

10     client.

11              THE COURT:  As I said, he will have an interpreter

12     who speaks Spanish --

13              MR. HERNANDEZ:  Perfect.

14              THE COURT:  -- who is a lawyer at the Federal

15     Public Defender's office.

16              And the next day is?

17              THE COURTROOM DEPUTY:  The 12th, Your Honor.

18              THE COURT:  May 12?

19              (Whereupon, the Court and staff confer.)

20              THE COURT:  Okay.  9:30, on May 12.

21              MR. HERNANDEZ:  May 12.  Perfect.  Thank you so

22     much, Your Honor.

23              THE COURT:  I will exclude time under the Speedy

24     Trial Act between today and May 12 and find that it is in

25     the interest of justice to do so, and that those interests

1    outweigh the interest of the public and the defendant in a

2    speedier trial in order to ensure that independent conflicts

3    counsel has the opportunity to fully collect any information

4    necessary to evaluate whether there is an actual or

5    potential conflict, and to assure the Court that

6    Mr. Oseguera Gonzalez fully understands the consequences of

7    proceeding with the -- Mr. Hernandez who may have any

8    potential conflicts, and that he has fully and knowingly

9    waived such conflicts.

10              Anything further from the government today?

11              MS. SAHNI:  No, Your Honor.  Thank you.

12              THE COURT:  Anything further, Mr. Onorato?

13              MR. ONORATO:  The only other thing is Mr. Corso

14    may be on the line.  I don't think we checked.  He had

15    permission to dial in.

16              THE COURT:  I know.  I forgot about Mr. Corso.

17              MR. ONORATO:  Same.  He is always an afterthought

18    with me, too, judge.

19              THE COURT:  Say that again.

20              MR. ONORATO:  I said he is an afterthought with me

21    as well.

22              THE COURT:  Okay.  All right.

23              THE COURTROOM DEPUTY:  What happened to the trial

24    date?  That's May 2.

25              THE COURT:  All right.  Well, I am going to vacate

1    the trial date since I don't know for how long we're going

2    to have to postpone the trial in this case.  But if

3    Mr. Hernandez does stay in this case, the waiver of any

4    potential conflict is fully and knowing.  Then Mr. Hernandez

5    and the government are going to have to talk to one another

6    about when this case can be tried and when Mr. Hernandez can

7    be ready to try it.

8              Okay.  Anything further from you, Mr. Hernandez?

9              MR. HERNANDEZ:  Nothing further, Your Honor.

10   I appreciate it.  Thank you so much.

11             THE COURT:  All right.  I expect full cooperation

12   with Mr. Kramer as independent conflicts counsel.

13             All right.  You are all excused.

14             MR. ONORATO:  Thank you, Your Honor.

15             (Whereupon, the proceeding concludes, 11:33 a.m.)

16                           * * * * *
                           **CERTIFICATE**

17

18             I, ELIZABETH SAINT-LOTH, RPR, FCRR, do hereby
     certify that the foregoing constitutes a true and accurate
     transcript of my stenographic notes, and is a full, true,
19   and complete transcript of the proceedings to the best of my
     ability.

20

21             This certificate shall be considered null and void
     if the transcript is disassembled and/or photocopied in any
     manner by any party without authorization of the signatory
22   below.

23

             Dated this 27th day of April, 2023.
24

     /s/ Elizabeth Saint-Loth, RPR, FCRR
25   Official Court Reporter