UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : CRIMINAL NO. 16-CR-229-BAH |
| v. | : |
| RUBEN OSEGUERA-GONZALEZ, | : |
| Defendant. | : |

### SUPPLEMENTAL OPPOSITION TO MOTION TO COMPEL DISCOVERY [DKTS. 114, 123]

The United States, for the reasons described below, respectfully requests that this Court deny the defendant's *Motions to Compel Discovery and Grant Leave to File Further Motions Based Upon New Discovery*, Dkt. 114, as narrowed by the defendant's *Supplemental Briefing in Support of Defendant's Motion to Compel Discovery*, Dkt. 123. In his supplemental briefing, the defendant has narrowed his original discovery request to items that he speculates may provide a basis to challenge the April 2013 wiretap that led to the interception of BBM messages the defendant sent to his uncle, who was the actual target of the April 2013 wiretap, and others. But the defendant has failed to provide a legal basis for his requests. Rule 16(a)(1)(e)(i) does not entitle the defendant to a blind fishing expedition for a basis to challenge a wiretap. And wiretap progress reports are not discoverable under *United States v. Pray*, 734 F. Supp. 2d 158 (D.D.C. 2010). Accordingly, the Court should deny the defendant's motion.

### I. BACKGROUND

The defendant was charged in an indictment on December 14, 2016, Dkt. 1, which was superseded on February 1, 2017, Dkt. 6. Trial is scheduled to commence

1

on September 9, 2024. On March 21, 2024, the defendant filed his *Motions to Compel Discovery and Grant Leave to File Further Motions Based Upon New Discovery*. Dkt. 114. At the defendant's request, the Court conducted a hearing on this motion on May 13, 2024. During the hearing, the defendant withdrew or narrowed most of his requests. For example, the defendant agreed that *Giglio*, Jencks Act, and the government's witness list should be disclosed two weeks before trial. And with respect to many other requests, the defendant conceded that he had no basis to believe that the government had not already complied with his request or existing discovery law. For any requests that the defendant did not disclaim at the hearing, the Court ordered the defendant to file supplemental briefing. The same day, the Court reiterated the order for supplemental briefing:

> [D]efendant shall file a supplemental submission, with fulsome explanation and citations to applicable law, in support of defendant's [114] Motion to Compel, to which defendant filed no reply in response to the government's [117] Opposition, *addressing the basis for any outstanding discovery request*, as to which defense counsel did not during the hearing disclaim the necessity for judicial intervention, including addressing, in particular, request number 2 and its subparts.

May 13, 2024, Minute Order (emphasis added). Because the Court ordered the defendant to "address[] the basis for any outstanding discovery request," any requests not addressed in the defendant's supplemental briefing should be considered disclaimed. The next day, the defendant filed his *Supplemental Briefing in Support of Defendant's Motion to Compel Discovery*, Dkt. 123.

In his supplemental briefing, the defendant has narrowed his discovery request to obtaining information in anticipation of challenging a BBM wiretap authorization that was issued in April 2013. *Id.* at 2–7. For example, the defendant

2

asserts that without pen register data he cannot "determine whether the [wiretap] affiant's representations were accurate, exaggerated, or even false." *Id.* at 7. Similarly, he claims that without the recordings referenced in the wiretap affidavit, he cannot "determine whether those calls were accurately summarized and represented to the reviewing court." *Id.* at 5. And without "reports of investigation and surveillance reports that relate to the investigation that preceded the wiretap application," the defendant claims he cannot "evaluate the representations in both the probable cause and necessity sections of the wiretap applications." *Id.* at 3. Simply put, the defendant's requests amount to a blind fishing expedition during which he hopes that the requested material will provide a basis for a "viable challenge to the wiretap." *Id.* at 3.[1]

The wiretap at issue, the affidavit for which is attached under seal as Exhibit 1, was authorized by a United States District Judge for the Central District of

---

[1] Apart from his argument that the wiretap progress reports might be usable for impeaching a government witness, which is addressed below, the defendant has not alleged an alternative legal basis compelling disclosure of the items he seeks. Rightly so. The material the defendant seeks is not discoverable under rule 16 because it is not a statement of the defendant, Fed. R. Crim. P. 16(a)(1)(A)–(C), it is not the defendant's prior record, Fed. R. Crim. P. 16(a)(1)(D), the government does not intend to use it in its case-in-chief at trial, Fed. R. Crim. P. 16(a)(1)(E)(ii), it does not belong to the defendant, Fed. R. Crim. P. 16(a)(1)(E)(iii), it is not a report of examination or test, Fed. R. Crim. P. 16(a)(1)(F), and it does not pertain to an expert witness, Fed. R. Crim. P. 16(a)(1)(G). Moreover, apart from fishing for a basis to challenge the wiretap, the defendant has not alleged that the items he seeks are material to preparing the defense. *See* Fed. R. Crim. P. 16(a)(1)(E)(i). And he has not alleged that the material he seeks is somehow exculpatory under *Brady v. Maryland*, 373 U.S. 83 (1963), or constitutes witness statements under the Jencks Act, 18 U.S.C. § 3500.

California in April 2013.[2] Exhibit 1 at 31. According to the affidavit, the target device of the wiretap was primarily being used by Abigael Gonzalez Valencia, not the defendant. *Id.* at 3–4. The defendant's communications were eventually intercepted because he was communicating directly with Gonzalez Valencia and users of other target devices.[3] As explained in the affidavit, "'traditional' law enforcement investigative techniques [needed to] be supplemented with electronic interception" because, among other reasons, the targets of the investigation lived and worked in Mexico out of reach of many investigative tools available to U.S. law enforcement and the targets of the investigation had protected themselves by "only deal[ing] with relatives, close friends, and longtime associates, typically in Mexico." *Id.* at 21–22. Thus, the probable cause for the affidavit consisted of general background about the target drug trafficking organization, *id.* at 10–13, a description and analysis of two drug-related communications with the target BBM PIN, *id.* at 13–17, and analysis of pen register data that revealed that the target BBM PIN had been communicating with three other BBM PINs that were involved in other DEA investigations, *id.* at 17–20. Given the international nature of the investigation and the fact that the defendant's communications were incidentally intercepted because he happened to be communicating with target BBM PINs, it is unsurprising that the defendant has

---

[2] The court renewed the wiretap several times and authorized the addition of multiple target devices.

[3] The defendant may have been the user of Target Device #20. But the device had insufficient activity during the limited period of interception to confirm the user's identity on the basis of the messages alone.

not received "traditional" discovery stemming from "traditional" law enforcement investigative techniques.

## II. RULE 16(A)(1)(E)(I) DOES NOT ENTITLE THE DEFENDANT TO A BLIND FISHING EXPEDITION FOR A BASIS TO CHALLENGE A WIRETAP.

In support of his narrowed request, the defendant relies almost exclusively on the plain the text of rule 16(a)(1)(E)(i) of the Federal Rules of Criminal Procedure—indeed he cites almost no caselaw to support his reasoning.[4] Dkt. 123 at 3–5, 6–8. Troublingly, the defendant has failed to cite a single case supporting the proposition that an item becomes discoverable under rule 16(a)(1)(E)(i) if the defendant asserts that it may provide the defendant with a basis to challenge the validity of a wiretap authorization. *See generally* Dkt. 123.[5]

---

[4] The only caselaw the defendant cites is in the penultimate paragraph of his request regarding pen register data, which pertains to the discoverability of that data under rule 16(a)(1)(E)(ii). Dkt. 123 at 7. The government agrees that rule 16 requires disclosure of any item in its possession that it intends to use in its case-in-chief at trial. The government has complied with this requirement and will continue to do so. But critically, the government does not intend to use the pen register data the defendant seeks in its case-in-chief at trial.

[5] The defendant asks for disclosure of two wiretaps referenced in the "Prior Applications" section of the wiretap affidavit. He bizarrely claims that these wiretaps may have been so successful that the April 2013 wiretap was unnecessary. But the applications and orders he seeks contain the legal basis to initiate those wiretaps; they could not reveal whether the resulting wiretaps intercepted useful evidence. Moreover, as stated in the April 2013 affidavit, those wiretaps intercepted a BBM PIN that "was not in direct contact with" the target of the April 2013 wiretap. Exhibit 1 at 10. Instead, those wiretaps dealt with a BBM PIN that was in communication with a third BBM PIN that was in turn communicating with the target of the April 2013 wiretap. *Id.* Additionally, there is no reference to these wiretaps elsewhere in the April 2013 wiretap affidavit. *See generally* Exhibit 1. Simply put, there is no basis

5

"An affidavit offered in support of a wiretap application enjoys a 'presumption of validity.'" *United States v. Williams*, 827 F.3d 1134, 1147 (D.C. Cir. 2016) (quoting *Franks v. Delaware*, 438 U.S. 154, 171 (1978); *United States v. Maynard*, 615 F.3d 544, 550 (D.C. Cir. 2010)). Thus, when—as here—a defendant seeks to challenge a wiretap affidavit by claiming that it contained false statements or omitted a fact that would have defeated probable cause, the defendant must make a substantial preliminary showing before obtaining a *Franks* hearing. *Id.* at 1145–46.[6] Specifically, the defendant "'must show that (1) the affidavit contained false statements; (2) the statements were material to the issue of probable cause; and (3) the false statements were made knowingly and intentionally, or with reckless disregard for the truth.'" *Id.* at 1146 (quoting *United States v. Becton*, 601 F.3d 588, 594 (D.C. Cir. 2010)).

In this case, the defendant has not actually requested a *Franks* hearing, let alone attempted to make the required substantial preliminary showing. Instead, the defendant is asking the Court to compel discovery to assist the defendant in determining whether there may be a possible basis for requesting a *Franks* hearing.

This situation is identical to *United States v. Roybal*, 46 F. Supp. 3d 1127, 1161–62 (D.N.M. 2014). In that case, the defendants asked the court to compel disclosure of raw pen register data so that the defendants could "'verify or validate

---

from the April 2013 affidavit to conclude that the applications and orders the defendant seeks resulted in the interception of actual communications supporting, or vitiating the necessity of, the April 2013 wiretap.

[6] The D.C. Circuit has specifically held that *Franks* applies in the wiretap context. *Williams*, 827 F.3d at 1146.

6

statements in the application as accurate or inaccurate, as well as determine the existence of material omissions and the accuracy of the conclusions in the applications by the affiant.'" *Id.* a 1161. It was unreasonable, the defendants argued, "'to expect the defense to make challenges to a wiretap application and meet his burden under *Franks* . . . if they are denied the very evidence on which the issuing judge purportedly relied to issue the order.'" *Id.* (alternation in the original). Like in this case, "the Defendants, without making the substantial preliminary showing required by *Franks*, [were] asking the Court for discovery to assist the Defendants in making a *Franks* motion." *Id.* at 1162. That court rejected the defendants' request because the defendants had failed to cite "—and the Court could not find—a case in which a court has granted such a request." *Id.* The court reasoned that "allowing the Defendants to obtain this evidence to mount a *Franks* challenge without making the requisite preliminary showing would vitiate the purpose of *Franks*, which is 'to prevent the misuse of a veracity hearing for the purposes of discovery and obstruction.'" *Id.* (quoting *Franks*, 438 U.S. at 170).

In reaching this conclusion, the court in *Roybal* cited *United States v. Harding*, 273 F. Supp. 2d 411 (S.D.N.Y. 2003), observing that "[c]ourts have rejected similar requests for discovery to mount a *Franks* challenge." *Id.* In *Harding*, the court observed that the defendant had "failed to sustain his burden under *Franks v. Delaware* to make a substantial preliminary showing that he is entitled to a hearing concerning whether [the affiant] knowingly or with reckless disregard for the truth made material false statements or omissions in his search warrant affidavit."

7

*Harding*, 273 F. Supp. 2d at 430. Accordingly, the court held that the defendant was "not entitled to wide-ranging discovery to canvas for evidence in support of his motion to suppress." *Id.*

Finally, relying on both *Roybal* and *Harding*, the court in *United States v. Espinoza-Romero*, No. 14-CR-00144-CMA, 2016 WL 11642376, at *6 (D. Colo. Jan. 28, 2016), rejected a discovery request pursuant to rule 16(a)(1)(E)(i) by a defendant seeking to suppress a wiretap. The court concluded that "[o]rdering discovery on the basis of Defendant's speculation that additional information in the Government's surveillance files might possibly be helpful to a subsequent wiretap challenge would defeat both the purpose of the 'substantial preliminary showing' required by *Franks* and the Supreme Court's admonition that '[t]here is no general constitutional right to discovery in a criminal case.'" *Id.* (quoting *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977); citing *Gordon v. United States*, 344 U.S. 414, 419 (1953)).

As in *Roybal*, *Harding*, and *Espinoza-Romero*, the defendant has failed to make the substantial preliminary showing required by *Franks*. And without carrying that burden, the defendant's requests for reports, other wiretap materials, recordings, wiretap reports, and pen register data amounts to a prohibited "blind fishing expedition among documents possessed by the Government on the chance that something impeaching might turn up." *Gordon*, 344 U.S. at 419. Accordingly, the defendant's requests must be denied.

8

### III. WIRETAP PROGRESS REPORTS ARE NOT DISCOVERABLE UNDER *PRAY*.

Acknowledging that *Pray*, 734 F. Supp. 2d at 158, holds to the contrary, the defendant has asked this Court to ignore caselaw from this district and instead order disclosure of wiretap progress reports. Dkt. 123 at 5–6. In making this argument, the defendant has failed to engage with the reasoning in *Pray*—which the Court specifically referenced during the hearing—to explain why Judge Collyer was misguided. *Id.* Instead, the defendant argues that the reports are discoverable "as potential impeachment material." *Id.* at 6. The defendant sets out two hypothetical situations in which a defendant impeaches a testifying agent who made an error in a wiretap progress report. *Id.* This specific rationale was considered and rejected in *Pray*. As in *Pray*, "[p]rosecutors, not agents, wrote the periodic reports at issue in this case." 734 F. Supp. 2d at 160 n.3. And because there is "no indication that any prosecutor will be required to testify, . . . the reports are not material evidence needed for impeachment or other purposes." *Id.*[7] Simply put, the defendant's argument is premised on an incorrect hypothetical and is foreclosed by *Pray*.

---

[7] In the inconceivable event that the prosecutor who signed the wiretap progress reports is expected to be called as a witness in the government's case in chief, the government will disclose any *Giglio* and Jencks Act material at the appropriate time.

9

IV. CONCLUSION

For all these reasons, the defendant's motion should be denied. The government also respectfully requests that the Court exercise its discretion under local criminal rule 47(f) to deny the motion without another hearing.

Respectfully Submitted,

MARLON COBAR
Chief
Narcotic and Dangerous Drug Section
Criminal Division
U.S. Department of Justice

By:   */s/ Jonathan R. Hornok*
Jonathan R. Hornok
Kate Naseef
Trial Attorneys
Kaitlin Sahni
Acting Deputy Chief
Narcotic and Dangerous Drug Section
Criminal Division,
U.S. Department of Justice
Washington, D.C. 20530
Telephone: (202) 514-0917

**CERTIFICATE OF SERVICE**

    I hereby certify that a copy of the foregoing was sent via the Electronic Case Filing (ECF) system with the United States District Court for the District of Columbia to counsel of record for the defendant, this 16th day of May 2024.

                                               By: /s/ *Jonathan R. Hornok*
                                               Jonathan R. Hornok
                                               Trial Attorney
                                               Narcotic and Dangerous Drug Section
                                               Criminal Division
                                               U.S. Department of Justice