## UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | Criminal Action No. 16-229 (BAH) |
| RUBEN OSEGUERA-GONZALEZ, | Judge Beryl A. Howell |
| Defendant. | |

### MEMORANDUM OPINION

Defendant Ruben Oseguera-Gonzalez has filed two pretrial motions, both lodging essentially the same complaint about the government's lack of sufficient discovery for him to defend against the two charges against him for conspiring, between 2007 and the date of the Superseding Indictment, on February 1, 2017, to distribute five kilograms or more of cocaine, and 500 grams or more of methamphetamine, knowing and intending that these controlled substances would be unlawfully imported into the United States, in violation of 21 U.S.C. §§ 963, 959(a), 960(b)(1)(B)(ii), 960(b)(1)(H), and 18 U.S.C. § 2, and for using and possessing a firearm during and in relation to one or more drug trafficking crimes, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i), 924(c)(1)(A)(ii), 924(c)(1)(B)(ii), and 2. Superseding Indictment, Counts One and Two, ECF No. 6. These charges have been publicly pending against defendant since December 2016, when this case was unsealed, *see* Min. Order (Dec. 16, 2016), and defendant was provided clear notice of, and the substantive basis for, these charges while fighting his extradition from Mexico to the United States, before arriving in this country on an extradition warrant in February 2020. *See* Gov't's Mot. for Pretrial Detention at 2, ECF No. 13.

Belatedly, over seven years after these charges were made public and known to him while under arrest in Mexico, over four years after his extradition to the United States, and after trial

1

dates in this matter have been set—and re-set at defendant's request or with his consent—three separate times, *see* Minute Scheduling Orders (June 1, 2022, Sept. 15, 2023, and Nov. 27, 2023) (scheduling trial to begin on May 1, 2023, then on Oct. 7, 2024 and, now, on Sept. 9, 2024, respectively), defendant for the first time has raised complaints about discovery production in this case. Specifically, defendant filed, in March 2024, his first and, so far, only pretrial motions regarding discovery seeking to compel production of information responsive to 25 separate requests and production of a bill of particulars from the government, *see* Def.'s Motion to Compel Discovery ("Def.'s Mot. Compel"), ECF No. 114; Def.'s Mot. For A Bill of Particulars (Def.'s Mot. BoP"), ECF No. 115. While conceding that "the government has provided voluminous discovery," Def.'s Mem. Supp. Mot. Compel ("Def.'s Mem. Mot. Compel") at 1, ECF No. 114, defendant insists that "a majority of the evidence subject to disclosure has not been provided," *id.*

By way of procedural background, at a motions hearing demanded by defendant and held on May 13, 2024, defendant's arguments in support of the 25 discovery requests outlined in his Motion to Compel were each thoroughly aired, along with the government's responses. This lengthy hearing largely confirmed that defendant's discovery motion was filed without prior consultation with the government about a number of the requests made, in violation of the local rules of this Court. *See* D.D.C. LOCAL CRIM. R. 16.1 ("No discovery motion shall be heard unless it states that defense counsel has previously requested that the information sought from the attorney for the United States and that such attorney has not complied with the request."). Such required conferral might have spared the expenditure of parties' and judicial resources expended on the pending motions. Indeed, the hearing discussion prompted defendant's explicit withdrawal of six requests as already complied with by the government or otherwise not requiring judicial

intervention at all.[1]  Likewise, defendant conceded that seven additional requests were presented to the Court without any live dispute about any lack of compliance by the government with its discovery obligations, and thus required no judicial attention.[2]  Further, as became clear at the hearing, defendant's discovery motion merely sought a schedule for disclosure of the information described in nine requests—which schedule could also have been resolved through informal conferral between the parties without judicial intervention—and this schedule was set in an order entered promptly after the hearing.  *See* Min. Order (May 13, 2024) (directing the government, by June 14, 2024, to "provide notice regarding its intent to introduce at trial any evidence, pursuant to Federal Rule of Evidence 404(b)" and "disclose any expert witness(es) the government intends to have testify at trial," and by August 26, 2024, to "produce to defendant any materials subject to disclosure under *Giglio v. United States*, 405 U.S. 150 (1972), and Jencks Act, 18 U.S.C. § 3500").[3]

---

[1]        Specifically, defendant withdrew Request Nos. 5, 14, 15, 19, 21, 25.  *See* Rough Mot. Hr'g Tr. at 58:15–23 (defense counsel withdrawing Request No. 5); *id.* at 71:20–23 (same as to Request No. 14); *id.* at 72:5–10 (same as to Request No. 15); *id.* at 78:18–23 (same as to Request No. 19); *id.* at 80:18–23 (same as Request No. 21); *id.* at 83:25–84:5 (same as to Request No. 25).

[2]        Specifically, defendant conceded no discovery dispute was presented as to Request No. 1, the first portion of Request No. 2 (regarding defendant's Mexican arrest records), 3, 7, 8, 9, and the first portion of Request No. 16, because the government had already either disclosed the sought-after material or advised that no responsive information was in the government's possession.  *See* Rough Mot. Hr'g Tr. at 18:15–19 (defense counsel agreeing, as to Request No. 1, with Court's statement that he had "no information that makes [him] believe that the government has failed to comply with its Rule 16 obligations to produce defendant's statement[s]"); *id.* at 20:11–25, 21:16–20 (defense counsel conceding, as to the first portion of Request No. 2 regarding arrest records from defendant's arrest in Mexico, that he lacked "any information [] that what the government has advised the Court. . . is incorrect to require the Court's attention"); *id.* at 43:14–21, 47:9–21 (defense counsel indicating no reason to doubt, as to Request No. 3, government's representations about continuing compliance "with our *Brady* obligations and we are not aware of any material that has not been disclosed that is exculpatory to the defendant and would be disclosable under *Brady*"); *id.* at 65:7–11 (defense counsel conceding, as to Request No. 7, that nothing "about the government's responses or productions . . . [was] insufficient that requires the Court's involvement"); *id.* at 66:3–13 (defense counsel conceding, as to Request No. 8, that he had no "specific information" that the government failed to comply with its preservation obligations); *id.* at 66:21–25 (defense counsel conceding, as to Request No. 9, that he was "not aware" of any evidence he had been denied the opportunity to inspect); *id.* at 72:25–73:7 (defense counsel agreeing, as to first paragraph of Request No. 16, was resolved).

[3]        Specifically, this scheduling order resolved defendant's Request Nos. 6, 10, 11, 12, 13, 17, 18, 20, and 22.  *See* Rough Mot. Hr'g Tr. at 63:21–24 (defense counsel stating "nothing else" was necessary as to Request No. 6, beyond Scheduling Order for government's notice pursuant to Federal Rule of Evidence 404(b)); *id.* at 68:3–10 (defense counsel confirming nothing further was sought as to Request No. 10, given the government's

Given that defendant's 25 discovery requests were presented with minimal, if any, discussion or context, and little to no prior conferral with the government, contrary to requirements in local procedural rules; provided few citations and then almost exclusively to non-binding out-of-circuit law; were broadly framed when the hearing revealed defendant sought more narrow information; and, as further revealed at the hearing, the majority of requests turned out to be largely *pro forma* rather than requiring judicial attention, defendant was directed, by court order entered the same day as the hearing, to address these shortcomings in his original discovery motion and provide clarity as to the information for which he sought an order compelling production.  *See* Min. Order (May 13, 2024) (directing defendant to "file a supplemental submission, with fulsome explanation and citations to applicable law, in support of defendant's Motion to Compel, to which defendant filed no reply in response to the government's Opposition, addressing the basis for any outstanding discovery request, as to which defense counsel did not during the hearing disclaim the necessity for judicial intervention, including addressing, in particular, request number 2 and its subparts").  In compliance with this order, the parties timely submitted supplemental briefing.  *See* Def.'s Suppl. Briefing Supp. Def.'s Mot. Compel ("Def.'s Suppl. Mem."), ECF No. 123; Gov't's Suppl. Opp'n Def.'s Mot. Compel ("Gov't's Suppl. Opp'n"), ECF No. 125.  Notably, defendant's supplemental briefing addresses only parts of Request No. 2, which under the terms of the order, indicates he "disclaim[s] the necessity for judicial intervention" as to any other outstanding request.  Min. Order (May 13, 2024).

For the reasons explained below, defendant's Motion for a Bill of Particulars and to Compel Discovery are denied.  These motions are addressed *seriatim* below.

---

representation concerning compliance with disclosure obligations under Jencks Act and *Giglio*); *id.* at 68:12–20 (same as to Request No. 11); *id.* at 68:21–69:5 (same as to Request No. 12); *id.* at 69:21–24 (same as to Request No. 13); *id.* at 75:19–24 (same as to Request No. 17 and 18); *id.* at 80:2–4 (same as to Request No. 20); *id.* at 80:24–81:20 (same as to Request No. 22).

## I.    DEFENDANT'S MOTION FOR BILL OF PARTICULARS

Defendant has moved, pursuant to Federal Rule of Criminal Procedure 7(f), for a bill of particulars.  Def.'s Mot. BoP.  While Rule 7(f) authorizes such a motion, strict time limits are imposed, requiring that the motion be filed "within 14 days after arraignment" or "at a later time if the court permits."  FED. R. CRIM. P. 7(f).  At the outset, defendant failed to comply with the procedural prerequisites for filing this motion, which was filed over four years after his arraignment in this case, and then he failed to seek leave of Court to file tardily, rendering this motion highly untimely.  Notwithstanding these procedural defects, examination of defendant's motion makes clear its deficiencies on the merits.

Defendant concedes, repeatedly, that "the government has disclosed voluminous discovery," Def.'s BoP Mem. at 6, ECF No. 115; *id.* (again, describing discovery as "voluminous"); Def.'s Mem. Mot. Compel at 1 (same), but nonetheless seeks an order requiring the government to produce a bill of particulars "as to what acts establish the allegations in the superseding indictment," Def.'s BoP Mem. at 6.  Defendant suggests the bill of particulars should provide information not otherwise detailed in the charging instrument regarding: "any particular acts of distribution or importation between the dates alleged, 2007 and 2017, a ten year period," *id.* at 4; "the other co-conspirators [defendant] allegedly conspired with," *id.*; "any particular dates or incidents [defendant] used or possessed firearms or destructive devices in relation to drug trafficking activity," *id.*; "any particular firearm or destructive device used," *id.*; and "the government's theory of prosecution," *id.* at 5 (citation omitted).

Taken together, all of the information defendant seeks in the bill of particulars amounts to a demand that the government spell out its trial strategy and plan to prove the charges against him, with specific identification of the underlying evidentiary support, which in this case involves, in addition to over 50,500 pages of produced discovery, a number of cooperating witnesses, one of

whom has already testified at a deposition conducted, pursuant to Federal Rule of Criminal Procedure 15, due to a health issue.  A schedule is in place for disclosure of trial witnesses and related disclosures two weeks prior to the trial, *see* Min. Order (May 13, 2024) (directing production "to defendant [of] any materials subject to disclosure under *Giglio v. United States*, 405 U.S. 150 (1972), and Jencks Act, 18 U.S.C. § 3500"), to protect the safety of witnesses and their families, *see* Gov't's Opp'n Def.'s Mot. BoP at 9, ECF No. 118 (describing government's concerns in this case about witness safety, "given the violent history of the CJNG—the drug cartel of which the Defendant was a leader for years," and noting that "two potential Government witnesses in this case have been murdered in Mexico" and that "disclosing the identities of other coconspirators may place them and their families in danger if CJNG members suspect that the Government may call those coconspirators as witnesses at trial" (citations omitted)).  Defendant's demand for a bill of particulars, whether by design or mere effect, would circumvent this schedule, with concomitant safety risks to witnesses.

Defendant misapprehends the use and purpose of a bill of particulars, which is neither a tool to displace Federal Rule of Criminal Procedure 16 to guide discovery nor a means to unveil prematurely the government's theory, witnesses, and evidence to be used at trial.  *See, e.g.*, *United States v. Smith*, 776 F.2d 1104, 1111 (3d Cir. 1985) (finding "that bills of particulars were regarded by the drafters of the rules as supplements to the indictment rather than as pretrial discovery," noting that "[a] bill of particulars, unlike discovery, is not intended to provide the defendant with the fruits of the government's investigation . . . [r]ather, it is intended to give the defendant only that minimum amount of information necessary to permit the defendant to conduct his *own* investigation" (emphasis in original) (citations omitted)).  Defendant is simply not entitled to the order for a bill of particulars he seeks.

6

Federal Rule of Criminal Procedure 7(c) requires an indictment to "be a plain, concise, and definite written statement of the essential facts constituting the offense charged[.]" FED. R. CRIM. P. 7(c)(1). An insufficient indictment is so apparent at the beginning of a prosecution that the timing requirement to seek a bill of particulars is, as already noted, at the very early stage of a prosecution, with the filing generally required "before or within 14 days after arraignment." FED. R. CRIM. P. 7(f). The purpose is "to ensure that the charges brought against a defendant are stated with enough precision to allow the defendant to understand the charges, to prepare a defense, and perhaps also to be protected against retrial on the same charges." *United States v. Mejia*, 448 F.3d 436, 445 (D.C. Cir. 2006) (quoting *United States v. Butler*, 822 F.2d 1191, 1193 (D.C. Cir. 1987)); *see also United States v. Lorenzana-Cordon*, 949 F.3d 1, 5 (D.C. Cir. 2020) ("Of course, indictments must contain sufficient detail for defendants 'to understand the charges, to prepare a defense, and . . . to be protected against retrial on the same charges.'" (quoting *Mejia*, 448 F.3d at 445)). Defendants are not entitled to a bill of particulars as a matter of right, and the determination whether a bill of particulars is necessary lies within the Court's sound discretion. *See* FED R. CRIM. P. 7(f); *Mejia*, 448 F.3d at 445. "[I]f the indictment is sufficiently specific, or if the requested information is available in some other form, then a bill of particulars is not required." *Butler*, 822 F.2d at 1193.

Here, the Superseding Indictment is sufficiently detailed to pass constitutional muster and enable defendant to understand the charges and prepare a defense. An indictment need not specify in detail the precise transactions or dealings that support the charges, nor spell out all of the facts that the government plans to prove that defendant acted with the required mental state. *See Mejia*, 448 F.3d at 445 ("[T]he language of Section 963 does not call for any [overt acts] to be set forth in an indictment, nor do[] any . . . have to be committed in order for a [§]

963 [violation] to be proven." (first two alterations supplied) (quotation marks and citations omitted)); *United States v. Bourdet*, 477 F. Supp. 2d 164, 184 (D.D.C. 2007) (indictment sufficiently specific where it identified time period, location, and object of a conspiracy as well as "the statutes violated by the conspiracy, and the *mens rea* required by those statutes").  The Superseding Indictment against defendant describes (1) the general time period of the relevant criminal conduct, (2) the location where the conspiratorial conduct occurred; (3) the types of scheduled narcotics which defendant is accused of importing; (4) the statutory provisions defendant is accused of violating, and (5) the *mens rea* requirement for the alleged violations.  *See* Superseding Indictment; *see also* Gov't's Opp'n Def.'s Mot. BoP at 7–10.

When confronted by similar indictments charging narcotics conspiracies, the D.C. Circuit has affirmed denial of a defense motion for a bill of particulars.  *See Mejia*, 448 F. 3d at 445 (finding no abuse of discretion in denying bill of particulars, where indictment charged a narcotics conspiracy that tracked the statute and provided a time period for the conspiracy, identified the statute that the object of the conspiracy violated, along with the proper *mens rea* and the location where the conspirators acted, despite the absence of particularized overt acts); *see also United States v. Lorenzana-Cordon*, 130 F. Supp. 3d 172, 175 (D.D.C. 2015) (same, where indictment charging conspiracy to import cocaine "state[d] the statutes Defendant is alleged to have violated, the corresponding *mens rea* requirements, the dates of the conspiracy, the object of the conspiracy, and at least five countries in which the conspiracy took place" (citation omitted)).

Moreover, defendant minimizes the substance in the "voluminous discovery" already provided to him, stating that this discovery "consists almost entirely of line sheets created from intercepted Blackberry messages," which defendant claims "does nothing to enlighten Mr.

Oseguera as to what acts establish the allegations in the superseding indictment." Def.'s BoP Mem. at 6. Though this Court is not privy to the page-by-page substance of the discovery produced by the government, apparently in at least twelve separate tranches, amounting to Bates-stamped documents from 1 to 50,540, *see* Gov't's Opp'n Def.'s Mot. Compel at 2–3, ECF No. 117, defendant does not challenge the government's clarifying description that the discovery consists of not only voluminous Blackberry messages but also investigative reports and other materials, *see* Rough Mot. Hr'g Tr. at 53:17–54:12 (government counsel describing discovery produced as including results from a "full field review of the DEA holdings regarding the defendant").[4]  As noted, discovery in this case also encompasses a Rule 15 deposition in February 2024 of a detained witness, whose testimony the government anticipates presenting at defendant's trial about, among other things, defendant's leadership role in a drug trafficking organization ("DTO") and defendant's effort to obtain weapons, including M60 machine guns, while in prison in Mexico. *See* Rough Dep. Tr. (sealed) at 17:2–3, 19:9–20:6, 32:4–33:20, 35:22–37:11.  Defendant has also been provided with a copy of the government's request for defendant's extradition from Mexico, which extradition request, according to the government, with no dispute by defendant in any response, sets out details of the evidentiary basis for the charges. *See* Gov't's Opp'n Def.'s Mot. BoP at 12.

Bolstering the finding that the charges and supporting discovery in this case have provided ample information about the factual basis for those charges, without the necessity for a bill of particulars, is the fact that defendant executed, on April 6, 2023, a statement of facts in support of his then-planned guilty plea to charges in a Second Superseding Information, *see* Jt. Statement

---

[4]     All citations to transcripts cite to rough drafts of the transcripts, since the final transcripts have not yet been docketed.  When the final transcripts are available, they will be posted on this case's docket.  Discrepancies in page numbers between the rough and final transcripts may exist.

Stip. Facts; *see also* Second Superseding Information, ECF No. 48; Gov't's Mot. Dismiss Superseding Information at 1–2, ECF No. 73; Min. Order (Oct. 17, 2023) (granting, after defendant declined to proceed with change of plea hearing, government's motion to dismiss Second Superseding Information).[5]   That factual stipulation does not purport to outline all of the evidentiary bases for the charged offenses, but does describe defendant's leadership role in a DTO over a lengthy time period, the types and estimated volume of illegal narcotics he was fully aware of being trafficked to the United States from specific locations in Mexico, the violence and other illegal means, including bribery, he ordered employed to facilitate the DTO's activities, and the types of firearms he and other DTO members used to facilitate that illegal trafficking activity. *See generally* Jt. Statement Stip. Facts.

In sum, given the ample discovery produced to defendant, compounded by additional information in the form of the extradition request and pretrial deposition testimony of an anticipated government trial witness, defendant has more than adequate information as to the factual basis underlying the narcotics conspiracy and gun charges against him to defend this action. *See, e.g.*, *United States v. Mosquera-Murillo*, 153 F. Supp. 3d 130, 146–48, 153 (D.D.C. 2015), *aff'd*, 902 F.3d 285 (D.C. Cir. 2018) (denying motion for bill of particulars in case charging conspiracy to distribute and possess cocaine and marijuana in violation of the Maritime Drug Law Enforcement Act, where the government's "voluminous discovery to the defendants, as well as the additional information provided through the government's filings providing additional clarity as to government's specific allegations against each defendant, provides sufficient information to isolate each category of information sought in the requested bill of particulars"); *Lorenzana-*

---

[5]         The Joint Statement of Stipulated Facts executed by defendant is not filed to the docket, but has been provided to defendant. *See* Rough Mot. Hr'g Tr. at 55:23–56:5; Gov't's Opp'n Def.'s Mot. Compel at 3; Gov't's Mot. Dismiss Superseding Information at 1–2.

*Cordon*, 130 F. Supp. 3d at 179 (denying demand for bill of particulars as "not appropriate in this case because the requested information is available in some other form," noting government's production of "over 16,000 pages of discovery, which includes records, reports, and photographs related to seizures of cocaine shipments connected to the Defendants," and other material (quotation marks and citations omitted)); *United States v. Edelin*, 128 F. Supp. 2d 23, 37 (D.D.C. 2001) (finding that "[t]he constitutional rights underlying a bill of particulars are met by the information already before the defendants," noting "[t]he voluminous discovery already provided to the defendants in this case more than compensates for the lack of a bill of particulars").

Accordingly, defendant's motion for a bill of particulars is **DENIED**.

## II.   DEFENDANT'S MOTION TO COMPEL DISCOVERY

Defendant has moved to compel discovery of 25, often overlapping, categories of records. *See generally* Def.'s Mem. Mot. Compel. As noted, *supra* nn.1–3 and accompanying text, the motions hearing made clear that most of defendant's discovery requests—namely, Request Nos. 1, 3, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 17, 18, 19, 20, 21, 22, and 25, and the first portion of Request Nos. 2 and 16—present no actual discovery dispute necessitating the judicial attention the motion demands. This leaves only four discovery requests to address, and each is easily dispatched for the reasons discussed below.

### A.  Request No. 2: Material "Related To" April 2013 Wiretap Application

Defendant's multi-part Request No. 2 seeks disclosure of five categories of records that he describes as "relate[d]" to an April 2013 wiretap application and order issued in the Central District of California, for the interception of electronic Blackberry messages ("BBM") only, not oral or wire communications, over a Blackberry device used by defendant's uncle Abigael Gonzalez Valencia, who was the primary user of the device targeted by the wiretap, and was using his device in Mexico. Def.'s Mem. Mot. Compel at 2–3; Def.'s Suppl. Mem. at 3; Gov't's Suppl. Opp'n at

1, 4; *see also* Rough Mot. Hr'g Tr. at 41:22–25 (defense counsel stating that he "has received approximately 20 bankers boxes of Blackberry messages that were intercepted during the course of these wiretap applications").  In other words, though defendant was not the actual target of the April 2013 wiretap application and order, defendant's BBM communications with his uncle were incidentally intercepted, as well as his uncle's BBM communications with other known and unidentified persons.   The pending discovery requests regarding this April 2013 wiretap are thus related to information referenced in the application targeting his uncle.[6]   The government has advised defendant that "approximately 25 of those intercepted messages are relevant to their case-in-chief at trial."  Def.'s Suppl. Mem. at 3.

From what can be gleaned from defendant's motion, supplemental submission, and defense counsel's clarifications at the motions hearing, defendant seeks: (a) "reports of investigation and surveillance reports that relate to the investigation that preceded the [April 2013] wiretap application," Def.'s Suppl. Mem. at 3 (Request No. 2(a)); (b) "previously issued wiretaps of target subject Abigael Gonzalez Valencia referenced in the [April 2013] wiretap subject to challenge here, *i.e.* the wiretap applications and orders from August 24, 2012, and October 2, 2012, in Riverside County, California, Superior Court, and November 16, 2012, in the United States District Court for the Northern District of Illinois," *id*. at 4 (Request No. 2(b)); (c) "recorded calls from February 2013 between a confidential source and the target subject, Abigael Gonzalez Valencia," referenced in the April 2013 wiretap application, *id*. (Request No. 2(c)); (d) "15 day Progress Reports related to the [April 2013] wiretap applications/orders," Def.'s Mem. Mot. Compel at 3 (Request No. 2(d)); *see also* Def.'s Suppl. Mem. at 5–6; Rough Mot. Hr'g Tr. at 32:6–

---

[6]        The government states that "defendant may have been the user of Target Device #20" but "the device had insufficient activity during the limited period of interception to confirm the user's identity on the basis of the messages alone."  Gov't's Suppl. Opp'n at 4 n.3.

12 (defense counsel clarifying that request concerned "the wiretap applications and orders issued in this case, not the 2012 state court in California and Northern District of Illinois cases"); and (e) "Pen Register applications/orders referenced in the wiretap applications," Def.'s Mem. Mot. Compel at 3 (Request No. 2(e)). Defendant argues this requested discovery is "material to preparing [his] defense" so that he can challenge the April 2013 wiretap, and therefore "discoverable under Rule 16(a)(1)(E)(i), and *Brady* and *Giglio*." Def.'s Suppl. Mem. at 1–2, 6 (citation omitted). For the reasons explained, defendant's request for an order compelling the government to produce these wiretap-related records is denied.

### 1. *Request Nos. 2(a)–(c) & (e): Material Referenced in April 2103 Wiretap Application*

Defendant contends that requested information in Request Nos. 2(a)–(c) and (e) is subject to disclosure under Federal Rule of Criminal Procedure 16. While "broad discovery" is recognized to "promote[] informed plea decisions, minimize[] unfair surprise, and help[] ensure guilt is accurately determined," *United States v. Bikundi*, 926 F.3d 761, 801–02 (2019) (Rogers, J., concurring), discovery in criminal cases is neither unfettered nor requires government compliance upon defense demand. "In determining the scope of obligations under Rule 16," courts must look "to 'the plain language' of the Rule." *Id.* at 802.

The information at issue in Request Nos. (a)–(c) and (e)—*i.e.*, (a) "investigation and surveillance reports that relate to the investigation that preceded the [April 2013] wiretap application," (b) 2012 wiretap applications and orders from different cases, (c) recorded calls between Gonzalez Valencia and a confidential source, and (e) pen register applications, the last three of which are referenced in the April 2013 wiretap application, Def.'s Suppl. Mem. at 3–7— does not fall within "any of the rule 16 categories for disclosure," Gov't's Opp'n Def.'s Mot. Compel at 10. This requested information is not a "statement of the defendant," subject to disclosure under Rule 16(a)(1)(A)–(B), nor "the defendant's prior record," subject to disclosure

under Rule 16(a)(1)(D).  *See* Gov't's Suppl. Opp'n at 3 n.1.  In addition, this information does "not belong to the defendant," to qualify for disclosure under Rule 16(a)(1)(E)(iii), and neither constitutes "a report of examination or test," under Rule 16(a)(1)(F), nor "pertain[s] to an expert witness," under Rule 16(a)(1)(G).  *See id.*  Furthermore, "the government does not intend to use" the requested information "in its case-in-chief at trial," so the information is not subject to disclosure under Rule 16(a)(1)(E)(ii).  *Id.*[7]  Finally, defendant does not contend that the requested information is "somehow exculpatory under *Brady v. Maryland*, 373 U.S. 83 (1963), or constitutes witness statements under the Jencks Act, 18 U.S.C. § 3500."  *Id.*; *see generally* Def.'s Mem. Mot. Compel; Def.'s Suppl. Mem.  Defendant argues only that this requested information is subject to disclosure, under Rule 16(A)(1)(E)(i), as "books, papers, documents, data, photographs, tangible objects, buildings or places," "within the government's possession, custody, or control" that "is material to preparing the defense."  Def.'s Suppl. Mem. at 1–2 (quoting FED. R. CRIM. P. 16(A)(1)(E)(i)).

To show that the requested information is "material" to qualify for disclosure under Rule 16 (A)(1)(E)(i), defendant asserts that he anticipates this discovery will support an anticipated motion to suppress BBM evidence derived from the April 2013 wiretap application and order.  *Id.* at 2–7.  More specifically, without the requested materials, he contends that he cannot "fully understand and evaluate the representations in both the probable cause and necessity sections of the wiretap application," including to "determine whether the affiant's representations were

---

[7] Defendant does not even suggest that the information requested in Request Nos. 2(a)–(c) is subject to disclosure under Rule 16(a)(1)(E)(ii), but does argue that the pen register data referenced in the April 2013 wiretap application, in Request No. 2(e), should be disclosed because "[c]ourts have regularly found pen register data discoverable where the United States intends to use the data at trial." Def.'s Suppl. Mem. at 7 (collecting cases).  Just so.  Defendant's problem here is that the government has made clear that it "does not intend to use the pen register data . . . in its case-in-chief at trial."  Gov't's Suppl. Opp'n at 5 n.4.  Courts routinely deny requests for pen register data where, as here, absent a showing of materiality, "the United States did not intend to use the data at trial."  *United States v. Roybal*, 46 F. Supp. 3d 1127, 1146 (D.N.M. 2014) (collecting cases).

accurate, exaggerated, or even false," or "pursue any viable challenge to the [April 2013] wiretap application and order." *Id.* at 3–4, 7.   Thus, his sole justification for materiality under Rule 16 is that the requested records may help provide a basis to challenge the April 2013 wiretap application and order as violative of the Fourth Amendment and requirements to "establish[] both probable cause and necessity for the wiretap," under Title III of the Omnibus Crime Control and Safe Streets Act of 1968 ("Title III").   *Id.* at 2–3; *see Dahda v. United States*, 584 U.S. 440, 442 (2018) (describing Title III as a statutory regime that "allows judges to issue wiretap orders authorizing the interception of communications to help prevent, detect, or prosecute serious federal crimes" (citing 18 U.S.C. § 2510 *et seq.*)).

Contrary to defendant's assertions, the requested records would not be material to a potential challenge under Title III, and defendant has not established materiality on other grounds. Defendant fails to grapple with well-settled law that courts reviewing motions to suppress "the contents of any intercepted communication and any evidence derived therefrom" on grounds that "the communication was unlawfully intercepted," including failing to satisfy "the statutorily imposed preconditions to judicial authorization of a wiretap, such as necessity" and probable cause, *United States v. Williams*, 827 F.3d 1134, 1147 (D.C. Cir. 2016) (quoting 18 U.S.C. § 2518(10)(a)(i)) (quotation marks and other citations omitted), are limited to information available to the judge that issued the wiretap.   This review is therefore limited to the wiretap application, affidavit, and any "additional testimony or documentary evidence in support of the application" that the "judge may require the applicant to furnish."  18 U.S.C. § 2518(2); *see Williams*, 827 F.3d at 1147 ("In assessing the necessity of a wiretap application, courts must giv[e] close scrutiny to applications challenged for noncompliance." (alteration in original) (quotation marks and citation omitted)); *United States v. Scurry*, 821 F.3d 1, 17 (D.C. Cir. 2016) (holding, based on review of

wiretap affidavit, that "the authorizing judge did not abuse his discretion when he found that the first [] wiretap was necessary"); *United States v. Ford*, 183 F. Supp. 3d 22, 34 (D.D.C. 2016) ("The Court must restrict its probable cause inquiry to the four corners of the law enforcement agent's affidavit." (citation omitted)); *see also United States v. Bell*, 811 F. App'x 7, 8 (D.C. Cir. 2020) ("In assessing an order for facial insufficiency, 'a reviewing court must examine the four corners of the order and establish whether, on its face, it contains all that Title III requires it to contain.'" (quoting *Scurry*, 821 F.3d at 8)).

Here, defendant acknowledges the government has disclosed the "wiretap applications and orders authorizing the interception of the Blackberry messages produced to [defendant] in this case" and defendant has nowhere alleged, let alone established, that any of the information he seeks in Request No. 2 was presented to the issuing judge for the April 2013 wiretap.  Rough Mot. Hr'g Tr. at 22:19–23:2; *see* Aff. Supp. April 2013 Wiretap App., ECF No. 128 (sealed).  Given this record indicating that defendant already has access to the information presented to the issuing judge, any additional information the government may have "in its possession (but which it did not present to the issuing judge) would be entirely immaterial to a motion to suppress."  *United States v. Espinoza-Romero*, No. 14-cr-144 (CMA), 2016 WL 11642376, at *4 (D. Colo. Jan. 28, 2016); *see also Roybal*, 46 F. Supp. 3d at 1159 ("Because the Defendants may challenge a wiretap only with the evidence that the United States presented to the issuing judge, any additional raw pen register data that the United States has in its possession but did not present to these judges is immaterial to a motion to suppress.").  Accordingly, defendant's requests for "[i]nvestigation [and] surveillance reports," wiretap applications and orders submitted to and issued in *other* cases by *other* courts, recorded calls between Abigael Gonzalez Valencia and a confidential source, and pen register applications and orders referenced in or related to the April 2013 wiretap application,

*see* Def.'s Mem. Mot. Compel at 3, would not be material to a potential Title III challenge to the April 2013 wiretap.

Aside from seeking a basis to challenge the wiretap, defendant has not established that the requested records are otherwise "material" to preparing his defense or subject to disclosure on some other basis. *See id.* at 2–3; *see generally* Def.'s Suppl. Mem.  As the affidavit supporting the April 2013 wiretap application makes clear, the information sought in defendant's Request No. 2(a)–(c) and (e) are not necessary to "fully understand and evaluate the representations in [] the probable cause and necessity sections of the wiretap application," Def.'s Suppl. Mem. at 4, since assessing the legal and factual sufficiency of these sections may be accomplished based on the text of the affidavit.  Probable cause for the wiretap consisted of "general background about the target drug trafficking organization," Los Cunis; a discussion of "two drug-related communications with the target BBM PIN," Abigael Gonzalez Valencia; and an "analysis of pen register data that revealed that the target BBM PIN had been communicating with three other BBM PINs that were involved in other DEA investigations."  Gov't's Suppl. Opp'n at 4 (citing Aff. Supp. April 2013 Wiretap App. at 10–20).

As to necessity, the affidavit explains that "'traditional' law enforcement investigative techniques [had to] be supplemented with electronic interception," given that the target subjects of the investigation "reside in Mexico" and "only deal[t] with relatives, close friends, and longtime associates, typically in Mexico, who they feel they can trust," rendering other investigative tools unavailable.  Aff. Supp. April 2013 Wiretap App. at 20–22.  Defendant claims that if the two wiretaps referenced in the "Prior Applications" section of the wiretap affidavit and sought in Request No. 2(b) had been successful in "obtain[ing] substantial evidence of drug trafficking against the target subject Abigael Valencia Gonzalez," that could undermine the finding of

necessity for the April 2013 wiretap.  Def.'s Suppl. Mem. at 4.  Yet, as the government correctly argues, those applications and orders—which are not referenced anywhere else in the April 2013 wiretap affidavit—"contain the legal basis to initiate those wiretaps; they could not reveal whether the resulting wiretaps intercepted useful evidence" so as to make the April 2013 wiretap unnecessary.  Gov't's Suppl. Opp'n at 5 n.5.

Finally, defendant's intent to challenge the wiretap affidavit on grounds that it "contained false statements" or omissions "that would have defeated probable cause . . . [and] altered the court's conclusion that the wiretap was necessary," does not entitle defendant to broad discovery not otherwise authorized under the Federal Rules or on some other basis.  *Williams*, 827 F.3d at 1145–46 (citations omitted).  To be sure, when a defendant "makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit," and such "allegedly false statement is necessary to the finding of probable cause," he or she is entitled to a hearing "at the defendant's request."  *Id.* (quoting *Franks v. Delaware*, 438 U.S. 154, 155–56 (1978)).  At the same time, a defendant may not simply use an intent to challenge the wiretap affidavit on grounds of reliance on false statements or omissions—essentially, a challenge under *Franks v. Delaware*, 438 U.S. 154—"as a separate channel to obtain discovery."  *United States v. Smith*, No. 16-cr-464 (WJ), 2017 WL 3172790, at *4 (D.N.M. May 16, 2017).  To establish entitlement to a *Franks* hearing, the defendant must make "a substantial preliminary showing," *Franks*, 438 U.S. at 155, that "(1) the affidavit contained false statements; (2) the statements were material to the issue of probable cause; and (3) the false statements were made knowingly and intentionally, or with reckless disregard for the truth," *United States v. Dorman*, 860 F.3d 675, 684 (D.C. Cir. 2017) (quoting *United States v. Richardson*, 861 F.2d 291, 293 (D.C. Cir. 1988)); *see also Williams*, 827 F.3d at

1145–46 (stating "[t]his court has extended *Franks* to apply not only where the Government is alleged to have made false statements but also where a defendant alleges that the Government 'knowingly and intentionally (or with reckless disregard) omitted a fact that would have defeated probable cause,'" which requires establishing that, "had the omitted information been provided to the authorizing court, it would have altered the court's conclusion that the wiretap was necessary" (citations omitted)).

Here, as the government points out, defendant "has not actually requested a *Franks* hearing, let alone attempted to make the required substantial preliminary showing." Gov't Suppl. Opp'n at 6. Instead, defendant seeks, in effect, an order compelling discovery "to assist . . . [him] in determining whether there may be a possible basis for requesting a *Franks* hearing." *Id.* As other courts confronting requests for discovery to obtain a *Franks* hearing have made clear, however, *Franks* does not entitle defendant to broad discovery to support a motion to suppress. *See United States v. Napier*, 436 F.3d 1133, 1136, 1139 (9th Cir. 2006) (*Franks* does not "create[] an unlimited right to access all information possibly needed to meet the preliminary showing requirement."); *see also United States v. Walker*, No. 17-cr-201 (TLN) (DB), 2019 WL 2339904, at *3, *6 (E.D. Cal. June 3, 2019) ("[T]he Court [in *Franks*] did not intend its expansion of the bases to challenge a search warrant to permit the defendant broad-based discovery of his criminal charges.").

For example, in *United States v. Roybal*, defendants sought, as here, "raw pen register data" to "verify or validate statements in the [wiretap] application as accurate or inaccurate, as well as determine the existence of material omissions and the accuracy of the conclusions in the applications by the affiant." 46 F. Supp. 3d at 1137–38 (citation omitted). After "find[ing] that the raw pen register data [was] not discoverable under rule 16," the court concluded the data was also "not discoverable under *Franks*" where there was not even a "*Franks* motion before the

Court." *Id.* at 1160–61, 1171 (capitalization omitted).  The court explained that "allowing the Defendants to obtain this evidence to mount a *Franks* challenge without making the requisite preliminary showing would vitiate the purpose of *Franks* . . . 'to prevent the misuse of a veracity hearing for the purposes of discovery and obstruction,'" and the court "refuse[d]" to authorize this tactic for vitiating the preliminary showing.  *Id.* at 1162 (quoting *Franks*, 438 U.S. at 170).

Similarly, in *United States v. Smith*, the court denied defendant's attempt "to use *Franks* as a separate channel to obtain discovery," after concluding that defendant's request for "raw phone data" was "not 'material' under Rule 16," "not discoverable under the wiretap statutes," and "not discoverable under *Brady*."  2017 WL 3172790, at *4 (rejecting defendant's "expect[ation] that the Government should be required to turn over all requested discovery to him—whether or not that material should be disclosed under the federal rules—hoping to find something in the materials that might help raise a *Franks* issue").

Again, in *United States v. Espinoza-Romero*, the court denied defendant's request for "all surveillance materials" that defendant argued were "likely to support the defense position that the affidavits contain material omissions thereby entitling the defense to an evidentiary *Franks* type hearing."  2016 WL 11642376, at *2–6 (citation omitted).  The court reasoned that "[o]rdering discovery on the basis of Defendant's speculation that additional information in the Government's surveillance files might possibly be helpful to a subsequent wiretap challenge would defeat both the purpose of the 'substantial preliminary showing' required by *Franks* and the Supreme Court's admonition that '[t]here is no general constitutional right to discovery in a criminal case.'"  *Id.* at *6 (second alteration in original) (quoting *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977)) (other citations omitted); *see also United States v. Osegera-Gonzalez*, No. 08-cr-126 (MO), 2009 WL 995023, at *4 (D. Or. Apr. 10, 2009) (denying motion to compel production of murder

investigation reports, where defendants' "general statements indicating that the reports could contain information useful to their challenge of [wiretap] affidavit" are insufficient to establish materiality under Rule 16); *United States v. Harding*, 273 F. Supp. 2d 411, 430 (S.D.N.Y. 2003) (denying defendant's request under Federal Rule of Criminal Procedure 16(a)(1)(E)(i) for documents purportedly "material to the preparation of the defense's pretrial motion to suppress the evidence seized by the government," where defendant "failed to sustain his burden under *Franks v. Delaware* to make a substantial preliminary showing that he is entitled to a hearing" and "[a]bsent that showing, [defendant] is not entitled to wide-ranging discovery to canvass for evidence in support of his motion to suppress").

Defendant offers no reason to depart from this well-reasoned authority, which this Court finds persuasive. His argument that the requested discovery is "material" because of the possibility this information may provide him a basis to challenge authorization for the April 2013 wiretap application accordingly falls short. Otherwise, "in every criminal prosecution in which the government obtained evidence by way of a warrant the defendant would be entitled to broad discovery of every allegation made in the affidavit supporting the warrant and of the crime itself." *Walker*, 2019 WL 2339904, at *3. "That is obviously not what the Supreme Court intended in *Franks* and does not jive with Rule 16's materiality requirement." *Id.*

### 2. *Request No. 2(d): Wiretap Progress Reports*

Lastly, in Request No. 2(d), defendant requests fifteen-day wiretap progress reports related to the April 2013 wiretap application and order, arguing that these records "are discoverable under Rule 16(a)(1)(E)(i), and *Brady* and *Giglio*, as potential impeachment material." Def.'s Suppl. Mem. at 5–6. Defendant's request runs counter to the weight of authority holding that such reports are not subject to disclosure. *See United States v. Benbow*, 709 F. App'x 25, 26 (D.C. Cir. 2018)

(holding "district court did not abuse its discretion when it denied the defendants access to wiretap progress reports," where "the progress reports had no practical value in this case" and "before trial, the Government provided the defendants other, more comprehensive wiretap-related materials that they needed to challenge the wiretaps" (capitalization omitted)); *United States v. Pray*, 734 F. Supp. 2d 158, 160–61 (D.D.C. 2010) (denying discovery request for disclosure of periodic wiretap progress reports); *see also Espinoza-Romero*, 2016 WL 11642376, at *11 (same); *Roybal*, 46 F. Supp. 3d at 1164–66 (same); *United States v. Taylor*, No. 13-cr-079 (RRB) (DMS), 2014 WL 12784775, at *2–4 (D. Alaska Oct. 31, 2014); *United States v. Tanner*, No. 10-cr-432, 2013 WL 1891360, at *2 (N.D. Ohio May 6, 2013) (same); *United States v. Rose*, No. 11-cr-10062 (NMG), 2012 WL 1744757, at *3 (D. Mass. May 16, 2012) (same); *United States v. McCafferty*, 772 F. Supp. 2d 863, 878–79 (N.D. Ohio 2011); *United States v. Koschtschuk*, No. 09-cr-96 (S)(M), 2010 WL 584018, at *4 (W.D.N.Y. Feb. 16, 2010) (same); *United States v. Chimera*, 201 F.R.D. 72, 78 (W.D.N.Y. 2001) (same); *United States v. Wright*, 121 F. Supp. 2d 1344, 1350 (D. Kan. 2000) (same); *United States v. Orozco*, 108 F.R.D. 313, 317 (S.D. Cal. 1985) (same).

In *United States v. Pray*, 734 F. Supp. 2d 158, another Judge on this Court denied a defendant's motion to compel the production of "periodic wiretap reports" that "contain[ed] the prosecutors' summaries of telephone conversations, theories of the case, and additional investigative leads," soundly reasoning that the reports were not "material" under Rule 16(a)(1)(E). *Id.* at 159–61. The court explained that periodic reports (1) "are not required under the wiretap statute, 18 U.S.C. § 2518" and thus "are not related to compliance with the statute"; (2) that where, as in that case, "defendants have been given access to the tapes of the phone calls, the wiretap application, and the orders relating to the wiretap application, access to the periodic reports is not necessary," particularly where the "[g]overnment [] indicates that it does not intend

to introduce the periodic reports as evidence in this case"; (3) "the reports are not related to probable cause" because "prosecutors prepared the reports *after* each wiretap was approved"; and (4) "the prosecutors' memos and notes regarding wiretaps are internal government documents exempt from discovery under Federal Rule of Criminal Procedure 16(a)(2)." *Id.* (emphasis in original) (citations omitted).

This sound reasoning applies with equal force in this case. Defendant does not dispute that the government has "'produced to Defendant[] the evidence itself'—including the BlackBerry messages obtained, the wiretap application, and the orders relating to the wiretap application." Gov't Opp'n Def.'s Mot. Compel at 11 (alteration in original) (quoting *Pray*, 734 F. Supp. 2d at 160). Moreover, the government "does not intend to introduce the information sought pertaining to wiretaps of BlackBerry Messenger." *Id.* (quotation marks and citations omitted). The government further states that it has complied and will continue to comply with its *Brady* obligations, and "[t]o the extent any of the items requested constitute *Giglio* or Jenks Act materials, such materials will be provided within fourteen days prior to trial." *Id.* at 3–4, 11.

While acknowledging that Request No. 2(d) sits in tension with authority declining to order disclosure of wiretap periodic progress reports, Def.'s Suppl. Mem. at 6 (citing *Pray*, 734 F. Supp. 2d 158), defendant nevertheless "maintains [that] the progress reports are discoverable" for use to "impeach the [testifying investigating] agent" about any error in a wiretap progress report, *id.* at 5–6. This argument, however, runs smack into the obstacle pointed out in *Pray* that "the reports are not material evidence needed for impeachment or other purposes" because "[p]rosecutors, not agents, wrote the periodic reports at issue in this case," and "[t]here is no indication that any prosecutor will be required to testify[.]" *Pray*, 734 F. Supp. 2d at 160 n.3; *see* Gov't's Suppl. Opp'n at 9. Meanwhile, "[i]n the inconceivable event that the prosecutor who signed the wiretap

progress reports is expected to be called as a witness in the government's case in chief," the government states that it "will disclose any *Giglio* and Jencks Act material at the appropriate time." Gov't's Suppl. Opp'n at 9 n.7.

In a last-ditch effort, defendant argues that this Court should exercise its discretion to order disclosure because "the United States commonly provides the progress reports to defendants voluntarily." Def.'s Suppl. Mem. at 5 (collecting cases). Again, as pointed out in *Pray*, "[i]t is not relevant whether U.S. Attorney's Offices elsewhere provide the periodic wiretap reports to criminal defendants. The issue is whether the Government is *required* to divulge such reports to Defendants." *Pray*, 734 F. Supp. 2d at 159 (emphasis in original). Defendant has failed to establish that the progress reports must be disclosed under Rule 16 or on any other ground, and his request for production of wiretap progress reports is accordingly denied.

## B. Request No. 4: Information That May Result in a Lower or Higher Sentence Under the Guidelines

Defendant requests information that may result in a lower or higher sentence under the guidelines, including material relevant to a Chapter Three role adjustment, criminal history, or any other application of the guidelines and any evidence as it relates to proof to establish Count Two of the indictment, charging violation of 18 U.S.C. § 924(c)(1)(B)(ii), Def.'s Mem. Mot. Compel at 6 (Request No. 4), contending that this information is "discoverable under *Brady*," *id.* To the extent the requested information as to a lower advisory sentencing range may qualify as exculpatory information, the government represents that it has "complied with [its] *Brady* obligations" and will "continue[] to comply with our *Brady* obligations," Rough Mot. Hr'g Tr. at 57:17–21. To the extent the requested information may affect determinations under the Guidelines Manual, including application of specific offense characteristics or other mitigating or aggravating factors taken into account by guideline provisions, such information would likely be derived from

witness testimony or statements and may be subject to *Giglio* and the Jencks Act, which material is disclosable, on the court-ordered schedule, by August 26, 2024.  *See* Min. Order (May 13, 2023). Given that defense counsel has identified no failure or reason to suspect a failure by the government to comply with its *Brady* obligations, and given the court-ordered schedule already in place for disclosure of material subject to *Giglio* and the Jencks Act, defendant's Request No. 4 is denied.

### C.  Request No. 16: Grand Jury Transcripts

Defendant seeks disclosure of grand jury transcripts, without citing any binding authority that disclosure is required here and declining the opportunity to do so when given the chance to supplement the arguments presented in his motion.  *See* Rough Mot. Hr'g Tr. at 75:2–18 (Court stating that since defendant failed to "deal[] with case law from this Circuit," defendant "can address why that authority from this court is wrong . . . as to why grand jury transcripts need to be disclosed"); *id.* at 75:14–15 (defendant stating, "I don't have anything to supplement" and "would submit on the request made").  While defendant posits that the requested disclosure of grand jury transcripts is "inevitabl[e]," Def.'s Mem. Mot. Compel at 9, this position is incorrect.

Federal Rule of Criminal Procedure 6(e) codifies the "long-established policy that maintains the secrecy of the grand jury proceedings in the federal courts."  *United States v. Sells Eng'g, Inc.*, 463 U.S. 418, 424 (1983) (quoting *United States v. Procter & Gamble Co.*, 356 U.S. 677, 681 (1958)).  "There are only a few exceptions permitting a defendant to pierce the 'indispensable secrecy of grand jury proceedings.'"  *United States v. Sitzmann*, 74 F. Supp. 3d 128, 133 (D.D.C. 2014), *aff'd*, 893 F.3d 811 (D.C. Cir. 2018) (quoting *In re Grand Jury Subpoena, Miller*, 405 F.3d 17, 18 (D.C. Cir. 2005) (per curiam) (Tatel, J., concurring in denial of rehearing *en banc*)) (other citation omitted); *see also McKeever v. Barr*, 920 F.3d 842, 844 (D.C. Cir. 2019)

("[D]isclosure of matters occurring before the grand jury is the exception and not the rule." (citation omitted)).  These exceptions include where material is subject to disclosure under *Brady* or the Jencks Act.  *See Tierney v. United States*, 410 U.S. 914, 916 n.2 (1973) (Douglas, J., dissenting) ("[G]rand jury testimony is regularly disclosed to criminal defendants without court order pursuant to *Brady v. Maryland*, 373 U.S. 83, and *Jencks v. United States*, 353 U.S. 657."); *see also* Jencks Act, 18 U.S.C. § 3500(b), (e)(3) (requiring, "[a]fter a witness called by the United States has testified on direct examination," court, on motion of the defendant, to order "the United States to produce any statement (as hereinafter defined) of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified," and defining "[t]he term 'statement'" to mean, *inter alia*, "a statement, however taken or recorded, or a transcription thereof, if any, made by said witness to a grand jury"); 1 Charles Alan Wright et al., FED. PRAC. & PROC. CRIM. § 109 (5th ed.) (noting "the prosecutor's obligation under *Brady v. Maryland* to disclose favorable, material evidence remains in place, even if that information was presented to the grand jury").

Defendant does not claim that grand jury transcripts would reveal exculpatory evidence. *See* Def.'s Mem. Mot. Compel at 8–9.  Rather, invoking Rule 26.2(f)(3), defendant asserts that the "government must ultimately produce a transcript of the testimony before the Grand Jury after direct examination of the witness at trial." *Id.* at 9 (citations omitted).  To be sure, the grand jury transcript of a witness who is testifying at trial would be made available to defendant as part of the disclosure required under applicable procedural rules and the Jencks Act.  *See* 18 U.S.C. § 3500(b); FED. R. CRIM. P. 26.2(a), (f)(3).  Specifically, under the Jencks Act, substantially incorporated into Federal Rule of Criminal Procedure 26.2, after a government witness other than defendant testifies on direct examination, the government must "produce any statement . . . of the witness" made to a

grand jury that is "in the possession of the United States which relates to the subject matter as to which the witness has testified."  18 U.S.C. § 3500(b); *see also* FED. R. CRIM. P. 26.2(a), (f)(3) (requiring, following testimony of witness on direct examination, that "on motion of a party," the government or defendant must produce "any statement" made by a witness to the grand jury "that is in their possession and that relates to the subject matter of the witness's testimony"); *see also Sitzmann*, 74 F. Supp. 3d at 140 ("Rule 16 . . . does not authorize the discovery or inspection of statements made by prospective government witnesses except as provided for by the Jencks Act." (citations omitted)).  Yet, the government represents that "the witness who testified before the grand jury is not expected to testify at trial," Gov't's Opp'n Def.'s Mot. Compel at 12, and thus these rules do not require the disclosure sought of the grand jury transcripts.

Other than a grand jury witness testifying at trial or material that is subject to disclosure under *Brady*, Federal Rule of Criminal Procedure 6(e) enumerates a list of "Exceptions" to grand jury secrecy, including two that may be invoked by a defendant.  FED. R. CRIM. P. 6(e)(3).  Rule 6(e)(3)(E) provides that a "court may authorize disclosure—at a time, in a manner, and subject to any other conditions that it directs—of a grand-jury matter: (i) preliminarily to or in connection with a judicial proceeding," FED. R. CRIM. P. 6(e)(3)(E)(i), or (ii) "at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury," FED. R. CRIM. P. 6(e)(3)(E)(ii).  "[D]eviations from the detailed list of exceptions in Rule 6(e) are not permitted."  *McKeever*, 920 F.3d at 846.

Defendant does not invoke *any* exception to Rule 6(e), *see* Def.'s Mem. Mot. Compel at 8–9, but given that defendant has indicated no intent to seek "dismiss[al] [of] the indictment," FED. R. CRIM. P. 6(e)(3)(E)(ii), the exception pursuant to Rule 6(e)(3)(E)(i) is left as the only option

that could conceivably apply.[8]  Disclosure of grand jury information is proper under this exception when three requirements are satisfied.  The person seeking disclosure must first identify a relevant "judicial proceeding" within the meaning of Rule 6(e)(3)(E)(i); second, establish that the requested disclosure is "preliminarily to" or "in connection with" that proceeding; and, finally, show a "particularized need" for the requested grand jury materials.  *See Sells Eng'g, Inc.*, 463 U.S. at 442–43 ("Rule [6(e)(3)(E)(i)] simply authorizes a court to order disclosure 'preliminarily to or in connection with a judicial proceeding.' . . . We have consistently construed the Rule, however, to require a strong showing of particularized need for grand jury materials before any disclosure will be permitted."); *United States v. Baggot*, 463 U.S. 476, 479–80 (1983) (explaining that the "preliminarily to or in connection with a judicial proceeding" and the "particularized need" requirements "are independent prerequisites to [(E)(i)] disclosure").

The requirement that the disclosure be "preliminarily to" or "in connection with" a "judicial proceeding," *Sells Eng'g, Inc.*, 463 U.S. at 442–43, is satisfied here, since a "possible criminal trial" is "a judicial proceeding" within the meaning of the Rule, *see In re Grand Jury*, 490 F.3d 978, 986 (D.C. Cir. 2007) (per curiam) (citation omitted).  Defendant fails at the third step, however, by failing to make the requisite strong showing of a particularized need.

The "particularized need" standard requires a strong showing that (1) the requested materials are "needed to avoid a possible injustice in another judicial proceeding; (2) the need for disclosure is greater than the need for continued secrecy; and (3) the request is structured to cover only material so needed."  *In re Sealed Case*, 801 F.2d 1379, 1381 (D.C. Cir. 1986) (quotation

---

[8]     While some courts have limited the exception in Rule 6(e)(3)(E)(i) to "only appl[y] to cases other than the defendant's current criminal case, lest the exception render the limits in Rule 6(e)(3)(E)(ii)—where a ground may exist to dismiss the indictment—superfluous," 1 Charles Alan Wright et al., Fed. Prac. & Proc. Crim. § 109 (5th ed.) (emphasis omitted) (collecting out-of-Circuit district court cases), the D.C. Circuit has not imposed such a limit.

marks omitted) (quoting *Sells Eng'g*, 463 U.S. at 443); *see also Baggot*, 463 U.S. at 480 n.4; *In re Sealed Case*, 250 F.3d 764, 771 (D.C. Cir. 2001). Ultimately, determinations of "particularized need" are committed to the "considered discretion of the district court," *Douglas Oil*, 441 U.S. at 228; *see also In re Sealed Case*, 801 F.2d at 1381 (recognizing the "substantial discretion of the district court" (citing *Douglas Oil*, 441 U.S. at 223)), but "that discretion is limited by the text of the rule," *Pitch v. United States*, 953 F.3d 1226, 1238 (11th Cir. 2020).

Only in "exceedingly rare cases" are defendants "able to make a factually based showing of particularized need for the production and inspection of grand jury materials," such as where the government misled the grand jury about a matter that had been the basis for "[a]t least five counts of the original eleven-count indictment." *United States v. Naegele*, 474 F. Supp. 2d 9, 10–11, 13 (D.D.C. 2007) (granting request for production of grand jury materials). Courts have made clear that where a defendant fails to provide a discrete reason for particularized need, disclosure of grand jury minutes is not warranted. *See, e.g.*, *Procter & Gamble Co.*, 356 U.S. at 682–83 (noting that defendants' "showings fall short of proof that without the [grand jury] transcript a defense would be greatly prejudiced or that without reference to it an injustice would be done," and thus the case was not one of those "cases of particularized need where the secrecy of the proceedings is lifted discretely and limitedly"); *United States v. Borda*, 905 F. Supp. 2d 201, 205 (D.D.C. 2012) (finding defendants did not demonstrate particularized need for inspection of grand jury minutes where their assertions about misleading evidence were "completely speculative" and relied on a "tenuous" connection between an affidavit and testimony presented to the grand jury).

While defendant here made no effort to address any particularized need for the grand jury transcripts in his motion, *see generally* Def.'s Mem. Mot. Compel, he asserted, at the motions hearing, that the two charges in the Superseding Indictment "are very vast and broad" and he has

"no idea whether there is going to be a variance or not" between the government's presentation of the evidence "to return the indictment and what might ultimately be presented to the jury." Rough Mot. Hr'g Tr. at 74:12–18. According to defendant, the requested grand jury transcripts would inform him "as to what transactions the government was relying upon" for the charges, "what acts [defendant] engaged in . . . personally," and "what acts were reasonably foreseeable to him engaged in by other individuals during the course of the conspiracy." *Id.* at 74:18–24. In other words, as defendant conceded at the hearing, defendant reasserts his arguments raised in his motion for a bill of particulars, that "the indictment is vague with regard to the acts that establish the allegations in the superseding indictment." Def.'s BoP Mem. at 6; Rough Mot. Hr'g Tr. at 74:20–24 (defense counsel stating that his request for grand jury transcripts "is part of my bill of particulars request as to what transactions the government was relying upon, what acts Mr. Oseguera engaged in . . . personally, [and] what acts were reasonably foreseeable to him engaged in by other individuals during the course of the conspiracy").

The Superseding Indictment in this case is sufficiently factually specific to give defendant notice of the charges against him and that defendant has been provided substantial information as to the factual basis for those charges, including, as outlined, *supra* Part I, through the "voluminous discovery" already produced, Def.'s BoP Mem. at 6, the extradition request, the pretrial deposition testimony of an expected government trial witness, and his demonstrated knowledge of those facts supporting the charges, as reflected in his agreed-upon Statement of Stipulated Facts in support of his then-anticipated guilty plea to charges in a Second Superseding Information.

Considering the breadth of information made available to defendant to understand the charges against him, defendant has established simply no particularized need to obtain the grand jury transcripts of a witness who will not be testifying at trial. *See, e.g.*, *United States v. Cobb*,

544 F. Supp. 3d 310, 332–33 (W.D.N.Y. 2021) (denying motion for disclosure of grand jury transcripts on grounds that the "bare bones indictment [] does not state any particular acts or overt acts that [defendant] allegedly committed in the course of the [narcotics] conspiracy," because "[t]he government does not need to specify any overt acts in a narcotics conspiracy charge," so defendant "has failed to come close to making a showing of a particularized need for the grand jury transcripts" (quotation marks and citations omitted)); *United States v. Massat*, No. 15-cr-50089 (JLV), 2017 WL 9325895, at *5 (D.S.D. Nov. 14, 2017), *report and recommendation adopted*, 2018 WL 583109 (D.S.D. Jan. 29, 2018) (finding no "particularized need" for production of grand jury testimony "based on [defendant's] argument that the indictment is duplicitous and vague," since "the government has provided [defendant] with voluminous discovery informing him of the nature and extent of the charges" and, as the court found, "the indictment is neither duplicitous nor vague"); *United States v. Hernandez*, No. 14-cr-120 (EMC), 2015 WL 4498084, at *8 (N.D. Cal. July 23, 2015) (denying request for production of grand jury transcripts where indictment was found to provide sufficient notice and thus defendant failed to show any particularized need for such transcripts purportedly to "'confirm' that the grand jury did not pass on the factual allegations the Government intends to prove at trial" (citations omitted)).

Simply put, defendant's request amounts to no more than a demand for "disclosure . . . solely as a matter of right." *Jackson v. United States*, 297 F.2d 195, 197 (D.C. Cir. 1961) (citing *Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395, 400 (1959)). That fails under Rule 6(e), and defendant's request for grand jury transcripts is accordingly denied.

### D.  Request Nos. 23 and 24: Training of Officers/Agents, Performance Goals, and Policy Awards

Defendant's Request Nos. 23 and 24 seek copies of "the most current" "policies and/or training manuals issued by the law enforcement agencies involved in the instant case," as well as

"information regarding the standards used for measuring, compensating and/or reprimanding the conduct of the law enforcement officers involved in the instant case." Def.'s Mem. Mot. Compel at 10–11 (Request Nos. 23 and 24); Rough Mot. Hr'g Tr. at 82:6–7. At the motions hearing, defense counsel provided minimal clarity on the scope or nature of this request, offering, "as an example," that testifying witnesses may "receive specific training with regard to how to write reports," "so the request [he] make[s] would be to address that . . . so defense counsel can during cross-examination review the training and material that they rely upon." Rough Mot. Hr'g Tr. at 82:21–24.

The potential breadth of the requested information governing policies applicable to law enforcement officers' conduct in the multiple facets of an international narcotics investigation, such as the instant one, makes apparent the need for conferral to narrow the scope to a manageable focus. *See id.* at 82:1–5 (Court asking defendant whether he sought "every DEA personnel manual, whatever other law enforcement agency involved or any version of it within the last decade"). In the face of defendant's concession that he failed to confer with the government about these requests, as required by D.D.C. Local Criminal Rule 16.1, he was directed to address why application of this rule should be "waive[d]" should he wish to "pursue [requests] 23 and 24." *Id.* at 83:19–24. Yet, defendant failed to do so or even mention these requests. *See generally* Def.'s Suppl. Mem. Defendant's decision to not pursue these requests in his supplemental submission, together with his utter failure to comply with Local Rule 16.1, forecloses the requested relief.

*     *     *

In sum, defendant has failed to establish grounds for an order compelling the government to disclose information, in addition to the already voluminous discovery produced, in response to the 25 requests set out in his Motion to Compel.  Accordingly, this motion is **DENIED**.[9]

### III.    CONCLUSION

For the foregoing reasons, defendant's Motion to Compel Discovery, ECF No. 114, and Motion for a Bill of Particulars, ECF No. 115, are **DENIED**.  An Order consistent with this Memorandum Opinion will be filed contemporaneously.

**SO ORDERED.**

Date: May 29, 2024

_____
**BERYL A. HOWELL**
United States District Judge

---

[9]     Insofar as defendant additionally requests "the opportunity to file further motions based upon new information gained through the discovery process," Def.'s Mem. Mot. Compel at 11, defendant is directed to this Court's Standing Order, providing that "[i]f a party must file a motion pertaining to a discovery matter, the motion must comply with Local Criminal Rule 16.1," Standing Order at 1 n.1, ECF No. 5—with which provision defendant largely failed to comply prior to the filing of the instant motion—as well as the Scheduling Order issued in this case, directing the parties to file "any pre-trial motions" by July 3, 2024, *see* Min. Order (Nov. 27, 2023).