**ANTHONY E. COLOMBO, JR.**
California State Bar No. 218411
The Senator Building, Ste. 312
105 West "F" Street
San Diego, CA 92101
Tele.: (619) 236-1704
Email: anthonycolombolegal@gmail.com

Attorney for Ruben Oseguera-Gonzalez

UNITED STATES DISTRICT COURT

DISTRICT COURT OF COLUMBIA

(HONORABLE BERYL A. HOWELL)

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | CASE NO. 16cr00229-BAH |
| Plaintiff, ) | |
| ) | NOTICE OF MOTION AND MOTION |
| v. ) | TO EXCLUDE THE UNITED STATES' |
| ) | PROPOSED RULE 404(b) EVIDENCE |
| RUBEN OSEGUERA-GONZALEZ, ) | |
| Defendant. ) | |

TO: KATE M. NASEEF, TRIAL ATTORNEY, UNITED STATES ATTORNEY'S OFFICE; JONATHON HORNOK, TRIAL ATTORNEY, UNITED STATES ATTORNEY'S OFFICE; AND KAITLIN SAHNI, ACTING DEPUTY CHIEF, UNITED STATES ATTORNEY'S OFFICE:

**I.**

**INTRODUCTION**

On February 1, 2017, Mr. Oseguera-Gonzalez was charged in a Superseding Indictment. ECF No. 6. The Superseding Indictment alleged that from in and around 2007, and continuing to the date of February 1, 2017, Mr. Oseguera-Gonzalez engaged in a (Count One) conspiracy to distribute 5 kilograms or more of cocaine, and 500 grams or more of methamphetamine, knowing and intending that these controlled substances would be

1

imported into the United States, in violation of 21 U.S.C. §§ 963, 959(a), 960(b)(1)(B)(ii), and 960(b)(1)(H), and (Count Two) that he used and possessed a firearm in violation of 18 U.S.C. §§ 924(c)(1)(A)(i), 924(c)(1)(A)(ii), and 924(c)(1)(B)(ii). Aiding and abetting in violation of 18 U.S.C. § 2 is alleged as part of both Counts One and Two.

On June 11, 2024, the Government filed a Notice of Rule 404(b) Evidence. ECF No. 132. The Government asserts "much of the testimony described [in its Notice] is simply relevant evidence that forms the context for or integral facts of the offenses charged in the Superseding Indictment." *Id*. at 1. The Government asserts that all of the proffered evidence "was intrinsic to the charged conspiracy as a method of maintaining power and control." *See id*. at 1-6. In the alternative, the Government argues, "But if the Court were to conclude that this evidence is covered by Rule 404(b), the Government intends to offer this evidence to establish motive, opportunity, intent, preparation, knowledge, absence of mistake, and lack of accident." *Id*.

The Government's Notice of 404(b) Evidence sets forth four general areas of other act evidence which includes violence, corruption, other controlled substances, and post-arrest conduct and statements. *See* ECF No. 132 at 3-6.

The anticipated testimony in relation to violence set forth by the Government is as follows:

- Defendant bragged about killing people and displayed to others photographs of dead people defendant ordered kidnaped and murdered;
- Defendant ordered at least 100 people murdered;
- Defendant ordered several individuals to be drowned in a swimming pool;
- Defendant participated in the torture of two men suspected of cooperating with law enforcement and displayed photos of their dead bodies;
- Defendant directed subordinates to shoot down a Mexican Marine helicopter so that he and his father could escape capture;
- Defendant personally shot and killed two people - a rival cartel member, and a subordinate who disobeyed orders; and

- Defendant was involved in kidnappings.

The anticipated testimony in relation to corruption as set forth by the Government is as follows:

- Defendant directed uniformed and armed law enforcement officers to assist with transportation and protection of drugs, money, and cartel members within Mexico.

The anticipated testimony in relation to other controlled substances set forth by the Government is as follows:

- Defendant was involved in manufacturing and distributing fentanyl for importation into the United States encouraging his father to expand fentanyl production and distribution which defendant was aware could lead to overdose deaths;
- Defendant facilitated the release of a chemist who had been kidnaped as that chemist could assist in fentanyl manufacturing; and
- Defendant was involved with the distribution of marijuana for importation into the United States.

The anticipated testimony in relation to post-arrest conduct and statements set forth by the Government is that defendant told another inmate[1] while incarcerated in Mexico after defendant's arrest in 2015 is as follows:

- Defendant negotiated the sale of one ton of cocaine to members of another drug trafficking organization;
- Defendant sought to acquire .050 caliber and M60 machine guns;
- Defendant was present when the Mexican Marine helicopter was shot down;
- Defendant attempted to recruit others to join his father's cartel, including someone who had used extreme violence in the past;

---

[1] This inmate previously testified at a seal proceeding in this case and thus is not specifically referred to by name herein.

- Defendant stated that the cartel had an arsenal of weapons that included .50 caliber sniper rifles, 40 mm automatic grenade launchers, machine guns, and shoulder fired rocket launchers;

- Defendant approved purchases from a Russian with a military background providing training to the cartel; and

- Defendant invested in multiple shipments of cocaine from Colombia, up to 2000 kilograms transported by boat off the coast of Mazatlan, Mexico which were taken over by defendant's father.

## II.

## ARGUMENT TO PRECLUDE OTHER ACT EVIDENCE

"Courts in the District of Columbia Circuit follow a 'two-step mode of analysis' in determining the admissibility of evidence of other acts by the defendant." *United States v. Roberson*, 581 F.Supp.3d 65, 70 (D.C. Cir. 2022) (citing *United States v. Anderson*, 174 F. Supp. 3d 494 (D.D.C. 2016) (quoting *United States v. Burch*, 156 F.3d 1315, 1323 (D.C. Cir. 1998)). "The first step in this analysis 'addresses Rule 404(b)' and requires the court to 'determine whether the evidence is relevant to a material issue other than character.'" *Roberson*, 581 F.Supp.3d at 70 (citing *United States v. Lieu*, 298 F.Supp. 3d 32, 51 (quoting *Burch*, 156 F.3d at 1323, *aff'd*, 963 F.2d 122 (D.C. Cir. 2020)).

Federal Rule of Evidence 404(b) permits the introduction of "[e]vidence of any other crime, wrong, or act" for certain purposes, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. Rule. Evid. 404(b) (2024). But such evidence "is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." *Id*. "So-called 'propensity' evidence is excluded not because it is irrelevant, but because 'it is said to weigh too much with the jury and to so over persuade them as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge.'" *United States v. Vazquez*, 2023 WL 4488910, *3 (D.D.C 2023) (citing

*Michelson v. United States*, 335 U.S. 469, 475-76 (1948)). "Rule 404(b) thus attempts to head off the risk that, presented with such evidence of a defendant's uncharged bad conduct, 'a jury [might] convict for crimes other than those charged– or that, uncertain of guilt, it will convict anyway because a bad person deserves punishment.'" *Vazquez*, 2023 WL 448910, \*3 (citing *Old Chief v. United States*, 519 U.S. 172, 181 (1997) (quoting *United States v. Moccia*, 681 F.2d 61, 63 (1st Cir. 1982)).

### 1. The Evidence of Other Crimes is Not Intrinsic to the Charged Crimes

"'[A] threshold question in determining the admissibility of evidence of other crimes and bad acts is whether the evidence, in actuality, relates to acts unconnected with those for which the defendant is charged, or instead is intertwined with the commission of charged crimes.'" *Vazquez*, 2023 WL 448910, \*4 (citing *United States v. Machado-Erazo*, 47 F.4th 721, 738 (D.C. Cir. 2018) (first quoting *United States v. Crowder*, 141 F.3d 1202, 1206 (D.C. Cir. 1998) and then quoting *United States v. Bowie*, 232 F.3d 923, 929 (D.C. 2000))). "The law is clear that '[a]cts extrinsic to the crime charged are subject to Rule 404(b)'s limitations,' while 'acts intrinsic to the crime are not.'" *Id*. (citing *Machado-Erazo*, 47 F.4th at 738 (citing *Bowie*, 232 F.3d at 927)). "The D.C. Circuit has interpreted intrinsic evidence narrowly, limiting it to 'acts that are 'part of the charged offense' itself or that are 'performed contemporaneously with the charged crime ... if they facilitate the commission of the charged crime.'" *Vazquez*, 2023 WL 448910, \*4 (citing *United States v. McGill*, 815 F.3d 846, 883 (D.C. Cir. 2016)). Accord *United States v. Oseguera-Gonzalez*, 507 F.Supp. 3d 137, 159 (D.D.C. 2020). "In the context of conspiracy charges, acts intrinsic to a conspiracy may include evidence of acts 'link[ing] a defendant to other defendants,' 'show[ing] the nature of a conspiracy and the kind of organizational control a defendant exercised,' and 'show[ing] the defendants' intent to act in concert.'" *Vazquez*, 2023 WL 448910, \* 4 (citing *Machado-Erazo*, 47 F.4th at 729 (internal quotation marks and citations omitted)). However, "[t]he D.C. Circuit has adopted a very narrow understanding of what counts as an 'intrinsic' act, explicitly rejecting the application of that label to evidence that merely 'complete[s] the story' or 'incidentally involve[s]' the charged offense or 'explains the circumstances'

surrounding it." *Roberson*, 581 F.Supp. 3d at 71 (citing *Bowie*, 232 F.3d at 928 (other citations omitted)). "To be 'intrinsic,' evidence must be more than merely relevant to a charged crime, otherwise 'Rule 404(b) would be a nullity.'" *United States v. Fitzsimons*, 605 F.Supp.3d 92, 97 (D.D.C. 2022) (citing *Bowie*, 232 F.3d at 929). In other words, to paraphrase the D.C. Circuit's inquiry, is the defendant's alleged other act evidence "so indistinguishable from the charged crime that [it is] entirely removed from 404(b)?" *See Bowie*, 232 F.3d at 928.

### a. **Alleged Other Evidence of Violence**

The Government asserts evidence of violence is direct evidence of Counts One and Two "because the use of violence and firearms was intrinsic to the charged conspiracy as a method of maintaining power and control." ECF No. 132 at 3. The Government's assertion that its allegations of other acts involving violence is "intrinsic" to the charged conspiracy is mistaken. None of these alleged acts are acts that are part of the charged offense itself or that were performed contemporaneously with the charged crimes. The alleged other acts are distinguishable from the alleged crimes, and were not part of the Superseding Indictment.

Mr. Oseguera-Gonzalez has been charged with crimes that allege he engaged in a conspiracy to distribute controlled substances, methamphetamine and cocaine, knowing and intending that these controlled substances would be imported, and he did so while possessing a firearm or destructive device. *See* ECF No. 6. The Superseding Indictment does not allege any overt acts that were committed by Mr. Oseguera-Gonzalez nor does it allege, with the exception of the type and weight of the drugs, any acts that were reasonably foreseeable to Mr. Oseguera-Gonzalez during the course of the conspiracy. Mr. Oseguera-Gonzalez has not been charged with murder, attempted murder, or kidnaping. He has not been charged with racketeering or with any violent crimes in aid of racketeering. He has not been charged with a continuing criminal enterprise. Nowhere in the Superseding Indictment does it allege Mr. Oseguera-Gonzalez's crimes were committed on behalf of the Cartel de Jalisco Nueva Generacion (CJNG). The Government here cannot say the alleged other acts involving violence were part of the charged offense. They simply were not.

The situation here is similar to *Vazquez* where the Court determined the crimes charged in the indictment were more narrow than the other act evidence sought to be admitted as intrinsic evidence. *See Vazquez*, 2023 WL 4488910, * 4 (the indictment charged defendant with conspiring to manufacture and distribute chemicals to make methamphetamine and actual methamphetamine, not a broader multi-drug conspiracy). While using violent acts might be the *modus operandi* used by the CJNG to "maintain power and control[,]" as clearly stated in *Vazquez*, "under binding D.C. Circuit precedent, such *modus operandi* evidence has been deemed to be extrinsic, rather than intrinsic, evidence and therefore subject to the limitations of Rule 404(b)." *Id*.

The Government's allegations with regard to other violent acts committed by Mr. Oseguera-Gonzalez are so vague and generalized to not allow the Court to engage in any additional analysis to consider whether these other violent acts, as acts not charged in the Superseding Indictment, were acts performed contemporaneously to the charged offense to facilitate the charged offense. With the exception of the shooting down of a Mexican military helicopter which was a singular event unlike any other capable of being isolated to a time and place, all of the other alleged violent acts are so general and vague that there exists no nexus to the charged offenses to analyze. No specific dates, no specific participants, no specific conversations, simply no context. For example, evidence of the defendant's activities prior to the start of the conspiracy at issue, even if relevant to show the defendant's "level of sophistication and ability to move large quantities of cocaine to Europe and Canada," was not intrinsic under *Bowie* insofar as the activities were neither part of the charged conspiracy nor took place contemporaneously with the charged conspiracy. *See United States v. Sitzmann*, 856 F.Supp.2d 55, 59-60 (D.D.C. 2012). And for example, in the converse to acts engaged in prior to an alleged conspiracy, "[e]vidence of precursor chemical shipments seized after the grand jury returned the indictment is extrinsic to the charged offenses." *Vazquez*, 2023 WL 4488910, * 4. "Thus, evidence that the defendant continued to engage in narcotrafficking *after* the conclusion of the charged conspiracy offenses is not 'part of the charged offense' or 'performed contemporaneously with the charged crime.'" *Id*.

(citing *McGill*, 815 F.3d at 883). Similar to *Vazquez*, "[t]he Government provides no information [] as to when" these other acts occurred. *Id*. "The well established rubric in th[e] [D.C.] Circuit for distinguishing intrinsic from extrinsic evidence rests largely on temporal proximity[]." *Fitzsimons*, 605 F.Supp.3d at 97 (citing *United States v. Thorne*, 2020 WL 122985, *13 (D.D.C. 2020). Here, there is none. Here, also, and in aggravation, unlike *Vazquez* where at least some specific details were provided about the prior acts, the Government provides no details at all.[2] Here, as in *Vazquez*, the Government's alleged other acts "flunk" the intrinsic act test. *See id*.

### b.  Alleged Other Evidence of Corruption

The Government asserts evidence of corruption is direct evidence of Counts One and Two "because bribery of public officials, including those who were authorized to carry or access firearms, was intrinsic to the charged conspiracy as methods of maintaining power and control." ECF No. 132 at 4. The same analysis addressed above with regard to the alleged other acts of violence is equally applicable to the other acts of alleged corruption. Here, the alleged acts of corruption were not part of the charged offense itself or were performed contemporaneously with the charged crime to facilitate the commission of the charged crime. *See Vazquez*, 2023 WL 448910, *4 (citing *United States v. McGill*, 815 F.3d 846, 883 (D.C. Cir. 2016)).

### c.  Alleged Other Evidence of Fentanyl and Marijuana Distribution

The Government asserts evidence of Mr. Oseguera-Gonzalez's involvement in distributing fentanyl and marijuana for importation into the United States is direct evidence of Count One "because manufacturing and distributing fentanyl and marijuana were intrinsic

---

[2] Mr. Oseguera-Gonzalez has not received any reports of investigation that shed light on any of the other allegations involving violent acts with the exception of the helicopter incident. Mr. Oseguera-Gonzalez suspects that the non-specific information in the Government's notice is based upon hearsay provided by cooperating witnesses who were not percipient witnesses to any of the allege acts.

to the charged conspiracy as methods of maintaining and increasing CJNG's share and control of the illicit drug market to the United States." ECF No. 132 at 5. Again, this evidence is not intrinsic to the charged crimes.

The situation here is analogous to *Vazquez*, and as in *Vazquez*, the Government's proffered evidence of uncharged drug trafficking is not intrinsic to the charged crimes. In *Vazquez* this Court found evidence of defendant's involvement in distribution of uncharged precursor chemicals was not intrinsic to the charged offense. *See Vazquez*, 2023 WL 448910, *4. This Court ruled, "Nor is evidence that defendant and his co-conspirators distributed precursor chemicals for other illicit drugs intrinsic evidence of the charged drug conspiracies. The indictment solely charges defendants with conspiring to distribute methamphetamine in Count One, and conspiring to distribute chemicals for the manufacture of methamphetamine in Count Two– not a broader, multi-drug conspiracy." *Id*. The same is true here. Mr. Oseguera-Gonzalez was charged in Count One with conspiring to distribute for importation methamphetamine and cocaine, not a broader conspiracy involving fentanyl, fentanyl precursors, or marijuana.

In addition, similar to *Vazquez* where the Court found "[t]he distribution of precursor chemicals to make fentanyl, PCP and cocaine f[ell] outside the charged conspiracies[,]" the same result is warranted in this case. *See Vazquez*, 2023 WL 448910, *5. Furthermore, as in *Vazquez* where this Court found shipments of the uncharged chemicals did not facilitate the charged conspiracy, but rather at most the two conspiracies ran parallel to one another, the same finding is warranted here. *Id*. As in *Vazquez*, the charged conspiracy here did not involve fentanyl, fentanyl precursors, or marijuana. The distribution of these other controlled substances is simply not intrinsic to the crimes charged in the Superseding Indictment.

### d. **Alleged Other Evidence of Post-Arrest Conduct and Statements**

The Government asserts evidence of Mr. Oseguera-Gonzalez's post-arrest conduct and statements are intrinsic to the charged conspiracy, "[f]or the most part [because] this evidence pertains to the Defendant's conduct during or statements about the time frame identified in the Superseding Indictment." ECF No. 132 at 6. All of the proffered evidence

is derived from one witness that previously testified before this Court. This witness was in custody with Mr. Oseguera-Gonzalez and testified that he either was told or overheard the proffered evidence. All of the information provided from this witness was first presented to the Government in February of 2021, four years after the Superseding Indictment had already been issued in February of 2017. How can evidence that didn't exist at the time of an indictment be "intrinsic" to the indictment charged? It simply cannot.

Furthermore, as asserted above "intrinsic" evidence is limited to "acts that are 'part of the charged offense' itself or that are 'performed contemporaneously with the charged crime ... if they facilitate the commission of the charged crime.'" *Vazquez*, 2023 WL 448910, *4 (citing *McGill*, 815 F.3d at 883). None of the proffered conduct or statements appear to be part of the charged offense or performed contemporaneous to the charged offenses to facilitate the charged offenses. All of the proffered conduct and statements appear to be separate acts that are extrinsic to the conspiracy charged in the Superseding Indictment.

For example, the Government has proffered that in 2015, Mr. Oseguera-Gonzalez told a witness while they were in custody together, "[H]e [Mr. Oseguera-Gonzalez] was present during the shoot down of the Mexican Marine helicopter." ECF No. 132 at 5. The witness relayed this conversation to the Government four years after the Superseding Indictment had been presented and charged. This alleged admission on the part of Mr. Oseguera-Gonzalez could simply not have been "intrinsic" to the indictment at the time. Neither can any of the other alleged post-arrest conduct or statements.

Staying with the helicopter statement, Count Two charges Mr. Oseguera-Gonzalez with possessing a firearm or destructive device in relation to the conspiracy to distribute methamphetamine and cocaine for importation into the United States in Count One, but Count Two presents no specifics with regard to when, where, or what were the circumstances in relation to the firearm or destructive device possessed. Assuming that the destructive device in the Superseding Indictment relates to that used to down the Mexican military helicopter, Mr. Oseguera-Gonzalez's alleged admission about being present in no way can

be said to have been a contemporaneous act to the charged offenses to facilitate the charged offenses. Again neither can any of the other alleged post-arrest conduct or statements.

The alleged post-arrest conduct and statements here are simply distinguishable from other cases likely to be cited by the Government such as *United States v. Allen*, 960 F.2d 1055, 1056-58 (D.C. Cir. 1992), *cert. denied*, 506 U.S. 881 (1992) (admitting as intrinsic to the charges testimony that the defendant watched his co-defendant sell crack cocaine just minutes before the execution of a search warrant where the charged sale was made); *United States v. Gartmon*, 146 F.3d 1015, 1020 (D.C. Cir. 1998) (admitting evidence as intrinsic where the defendant lured his co-defendant to his home and threatened the co-defendant with a gun after the co-defendant sought to withdraw from the charged conduct); *United States v. Badru*, 979 F.3d 1471, 1474 (D.C. Cir. 1996), *cert. denied*, 520 U.S. 1150 (1997) (admitting in a conspiracy to distribute heroin defendant's trips to obtain heroin directly relevant to the charged conspiracy); and *United States v. Lerma-Plata*, 919 F.Supp. 2d 152, 156 (D.D.C. 2013) (admitting evidence of conversations between defendant and a co-conspirator about money laundering and firearms trafficking because these acts were "uncharged acts performed contemporaneously with the charged crime [that] facilitated the commission of" the charged crime). Here, none of Mr. Oseguera-Gonzalez's alleged post-arrest conduct or statements can be said to have been performed contemporaneous to the charged crimes to facilitate the charged crimes. For that reason, all of the Government's proffered post-arrest conduct and statements is extrinsic and not intrinsic to the charged crimes.

## 2. The Evidence of Other Crimes is Not Admissible Under Rule 404(b)

Generalized evidence of a defendant's "bad character" is forbidden under the Federal Rules of Evidence. Under Rule 404(a), "[e]vidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion[.]" Fed. R. Evid. 404(a). Likewise, Rule 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." *Id*. So called "propensity" evidence is excluded

not because it is irrelevant, but because "it is said to weigh too much with the jury and to so over persuade them as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge." *Oseguera-Gonzalez*, 507 F.Supp.3d at 147 (citing *Michelson v. United States*, 335 U.S. 469, 475-76 (1948)). Rule 404(b) thus attempts to head off the risk that, presented with such evidence of a defendant's uncharged bad conduct, "a jury [might] convict for crimes other than those charged–or that uncertain of guilt, it will convict anyway because a bad person deserves punishment." *Id*. (citing *Old Chief*, 519 U.S. 181) (other citation omitted).

Thus, if the Government wishes to offer proof of alleged wrongs or acts under Rule 404(b), it must first convince the Court that the evidence is probative of some material issue other than character. *See United States v. Clarke*, 24 F.3d 257, 264 (D.C. Cir. 1994). Moreover, to be deemed admissible under Rule 404(b), evidence of prior bad acts must also be sufficiently *similar* to the crime charged. *See United States v. Foskey*, 636 F.2d 517, 524 (D.C. Cir. 1980); *United States v. Nicely*, 922 F.2d 850, 856 (D.C. Cir. 1991) ("A fundamental tenet in or criminal jurisprudence is that a jury should not premise its verdict upon a general evaluation of a defendant's character but rather upon an assessment of the evidence relevant to the particular crime with which the defendant is presently charged.") (internal citation omitted).

"[S]imilar act evidence is relevant only if the jury can reasonably conclude that the act occurred and that the defendant was the actor." *See Huddleston v. United States*, 485 U.S. 681, 689 (1988). And "[w]hen the relevance of evidence depends on whether a fact exists, proof must be introduced sufficient to support a finding that the fact does exist." Fed. R. Evid. 104(b) (2024). Accordingly, as required by Rule 104(b) and *Huddleston*, the Court must make a threshold finding that the jury could reasonably find the conditional fact by a preponderance of the evidence. *See Huddleston*, 485 U.S. at 690; *see also United States v. Roberson*, 581 F.Supp.3d 65, 76 (D.D.C. 2022). And of course, "the burden is on the introducing party to establish [threshold] relevancy." *See Dowling v. United States*, 493 U.S.342, 351 n.3 (1990). Mr. Oseguera-Gonzalez maintains that the Court cannot make the

required threshold finding here, nor can the Government sustain its threshold burden, with regard to all of the Government's proffered other act evidence given the source of the information is apparently from one or two cooperating witness not yet disclosed to the defense that are seeking benefits from the Government, and the nature of the information is not from their personal experience or personally witnessing the proffered acts, but rather is from hearsay, and likely hearsay upon hearsay.  Again, the defense has not been provided with any reports of investigation that relate to the proffered act evidence with the exception of the post-arrest conduct and statements which were the subject of the Government witness who testified previously. The proffered other acts here are simply egregiously unreliable and extremely inflammatory.

Separate and apart from the threshold requirement Rule 104(b), "[B]ecause of the *enormous danger of prejudice* to the defendant that evidence of other crimes creates," the proffered evidence must also be "necessary" as well as "clear and convincing" to gain admission, lest the jury will "draw illogical and incorrect inferences from such evidence." *United States v. Shelton*, 628 F.2d 54, 56 (D.C. Cir. 1980) (emphasis added) (internal citations omitted).

The District Court is the gatekeeper with regard to all evidence including evidence proffered pursuant to Rule 404(b), and the District Court must exclude such evidence if its admission would result in an unfair trial for the defendant. Even if the Court determines that the proffered the evidence has a legitimate purpose under Rule 404(b), the Court must nevertheless exclude that evidence if it fails Rule 403's balancing test. *See Clarke*, 24 F.3d at 264. Indeed, the D.C. Circuit has "repeatedly emphasized the narrow scope of the 'bad acts' evidence exceptions under Rule 404(b) . . . and the continuing applicability of the Rule 403 limitation on unduly prejudicial evidence even if an exception is satisfied." *Nicely*, 922 F.2d at 856.

The Government has argued here that each of the four categories of other act evidence *i.e.*, violence, corruption, other controlled substances, and post-arrest conduct and statements, are admissible under Rule 404(b) as "evidence to establish motive, opportunity, intent,

preparation, knowledge, identity, absence of mistake, and lack of accident. Although required by Rule 404(b), the Government sets forth no "reasoning that supports the purpose" of the proffered evidence. Pursuant to Rule 404(b)(3)(B), the Government is required to "articulate in [a] notice the permitted purpose for which the prosecutor intends to offer the evidence ***AND*** the reasoning that supports the purpose." Rule 404(b)(3)(B) (2024) (emphasis added); *see also United States v. Dupree*, 2024 WL 2110137 *4 (D.D.C. 2024). While the Government has set forth the permitted purpose for the other act evidence by citing all the permitted purposes in Rule (404)(b)(2), they have not set forth any "reasoning that supports" each purpose. Thus, without the Government specifically setting forth the reasoning Mr. Oseguera-Gonzalez cannot respond.

The Government's lack of disclosure related to the "reasoning" required by Rule 404(b)(3)(B) here, is similar to that in *United States v. Sanchez*, 2011 WL 6090164 (C.D.C.A. 2011), where the District Court denied the Government's request to admit 404(b) evidence. In *Sanchez*, the defendant was charged with a conspiracy to distribute methamphetamine, and the Government sought to introduce evidence of other narcotics transactions orchestrated by the defendant. *Id*. at 1. The Government contended that "the other acts are admissible under Rule 404(b) to show Defendant's motive, opportunity, intent, preparation, plan, knowledge, and absence of mistake or accident." *Id*. at 8. In determining the Government's notice was inadequate, the District Court wrote:

> The Government has taken a shotgun approach to this argument, regurgitating all but one of the Rule 404(b) exceptions and asserting in a conclusory way that all of the proffered evidence is admissible based on all of those exceptions. The Government does not specify with any particularity which of the other acts in its catalog of proposed testimony are relevant, and does not tie any of the acts to any particular 404(b) exception and explain how they fit. This showing is simply inadequate. By failing to tie specific evidence to specific exceptions and explaining how the exception applies, the Government has not given Defendant meaningful notice of what its arguments will be and has not given the Court any specific issues to rule upon. It is not the Defendant's burden to parse through the array of proffered evidence, anticipate what the Government's unarticulated theories are, and oppose all of them. Nor is it the Court's job to parse through the evidence in an attempt to search for reasons to admit slivers of it. Finally, in addition to failing to argue with specificity how the 404(b) exceptions apply, the Government has wholly failed to reckon with Rule 403.

*Id.* at 8. Here, the Government's "shotgun" approach to the 404(b) notice requirement should be rejected as it was rejected by the District Court in *Sanchez*. Here, as in *Sanchez*, the Government has failed to specify with any particularity how the prior acts fit each exception. In addition, here, as in *Sanchez*, the Government has wholly failed to reckon with Rule 403. Here, the same result should be reached as in *Sanchez*, and the Government's request to admit any of the proffered other act evidence denied.

### 3. The Evidence of Other Crimes is Not Admissible Under Rule 403

Even if the Court finds that the Government's proffered evidence is somehow admissible under Rule 404(b), all of the proffered evidence should still be excluded under Rule 403, as it all is unfairly prejudicial to Mr. Oseguera-Gonzalez in that the probative value of the evidence is substantially outweighed by the prejudicial effect. The Court must weigh the probative value of the evidence against the countervailing considerations enumerated in Rule 403 to gauge its admissibility. "Introducing evidence of prior bad acts for a legitimate purpose . . . does not automatically cleanse the evidence of its unique quality of unfairly prejudicing the rights of the accused." *Huddleston*, 485 U.S. at 690. "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." *Oseguera-Gonzalez*, 507 F.Supp.3d at 146 (citing Fed. R. Evid. 403). Notably, Rule 403 renders relevant evidence inadmissable only upon a showing that it presents a risk of "unfair prejudice," *i.e.* prejudice that is "compelling or unique," or has "an undue tendency to suggest decision on an improper basis." *See id*. (citations omitted).

First, with regard to other act evidence proffered by the Government related to violence and kidnappings[3] this evidence is generally vague and unspecific, *e.g.*, Mr. Oseguera-Gonzalez "ordered at least 100 people to be murdered," and "was involved in

---

[3] Which are encompassed in three of the Government's four proffered areas of other acts *i.e.* violence, other controlled substances, and post-arrest conduct and statements.

kidnappings." Thus, the evidence is of limited probative value. The inflammatory nature of the allegations makes clear the probative value is substantially outweighed by the unfair prejudice Mr. Oseguera-Gonzalez will suffer if this evidence is admitted. As in *United States v. Germine*, 2024 WL 36003 * 7, "the Court should be mindful that [the] defendant[] [has] not been charged with kidnaping [] and that ceratin kidnaping evidence might be unfairly prejudicial under Rule 403." As the Court should be mindful of kidnaping as unfairly prejudicial *a fortiori* it must be mindful of murders, which again Mr. Oseguera-Gonzalez has not been charged with in this case. The evidence of violence in the form of kidnaping and murder is simply not similar to the crimes charged in the Superseding Indictment, and under Rule 403 must be precluded. If "unfair prejudice" means anything, it "means prejudice above and beyond the normal 'harm to the defense' that other crimes evidence inevitably causes." *See United States v. Olaitan*, 2023 WL 4993525 *2 (D.D.C. 2023) (citations omitted). Here, no doubt the alleged other act evidence involving kidnappings and murders falls within this category.

The situation here is unlike, for example, *Vasquez*, where the Court determined the other act evidence proffered under Rule 404(b) was not to be excluded under Rule 403, as the proffered other act evidence was "of the same nature as the intrinsic evidence that would be used to prove the methamphetamine conspiracies–namely business records and testimony regarding chemical shipments and communications ordering them–and [was] 'no more serious than that charged in the indictment.'" *Vazquez*, 2023 WL 4488910 *6 (citing *United States v. Masquera-Murillo*, 153 F.Supp 3d 130, 185 (D.D.C. 2015). Kidnaping and murder were not charged here and are obviously much more serious than what has been charged. Evidence of this type suggests more than just a "record of general misbehavior" while creating a "vague picture of the defendant as someone who deserves punishment, regardless of whether the particular crime was ever committed." *See United States v. Olaitan*, 2023 WL 4993525 *7 (D.D.C. 2023) (citing *United States v. Lavelle*, 751 F.2d 1266, 1278 (D.C. Cir. 1985) overruled on other grounds by *Huddleston*, 485 U.S. at 690).

Rather the case here is similar to that in *Oseguera-Gonzalez*, 507 F.Supp.3d at 166, wherein the Court determined evidence of keeping a ledger for the CJNG and other personal involvement with the CJNG must be excluded under Rule 403 as "[t]his evidence present[ed] a substantial risk that a jury would focus on perceived culpability for keeping ledgers for a drug trafficking organization and other uncharged personal involvement with the CJNG rather than on the relevant issues at trial pertaining to defendant's" charged offenses. The Court was concerned there was a risk that the "jury would 'convict for crimes other than those charged–or that, uncertain of guilt, [] will convict anyway because a bad person deserves punishment.'" *Id*. (citations omitted). Again, *a fortiori* this analysis applies here in relation to uncharged kidnappings or murders.

In evaluating Mr. Oseguera-Gonzalez's objection to the totality of the Government's proffered 404(b) evidence in the context of Rule 403, the Court must consider that the Government is not seeking to admit eye witness testimony or percipient witness testimony that Mr. Oseguera-Gonzalez engaged in kidnaping, murder, corruption etc..., the evidence is proffered as hearsay (maybe upon hearsay) from cooperating witnesses seeking to receive a benefit from the Government. This is a distinguishable situation, for example, where the D.C. Circuit in affirming a District Court decision to admit eyewitness testimony of a prior drug sale where the defendant was charged with possession of a controlled substance with the intent to distribute. *See United States v. Harrison*, 679 F.2d 942, 948 (D.C. Cir. 1982). In *Harrison*, in affirming the District Court's decision to admit the evidence, the D.C. Circuit emphasized that there was "nothing 'unfair' in admitting *direct evidence* of a defendant's past acts by an *eyewitness* thereto that constituted substantive proof of the relevant intent alleged in the indictment." *Id*. at 948 (emphasis added). Here, the Government's proffered other act evidence is not reliable eyewitness testimony bearing directly on intent, its unreliable and inflammatory evidence not directly related to the charges in the Superseding Indictment.

Second, with regard to the Government's proffered other act evidence that relates to bribery of Mexican law enforcement officers or engaging in the distribution of fentanyl or

marijuana, while Mr. Oseguera-Gonzalez would concede this conduct is less inflammatory than the allegations of kidnaping and murder, the same 403 analysis above is equally applicable to these acts, and thus, these acts should also be excluded pursuant to Rule 403.

Third, and finally, Mr. Oseguera-Gonzalez maintains that the Government's proffered post-arrest conduct and statement evidence all derived from the cooperating witness who previously testified is so unreliable and untrustworthy that it should be excluded under Rule 403. "[The Supreme] Court has long recognized the 'serious questions of credibility' informers pose." *Banks v. Dretke*, 540 U.S. 668 (2004). "The likelihood that evidence gathered by [a] self-interested jailhouse informant[] may be false cannot be ignored." *See Kansas v. Ventris*, 556 U.S. 586, 1849 n.2 (2009).

"[A] conviction obtained through use of false evidence [] must fall. The same result obtains when the [Government], although not soliciting false evidence, allows it to go uncorrected when it appears." *Napue v. Illinois*, 360 U.S. 264, 269 (1959). "[T]he principle that [the Government] may not knowingly use false evidence, including false testimony, to obtain a tainted conviction, [is] implicit in any concept of ordered liberty." *See Giles v. Maryland*, 386 U.S. 66, 74 (1967). "A lie is a lie, no matter what its subject, [and] the use of known lies to get a conviction deprives a defendant of his constitutional right to due process of law." *United States v. LaPage*, 231 F.3d 488, 491 (9th Cir. 2000) (citations omitted).

Here, as the use of false testimony would deprive Mr. Oseguera-Gonzalez of due process, it would equally cause unfair prejudice if admitted at trial. Here, none of the information offered by the Government's cooperating witness has been corroborated independently, and although the cooperating witness had begun cooperating in 2018, the witness only first mentioned any of Mr. Oseguera-Gonzalez's post-arrest conduct and statements that occurred in 2015, to the Government in 2021. And it goes without saying that the witness is seeking a benefit. Under Rule 403 it is clear evidence that is misleading to the jury must be excluded, and thus, testimony that is false is clearly misleading, and must be excluded under Rule 403 as well.

# **CONCLUSION**

For the reasons stated above, Mr. Oseguera-Gonzalez moves this Court to grant his motion to preclude the Government's proposed 404(b) evidence.

Respectfully submitted,

/s/ Anthony E. Colombo, Jr.

Dated: June 26, 2024

**ANTHONY E. COLOMBO, JR.**

Attorney for Mr. Oseguera-Gonzalez