**ANTHONY E. COLOMBO, JR.**
California State Bar No. 218411
The Senator Building, Ste. 312
105 West "F" Street
San Diego, CA 92101
Tel:   (619) 236-1704
Email: anthonycolombolegal@gmail.com


Attorney for Ruben Oseguera-Gonzalez


UNITED STATES DISTRICT COURT

DISTRICT COURT OF COLUMBIA

(HONORABLE BERYL A. HOWELL)


| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>              Plaintiff, )<br>)<br>v. )<br>)<br>RUBEN OSEGUERA-GONZALEZ, )<br>              Defendant. )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>───────────────────── ) | CASE NO. 16cr00229-BAH<br><br><br><br><br>NOTICE OF MOTION AND MOTION TO EXCLUDE EXPERT TESTIMONY |

TO:   KATE M. NASEEF, TRIAL ATTORNEY, UNITED STATES ATTORNEY'S OFFICE; JONATHON HORNOK, TRIAL ATTORNEY, UNITED STATES ATTORNEY'S OFFICE; AND KAITLIN SAHNI, ACTING DEPUTY CHIEF, UNITED STATES ATTORNEY'S OFFICE:

## I.

## MOTION TO EXCLUDE EXPERT TESTIMONY

### A.   Government's Notice

On June 14, 2024, the Government filed a Notice of Expert Testimony Pursuant to Federal Rule of Criminal Procedure 16(G). ECF No. 134.  The Government noticed that it

intended to offer expert testimony during its case-in-chief at trial pursuant to Federal Rules of Evidence 702, 703, and 705. *Id*. Specifically, the Government noticed three purported experts and summarized their anticipated testimony:

**(I)**   <u>**John Miller**</u> - a Firearms Enforcement Officer for Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF):

    **A.**   <u>**Anticipated Testimony**</u>

The Government proffers that John Miller will testify to what weapons are covered by Count Two of the Superseding Indictment, how those weapons operate, and the kinds and source of weapons used by Mexican Drug Cartels.

**(II)**   <u>**Steve Paris**</u> - a Special Agent in The Los Angeles Field Division of the Drug Enforcement Administration (DEA);

    **A.**   <u>**Anticipated Testimony**</u>

The Government proffers that Steve Paris will testify to the following:

**1.**   The history of drug cartels in Mexico, including the origin of CJNG, and will explain the methods cartel leaders have developed to gain and maintain control of territory and the illicit drug trade and to avoid capture by law enforcement. Specifically, he will explain how the CJNG and other drug cartels have used weapons, violence, bribery, compartmentalization, obstruction of justice, secrecy, and coded communication to move drugs through Mexico into the United States and expatriate drug proceeds from the United States.

**2.**   He will explain what substances are controlled under U.S. law and how those substances are manufactured and imported into the United States for distribution. Specifically, he will explain what cocaine, methamphetamine, fentanyl, and marijuana look like, how

16cr00229-BAH

it is packaged, transported, the various prices for each, and how it affects the human body when consumed.

**3.** He will examine Blackberry Messenger (BBM) communications and offer his opinion on their meaning which contain coded language.

**(III)** **Judi O'Brien** - a translator for the Narcotic and Dangerous Drug Section of the Criminal Division in the Department of Justice.

**A.** **Anticipated Testimony**

The Government proffers that Judi O'Brien will testify to the accuracy of translations of BBM communications, and other documents.

**B.** **Argument**

**1. Procedural Challenge**

**a.** **The Government's Notices for Paris and O'Brien are Deficient and the Proffered Expert Testimony Must be Excluded[1]**

The Government's disclosure notice with regard to Steve Paris and Judi O'Brien is deficient in that the Government has not provided which BBMs Paris intends to decode that were translated, or a translation were reviewed for accuracy, by O'Brien. Without providing the particular BBMs and the words and phrases that will be decoded, the Government has not provided the witnesses' opinion or the bases and reasons for those opinions. In this case the Government has provided disclosure of thousands of intercepted BBMs, in fact, the line sheets from the BBMs occupy almost twenty bankers boxes. The disclosure here, however, is about the same as telling someone you are going to pick some words out of a Spanish Dictionary to be translated and defined, but then that person has to guess as to which words those might be. Adequate disclosure requires the Government provide which BBMs were

---

[1] Mr. Oseguera-Gonzalez combines the two experts together as O'Brien is relied upon by Paris with regard to the translations and transcripts of the BBMs, and thus, disclosure for one is disclosure for both in the context of what BBMs were reviewed and will be the subject of proffered expert testimony.

translated and transcribed and which words or phrases within those BBMs are to be decoded, their decoded meaning, and why its been decoded in such a way.

Furthermore, here, the Government's disclosure doesn't at all narrow the focus of Paris' testimony to testifying about coded language that relates to drug trafficking or the conspiracy charged in this case. The Government's disclosure doesn't at all define the category of the communications to be decoded. *See* ECF No. 134 at 7.

In addition, here, the Government has also failed to provide a *Curriculum Vitae* ("C.V.") for Steve Paris or any reports that would explain commonly used code words employed by individuals engaged in drug trafficking, or unique code words employed by the co-conspirators in the alleged conspiracy.

Federal Rule of Criminal Procedure 16(a)(1)(G) mandates that "[a]t the defendant's request, the government must give to the defendant a written summary of testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case in chief at trial. . . .  The summary provided under this subparagraph must describe the witnesses' opinions, the bases and the reasons for those opinions, and the witnesses' qualifications." *See* Fed. R. Crim. Proc. 16(a)(1)(G) (2024).  The obligation to provide this material is ongoing and continuing prior to and during trial.  When a party fails to comply with the discovery rules set forth in Rule 16, exclusion is the proper remedy. *See* Fed. R. Crim. P. 16(d)(2) (2024); Advisory Committee Notes to 1997 Amendment (asserting that "[u]nder rule 16(a)(1)(E), (currently (G)), as amended in 1993, the defense is *entitled* to disclosure of certain information about expert witnesses which the government intends to call during the trial" (emphasis added)); *see also United States v. Slough*, 51 F.Supp.3d 1, 5 (D.C.C. 2014) (citing *United States v. Day*, 524 F.3d 1361 (D.C. Cir. 2008) (holding that a district court was correct to exclude testimony that did not meet the Rule 16 standard)).

"[Rule 16] is intended to minimize surprise that often results from unexpected expert testimony, reduce the need for continuances, and to provide the opponent with a fair opportunity to test the merit of the expert's testimony through focused cross-examination." *Slough*, 51 F.Supp.3d at 8 (citing Fed. R. Crim. P. 16, 1993 advisory committee's note).

*16cr00229-BAH*

"The requirement that a written summary of an expert's testimony must be provided 'is intended to provide more complete pretrial preparation by the requesting party.'" *United States v. Naegele*, 468 F.Supp.2d 175, 176 (D.C.C. 2007). "'[M]ost important, [a] summary of the bases of the expert's opinion' must be provided." *Id*.

Rule 16 does require a sufficient summary of the expert's testimony, and not simply a list of testimony topics. *See United States v. Rogers*, 2006 WL 5249745 *3 (D.C.C. 2006) (citing *e.g.*, *United States v. Duvall*, 272 F.3d 825, 828 (7th Cir. 2001) (holding that a Rule 16 statement was insufficient where it stated the expert "will identify code language, the manner in which methamphetamine is distributed, tools of the trade in the distribution of methamphetamine, street prices of methamphetamine and the manner in which 'cut' is added to methamphetamine to increase the amount of profit in the methamphetamine business [and] testifying concerning amounts of methamphetamine an individual might have for distribution as opposed to personal use"); *United States v. Cross*, 113 F.Supp.2d 1282, 1286 (S.D.Ind. 2000) (expert notice wholly failed to describe the bases and reasons for opinions, and offered only a hint of the anticipated testimony); *United States v. Concessi*, 38 Fed. Appx. 866, 868 (4th Cir. 2002) (expert testimony excluded for failure to describe expert's opinion or provide the bases and reasons for the expert's opinions).

The District of Columbia Circuit Court has "specifically held that, in order to justify exclusion of evidence as a sanction for failure to comply with a discovery rule, the trial judge need not find that the noncomplying counsel acted in "bad faith." *Day*, 524 F.3d at 59 (citing *United States v. Johnson*, 970 F.2d 907, 911 (D.C. Cir. 1992)). Although no finding of bad faith need be made to justify exclusion of the expert testimony as a sanction, here, given that the BBMs were intercepted in 2011 and 2012, the case indicted in 2017, and that the case has been pending for several years, the Government should at the time of their disclosure provided exactly which BBMs were translated and transcribed which they intend for their expert to decode at trial. Here, however, this information was intentionally withheld and intentionally not provided. Here, the Court can conclude as the Circuit Court concluded in *Day*, "judgments were made along the way that were either intended to or had to be

understood as having the effect of putting [the defendant] in a box that [is] prejudicial and unfair and which ha[s] an impact [on] the integrity of the adversary process." *Day*, 524 F.3d at 59.  Without the list of terms or phrases the Government's proffered expert intends to decode, Mr. Oseguera-Gonzalez cannot consult his own expert to prepare rebuttal testimony and further cannot properly formulate cross-examination.  Mr. Oseguera-Gonzalez also cannot determine what if any Rule 702 challenge might be appropriate to the translated and decoded words or phrases contained in the BBMs without first knowing what they actually are and what the opinion is in relation to them.  For example, are the coded terms and phrases known and established drug codes heard before, or are they codes used for the first time in this particular conspiracy charged here?  And if they are terms and phrases heard for the first time or unique to the conspiracy charged here, what is the methodology used by Steve Paris that will support his testimony and opinion?  *See United States v. Hermanek*, 289 F.3d 1076, 1090-97 (9th Cir. 2002) (drawing the distinction between commonly used drug terms and those encountered in the first instance and recognizing error in the district court not requiring a proper foundation for the latter).  Here, there is simply no excuse for the Government to have not provided the BBMs that were translated and transcribed and which coded terms within each BBM would be the subject of their experts' opinions.  Requiring this disclosure simply does not create an "unreasonable procedural hurdle," as it is clearly something the Government must do prior to trial.

Here, the situation is exactly the type that was concerning in *Day*, and this Court would have found concerning if it existed.  *See United States v. Mosquera-Murillo*, 153 F.Supp.3d 130, 210-11 (D.C.C. 2015).  In *Mosquera-Murillo*, the defendants made a procedural challenge pursuant to Rule 16 relying upon *United States v. Day*, 524 F.3d 1361 (D.C. Cir. 2008), for a delayed disclosure of expert testimony.  In denying defendants' motion, this Court determined:

> Here, by contrast, the Government identified [the] Special Agent [] as an expert witness more than three months prior to trial, [] and the defendants do not contend that [the] Special Agent's [] report is so vague as to prevent the defendants from discerning the conclusions to

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

which he would testify[.] Likewise, the defendants do not suggest they were materially prejudiced by the timing of the disclosure.

*Mosquera-Murillo*, 153 F.Supp.3d at 210-11.  In this case, similar to *Day*, and in contrast to *Mosquera-Murillo*, but of concern to this Court, while the disclosure of the proffered expert's name has been provided by the Government in advance of trial, the Government's disclosure is vague and entirely non-existent with regard to the BBMs to be decoded.  This lack of disclosure not only puts Mr. Oseguera-Gonzalez "in a box," like in *Day*, it creates an anechoic chamber.[2]  As result of the vague non-disclosure Mr. Osguera-Gonzalez cannot adequately present a Rule 702 challenge, he cannot consult his own expert to establish rebuttal, and he cannot adequately formulate cross-examination, the "'greatest legal engine ever invented for the discovery of truth.'" *Lilly v. Virginia*, 527 U.S. 116, 124 (1999) (citing *California v. Green*, 399 U.S. 149, 158 (1970) (footnote and citation omitted)).  Here, in addition and aggravation, and not present in *Day* or *Mosquera-Murillo*, is that the Government has also not provided a C.V. for Steve Paris nor have they provided any reports of investigation that outline commonly used codes used by individuals engaged in drug trafficking that he might rely upon in rendering his opinion.

Courts have urged caution and limited the type of testimony proffered by the Government, and Rule 16 disclosure requirements play a crucial role in determining what is, and was is not, appropriate expert testimony.  *See e.g.*, *United States v. Mejia*, 545 F.3d 179, 190 (2nd Cir. 2008); *see also United States v. Dukagjini*, 326 F.3d 45 (2nd Cir. 2003) (expert testifying about the meaning of conversations in general, beyond the interpretation of code words improper and its reliance upon hearsay violated the 6th Amendment); *United States v. Freeman*, 488 F.3d 1217, 1227 (9th Cir. 2007) ("The fact that [the officer expert] possessed specialized knowledge of the particular language of drug traffickers did not give him carte blanche to testify as to the meaning of other words in recorded telephone calls without regard to reliability or relevance."); *United States v. Lombardozzi*, 491 F.3d 61, 72

---

[2] Microsoft created an anechoic chamber which is the world's most quiet room.  *See* https://www.cnn.com/style/article/anechoic-chamber-worlds-quietest-room/index.html.

16cr00229-BAH

(2nd Cir. 2007) (improper expert testimony where in stating defendant was a soldier in the Gambino crime family expert communicated out-of-court testimonial statements of cooperating witnesses and confidential informants directly to the jury in the guise of expert opinion).

The *Mejia* court's concern is appropriately considered here by this Court:

> Yet despite the utility of, and need for, expertise of this sort, its use must be limited to those issues where sociological knowledge is appropriate. An increasingly thinning line seperates the legitimate use of an officer expert to translate esoteric terminology or to explicate an organization's hierarchical structure from the illegitimate and impermissible substitution of expert opinion for factual evidence. If the officer strays beyond the bounds of appropriately 'expert' matters, that officer becomes, rather than a sociologist describing the inner workings of a closed community, a chronicler of the recent past whose pronouncements on elements of the charged offense serve as shortcuts to proving guilt. As the officer's purported expertise narrows from 'organized crime' to this 'particular gang,' from the meaning of 'capo' to the criminality of the defendant, the officer's testimony becomes more central to the case, more corroborative of the fact witnesses, and thus more like a summary of the facts than an aide in understanding them. The officer expert transforms into the hub of the case, displacing the jury by connecting and combining all other testimony and physical evidence into a coherent, discernible, internally consistent picture of defendant's guilt.
>
> In such instances, it is a little too convenient that the Government has found an individual who is an expert on precisely those facts that the Government must prove to secure a guilty verdict–even more so when that expert happens to be one of the Government's own investigators. Any effective law enforcement agency will necessarily develop expertise on the criminal organizations it investigates, but the primary value of that expertise is in facilitating the agency's gathering of evidence, identification of targets for prosecution, and proving guilt at the subsequent trial. When the Government skips the intermediate steps and proceeds directly from internal expertise to trial, and when those officer experts come to court and simply disgorge their factual knowledge to the jury, the experts are no longer aiding the jury in its factfinding; they are instructing the jury on the existence of the facts needed to satisfy the elements of the charged offense. . . . Th[e] Court has not been blind to these risks.

*Mejia*, 545 F.3d 179, 190-91.

Here, given the importance of the purported testimony and the Government's intentional decision not to comply with its disclosure requirements, the fair and just sanction is to preclude Steve Paris' proffered expert testimony, and in turn preclude O'Brien's testimony in relation to the BBMs.

## 2. **Substantive Challenge**[3]

Rule 702 governs admissibility of expert testimony at trial.  *See Slough*, 51 F.Supp.3d at 4.  Under Rule 702, a "'witness who is qualified as an expert by knowledge, skill, experience, training, or education'" may testify provided that: '(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.'" *United States v. Ausby*, 436 F.Supp. 3d 134, 161 (D.C.C. 2019) (citing Fed. R. Evid. 702).  The party seeking to introduce expert testimony bears the burden of demonstrating that these requirements are met.  *Id*. (citing *United States v. McGill*, 815 F.3d 846, 903 (D.C. Cir. 2016) (citing *Mesiter v. Med. Eng'g Corp.*, 267 F.3d 1123, 1127, n. 9 (D.C. Cir. 2001)).

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 1993), the Supreme Court made clear that district courts have a "gatekeeping responsibility" to "ensure that any expert testimony is based on 'scientific knowledge' that 'will assist the trier of fact to understand or determine a fact in issue.'" *Id*. (citing *McGill*, 815 F.3d at 903 (quoting *Daubert*, 509 U.S. at 592); *see also United States v. Nwoye*, 824 F.3d 1129, 1136 (D.C. Cir. 2016)).  "In other words, courts must engage in a two-part analysis for admissibility under Rule 702 by determining "first whether the expert's testimony is based on 'scientific knowledge;' and second, whether the testimony 'will assist the trier of fact to understand or determine a fact in issue.'" *Id*. (citing *Ambrosini v. Labarraque*, 101 F.3d 129, 133 (D.C. Cir. 1996) (quoting *Daubert*, 509 U.S. at 592); *see also United States v. Hite*, 769 F.3d 1154, 1169 (D.C. Cir. 2014)).

In performing its gatekeeping function to determine whether expert testimony is scientifically valid, courts "must focus 'soley on principles and methodology, not on the

---

[3] To the extent the Court disagrees with Mr. Oseguera-Gonzalez's substantive challenges, Mr. Oseguera-Gonzalez would request a *Daubert* hearing be held outside the presence of the jury.

conclusions that they generate.'" *Id*. (citing *Ambrosini*, 101 F.3d at 133 (quoting *Daubert*, 509 U.S. at 595); *see also Raynor v. Merrell Pharm. Inc.*, 104 F.3d 1371, 1375 (D.C. Cir. 1997)).   In *Daubert*, the Supreme Court articulated a non-exhaustive list of factors to consider in appraising scientific validity, including whether a "theory or technique": (1) "can be (and has been) tested;" (2) "has been subjected to peer review and publication;" (3) has a "known or potential rate of error;" (4) has "standards controlling the technique's operation;" and (5) "finds general acceptance in the relevant scientific community."  *Id*. (citing *Daubert*, 509 U.S. at 593-94; *see also Ambrosini*, 101 F.3d at 134).

However, the Supreme Court in *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999), clarified that *Daubert* could cover all expert testimony, not just science based testimony.  *See Slough*, 51 F.Supp.3d at 4.  "Rule 702 imposes upon trial judges a two-pronged test: they must ensure that all expert testimony is (1) reliable (meaning the expert is qualified to issue the opinion and the opinion itself has an acceptable basis) and (2) relevant (meaning it will help the trier of fact understand evidence or determine disputed facts)."  *Id*. (citing *generally Daubert*, 509 U.S. 579).  Thus, "[e]xpert testimony must be both relevant to a material issue and reliable.*"  United States v. Mohammed*, 2008 WL 552330 *4 (citing *Daubert*, 509 U.S. at 598).  The Federal Rules of Evidence define "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  *Id*. (citing Fed. R. Evid. 401).

### a. Testimony Relating to Proffered Expert John W. Miller's Knowledge and Opinion in Relation to Weapons used by Mexican Drug Cartels is Neither Reliable or Relevent and Must be Excluded

The Government has proffered that John Miller, a Firearms Enforcement Officer for the ATF, will testify about the "kinds of weapons drug cartels in Mexico used and the potential sources of those weapons."  *See* ECF No. 134 at 2.  The Government explains, "This background information will help the jury understand the kinds of weapons available

to a drug cartel in Mexico, which differs from the kinds of weapons available to the public in the District of Colombia [sic]." *Id*. at 3.

The Government's purported testimony is neither reliable nor relevant.  First, the proffered testimony is not reliable as ATF Agent Miller does not appear qualified to testify about the kinds of weapons accessible or used by Mexican drug cartels.  Nothing in his disclosed background, experience, training, or C.V., supports or indicates he been involved with any investigations relating to Mexican drug cartels.[4]  Second, Mr. Oseguera-Gonzalez maintains that any testimony relating to the kinds of guns available to Mexican drug cartels and how they might differ from that accessible to the public in the District of Columbia is not relevant.  "Relevant evidence" is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence," and here it would not seem stating that Mexican drug cartels have access to a particular gun, or that the public in the District of Columbia does not have access to that gun, does not make any fact of consequence in this case more or less probable.  Mr. Oseguera-Gonzalez also maintains that whatever minimum probative value this testimony may have is substantially outweighed by the danger of unfair prejudice and should be excluded under Rule 403.

### b. Testimony Relating to Proffered Expert Steve Paris' Knowledge and Opinion as to How Controlled Substances Affect the Human Body When Consumed is Not Reliable or Relevant and Must be Excluded

The Government has proffered that Steve Paris will testify to "how [cocaine, methamphetamine, fentanyl, and marijuana] [sic] affects the human body when consumed." *See* ECF No. 134 at 6.  First, the proffered testimony of Steve Paris is not reliable as he does not appear qualified to testify to the medical effects of cocaine, methamphetamine, fentanyl, and marijuana on the human body when consumed.  Nothing in the background proffered

---

[4] In addition, nothing in the accessible transcripts in the cases ATF Agent Miller testified in, *e.g.*, *United States v. Perez*, 17cr314-JAK-4 (C.D. Cal.), and *United States v. Orense*, 21cr379-VSB (S.D.N.Y.), support any background related to Mexican drug cartels.

*16cr00229-BAH*

by the Government supports Steve Paris has any ability to testify to what would otherwise be left to a trained medical professional.  Unless Paris is going to testify from his own personal experience ingesting each of the enumerated controlled substances, nothing within his background, training or experience would allow him to testify to the how different controlled substances effect the human body when consumed.  Second, there is simply no relevancy to this proffered testimony.  How the human body metabolizes different controlled substances when consumed is simply not a fact of consequence at issue in this case.  Nor does it make the existence of any fact at issue more or less probable.  It is, simply put, irrelevant.  Further, Mr. Oseguera-Gonzalez maintains that the proffered testimony must also be excluded pursuant to Rule 403 as it would be unfairly prejudicial and a waste of time.

### c.   Given the Government's Failure to Comply with Rule 16, it Cannot be said that Any of Steve Paris Proffered Testimony that Relates to the BBMs is either Reliable or Relevant

The Government has proffered that "Mr. Paris will examine exhibits that have been admitted to into evidence during the trial and that pertain to [BBM] communications.  He will then give his opinion regarding the meaning of those communications, which contain coded language."  ECF No. 134 at 7.  As noted above, the Government has not provided notice of which BBMs would be the subject of Paris' testimony, and which words or phrases within those BBMs are coded language in his opinion, and how, if at all, they relate to drug trafficking or the charges in this case.  The Government should have provided a list of the BBMs and the codes or phrases.  *See Hermanek*, 289 F.3d at 1092-92 (recognizing that the Government should provide a list of terms in its offer of proof).  Given the Government's failure to comply with Rule 16, Mr. Oseguera-Gonzalez would be forced to guess which of the thousands of intercepted BBMs in the Government's expert opinion contain coded language relevant to the case.  As a result, should the Court allow the Government to supplement its disclosure without the sanction of exclusion as requested by Mr. Oseguera-Gonzalez, Mr. Oseguera-Gonzalez would reserve the right to file an appropriate challenge under Rule 702 if necessary.

### d. **To the Extent Proffered Expert Steve Paris will Testify about the** *Modus Operandi* **used by Mexican Drug Cartels, Mr. Oseguera-Gonzalez would Request a Limiting Instruction to Ensure Rule 704 is Not Violated**

The Government has proffered what is otherwise known as *modus operandi* testimony in relation to the CJNG, and Mexican drug cartels.  *See* ECF No. 134 at 6.  To the extent the Court determines this testimony to be both reliable and relevant, Mr. Oseguera-Gonzalez would request a limiting instruction to ensure that Rule 704 is not violated.

Federal Rule of Evidence 704(b) prohibits expert witnesses from stating opinions "about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense."  *See Diaz v. United States*, 602 U.S. __ (2024).  Rule 704(b) bars "opinions about the defendant."  *Id*.

Here, while the Government's expert may testify to the operations of a drug cartel in general, the expert cannot testify about the defendant individually.  *See e.g.*, *United States v. Martinez*, 476 F.3d 961,967-68 (D.C. Cir. 2007); *United States v. Mejia*, 448 F.3d 436, 449 (D.C. Cir. 2006).

Mr. Oseguera-Gonzalez would propose something in the line with the following limiting instruction -

You have heard the testimony of Steve Paris.  He testified in relation to the general operations of Mexican drug cartels, but did not testify to Mr. Osgeura-Gonzalez's membership or participation therein as Steve Paris has no personal knowledge as to what, if any, role or involvement Mr. Oseguera-Gonzalez had with any Mexican drug cartel.  It is up for you, the jury, to determine what the Government's evidence has shown and whether they have proven each and every element of the offense beyond a reasonable doubt.

1

## CONCLUSION

2    For the reasons stated above, Mr. Oseguera moves this Court to grant his motion.

3

4                                      Respectfully submitted,

5                                      /s/ Anthony E. Colombo, Jr.

6    Dated: July 5, 2024               **ANTHONY E. COLOMBO, JR.**

7                                      Attorney for Mr. Oseguera-Gonzalez

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28