IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | CRIMINAL NO. 16-CR-229-BAH |
| ) | |
| v. ) | |
| ) | |
| RUBEN OSEGUERA-GONZALEZ, ) | |
| ) | |
| Defendant. ) | |
| ) | |

### MOTION FOR WITNESSES TO TESTIFY IN PSEUDONYM

The United States of America hereby moves for two witnesses to testify under pseudonyms; for their names to be disclosed only to defense counsel, but not the defendant; and to preclude examination of government witnesses regarding certain identifying information.

Nearly all of the government's witnesses—U.S. law enforcement agents, cooperating witnesses, confidential sources, expert witnesses, and others—will identify themselves in court using their full names during their testimony. However, two of the government's witnesses are Mexican law enforcement officials, who live in Mexico, and there are serious security concerns should the witnesses have to testify in open court under their full names. The government requests that the Court grant a protective order (1) authorizing the two witnesses to testify under aliases or their initials, and (2) precluding defense counsel from disseminating the true names of the two witnesses to the defendant or anyone else, after the government discloses the names to them in connection with its disclosures under 18 U.S.C. § 3500.

The government also moves the Court to grant a protective order, precluding the defense from eliciting in open court identifying information for the two witnesses, such as home and work addresses, telephone numbers, e-mail addresses, and other identifying information which could be used to locate the witnesses. Due to the high-profile nature of this trial and the security concerns

related to the defendant's criminal organization, such information, if revealed, could subject the witnesses to not only harassment and annoyance but also significant danger.

I.     Background

The defendant is the son of Nemesio Oseguera Cervantes, also known as "El Mencho," the undisputed leader of the Cartel Jalisco Nueva Generacion ("CJNG"), one of the most prolific and most violent drug trafficking organizations in Mexico. Evidence at trial will show that the CJNG is heavily armed, including with military-grade weapons, and engages in armed conflict not only with rival drug trafficking organizations, but also the military and law enforcement in Mexico. The government's expert witness, and multiple cooperating witnesses, will testify at trial that CJNG regularly uses violence, including kidnappings and murders, to retaliate against individuals who cooperate with or work on government investigations and prosecutions.

The CJNG attempted to assassinate two high-profile public officials in Mexico—Luis Carlos Nájera, the former security secretary for the state of Jalisco in May 2018, and Omar García Harfuch, Mexico City's public security secretary in June 2020. *See, e.g.* Asmann, Parker, *Mexico Authorities Close in on CJNG with Arrest of Leader's Wife*, INSIGHT CRIME, May 28, 2018, https://insightcrime.org/news/brief/mexico-authorities-close-cjng-arrest-leaders-wife/ ("On May 21, armed men stormed a restaurant in Guadalajara and **attacked** former state prosecutor Luis Carlos Nájera. The attack was attributed to the CJNG, and was followed by more shootouts and roadblocks that left several injured and an 8-month-old infant dead."); Dittmar, Victoria, *Attempt to Kill Mexico City's Top Cop Puts Jalisco Cartel in Crossfire*, INSIGHT CRIME, June 27, 2020, https://insightcrime.org/news/analysis/mexico-city-top-cop-cjng/.

The cartel was also likely behind the assassination of former Jalisco governor Aristóteles Sandoval in December 2020. *See, e.g.* Bravo, Tomas, *Ex-governor of cartel-ravaged Mexican*

*state gunned down in beach resort*, Dec. 18, 2020, https://www.reuters.com/article/world/ex-governor-of-cartel-ravaged-mexican-state-gunned-down-in-beach-resort-idUSKBN28T06N/.

Additionally, the CJNG targets lower-level government officials involved in investigating or prosecuting the cartel. *See, e.g.,* Stevenson, Mark, *In Mexico, cartels are hunting down police at their homes*, ASSOCIATED PRESS, May 30, 2021, https://apnews.com/article/caribbean-mexico-police-f6ea7798ca3cc171ac13b3a5a6a6c266 ("The CJNG is hunting the elite police force of Guanajuato. Numbers of victims are hard to come by, but Poplab, a news cooperative in Guanajuato, said at least seven police officers have been killed on their days off so far this year.").

Since the defendant's extradition to the United States, two potential government witnesses in this case have been murdered in Mexico. The government has information that at least one of the murdered witnesses was killed in order to prevent him from testifying against the defendant. Additionally, a Mexican federal judge, Uriel Villegas Ortiz, who presided over the defendant's case in Mexico and ordered the defendant's transfer to a high-security prison in 2018, was murdered in June 2020—approximately four months after the defendant was extradited to the United States. *See* Grant, Will, *Mexico crime: Could this become the bloodiest year on record?*, BBC, July 11, 2020, https://www.bbc.com/news/world-latin-america-53332756 ("Judge Villegas and his wife were murdered in front of their two daughters…. One case he had presided over was against Rubén Oseguera, son of the leader of the CJNG, Nemesio 'El Mencho' Oseguera."). While the government does not have evidence linking the defendant to any of these murders, the murders are further evidence of the danger witnesses and government officials in Mexico face for cooperating with the United States in this prosecution.

## II. Argument

Allowing a witness to use an alias or otherwise limiting cross-examination as to identifying details in order to protect the witness's safety does not infringe upon a defendant's Sixth Amendment right to confront the witnesses against him. *See, e.g., Chavis v. North Carolina,* 637 F.2d 213, 226 (4th Cir. 1980) ("[C]ases have held that a trial court may limit cross-examination if the information sought could endanger the witness."); *United States v. Ramos–Cruz,* 667 F.3d 487, 500 (4th Cir. 2012); *United States v. El–Mezain,* 664 F.3d 467 (5th Cir. 2011); *Siegfriedt v. Fair,* 982 F.2d 14, 17 (1st Cir. 1992); *United States v. Rangel,* 534 F.2d 147, 148 (9th Cir. 1976); *United States v. Palermo,* 410 F.2d 468, 472 (7th Cir. 1969); *cf. Delaware v. Van Arsdall,* 475 U.S. 673, 679 (1986) (Trial judges possess "wide latitude ... to impose reasonable limits on ... cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness'[s] safety, or interrogation that is repetitive or only marginally relevant.").

In such cases, the government bears the burden in demonstrating "that the threat to the witness is actual and not a result of conjecture." *Ramos–Cruz,* 667 F.3d at 500 (quoting *Palermo,* 410 F.2d at 472). However, "[t]he appropriateness of using pseudonyms to protect witnesses does not depend on whether the threat to the witness comes directly from a defendant or from another source." *United States v. Celis,* 608 F. 3d 818, 832 (D.C. Cir. 2010).

Generally, courts encourage the disclosure of background material to defendants to permit cross-examination to be as effective as possible. *See, e.g., El–Mezain,* 664 F.3d at 492 ("The Government disclosed to the defense over twenty volumes of material that Avi used to formulate his expert opinion about Hamas financing. Moreover, the Government agreed in pretrial filings

4

that the defense would be permitted to ask Avi about his background, his training and experience with the ISA, his legal education, and his potential bias in favor of Israelis in the West Bank.").

In *Celis*, the government requested that certain government witnesses testifying against the FARC, a Colombian drug trafficking and terrorist organization, be permitted to testify under aliases. 608 F. 3d at 830. The government made that request in light of "evidence that in Colombia the FARC had killed people suspected of helping to arrest [the defendant] and had threatened to kill cooperating witnesses." *Id*. at 833. The district court granted the order, and the D.C. Circuit affirmed. *Id*. In so holding, the D.C. Circuit noted that the district court appropriately weighed the competing interests "where the government disclosed the true identities of protected witnesses to defense counsel and those witnesses testified at trial under pseudonyms." *Id*. The protective order in *Celis* did allow defense counsel to share the witnesses' names with the defendant. *Id*. at 829.

However, in *United States v. Machado-Erazo*, another judge in this District approved the government withholding the name and identifying information of a foreign law enforcement officer from the defense—including both the defendants and defense counsel. 951 F. Supp. 2d 148, 157-59 (2013). After finding that there was a risk to the witness's safety, the court held that the defendants' ability to cross-examine the witness was preserved without the disclosure of the witness's identity, "[b]ecause the Defendants had access to Juan Diaz's expert report, a summary of his qualifications, and his prior testimony, they had access to almost the entire universe of possible ammunition for cross-examination." *Id.* at 158. The court in *Macho-Erazo* distinguished the case from *Celis*, in which the district court had required disclosure to defense counsel, because the witnesses shielded by the protective order in *Celis* were "insider witnesses" who lived in

Colombia and testified "about their own involvement with appellants and the FARC in drug trafficking." 608 F. 3d at 830 n.5 & 833.

The witnesses in this case are similarly situated to the witness in *Machado-Erazo*, in that they are all foreign law enforcement officials, who are testifying about information they obtained in the course of their official duties. They are not "insider witnesses" testifying about their own involvement with the defendant or the CJNG. In this case, the government proposes disclosing the names of the two testifying witnesses to defense counsel, and only withholding the names from the defendant. Additionally, the government will provide all disclosures required by 18 U.S.C. § 3500, including reports written by the witnesses about their involvement in the investigation. These disclosures are sufficient to permit effective cross-examination of the witnesses, without disclosure of their identities, while protecting their safety, and the safety of their families, when they return to Mexico.

/

/

/

/

/

/

/

/

/

/

/

## III.   Conclusion

For the foregoing reasons, the government asks the Court to grant its motion for two witnesses to testify under pseudonyms; for their names to be disclosed only to defense counsel, but not the defendant; and to preclude examination of these two government witnesses regarding certain identifying information.

Respectfully submitted,

MARLON COBAR,
Chief, Narcotic & Dangerous Drug Section
Criminal Division
U.S. Department of Justice

*/s/ Kate Naseef*
Kate Naseef, Trial Attorney
Kaitlin Sahni, Acting Deputy Chief
Jonathan Hornok, Trial Attorney
United States Department of Justice
Narcotic and Dangerous Drug Section
145 N Street, Northeast
East Wing, Second Floor
Washington, D.C. 20530
kate.naseef@usdoj.gov
(202) 514-0917

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was sent via ECF to counsel of record for the Defendant, this 8th day of July 2024.

                                          By:    /s/ *Kate Naseef* .
                                                       Kate Naseef
                                                       Trial Attorney
                                                       Narcotic and Dangerous Drug Section
                                                       U.S. Department of Justice