**ANTHONY E. COLOMBO, JR.**
California State Bar No. 218411
The Senator Building, Ste. 312
105 West "F" Street
San Diego, CA 92101
Tel:   (619) 236-1704
Email: anthonycolombolegal@gmail.com

Attorney for Ruben Oseguera-Gonzalez

UNITED STATES DISTRICT COURT

DISTRICT COURT OF COLUMBIA

(HONORABLE BERYL A. HOWELL)

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>RUBEN OSEGUERA-GONZALEZ,<br><br>Defendant. | CASE NO. 16cr00229-BAH<br><br>NOTION OF MOTIONS AND MOTIONS *IN LIMINE* TO:<br>1) EXCLUDE HEARSAY;<br>2) ALLOW ATTORNEY *VOIR DIRE*;<br>3) EXCLUDE AN APPEAL TO PASSION OR PREJUDICE DURING ARGUMENT;<br>4) EXCLUDE VOUCHING; AND<br>5) EXCLUDE NEW ARGUMENTS IN THE GOVERNMENT'S REBUTTAL CLOSING |

TO: KATE M. NASEEF, TRIAL ATTORNEY, UNITED STATES ATTORNEY'S OFFICE; JONATHON HORNOK, TRIAL ATTORNEY, UNITED STATES ATTORNEY'S OFFICE; AND KAITLIN SAHNI, ACTING DEPUTY CHIEF, UNITED STATES ATTORNEY'S OFFICE:

**I.**

**MOTIONS *IN LIMINE***

**A.   THE COURT SHOULD EXCLUDE HEARSAY TESTIMONY**

**1. Exclusion of Hearsay Testimony Under *Crawford***

Mr. Oseguera-Gonzalez anticipates that the Government will seek to introduce testimony from law enforcement agents who investigated the instant matter. The Supreme

Court's decision in *Crawford v. Washington*, 124 S.Ct. 1354 (2004), squarely holds, pursuant to the Sixth Amendment, that pre-trial, testimonial statements may not be admitted against a defendant at trial where the defendant has not had a chance to cross-examine the declarant. *Crawford*, at 2956.  This is true even where the statements fall within a "firmly rooted hearsay exception" or bear "particularized guarantees of trustworthiness." *Id*. at 2954.  As such, this case overturns the Supreme Court's own precedent in *Ohio v. Roberts*, 448 U.S. 56 (1980).

In *Crawford*, the petitioner was tried for assault and attempted murder. *Crawford* at 2949.  The State sought to introduce a recorded statement that petitioner's wife Sylvia had made during police interrogation, as evidence that the stabbing was not in self-defense. *Id*. at 2949. Sylvia did not testify at trial because of Washington's marital privilege. *Id*. at 2949. Petitioner argued that admitting the evidence would violate his Sixth Amendment right to be "confronted with the witnesses against him." Under *Ohio v. Roberts,* 448 U.S. 56, that right did not bar admission of an unavailable witness's statement against a criminal defendant if the statement bore "adequate 'indicia of reliability,' " a test that was met when the evidence either fell within a "firmly rooted hearsay exception" or bore "particularized guarantees of trustworthiness." *Id.,* at 66. The trial court admitted the statement on the latter ground. The State Supreme Court upheld the conviction, deeming the statement reliable because it was nearly identical to, *i.e.,* interlocked with, petitioner's own statement to the police, in that both were ambiguous as to whether the victim had drawn a weapon before petitioner assaulted him. *Crawford* at 2949.  The Supreme Court overturned the conviction holding that the State's use of Sylvia's statement violated the Confrontation Clause of the Sixth Amendment because, Sylvia's statement were testimonial in nature and where such testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is confrontation, *i.e*., cross examination by the defendant.  *Id.* at 2956.

The Supreme Court reasoned, after a lengthy discussion of the historical context of the Confrontation Clause, that the Sixth Amendment was drafted in order to protect against the "civil-law mode of criminal procedure" and "its use of *ex parte* examinations as evidence against he accused." *Id*. at 2953. Such *ex parte* examinations run into Sixth Amendment concerns because they are "testimonial" in nature. The "text of the Confrontation Clause reflects this focus." *Id*. at 2953. It applies to "witnesses against the accused - in other words, those who bear testimony." *Id*. at 2953 (internal quotations omitted). Thus, the Sixth Amendment is concerned with "testimonial" statements. *Id*. at 2953. "Various formulations of this core class of 'testimonial' statements exist:

> *ex parte* in-court testimony or its functional equivalent--that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar **pretrial statements that declarants would reasonably expect to be used prosecutorially** . . . extrajudicial statements . . . contained in formalized testimonial materials, such as **affidavits**, depositions, prior testimony, or **confessions**.. statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial . . . **Statements taken by police officers in the course of interrogations are also testimonial under even a narrow standard**."

*Id*. at 2953 (internal citations and quotations omitted).

The Court went on that:

> "[w]here testimonial statements are involved, we do not think the Framers meant to leave the Sixth Amendment's protection to the vagaries of the rules of evidence, much less to amorphous notions of 'reliability . . .' The *Roberts* test allows a jury to hear evidence, untested by the adversary process, based on a mere judicial determination of reliability. It thus replaces the constitutionally prescribed method of assessing reliability with a wholly foreign one. In this respect, it is very different from exceptions to the Confrontation Clause that make no claim to be a surrogate means of assessing reliability."

*Id*. at 2954, 2955.

Thus, the Confrontation Clause does not permit testimonial statements to be admitted at trial without the "constitutionally prescribed method of determining reliability," *i.e.*, confrontation. *Id*. at 2955. In other words, [w]here testimonial evidence is at issue . . . the

Sixth Amendment demands . . . unavailability [of the declarant] and a prior opportunity for cross-examination." *Id*. at 2956.

Therefore, Mr. Oseguera-Gonzalez would request that the Court exclude all hearsay testimony under *Crawford*.

### 2. The Court Should Exclude Out-of-Court Statements of Purported Co-conspirators as Hearsay Unless and Until the Government Proves the Requisite Evidentiary Foundation

An out-of-court statement, whether written, oral or nonverbal conduct intended as an assertion, which is offered to prove the truth of the matter asserted is generally considered to be "hearsay," Fed. R. Evid. 801, and is generally inadmissible, Fed. R. Evid. 802, subject to certain exceptions, *see* Fed. R. Evid. 803-804. A statement "made by the party's co-conspirator during and in furtherance of the conspiracy" is not hearsay. Fed. R. Evid. 801(d)(2)(E). The Government has the burden of proving by a preponderance of the evidence the foundational elements necessary to admit an out-of-court statement as non-hearsay. *Bourjaily v. United States,* 483 U.S. 171, 175 (1987). "In order to admit such a statement, the Court must find by the preponderance of the evidence that: (1) a conspiracy existed; (2) the defendant and the out-of-court declarant were involved in the conspiracy; and (3) the statement to be introduced was made in furtherance of that conspiracy." *United States v. Mosquera-Murillo*, 153 F.Supp.3d 130, 187-87 (D.D.C. 2015) (citing *United States v. Gewin*, 471 F.3d 197, 201 (D.C. Cir. 2006)). The D.C. Circuit has clarified, however, that an out-of-court statement cannot alone support the necessary finding that the defendant and the declarant were together involved in a conspiracy. *Id*. (citing *United Sates v. Gatling*, 96 F.3d 1511, 1520-21 (D.C. Cir. 1996)). Thus, while the Court may consider the statements itself in making it's admissibility determination, *id*. (citing *Bourjaily*, 483 U.S. 175-76), the Court's ultimate determination must rest at least partially on some independent evidence of the conspiracy, *id*. (citing *Gatling*, 96 F.3d at 1520-21).

An out-of-court statement is "presumptively unreliable." *United States v. Silverman,* 861 F.2d 571, 577-78 (9th Cir. 1988). The reliability of an out-of-court statement is "doubly suspect" when it is made by a co-conspirator and purports to implicate others in the unlawful conspiracy. *Id.* Such statements may "constitute, at best, nothing more than the 'idle chatter' of a declarant or, at worst, malicious gossip." *Id.* at 578 (quotations omitted). As the Supreme Court has long recognized, "[e]ven where . . . the evidence of an accomplice becomes admissible against his fellows, it remains suspect evidence, because of the tainted source from which it comes." *Wong Sun v. United States,* 371 U.S. 471, 490 n.17 (1963) (quotations omitted). Even if the Government establishes by sufficient independent evidence the existence of the defendant's participation in a conspiracy with the out-of-court declarant, not all statements made by co-conspirators can be considered to have been made in furtherance of the conspiracy.

The Federal Rules of Evidence provide that "to the extent practicable, the Court must conduct a jury trial so that inadmissible evidence is not suggested to the jury by any means." Fed. R. Evid. 103(d). The rules of evidence further provide that "[t]he court must conduct any hearing on a preliminary question so that the jury cannot hear it if . . . justice so requires." Fed. R. Evid. 104(c)(3). Although the D.C. Circuit has suggested the "better practice" is for the Court to make a final admissibility determination prior to admitting any purported co-conspirator statements, the Circuit has acknowledged that "it is just impractical in many cases for a court to comply strictly with the preferred order of proof." *Id*. (citation omitted).

Here, Mr. Oseguera-Gonzalez has not yet received disclosure of anticipated witnesses with the exception of the Government's proffered expert witness. Therefore, it is impossible for the Court to consider now what, if any, co-conspirators' statements might be subject to exclusion. However, Mr. Oseguera-Gonzalez reserves the right to raise an objection and ruling outside the presence of the jury with regard to hearsay evidence, and particularly that which the Government claims is excepted from hearsay under Rule 803(d)(2)(E). And, if "at

the close of the Government's case, or at any critical point," the Government has failed to meet its burden, the Court "must upon motion, and may *sua sponte*, strike the testimony that has not been sufficiently connected and direct the jury to disregard it." *Mosquera-Murillo*, 153 F.Supp.3d at 187 (citation omitted).

### B.   THIS COURT SHOULD ALLOW ATTORNEY-CONDUCTED *VOIR-DIRE*

Rule 24 of the Federal Rules of Criminal Procedure states:

> The court may examine prospective jurors or may permit the attorneys for the parties to do so. . . . If the court examines the jurors it must permit the attorneys for the parties to ask further questions that the court considers proper; or submit further questions that the court may ask if it considers them proper.

*See* Fed. R. Crim. Proc. §24(a)(1), and (2)(A), and (B) (2024). Pursuant to Rule 24(a), to provide effective assistance of counsel and to exercise Mr. Oseguera-Gonzalez's right to trial by an impartial jury, Mr. Oseguera-Gonzalez requests the opportunity to personally *voir dire* the prospective members of the jury in this case.

The presumption of innocence, to which every criminal defendant is constitutionally entitled, is a legal device which places the burden of proof in a criminal case upon the government. *See Coffin v. United States*, 156 U.S. 432, 458-59 (1895). Jurors are required to render a fair and impartial verdict based on the evidence, and follow the court's instructions as to the burden of proof. *See Spies v. Illinois*, 123 U.S. 131 (1887). "*Voir dire* plays a critical function in assuring the criminal defendant that his Sixth Amendment right to an impartial jury will be honored." *Rosales v. United States*, 451 U.S. 182, 188 (1981) (plurality opinion). The principal purpose of *voir dire* is to probe each prospective juror's state of mind to enable the trial judge to determine actual bias and to allow counsel to assess suspected bias or prejudice. Thus, a *voir dire* examination must be conducted in a manner that allows the parties to effectively and intelligently exercise their right to peremptory challenges and challenges for cause. The two types of challenges, in combination, are designed to achieve two important objectives: first, that when a jury is finally chosen it will perform its duties in a fair and unbiased manner; and second, that the parties and the public

will have confidence in the impartiality and integrity of the jury." Without an adequate *voir dire* the trial judge's responsibility to remove prospective jurors who will not be able impartially to follow the court's instructions and evaluate the evidence cannot be fulfilled. *Rosales*, 451 U.S. at 188.

The trial court must conduct *voir dire* in a manner that permits the informed exercise of both the peremptory challenges and the challenges for cause. *Darbin v. Nourse*, 664 F.2d 1109, 1113 (9th Cir. 1981). "[P]eremptory challenges are worthless if trial counsel is not afforded an opportunity to gain the necessary information upon which to base such strikes." *United States v. Ledee*, 549 F.2d 990, 993 (5th Cir. 1977). "The right of peremptory challenge has been recognized by the Supreme Court as 'one of the most important rights secured to the accused.'" *Swain v. Alabama*, 380 U.S. 202, 218-(1965). Accordingly, in many cases "justice requires that each lawyer be given an opportunity to ferret out possible bias and prejudice." *Ledee*, 549 F.2d at 993.

The goal of *voir dire* is to uncover jurors' biases, opinions, and attitudes, as well as their life experiences. *See United States v. Toomey*, 764 F.2d 678, 682 (9th Cir. 1985). Thus, Mr. Oseguera-Gonzalez requests the Court to allow his counsel to *voir dire* the prospective jurors to obtain sufficient information with which to allow an informed exercise of peremptory challenges and challenges for cause. In this case, "justice requires that [counsel] be given an opportunity to ferret out possible bias and prejudice" of the prospective jurors. *Ledee*, 549 F.2d at 993.

### C. EXCLUDE THE APPEAL TO PASSION OR PREJUDICE DURING ARGUMENT

Prosecutors may not make comments calculated to arouse the passions or prejudices of the jury. *Viereck v. United States*, 318 U.S. 236, 247-48 (1943). The reasoning is as follows:

> A prosecutor may not urge jurors to convict a criminal defendant in order to protect community values, preserve civil order, or deter future lawbreaking. The evil lurking in such prosecutorial appeals is that the defendant will be convicted for reasons wholly irrelevant to his own guilt or innocence. Jurors may be persuaded by such appeals to believe

> that, by convicting a defendant, they will assist in the solution of some pressing social problem. The amelioration of society's woes is far too heavy a burden for the individual criminal defendant to bear.

*United States v. Koon*, 34 F.3d 1416, 1443 (9th Cir. 1994) (quoting *United States v. Monaghan*, 741 F.2d 1434, 1441 (D.C. Cir. 1984), rev'd on other grounds by 518 U.S. 81 (1996)).

In *Viereck* decided in 1943, the Supreme Court determined that the prosecutor's comments during closing argument prejudiced the defendant's right to a fair trial. *Viereck*, 318 U.S. at 247. In *Viereck*, the prosecutor in closing argument requested that during a time of war America was relying upon the jurors to do their duty and help protect the American people from crime. *Id*. at 247-48, n. 3. These arguments, the Supreme Court determined, no doubt aroused the jurors passions and were highly prejudicial. *Id*. at 248.

The Government should not capitalize upon the jurors' passions or prejudice (as it may relate to the charges here) as instructed by the Supreme Court. Mr. Oseguera-Gonzalez therefore requests this Court order the Government not to engage in any arguments that would seek to capitalize upon jurors' passions or prejudices in violation of *Viereck* and its progeny.

### D. **EXCLUDE NEW ARGUMENTS IN THE GOVERNMENT'S REBUTTAL CLOSING**

Like the Hydra slain by Hercules, prosecutorial misconduct has many heads. *United States v. Williams*, 504 U.S. 36, 60 (1992) (Stevens, J., dissenting). "[W]hile [prosecutors] may strike hard blows, [a prosecutor] is not at liberty to strike foul ones." *Berger v. United States*, 295 U.S. 78, 88 (1935).

Criminal defendant's have a constitutional right to the presumption of innocence and to have the Government prove guilt beyond a reasonable doubt. It is improper for the Government's rebuttal argument to consist of new arguments or what is commonly referred to as "sandbagging." Presenting new arguments during rebuttal closing denies the defendant an opportunity to respond, and confront his accuser's allegations. As the Seventh Circuit has explained:

> As a general rule, Government counsel should not be allowed to develop new arguments on rebuttal, but should be restricted to answering the arguments put forth by defense counsel. This limitation on rebuttal is supported by the legislative history of rule 29.1 of the Federal Rules of Criminal Procedure, the rule that outlines the order of closing arguments in a criminal trial. In its notes regarding the proposed rule 29.1, the House Committee on the Judiciary stated that 'fair and effective administration of justice is best served if the defendant knows the arguments actually made by the prosecution in behalf of conviction before the defendant is faced with the decision whether to reply and what to reply.' We find this reasoning to be sound, and we therefore adopt the position that a prosecutor cannot use rebuttal to put forth new arguments, but is restricted to responding to the points made by the defense counsel in closing argument.

*United States v. Taylor*, 728 F.2d 930, 936 (7th Cir. 1984) (citations omitted).

It would be "sandbagging" in violation of Mr. Oseguera-Gonzalez's Fifth and Sixth Amendment rights, as well as Rule 29.1, for Government counsel to introduce new arguments during their rebuttal argument. Therefore, Mr. Oseguera-Gonzalez requests that this Court preclude the Government from "sandbagging." To the extent the Government does introduce new arguments in its rebuttal closing, Mr. Oseguera-Gonzalez will request a mistrial and/or surrebuttal.

### E. EXCLUDE THE GOVERNMENT'S USE OF VOUCHING

"The rule against vouching is well established. As the D.C. Circuit Court has made clear in *Harris v. United States*, 402 F.2d 656 (D.C. Cir. 1968), 'it [is] for the jury, and not the prosecutor to say which witnesses [are] telling the truth. Neither counsel should assert to the jury what in essence is his opinion on guilt or innocence.'" *United States v. Brown*, 508 F.3d 1066, 1075 (D.C. Cir. 2007) (citing *Harris*, 402 F.2d at 658). The rule against vouching is very important because it seeks to protect the integrity of the trial process and ensure that judgments and verdicts are grounded in evidentiary facts. *See id*. "[T]he purpose of the rule forbidding expression of opinion of counsel on the ultimate issue is to keep the focus on the evidence and to eliminate the need for opposing counsel to meet opinions by urging his own contrary opinion." *Id*. "There are several reasons for the rule,

long established, that a lawyer may not properly state his personal belief either to the Court or to the jury in the soundness of the case. In the first place, his personal belief has no real bearing on the issue; no witness would be permitted so to testify, even under oath, and subject to cross-examination, much less the lawyer without either. Also, if expression of personal belief were permitted, it would give an improper advantage to the older and better known lawyer, whose opinion would carry more weight, and also with the jury at least, an undue advantage to an unscrupulous one. Furthermore, if such were permitted, for counsel to omit to make such a positive assertion might be taken as an admission that he could not believe in his case." *Brown*, 508 F.3d at 1075 (citing *Harris*, 402 F.2d 658 (citation omitted)).

Impermissible vouching is particularly dangerous when it is done by prosecutors:

> The prosecutors's vouching for the credibility of witnesses and expressing his personal opinion concerning the guilt of the accused pose two dangers: such comments can convey the impression that evidence not presented to the jury, but known to the prosecutor, supports the charges against the defendant and can thus jeopardize the defendant's right to be tried solely on the basis of the evidence presented to the jury; and the prosecutor's opinion carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence.

*Brown*, 508 F.3d at 1075 (citing *United States v. Young*, 470 U.S. 1, 18-19 (1995)). "Improper vouching [by the Government] typically occurs in two situations: (1) the prosecutor places the prestige of the Government behind a witness by expressing his or her belief in the veracity of the witness, or (2) the prosecutor indicates that information not presented to the jury supports the witness's testimony." *United States v. Hermanek*, 289 F.3d 1076, 1098 (9th Cir. 2002). The rule against vouching "'[was] designed to prevent prosecutors from taking advantage of the natural tendency of jury members to believe in the honesty . . . [of] Government attorneys. . .'" *United States v. Edwards*, 154 F.3d 915, 922 (9th Cir. 1998). "Juries are aware that prosecutors have "as much [a] duty to refrain from improper methods calculated to produce a wrongful conviction as [they have] to use every legitimate means to bring about a just one." *Brown*, 508 F.3d at 1075 (citing *Berger v.*

*United States*, 295 U.S. 78 (1935), *overruled on other grounds* by *Stirone v. United States*, 361 U.S. 212 (1960)). "Improper suggestions, insinuations and, especially, assertions of personal knowledge [by prosecutors] are apt to carry much weight against the accused when they should properly carry none." *Id*.

Thus, the rule against vouching helps prevent the jury from being unduly influenced by the prestige and prominence of the prosecutor's office and prevents the jury from basing their decisions on improper factors. *See United States v. Sayakhom*, 186 F.3d 928, 943 (9th Cir. 1999).

Mr. Oseguera-Gonzalez would request the Court to preclude the Government from vouching in any form.

## II.

## CONCLUSION

For the reasons stated above, Mr. Oseguera moves this Court to grant his motions *in limine*.

Respectfully submitted,

/s/ Anthony E. Colombo, Jr.

Dated: July 8, 2024

**ANTHONY E. COLOMBO, JR.**

Attorney for Mr. Oseguera-Gonzalez