**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | ) **Criminal No.: 16-CR-229 (BAH)** |
| | ) |
| **v.** | ) |
| | ) |
| **RUBEN OSEGUERA-GONZALEZ,** | ) |
| **also known as "Menchito,"** | ) |
| **"Rubencito," "Rojo," "Ruso,"** | ) |
| **"Junior," and "El Nino,"** | ) |
| | ) |
| | ) |
| **Defendant.** | ) |

**GOVERNMENT'S MOTION IN LIMINE TO ADMIT SIGNED**
**STATEMENT OF FACTS AND OPPOSITION TO DEFENDANT'S**
**MOTION TO PRECLUDE USE OF THE SAME**

The United States respectfully moves to admit a statement of facts the Defendant signed on April 6, 2023, pursuant to a plea agreement in this case. As set forth below, the statement of facts is admissible under Federal Rule of Evidence 801(d)(2) because the Defendant adopted the statement voluntarily. Moreover, Federal Rule of Criminal Procedure 11(f) and Federal Rule of Evidence 410 are inapplicable because 1) the Defendant signed the statement after plea negotiations ended, as evidenced by the parties' signatures, and 2) in the alternative, the Defendant knowingly and voluntarily waived his rights under those rules. The proffered statement also passes Rule 403's balancing test. Therefore, the Court should admit the statement at issue in the Government's case-in-chief and for impeachment and rebuttal purposes.[1]

---

[1] The Defendant concedes that the statement is admissible for impeachment and rebuttal purposes. *See* Dkt. No. 137, at 1-2 (noting courts "routinely" allow such statements for "impeachment or rebuttal purposes" because they enhance accuracy of verdicts).

1

For the same reasons, the Court should deny Defendant's Motion to Preclude the Use of Defendant's Statements Made During the Course of Plea Negotiations ("Motion"). Dkt. No. 137.

## I. BACKGROUND

On February 1, 2017, a federal grand jury sitting in the District of Columbia returned and filed a Superseding Indictment, charging the Defendant with the following offenses: in Count One, with conspiracy to distribute five kilograms or more of cocaine, and 500 grams or more of methamphetamine, knowing and intending that these controlled substances would be unlawfully imported into the United States, in violation of 21 U.S.C. §§ 963, 959(a), 960(b)(1)(B)(ii), and 960(b)(1)(H); and in Count Two, with the use and possession of a firearm during and in relation to the drug trafficking conspiracy charged in Count One, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i), 924(c)(1)(A)(ii), 924(c)(1)(B)(ii), and 2. Dkt. No. 6.

On July 3, 2015, the Defendant was arrested by Mexican authorities on unrelated charges. On February 20, 2020, the Defendant was extradited to Washington, D.C., for this case.

In March 2023, the parties finalized a plea agreement, which the Government signed on April 4, 2023. The Defendant and his then-counsel signed the plea paperwork on April 6, 2023. The paperwork included the Plea Agreement ("Plea Agreement" or "Ex. A"),[2] which summarized the charges the Defendant agreed to plead guilty to and the consequences of his guilty plea, and a "Joint Statement of Stipulated Facts" ("statement of facts" or "Ex. B"), which set forth sufficient facts for the Court to accept the Defendant's guilty plea on the two counts charged in the Superseding Information.[3] On the same day, April 6, 2023, Defendant's counsel

---

[2] ████████████████████████████████████████████████████████████

[3] The now-dismissed Superseding Information included the same two counts as the Superseding Indictment but did not include 18 U.S.C. § 924(c)(1)(B)(ii) (possession of a destructive device)

emailed the plea paperwork—signed by all parties, including the Defendant—to the Court. On April 11, 2023, the evening before the scheduled change-of-plea hearing, defense counsel informed the Government that the Defendant wished to confer with a new counsel before pleading guilty.

At the scheduled change-of-plea hearing on April 12, 2023, the Defendant requested leave to change his counsel, adding: "I just want a second opinion." Hr'g Tr. 7:11-25, Apr. 12, 2023. The Court confirmed with the Defendant that he wanted "a second opinion," specifically, before proceeding "with the plea hearing." *Id.* The Court then asked whether the Defendant had "any problems communicating" with his then-counsel or whether he did not understand the terms of the plea agreement. *Id.* at 8:18-9:1. In response, the Defendant said he "was not happy with the plea," specifically, the "charges." *Id.* at 8:22-9:5. When the Court probed further, the Defendant clarified that he meant the charges were "severe." *Id.* at 9:6-8.

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████ Neither the Defendant nor his counsel claimed that the allegations in the statement of facts were untrue.

At the next hearing, on April 21, 2023, the Government briefly flagged "the consequences of potentially withdrawing from the [signed] plea agreement." Hr'g Tr. 7:17-21, Apr. 21, 2023. Defendant's proposed new counsel at the time, Mr. Arturo Hernandez,

---

in Count Two. *See* Min. Order, Oct. 17, 2023 (order dismissing Superseding Information); *see also* Dkt. No. 48 (Superseding Information).

acknowledged at that hearing that at least one of the Defendant's attorneys had read the plea documents to the Defendant and that the Defendant had signed the agreement. *Id.* at 11:16-18.

The Court revisited the plea topic on May 12, 2023. During that hearing, the Court asked the Government to explain why it believed the signed statement of facts could be used against the Defendant if he withdrew from the Plea Agreement. Hr'g Tr. 8:1-11, May 12, 2023. After the Government explained its reasoning, the Court noted: "I did want to hear from the government on its position in the presence of both Mr. Hernandez and Mr. Ruben Oseguera-Gonzalez so they understood what the government's position is going to be" as to the signed paperwork and oral statements made "in connection with the plea." *Id.* at 10:13-18. The Court then confirmed with Mr. Hernandez that he had discussed the potential consequences of withdrawing from the Plea Agreement with the Defendant. *Id.* at 12:7-14. Mr. Hernandez again acknowledged that the plea documents were read to the Defendant during "a visit by three attorneys." *Id.* at 12:15-25. The Court noted that at least one defense co-counsel was "fluent in Spanish," a fact that Mr. Hernandez did not dispute. *Id.* at 14:9-16. The Court then addressed the Defendant directly, and he confirmed that he fully understood the issues discussed. *Id.* at 17:13-16. The Court appointed Mr. Hernandez to this case at the end of the hearing. *Id.* at 18:7-8.

On September 15, 2023, the plea issue was again discussed in court. The Government flagged that there was a signed Plea Agreement in place, and that the Defendant's opportunity to comply with it would expire on October 16, 2023. Hr'g Tr. 6:3-14, Sept. 15, 2023. The Court again discussed the possibility that the Defendant's statements could be used against him should the Defendant withdraw from the Plea Agreement. *Id.* at 6:24-8:3 (warnings from the Court regarding potential case-in-chief and impeachment implications); *see also id.* at 7:17-22 (defense

counsel indicating he had discussed the risk with the Defendant "at length," adding, "[h]e understands the risk and he understands the benefits").

A court interpreter was present for all above proceedings to assist with the colloquies.

## II.  THE PROFFERED STATEMENT IS ADMISSIBLE UNDER FEDERAL RULE OF EVIDENCE 801(2)(d)(A)-(B).

The Defendant made the statement at issue, and also manifested his adoption and belief in its truth. Because the statement was also voluntary, it is admissible under the Federal Rule of Evidence ("FRE") 801(d)(2)(A)-(B) ("An Opposing Party's Statement").[4]

FRE 801(d)(2) provides, in relevant part, that an opposing party's statement is not hearsay when "made by the party in an individual or representative capacity" or when "the party manifested that it adopted" the statement or "believed [it] to be true." Fed. R. Evid. 801(d)(2)(A)-(B). Moreover, as the D.C. Circuit has explained, albeit in a different context, "[v]oluntariness [of a statement] turns on whether the 'defendant's will was overborne' when he gave his statement," i.e., whether the statement was a "product of an essentially free and unconstrained choice by its maker." *United States v. Murdock*, 667 F.3d 1302, 1305 (D.C. Cir. 2012) (citations omitted) (analyzing voluntariness of statements within *Miranda* context); *see also United States v. Knight*, 867 F.2d 1285, 1288 (11th Cir. 1989) (following D.C. Circuit's holding and voluntariness analysis in *United States v. Davis*, 617 F.2d 677, 685-87 (D.C. Cir. 1979), and noting the "Supreme Court has never held that statements that are the product of an otherwise valid plea bargain are involuntary"); *United States v. Oruche*, 257 F. Supp. 2d 230,

---

[4] The statement is also relevant under FRE 401 because it tends to establish Defendant's guilt. *See* Fed. R. Evid. 401.

237 (D.D.C. 2003) (discussing Fifth Amendment waiver and adding "'[a] waiver is voluntary in the absence of coercion'" (citation omitted)).

Here, the Defendant has already conceded that he signed the statement. His counsel emailed the statement—signed by all parties—to the Court on April 6, 2023, thereby making the statement in his representative capacity and on behalf of the Defendant. Defendant's then-proposed new counsel also conceded the matter before this Court. *See* Hr'g Tr. 11:16-18, Apr. 21, 2023 (Mr. Hernandez stating, "the plea agreement that he had signed," referring to the Defendant); *see also* Hr'g Tr. 9:5-12, 9:21-25; 12:14-22, May 12, 2023 (Mr. Hernandez acknowledging the "statement was signed" after the Court and the Government referenced Defendant's signatures on the plea documents). The Defendant has also continually manifested his belief that he did sign the statement, and he has never disputed that the statement is true.[5]

Moreover, the Defendant was not adopting the statement in response to questions or coercion. Rather, the Defendant met with his counsel to discuss the document and its

---

[5] At the hearing on April 21, 2023, and before Mr. Hernandez had been appointed to the case, Mr. Hernandez raised the possibility that the statement of facts was "illegally obtained" because it was not translated and signed by a certified Spanish interpreter before the Defendant signed it. *See* Hr'g Tr. 11:15-12:7, Apr. 21, 2023; *see also id.* at 12:8-12 (Mr. Hernandez stating, "I will conduct due diligence, obviously"); Hr'g Tr. 13: 2-4, May 12, 2023 (Mr. Hernandez stating, "[w]e're going to be filing a motion . . . in due time. If I can find all of the evidence, I will submit it to the Court"). Despite suggesting that this issue would be researched and briefed, Mr. Hernandez never filed such a motion. The record is clear that a Spanish-speaking attorney was present. *See* Hr'g Tr. 12:15-25, 14:9-16, May 12, 2023. To the extent the Court deems it necessary to conduct additional factfinding, the Government respectfully requests an evidentiary hearing whereby the Defendant's then-counsel can testify to the specific circumstances at issue. *See* Hr'g Tr. 12:6-7, Apr. 21, 2023 (notice of potential need for testimony); *see also* Local Rule 47(f) (covering requests for hearings and Court's discretion).

implications before signing. *See United States v. Sheffield*, 832 F.3d 296, 306 (D.C. Cir. 2016) (noting lawful admission of defendant's statements occurring outside of circumstances where *Miranda* protections apply, i.e., "not made during an interrogation or in response to any police questioning"). The Defendant and his counsel also attested in writing that the Defendant signed the statement voluntarily. Ex. B at 7. Notably, for over a year since signing the statement on April 6, 2023, neither the Defendant, nor his then- or current counsel have challenged Defendant's voluntary assent to the agreement or statement at issue—even though on three separate occasions before this Court and in Defendant's presence, the Government flagged its belief that the statement of facts was admissible against the Defendant.[6] Only in his recent Motion did the Defendant claim otherwise, though even in that Motion, he never claimed that he could not read the statement in English or understand it when it was explained to him, that the statement was not true, or that he was coerced.[7]

---

[6] Specifically, and as noted in Part I, the Defendant was warned about the potential consequences of withdrawing from the Plea Agreement during hearings held on April 21, May 12, and September 15, 2023. Hr'g Tr. 7:17-21, Apr. 21, 2023; Hr'g Tr. 8:1-11, 10:13-18, May 12, 2023; Hr'g Tr. at 6:3-14, 6:24-8:3, Sept. 15, 2023.

[7] The Defendant also signed the statement knowingly, i.e., with advice of counsel and with knowledge of its implications. In the signed statement, the Defendant attested that he "reviewed" the statement with his counsel, "fully underst[ood]" the statement, "agree[d] to it without reservation," and adopted it of his "own free will, intending to be legally bound." Ex. B at 7; *see also id.* at 5 ("With his signature below and that of his counsel, the Defendant agrees that he has fully adopted this statement of facts as his own statement. . . . because it is a true and correct summary of the Defendant's own conduct."). The Defendant also attested that he was satisfied with his then-counsel's services. *Id.* at 7. His counsel, in turn, also signed the statement of facts, attesting that he had "fully explained" Defendant's rights to him, had "reviewed every part of" the statement with the Defendant, and that the Defendant agreed to it "voluntarily, intelligently, and with full knowledge of all consequences of the Defendant's plea of guilty." *Id.* Moreover, the portions of the statement at issue that the Government moves to admit contain purely factual descriptions of Defendant's acts, not any legal provisions or analyses potentially beyond the Defendant's lay understanding when he signed the document—though he had three competent attorneys to advise him. The Defendant knew what he was doing.

In short, the Defendant made the statement by signing it. He again made the statement through his representative when his counsel emailed the statement to the Court. He has also continuously manifested his adoption of the statement and his belief in its truth by not challenging either for over a year. Therefore, because the statement is otherwise voluntary, it is admissible under FRE 801(2)(d).

### III. FEDERAL RULE OF CRIMINAL PROCEDURE 11(F) AND FRE 410 DO NOT APPLY.

The statement is not excludable under Federal Rule of Criminal Procedure ("FRCP") 11(f) or FRE 410. First, the Defendant adopted the statement after plea negotiations ended, and later emailed the statement to the Court. In the alternative, even if FRCP 11(f) and FRE 410 generally cover such statements, the statement at issue is nonetheless admissible because the Defendant knowingly and voluntarily waived those rights. Therefore, FRCP 11(f) and FRE 410 do not apply.

### A. The Defendant Made the Statement After the Parties Concluded Plea Negotiations, and also Submitted It to the Court.

FRCP 11(f) and FRE 410 restrict the use of statements made during plea discussions at trial. FRCP 11(f) provides that the "admissibility or inadmissibility of a plea, a plea discussion, and any related statement is governed" by FRE 410. In relevant part, FRE 410(a)(4) makes

---

For the same reason, case law on withdrawal from a guilty plea has limited applicability to this case. The plea-withdrawal cases focus on the legal consequences of pleading guilty or entering plea agreements, as contracts, and whether a defendant understood those consequences and his legal rights. A stipulated statement of facts describes a defendant's alleged acts, not legal provisions or rights. Therefore, understanding a statement of facts does not require legal analysis or advice—though interpretation services may be required to understand the contents of a factual statement. Here, Defendant's counsel was fluent in Spanish and the record establishes that the Defendant discussed the plea paperwork, including the statement of facts, with his counsel. *See* Hr'g Tr. 11:16-18, Apr. 21, 2023 (Mr. Hernandez acknowledging plea agreement was read to the Defendant by "one of the attorneys"); *see also* Hr'g Tr. 12:15-19, May 12, 2023 (Court noting that "Mr. Onorato's co-counsel" was "fluent in Spanish").

inadmissible "a statement made during plea discussions with an attorney for the prosecuting authority if the discussions did not result in a guilty plea or they resulted in a later-withdrawn guilty plea." Therefore, the applicability of FRCP 11(f) and FRE 410 hinges on whether the statement of facts, which the parties signed and defense counsel submitted to the Court, is "a statement made *during* plea discussions *with* an attorney for the prosecuting authority." Fed. R. Evid. 410(a)(4).

In cases with similar procedural postures—i.e., where defendants entered a plea agreement, provided statements pursuant to the agreement, but refused to plead guilty—this Circuit and others have held that statements made after plea negotiations end do not fall under the purview of FRCP 11(f) or FRE 410. *See, e.g.*, *United States v. Davis*, 617 F.2d 677, 682-86 (D.C. Cir. 1979), *cert. denied sub nom. Gelestino v. United States*, 445 U.S. 967 (1980); *see also United States v. Stirling*, 571 F.2d 708, 730-32 (2d Cir. 1978) (upholding admission of testimony given a day after plea negotiations were finalized as not made "in connection with" a plea agreement, even though defendant testified "because of the agreement").[8]

For instance, in *Davis*, the D.C. Circuit upheld admission of a defendant's grand jury testimony given pursuant to a plea agreement, but before the defendant entered his guilty plea, explaining the FRCP 11 provision at issue "focuses primarily on the negotiation stage." *Davis*, 617 F.2d at 682 n.13, 683-86 (analyzing application of "Rule 11(e)(6)" and noting FRE 410's

---

[8] Both *Davis* and *Stirling* interpreted FRCP 11(e)(6) and a previous version of FRE 410, which offered broader protections by barring the admission of any "statement made in connection with, and relevant to, any plea offers." *United States v. Deantoni*, 171 F. Supp. 3d 477, 483 (E.D. Va. 2016) (citation omitted) ("In 1979, Rule 410 and Criminal Rule of Civil Procedure 11(e)(6) were amended to cover only those statements made 'during plea discussions.'" (citation omitted)); *see also Stirling*, 571 F.2d at 730 n.17 (quoting Rule 11(e)(6) language and noting FRE 410 language at the time was "identical").

"virtually identical" language/rationale).[9] In reaching this conclusion, the D.C. Circuit noted that "[t]he most significant factor in the rule's adoption was the need for free and open discussion between the prosecution and the defense during attempts to reach a compromise." *Id.* at 683.[10]

However, "[o]nce a plea contract is formed, the policy behind Rule 11[]—to allow a defendant to freely negotiate without fear that statements will be used against him—is no longer applicable." *Knight*, 867 F.2d at 1288; *see also Davis*, 617 F.2d at 682-86 (admitting testimony given after plea negotiations ended); *Stirling*, 571 F.2d at 731-32 (upholding admission of defendant's testimony where a "plea agreement had already been reached" and "negotiations were over" when defendant testified); *United States v. Nemetz*, No. CR.A. 87-196-C, 1987 WL 17543, at *4 (D. Mass. Sept. 21, 1987) ("Rule 11(e)(6)(D) does not protect all statements made prior to the time that the defendant's plea is accepted by the Court.").

The statement of facts in this case was not "made *during* plea discussions *with* an attorney for the prosecuting authority." Fed. R. Evid. 410(a)(4) (emphasis added). Therefore, FRCP 11(f) and FRE 410 do not apply.

Here, the statement was the final product of plea negotiations that the Defendant adopted *after* the parties concluded negotiations. The parties ended negotiations in March 2023. The Government then prepared and signed the statement at issue on April 4, 2023, alongside the Plea Agreement that memorialized the results of the negotiations. The Government's signature itself

---

[9] Amendments in 2002 replaced Rule 11(e)(6) with the current Rule 11(f) provision. *United States v. Parra*, 302 F. Supp. 2d 226, 233 n.6 (S.D.N.Y. 2004).

[10] *Davis* also noted a second purpose behind the rules, i.e., making "the withdrawal of a guilty plea effective." 617 F.2d at 685 (noting the rules at issue also aim to ensure effective withdrawal where defendant presents good reasons why a guilty plea should not stand). But the Defendant here did not plead guilty or provide this Court with "good reasons for not allowing [his] plea to stand." *Id.* Therefore, this case does not present a circumstance where the Court should "return [the Defendant] to the status quo ante" by excluding any statements. *Id.*

is evidence that negotiations had ended. The documents were then submitted to defense counsel for signatures to effectuate the finalized agreement—not for further negotiations. *See Knight*, 867 F.2d at 1287-88 (noting plea deal was finalized when defendant verbally accepted the plea offer that an agent communicated to her on behalf of the prosecutor). On April 6, 2023, the Defendant and his counsel signed the plea paperwork, confirming and manifesting their belief that plea negotiations had already ended.

On the same day, the defense counsel submitted the fully executed plea paperwork, including the statement, directly to the Court. Emailing the plea documents to the Court is significant not only because it further confirms that the parties had ended negotiations—and believed as much, as reflected in the fully executed plea paperwork—but also because the email is tantamount to the Defendant and defense counsel remaking the statement directly to the Court—beyond and aside from any discussion with the "prosecuting authority." Fed. R. Evid 410.[11] Through that email, the Defendant again made the statement, again manifested its adoption, again manifested his belief in its truth.

Not only does the statement fall outside the text and plain meaning of FRCP 11(f) and FRE 410, but its exclusion also would not serve the purposes behind the rules—to enable "free and open discussion … during attempts to reach a compromise." *Davis*, 617 F.2d at 683. As the *Davis* court noted, "[e]xcluding testimony made after and pursuant to the agreement would not

---

[11] Under FRCP 11(c)(1), a court "must not participate in [plea] discussions." Therefore, FRCP 11 makes it clear that a statement shared with the court is not a statement made "during" plea discussions.

serve the purpose of encouraging compromise," but rather it "would permit a defendant to breach his bargain with impunity." *Id*. at 685.[12]

In short, the statement is admissible under FRE 801(d)(2)(A)-(B) because FRCP 11(f) and FRE 410 exclusions do not apply. The statement was not made *during* plea negotiations or *with* an attorney for the prosecuting authority. Moreover, its exclusion would not otherwise serve the policy objectives and purposes behind the rules. Therefore, the Court should admit the voluntary statement for all evidentiary purposes.

### B.  In the Alternative, the Defendant Waived His FRCP 11(f) and FRE 410 Rights.

Even if FRCP 11(f) and FRE 410 are applicable to the statement in this case, those rights "are presumptively waivable." *United States v. Mezzanatto*, 513 U.S. 196, 201, 210 (1995). Absent "some affirmative indication that the agreement was entered into unknowingly or involuntarily, an agreement to waive the exclusionary provisions of the plea-statement Rules is valid and enforceable." *Id.* at 210.

Courts analyze the entire record to determine whether a defendant "knowingly, intelligently, and voluntarily" waived a right. *United States v. Lee*, 888 F.3d 503, 507 (D.C. Cir. 2018). Upon a defendant's valid waiver of FRCP 11(f) and FRE 410 rights, the government may use statements made during plea discussions not only for impeachment and rebuttal, but also in

---

[12] Defendant's decision to not plead guilty on April 12, 2023, and simultaneously, not reject the plea offer until it expired on October 16, 2023, delayed the administration of justice by at least six months—a delay that has prejudiced the Government disproportionately. A potential Government witness was murdered in Mexico in early October 2023, before the plea offer expired. Another Government witness will likely be unable to testify before the factfinders at trial due to his deteriorating health, although his testimony was preserved in a FRCP 15 deposition in February 2024. Additionally, the delay postponed sentencings and closures in cases involving cooperating witnesses.

its case in chief. *United States v. Burch*, 156 F.3d 1315, 1321-22 (D.C. Cir. 1998). A waiver can

be valid if the defendant "conferred with his lawyer" about waiving FRCP 11(f) and FRE 410

rights and "never complained that he entered into the waiver agreement at issue unknowingly or

involuntarily." *Mezzanatto*, 513 U.S. at 211; *see also United States v. McCrimmon*, No. 22-3044,

2024 WL 1953951, at *1 (D.C. Cir. May 3, 2024) ("A waiver is valid if the defendant agreed to

it 'knowingly and voluntarily.'" (citation omitted)).

A colloquy with a judge regarding a specific waiver is not required for the waiver to be

valid because a defendant can receive the requisite knowledge through competent counsel. For

instance, in *Bradshaw v. Stumpf*, the Supreme Court upheld a guilty plea where the trial court did

not inform the defendant of the elements of the crime because "constitutional requirements may

be satisfied where the record accurately reflects that the charge's nature and the crime's elements

were explained to the defendant by his own, competent counsel." 545 U.S. 175, 176, 183 (2005)

(explaining that a "guilty plea operates as a waiver of important rights, and is valid only if done

voluntarily, knowingly, and intelligently, 'with sufficient awareness of the relevant

circumstances and likely consequences'" (citation omitted)); *cf. Henderson v. Morgan*, 426 U.S.

637, 647 (1976) (setting aside a guilty plea in a "unique" case where defendant had not been

informed, by counsel or court, of the intent element of the crime he pled guilty to, but

differentiating that case from others where "the record contains either an explanation of the

charge by the trial judge, or at least a representation by defense counsel that the nature of the

offense has been explained to the accused").

"Before any waiver can be deemed unenforceable, *Mezzanatto* held that a trial judge must

find 'some affirmative indication that the agreement was entered into unknowingly or

involuntarily.'" *Burch*, 156 F.3d at 1322 (citation omitted). A "written plea agreement" is

"strong evidence" that a defendant "knowingly, intelligently, and voluntarily waived" a right, though other factors include clarity of the agreement, defendant's and defense counsel's signatures, and statements to the court. *Lee,* 888 F.3d at 50.

The record in this case warrants enforcing the waiver at issue because several factors show that the Defendant entered the Plea Agreement and waived his rights knowingly and voluntarily, including: 1) the clarity of the Plea Agreement, 2) Defendant's access to three competent attorneys and interpretation, and 3) the attestations in the plea paperwork.

First, the Plea Agreement was clear and unambiguous. The agreement specified the rights at issue, their waiver, and the event triggering the waiver, i.e., breaching the Plea Agreement. *See* Ex. A at 1 (specifying obligation to plead guilty); *compare with United States v. Escobedo*, 757 F.3d 229, 234 (5th Cir. 2014) (holding waiver was unenforceable where plea agreement— unlike here—did not specify what constituted a breach).



█████████████████████████████████

████████████████████ The first obligation to which the Defendant bound himself under the Plea Agreement was to plead guilty. Ex. A at 1 (noting under "Defendant's Obligations, Acknowledgments, Waivers," "1. Charges. The Defendant agrees to plead guilty to the Superseding Information"). The Defendant breached the agreement by refusing to plead guilty—thereby voluntarily triggering the consequences of the waiver at issue.[13] *See, e.g.*, *United States v. Washburn*, 728 F.3d 775, 780-82 (8th Cir. 2013) (holding waiver was valid and noting defendant triggered it by not pleading guilty); *United States v. Hardwick*, 544 F.3d 565, 570 (3d Cir. 2008) (upholding admission of proffer statements because defendant triggered waiver's consequences).

Second, the Defendant had three competent, experienced criminal defense counsel at his disposal—with at least one counsel fluent in Spanish—when deciding whether to sign the Plea Agreement. *See Mezzanatto*, 513 U.S. at 210-11 (upholding waiver of FRCP 11(f) and FRE 410 rights, in part, because defendant consulted with his counsel); *see also United States v. Jackson*, 26 F.4th 994, 998-99 (D.C. Cir. 2022) (noting, in part, access to "experienced defense attorney" and "standard practice for defense counsel to discuss" waiver matters as factors material to the "knowing and voluntary" determination). Importantly, when the Defendant moved to retain new counsel during the hearing on April 12, 2023, he specified the reason as "just want[ing] a second opinion," because the charges were "severe." Hr'g Tr. 7:11-9:8, Apr. 12, 2023. █████████

██████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████████████

████  Although the Defendant was entitled to seek a second opinion, his belated desire to do so does not cast doubt on the competent representation he had already received by that point. He has never claimed otherwise. *See, e.g.*, *Bradshaw*, 545 U.S. at 186 (upholding guilty plea and noting Court was "reluctant to accord much weight to [defendant's] *post hoc* reevaluation of the wisdom of the bargain").

Relatedly, given the Defendant's access to competent counsel, his waiver can be "knowing and voluntary," and thus valid and enforceable, even in the absence of a court colloquy about the specific waiver.[14] For instance, the Supreme Court reversed the Ninth Circuit's "per se rejection" of a defendant's waiver in *Mezzanatto*, where the defendant waived his FRCP 11(f) and FRE 410 rights after consulting with his attorney and during an initial meeting with the prosecutor, noting: "Respondent conferred with his lawyer after the prosecutor proposed waiver as a condition of proceeding with the plea discussion, and he has never complained that he entered into the waiver agreement at issue unknowingly or involuntarily." 513 U.S. at 210-11;[15] *see also Lee*, 888 F.3d at 506 (upholding appeal waiver where district court

---

[14] Although the Court did not conduct a Rule 11 colloquy during the hearing on April 12, 2023, the Court still discussed the Plea Agreement and related matters with the Defendant and defense counsel during that hearing and three subsequent hearings, i.e., hearings held on April 21, May 12, and September 15, 2023. What the Defendant and his counsel said—and did not say—during these four hearings are material to the "knowing and voluntary" determination.  The record of in-court proceedings contains no affirmative challenge to the "knowing" or "voluntary" nature of the Plea Agreement, or the waiver therein. Rather, it only contains the brief suggestion that the statement of facts was "illegally obtained" because it was read to the Defendant "by a noncertified court interpreter." *See* Hr'g Tr. 12:14-19; *see also id.* at 13:2-4.

[15] *Mezzanatto* concerned admission of evidence for rebuttal and impeachment. The D.C. Circuit has since extended the *Mezzanatto* holding to admission of plea statements for use in case in chief, noting, "we . . . do not countenance drawing any distinction in this case between permitting waivers for purposes of impeachment or rebuttal and permitting waivers for the prosecution's case-in-chief." *Burch*, 156 F.3d at 1321.

16

did not mention waiver during Rule 11 colloquy, noting, when "the defendant knowingly, intelligently, and voluntarily waives the right to appeal, it makes little sense to deem the appeal waiver not knowing, intelligent, and voluntary merely because it was not mentioned at the plea hearing" and that a contrary holding would deprive government of benefits of its bargain and "grant a windfall" to defendant); *Washburn*, 728 F.3d at 780-82 (upholding enforcement of waiver, adding, "a dialogue between the district court and the defendant regarding the knowing and voluntary nature of a plea agreement that usually occurs at a change of plea hearing 'is not a prerequisite for a valid waiver' of a particular right" (citation omitted)).

Third, the executed plea documents contain written attestations by both the Defendant and his then-counsel that the Defendant knowingly and voluntarily waived his rights. The Defendant attested that he reviewed the agreement with his attorney, that he fully understood the agreement, that he agreed to "the information contained within it without reservation," and that he entered the agreement "voluntarily" and of his "own free will, intending to be legally bound." Ex. A at 9; Ex. B at 7 (same as to the statement of facts).[16] Clear waivers, such as these, are enforceable. *See United States v. Davis*, 45 F.4th 73, 80 (D.C. Cir. 2022) (enforcing appeal waiver despite Rule 11 error in part because "written plea waiver was clear" and defendant attested to reviewing, "understanding and agreeing with its terms"); *United States v. Pierson*, 89 F.4th 976, 983-84 (7th Cir. 2024) (noting "[a] waiver . . . is knowing if made with a full awareness of both the nature of the right being abandoned and the consequences of the decision

---

[16] ███████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████

to abandon it," and stating signed proffer letter waiving FRCP 11(f) and FRE 410 rights, with similar attestations therein, as generally sufficient for waiver (citation omitted)); *McCrimmon*, 2024 WL 1953951, at *1 (noting clarity of plea agreement and defendant's signature as factors supporting a finding of "knowing and voluntary" waiver). A finding consistent with these attestations would only credit the Defendant and his then-counsel's voluntary representations. *See Lee*, 888 F.3d at 506 (noting access to competent counsel and similar attestation language as factors in assessing "knowing and voluntary" nature of a waiver).

The Defendant waived his rights at issue by entering the Plea Agreement knowingly and voluntarily, and then triggering the consequences of that waiver by breaching the agreement. Thus, the Court should enforce the waiver and admit the statement for use in Government's case in chief, impeachment, and rebuttal. *See United States v. Hall*, 877 F.3d 800, 805 (8th Cir. 2017) (upholding admission of factual statements from defendant's withdrawn plea agreement because waiver was knowing and voluntary).

### C. The Proffered Statement of Facts Passes Rule 403's Balancing Test.

The statement at issue is admissible under Rule 403 because its probative value is not "substantially outweighed" by the danger of any undue prejudice. Fed. R. Evid. 403.

Under Rule 403, courts inquire "whether the probative value [of a proffered evidence] is substantially outweighed by the prejudice" before admitting the evidence. *Burch*, 156 F.3d at 1323 (citation omitted). "In determining whether 'the probative value is substantially outweighed by the danger of unfair prejudice' it is a sound rule that the balance should generally be struck in favor of admission when the evidence indicates a close relationship to the offense charged." *United States v. Harrison*, 679 F.2d 942, 948 (D.C. Cir. 1982) (citation omitted); *see also United States v. Ridings*, 75 F.4th 902, 906 (8th Cir. 2023) (affirming admission of defendant's plea

statement at trial as not unfairly prejudicial because "it did not suggest decision on an improper basis," where defendant refused to plead guilty pursuant to his plea agreement).

The statement at issue is highly probative as Defendant's admission of guilt. The statement contains jointly stipulated facts that the parties agreed would be sufficient to establish the charges in the Superseding Information beyond a reasonable doubt. *See United States v. Larrahondo*, 885 F. Supp. 2d 209, 220 (D.D.C. 2012) ("[I]ncriminating statements by a defendant himself are generally considered quite probative . . . ."). The probative value of the evidence will also enhance the reliability of the verdict in this case. *Mezzanatto*, 513 U.S. at 204 ("The admission of plea statements for impeachment purposes *enhances* the truth-seeking function of trials and will result in more accurate verdicts.").

On the other hand, the statement does not risk unfair prejudice or a verdict on an improper basis. The statement, as evidence, contains no inflammatory details beyond the general use-of-violence allegations in this case and what the Government plans to introduce through witness testimonies. Accordingly, it will "add[ ] no emotional or other pejorative emphasis not [otherwise] introduced by the evidence" in this case. *United States v. Straker*, 567 F. Supp. 2d 174, 179 (D.D.C. 2008) (citation omitted) (analyzing danger of unfair prejudice in other crimes evidence context); *see also Ridings*, 75 F.4th at 906 (stating "Rule 403 prejudice is something different than simply being evidence that is detrimental to a party's case"). Moreover, given that Defendant's admissions necessarily go to the heart of the charged offenses, any potential danger of undue prejudice can be curbed by limiting instructions, as necessary. *See United States v. Mitchell*, 49 F.3d 769, 777 (D.C. Cir. 1995) (affirming admission of evidence despite risk of "impermissible inference" partly due to limiting jury instructions); *Harrison*, 679 F.2d at 948 (upholding admission of evidence of defendant's acts and noting that Rule 403's "balance should

19

generally be struck in favor of admission when the evidence indicates a close relationship to the offense charged" (citation omitted)).

In short, the proffered statement passes Rule 403's balancing test because it is highly probative without risking undue prejudice, particularly because a limiting instruction can sufficiently guard against any potential impermissible inference.

## IV. GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO PRECLUDE THE USE OF THE SIGNED STATEMENT

As a threshold matter, the Defendant does not address the question of whether FRCP 11(f) and FRE 410 even cover a final, fully executed statement of facts sent to the Court. As discussed above, they do not, and the Court can admit the statement at issue for all purposes solely on that basis. The Defendant instead jumps directly to whether FRCP 11(f) and FRE 410 were waived by the Plea Agreement.

In his Motion, the Defendant invokes *Mezzanatto* and argues his assent to the Plea Agreement was unknowing and involuntary. Dkt. No. 137, at 6. *Mezzanatto* requires "*some affirmative indication*" to that effect before an agreement/waiver can be deemed unenforceable. 513 U.S. at 210 (emphasis added). Yet, in support, the Defendant offers only conclusory and refutable assertions. For instance, the Defendant claims the plea documents were not "translated into Spanish"—though he does not fully engage with the record, which shows he discussed the plea paperwork with his counsel and had a co-counsel fluent in Spanish at his disposal, nor does he ever claim that he did not actually understand the plea paperwork. Dkt. No. 137, at 6. He also claims his counsel did not advise him about the timing of his waiver, without providing an affidavit to that effect—though he does not claim he did not understand the consequences of a breach. *Id.* Similarly, that the Defendant signed the plea agreement weeks after the change-of-plea hearing was scheduled ignores the fact that the Defendant discussed the paperwork with his

20

counsel in April 2023, and attested to that as well. *Id.* Lastly, the Defendant retained a new

counsel because, in his own words, he wanted a "second opinion"—not because he was

dissatisfied with his representation nor that he was misled. *Id.* The Defendant offers no

affirmative indication why this Court should not enforce the agreement. As discussed in Sections

II and III.B above (including footnote 7), the Defendant entered into the agreement knowingly

and voluntarily, making his waiver therein "valid and enforceable." *Mezzanatto*, 513 U.S. at 210.

The Defendant also argues that the Plea Agreement is not enforceable because the Court

did not accept it/he did not plead guilty. Dkt. No. 137, at 7. Yet, he concedes—albeit

implicitly—that the principle he invokes is not axiomatic because he cites to cases doing and

suggesting otherwise. For instance, the Defendant discusses *Washburn*, an Eight Circuit case in

which the defendant entered a plea agreement, refused to plead guilty, and the court admitted his

statements due to his knowing and voluntary waiver. *Id.* at 12; *Washburn*, 728 F.3d at 780-82

(noting a colloquy with the court "'is not a prerequisite for a valid waiver' of a particular right"

(citation omitted)). The Defendant also discusses *Escobedo*, a Fifth Circuit case where the court

analyzed the waiver language and denied admission of the defendant's statement because of an

ambiguity in the waiver language—rather than a summary denial because the defendant had not

pled guilty and the court had not accepted the plea agreement. Dkt. No. 137, at 5-6. Against this

backdrop, the Defendant supports his argument with dicta from two inapposite cases that did not

concern the rules at issue or their waiver. *See id.* at 7 (citing to *United States v. Novosel* and

*United States v. Gonzalez*, Tenth Circuit and Third Circuit cases, respectively).[17]

---

[17] The Tenth Circuit has not held that a signed statement of facts is inadmissible absent the
defendant entering a guilty plea, as evidenced by a recent Tenth Circuit case. In *United States v.
Ayala-Bojorquez*, the defendant signed a plea agreement but did not plead guilty. The Tenth
Circuit noted that it had never addressed the question of whether a signed statement of facts was

Moreover, Defendant's position leads to a legal contradiction—a verbal waiver or waiver through a proffer letter could suffice for admission of statements, yet a waiver through a plea agreement would not suffice if a defendant reneged on his agreement to plead guilty. *See, e.g.*, *Mezzanatto*, 513 U.S. at 210-11 (upholding waiver of rules at issue where defendant consulted his counsel in prosecutor's presence and agreed to waive them as pre-condition to plea negotiations); *Pierson*, 89 F.4th at 984-85 (enforcing FRCP 11(f) and FRE 410 waiver in signed proffer agreement and discussing its importance); *Hardwick*, 544 F.3d at 570 (finding waiver in proffer agreement enforceable where three defendants proffered but did not plead guilty and their proffer statements were admitted at trial).

Lastly, Defendant's claim that the Plea Agreement was ambiguous also fails for the reasons discussed in Section III.B above. Unlike *Escobedo*, the agreement here explicitly stated that in case of a breach, the Defendant's statements would be used against him. ████████

*see also Escobedo*, 757 F.3d at 233. ████████████████████

████████████████████████████████

████████████████████████████████████

████████████████████████████████

████████████████████████████████████

██████████████████████████████

████████████████████████████████

admissible absent a completed plea, but the court declined to decide the issue, finding instead that even if the statement had been erroneously admitted, the admission would be "harmless error" because of the overwhelming evidence in the case.  No. 23-2054, 2024 WL 397351, at *2 (10th Cir. Feb. 2, 2024).

████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████ Therefore, the Defendant's argument that he could not have triggered the agreement and his waiver before pleading guilty is not supported by the facts.

In short, the Defendant argues that admitting the statement for the Government's case-in-chief would make FRCP 11 "entirely superfluous" and cause a "seismic shift." *Id.* at 2, 7. This argument is hyperbolic. The Government does not argue that a plea agreement obviates the need for a guilty plea, nor that a FRCP 11 colloquy is not a valuable tool for the knowing and voluntary analysis. The Government does not even argue that a signed statement of facts should be admissible in all cases. Rather, the Government argues that if the record establishes that the defendant (1) signed a statement after plea negotiations ended, (2) pursuant to a clear agreement, (3) submitted it to the Court, (4) knew what he was doing because he had competent counsel and attested as much, and (5) acted voluntarily in the presence of his own counsel and attested to that too, then his belated second thoughts do not preclude the statement's admission for all purposes. In other words, given the record in this case, the Defendant's signature on the plea paperwork was not an empty, meaningless gesture. As his adopted statement puts it, the Defendant "intend[ed] to be legally bound" by entering the agreement—not, as he claims, only after pleading guilty. Ex. A at 9; Ex. B at 7. What the Defendant desired is what the Government requests—no more, no less.

## V.  CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court admit the

proffered statement of facts for all purposes and deny Defendant's Motion.


Respectfully submitted this 8th day of July 2024.


MARLON COBAR, Chief
Narcotic and Dangerous Drug Section
Criminal Division
United States Department of Justice

By:     /s/   *Lernik Begian*
Lernik Begian, Trial Attorney
Kaitlin Sahni, Acting Deputy Chief
Jonathan Hornok, Trial Attorney
Kate Naseef, Trial Attorney
United States Department of Justice
Narcotic and Dangerous Drug Section
145 N Street, Northeast
East Wing, Second Floor
Washington, D.C. 20530
Kaitlin.Sahni@usdoj.gov
(202) 514-0917

## <u>CERTIFICATE OF SERVICE</u>

      I hereby certify that a copy of the foregoing was sent via ECF, to counsel of record for the Defendant, on July 8, 2024.


              By:      /s/  *Lernik Begian*     .
                       Lernik Begian
                       Trial Attorney
                       Narcotic and Dangerous Drug Section
                       U.S. Department of Justice