1

**ANTHONY E. COLOMBO, JR.**
California State Bar No. 218411
2  The Senator Building, Ste. 312
105 West "F" Street
3  San Diego, CA 92101
Tel:   (619) 236-1704
4  Email: anthonycolombolegal@gmail.com

5

6  Attorney for Ruben Oseguera-Gonzalez

7
UNITED STATES DISTRICT COURT
8
DISTRICT COURT OF COLUMBIA
9
(HONORABLE BERYL A. HOWELL)
10

11  UNITED STATES OF AMERICA,            )      CASE NO. 16cr00229-BAH
                                        )
12             Plaintiff,                )
                                        )
13  v.                                   )
                                        )
14  RUBEN OSEGUERA-GONZALEZ,            )      DEFENDANT'S RESPONSE AND
                                        )      OPPOSITION TO THE UNITED
15             Defendant.                )      STATES' MOTION TO ADMIT THE
                                        )      DEFENDANT'S STATEMENT OF
16                                       )      FACTS
                                        )
17                                       )
                                        )
18  _____       )

19      TO:   KATE M. NASEEF, TRIAL ATTORNEY, UNITED STATES ATTORNEY'S
              OFFICE; JONATHON HORNOK, TRIAL ATTORNEY, UNITED STATES
20            ATTORNEY'S OFFICE; LERNIK BEGIAN, TRIAL ATTORNEY, UNITED
              STATES ATTORNEY'S OFFICE; AND KAITLIN SAHNI, ACTING
21            DEPUTY CHIEF, UNITED STATES ATTORNEY'S OFFICE:

22                                    **I.**

23                    **RESPONSE AND OPPOSITION**

24          The Government sets forth two arguments as to why the Joint Statement of Stipulated

25  Facts which was "attached" as part of, and "incorporated [in]to[,]" the Plea Agreement (*see*

26  EFC 146-2 at 1), is admissible in the Government's case-in-chief.  First, the Government

27  maintains that the Joint Statement of Stipulated Facts was made after plea discussions were

28  concluded, Federal Rule of Criminal Procedure 11(f), and Federal Rule of Evidence 410, are

                                       1

not applicable, and thus, the statement is admissible.  *See* ECF 146 at 8-12.  Second, the Government maintains, in the alternative, if the statement was made during plea discussions, there was a valid waiver under Rules 11(f) and 410, and thus, the statement is admissible. *See* ECF 146 at 12-18.  Neither argument is persuasive.  Neither argument is supported by the law or the language of the Plea Agreement.

### A.   The Joint Statement of Stipulated Facts was Part of the Plea Discussions

The Joint Statement of Stipulated Facts is made in conjunction with and inextricably bound up in the Plea Agreement.  The plain language of the Plea Agreement states that the statement of facts is "attached to th[e] Plea Agreement and incorporated herein."  *See* ECF 146-2 at 1.  It does state the Joint Statement of Stipulated Facts is a statement made outside the plea discussions adopted by the defendant after plea discussions have concluded.  The statement of fact section is required for any plea agreement as those admissions form the factual basis that establish the elements of the offense required to be proven by the Government beyond a reasonable doubt.  Without a statement of facts attached to a plea agreement, the plea agreement, and the subsequent guilty plea, would be invalid.  However, the Government desires that the Court create some legal fiction unsupported by law or the language of the Plea Agreement here to determine the Joint Statement of Stipulated Facts is magically a statement made after plea negotiations have concluded and thus are excluded from Rule 11(f) and Rule 410.  With a waive of the Government's hand what was then and has always been plea negotiation statements, are no longer.  This Houdiniesque argument should not be entertained by the Court.  Only a defendant can plead guilty.  *See Jones v. Barnes*, 463 U.S. 745, 751 (1983).  Neither counsel, the court, and certainly not the prosecutor, can plead guilty on a defendant's behalf.  There is no distinction between a defendant's offer to plead guilty and a defendant's actions taken in accord with the prosecutor's required terms of a plea bargain.  "Plea bargaining implies an offer to plead guilty upon condition."  *See United States v. Levy*, 578 F.2d 896, 901 (2nd Cir. 1978).  Here, the joint statement of facts was part and parcel to the negotiated plea bargain and agreement, and cannot through magic or slight of hand now be separated.

The Government cites as its primary support, *United States v. Davis*, 617 F.2d 677 (D.C. Cir. 1979), but *Davis* neither supports the proposition for which the Government cites it for, *i.e.* that the Joint Statement of Stipulated Facts was a statement made *after* plea discussions had concluded, and *Davis* is also readily distinguishable from the instant case.

In *Davis*, the defendant and his attorney entered into a formal plea agreement with the Government in which the defendant agreed to testify before the grand jury and at any trial, and in return defendant would be allowed to plead guilty tp a single charge of distributing cocaine. *Davis*, 617 F.2d at 681-82. The defendant appeared before the grand jury and admitted to trafficking in cocaine. *Id*. However, at his scheduled plea hearing the defendant withdrew from the plea agreement and proceeded to trial. *Id*. The court admitted the defendant's grand jury testimony, and the admission of the defendant's grand jury testimony was affirmed on appeal with the D.C. Circuit Court of Appeals holding, "[S]tatements made by a defendant in testimony before a grand jury pursuant to a plea agreement are not 'statements made in connection with, and relevant to' plea negotiations, offers of pleas, or pleas entered or later withdrawn." *Davis*, 617 F.2d at 686.

In reaching its conclusion the D.C. Circuit Court of Appeals determined that the exclusion of plea discussion statements "seeks to promote negotiated dispositions of criminal cases by giving the defendant protection from involuntary self-incrimination at two ends of the plea bargaining spectrum: while he is negotiating over the disposition of his case [currently covered by Rules 11(f) and Rule 410(a)(3)], and while he is offering or entering a plea that is rejected or later withdrawn [currently covered by Rule 11(f) and Rule 410(a)(1) and (4)]." *Davis*, 617 F.2d at 683.

The former "focuses primarily on the negotiation stage[, and is] derive[d] from 'the inescapable truth that for plea bargaining to work effectively and fairly, a defendant must be free to negotiate without fear that his statements will later be used against him.'" *Id*. (citations omitted). "The most significant factor in the rule's adoption was the need for free and open discussion between the prosecution and the defense during attempts to reach a compromise. [The rule] fosters this kind of frank exchange." *Id*. (citations omitted).

"[A]bsent such a shield the possibility of self-incrimination would 'discourage defendants from being completely candid and open during plea negotiations.[]" *Id*. (citations omitted).

The later, "[a]t the opposite end of the spectrum, statements made in conjunction with a plea of guilty that is made in open court but rejected or later withdrawn also are inadmissible." *Id*. at 684. "For example, the rule precludes the admission of the defendant's responses to questions concerning the voluntariness of the plea posed by the trial judge[]." *Id*. (citation omitted). "Other statements made 'during proceedings in connection with the disclosure and acceptance or rejection of a plea agreement' fall within the rule as well." *Id*. (citation omitted). "Excluding these statements is necessary to effectuate the rejection or later withdrawal. Were the statements admissible, the defendant's own incriminating words, inseparably linked to a plea now regarded as a nullity, in many cases would operate to convict him, thereby rendering meaningless the rejection or withdrawal." *Id*.

The D.C. Circuit Court of Appeals reasoned "[t]he grand jury testimony [] falls between these two points on the plea-bargaining spectrum[, as] [e]xcluding [this] testimony made after and pursuant to the agreement would not serve the purpose of encouraging compromise." *Davis*, 617 F.2d at 684-85.

In the instant case, here, and unlike in *Davis*, Mr. Oseguera-Gonzalez did not testify before the grand jury. Here, the Joint Statement of Stipulated Facts falls into the former category on the plea-bargaining spectrum as it is a "statement[] made in connection with, and relevant to plea negotiations, [an] offer of plea [that was] later [rejected or] withdrawn." *See Davis*, 617 F.2d at 686. The Joint Statement of Stipulated Facts was attached to and incorporated into the plea agreement negotiated by the parties. *Davis* simply does not support the Government's position that the stipulated facts was entered into after the plea discussions had terminated. Here, unlike the grand jury testimony in *Davis*, the statement was "made in connection with" the plea agreement, and attached and incorporated into the plea agreement. *See Davis*, 617 F.2d 684 (citing *United States v. Stirling*, 571 F.2d 708 (2d Cir. 1978). Here, "when the accused and the Government actually [have] engaged in plea

negotiations: 'discussions in advance of the time for pleading with a view to an agreement whereby the defendant will enter a plea in the hope of receiving certain charge or sentence concessions[,]'" requires that the policy of insuring free dialogue during plea discussions be enforced.  *See United States v. Knight*, 867 F.2d 1285, 1288 (11th Cir. 1989) (citing *United States v. Robertson*, 582 F.2d 1356, 1365 (5th Cir. 1978) (further citation omitted).

To the lesser extent that the Government relies upon *Stirling*, 571 F.2d 708, *Knight*, 867 F.2d 1285, and *United States v. Nemetz*, 19887 WL 17543 (Dist. Mass. 1987), these cases do not support the Government's position and are distinguishable.  First, *Stirling* is distinguishable for the same reasons stated above for *Davis*.  *Stirling* also involved grand jury testimony, and thus, the grand jury testimony fell outside the spectrum of plea discussions and negotiations.  *See Stirling*, 571 F.2d 708.  Second, while the *Knight* case did not involve grand jury testimony, the statements were made post-arrest to a law enforcement officer were made after the plea negotiations had concluded, and importantly, these statements were not permitted in the Government's case-in-chief, as sought here, but rather were only used for impeachment after the defendant chose to testify in her own defense at trial.  *See Knight*, 867 F.2d at 1287-89.  Third, the *Nemetz* case addressed both statements made pursuant to a proffer agreement and the grand jury.  *See Nemetz*, 1987 WL 17543 * 1-4.  The proffer statements, per the terms of the proffer agreement, were not permitted in the Government's case-in-chief and only admissible for impeachment or rebuttal purposes.  *Id.* at 3.  The grand jury testimony, similar to *Davis* and *Stirling*, again, fell outside the scope of the plea discussions and negotiations.  *Id.* at 4.  *Stirling*, *Knight*, and *Nemetz* offer no support for the Government.

Finally, Mr. Oseguera-Gonzalez does not agree with the Government's argument that the Joint Stipulated Statement of Facts "fall outside the text and plain meaning of FRCP 11(f) and FRE 410."  *See* ECF 146 at 11-12.  Rule 11(f) states, "The admissibility or inadmissibility of a plea, a plea discussion, and any related statement is governed by Federal Rule of Evidence 410."  "[A] plea discussion, *and any related statement*" is sufficiently

broad enough to include a joint statement of facts attached to, and incorporated into, a plea agreement.  Rule 410(a)(4) specifically states evidence of the following is not admissible, "a statement made during plea discussions with an attorney for the prosecuting authority if the discussions did not result in a plea."  This is EXACTLY the situation present here in this case.  The Joint Statement of Stipulated Facts "attached" to, and "incorporated" into, the plea agreement was the result of plea discussions and negotiations with the United States Attorney's Office beginning with a written plea offer on March 24, 2023, with multiple revisions (at least four) thereafter prior to the scheduled plea hearing of April 12, 2023.  This situation falls squarely within Rule 11(f) and Rule 410(a)(4).  Exclusion of the statements made pursuant to Rule 11(f) and Rule 410(a)(4) is appropriate, and is not with impunity as the Government asserts, as the consequence, consistent with *United States v. Mezzanatto*, 513 U.S. 196, 204 (1995), and *United States v. Burch*, 156 F.3d 1315 (D.C. Cir. 1998), is for the Government to use the statements for impeachment or rebuttal in the event Mr. Oseguera-Gonzalez exercises his right to testify at trial.[1]

## B.   There is No Valid Waiver Triggered Here

Mr. Oseguera-Gonzalez does not wish to repeat the same arguments set forth in his Motion to Preclude the Use of Defendant's Statements Made During the Course of Plea Negotiations.  *See* ECF 137 at 4-14.  The arguments set forth by Mr. Oseguera-Gonzalez were simply not refuted by the Government.  However, it must be repeated that the language of the Plea Agreement does not recognize that Mr. Oseguera-Gonzalez's failure to enter a plea of guilty was an event that triggered a waiver of his rights pursuant to Rule 11(f) and Rule 410, and that his waiver of those rights was contemporaneous to his signature.  Nothing in the Plea Agreement specifically states such, and as the drafter of the Plea Agreement the

---

[1] The Government asserts it was prejudiced by Mr. Oseguera-Gonzalez's failure to plead guilty as "[a] potential Government witness was murdered in Mexico in early October 2023," (*see* ECF 146 at 12), but as the Government has conceded there is no provable connection to Mr. Oseguera-Gonzalez or that this was done to benefit Mr. Oseguera-Gonzalez.  Nevertheless, the "prejudice" argument asserted by the Government is not relevant to the Court's analysis.

Government was required to specifically outline such language. The language in the plea agreement was not explained in this way to Mr. Oseguera-Gonzalez.[2]

A plea agreement is a contract and so we advert to principles of contract law in interpreting it. *United States v. Hunt*, 843 F.3d 1022, 1027 (D.C. Cir. 2016) (citing *United States v. Henry*, 758 F.3d 427, 431 (D.C. Cir. 2014); *United States v. Jones*, 58 F.3d 688, 691 (D.C. Cir. 1995). Ambiguity in a plea agreement, as in any other type of contract, is construed against the drafter. *Id*. (citing *Henry*, 758 F.3d at 431; *In re Sealed Case*, 702 F.3d 59, 63 n.2 (D.C. Cir. 2012); *see Restatement (Second) of Contracts § 206* (1981) ("In choosing among the reasonable meanings of a promise or agreement or a term thereof, that meaning is generally preferred which operates against the party who supplies the words or from whom a writing otherwise proceeds."). There is no question, "[u]nder settled precedent, ambiguity in the meaning of a plea agreement must be resolved against the government." *United States v. Moreno-Membache*, 995 F.3d 249, 255 (D.C. Cir. 2021) (citing *Henry*, 758 F.3d at 431; *Jones*, 58 F.3d at 691).

The Government has failed to examine and address specific language in the Plea Agreement, and entirely ignores language in the Plea Agreement that discusses what would trigger the waiver and what the scope of the waiver is in this case.

First, the Plea Agreement negotiated between the parties requires the defendant to enter a plea of guilty to the specified charge, and the waiver language in the Plea Agreement at paragraph 6. states as follows: "The Defendant understands that by pleading guilty in this case he agrees to waive certain rights afforded by the Constitution of the United States and/or by statute, including the right to plead not guilty, the right to a jury trial, and the right to effective assistance of counsel." The plain language demonstrates that the waiver of these

_____

[2] In the event the Court determined an evidentiary hearing was necessary, Mr. Oseguera-Gonzalez would be prepared to call witnesses to support the fact that Mr. Oseguera-Gonzalez was not advised his waiver was contemporaneous upon signing the plea agreement or that the Joint Statement of Stipulated Facts would be admissible against him if he changed his mind and did not plead guilty.

1  rights is triggered by defendant's entry of a guilty plea, NOT contemporaneous to his signing

2  of the plea agreement.

3      Second, nothing in the language cited by the Government (*see* ECF 146 at 14)[3]

4  modifies paragraph 6. above stating that a breach occurs by failing to plead guilty triggering

5  the waiver contemporaneous to defendant's signature on the Plea Agreement.  The language

6  cited by the Government does not modify the Plea Agreement language in paragraph 6., but

7  rather it explains that failure to comply with defendant's expanded obligations is a breach.

8      Third, the Government conveniently omits from its brief critical language contained

9  in the Plea Agreement.  The Plea Agreement language as it relates to Rule 11(f) and Rule

10  410, read as follows:

11      The Defendant acknowledges discussing with his counsel Rule 11(f) of
       the Federal Rules of Criminal Procedure and Federal Rule of Evidence
12      410, rules which ordinarily limit the admissibility of statements made by
       a defendant in the course of plea discussions or plea proceedings if a
13      guilty plea is later withdrawn. The Defendant knowingly and voluntarily
       waives the rights which arise under these rules. ***As a result of this***
14      ***waiver, the Defendant understands and agrees that any statements***
       ***which are made in the course of his guilty plea will be admissible***
15      ***against him for any purpose in any criminal or civil proceeding if the***
       ***Defendant breaches the Plea Agreement or his guilty plea is***
16      ***subsequently withdrawn.*** Moreover, in the event the Defendant's guilty
       plea is withdrawn, he agrees that the United States will be free to use
17      against him in any criminal or civil proceeding any statements made
       during the course of any debriefing conducted in this case, regardless of
18      whether those debriefings were previously covered by an "off the
       record" agreement by the parties.

19
20  The Government fails to acknowledge or discuss the import of the highlighted and italicized

21  language.  The scope of the waiver is very clear in that "any statements made in the course

22  of [defendant's] guilty plea will be admissible against him for any purpose in any criminal

23  proceeding if the defendant breaches the Plea Agreement or his guilty plea is subsequently

24  withdrawn."  The language here presupposes a guilty plea be entered as the scope of the

25  waiver covers "any statements made in the course of defendant's guilty plea."  A guilty plea

26  must be made on the record and in court pursuant to Criminal Procedural Rule 11, and if

27  _____

28      [3] Unredacted version filed with the Court.

                                    8                        16cr00229-BAH

1 subsequent to the guilty plea there is a breach of the agreement or a successful withdrawal
2 of the guilty plea then the defendant's statements pursuant to that plea may be used.  This
3 is the only way to interpret this provision in the Plea Agreement.  To the extent there exists
4 any ambiguity, again, ambiguity in a plea agreement, as in any other type of contract, is
5 construed against the drafter, in this case the Government. *Hunt*, 843 F.3d at 1027 (citations
6 omitted).

7 The waiver language here does not expressly state that it took effect at the time Mr.
8 Oseguera-Gonzalez signed the Plea Agreement, and that he waived his rights under Rule of
9 Evidence 410 and Rule of Criminal Procedure 11 contemporaneous with his signing of the
10 Plea Agreement.  The waiver language here also does not say that it would take effect
11 regardless of whether or not the District Court accepted or rejected defendant's guilty plea.
12 *See e.g.*, *United States v. Wasburn*, 728 F.3d 775 (8th Cir. 2013) (Enforcing the following
13 waiver language "Defendant waives these rights and agrees this stipulation may be used
14 against defendant at any time in any proceeding should defendant violate *or refuse to follow*
15 *through on this plea agreement, regardless of whether the plea agreement has been*
16 *accepted by the Court*.") (emphasis added); *United States v. Jim*, 786 F.3d 802 (10th Cir.
17 2015) (Enforcing waiver language "Defendant agrees that, *upon the defendant's signing of*
18 *this plea agreement*, the facts that Defendant has admitted under this plea agreement as set
19 forth above, as well as any facts to which the Defendant admits in open court at the
20 Defendant's plea hearing, shall be admissible against the Defendant.") (emphasis added).
21 The waiver here is reasonably interpreted as effective upon the District Court's acceptance
22 of the plea and only a withdrawal of the guilty plea or some subsequent breach of the Plea
23 Agreement after entry of the guilty plea would warrant use of plea discussion statements in
24 the Government's case-in-chief.

25
26
27
28

## CONCLUSION

For the reasons stated above, and in his motion, Mr. Oseguera-Gonzalez moves this Court to grant his motion and preclude the use of any statements made during plea discussions from use in the Government's case-in-chief, including the Joint Statement of Stipulated Facts, attached to, and incorporated into, the Plea Agreement.

Respectfully submitted,

/s/ Anthony E. Colombo, Jr.

Dated: July19, 2024                **ANTHONY E. COLOMBO, JR.**

Attorney for Mr. Oseguera-Gonzalez