**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | ) |
| | ) |
| **v.** | )   **Criminal No.: 16-CR-229 (BAH)** |
| | ) |
| **RUBEN OSEGUERA-GONZALEZ,** | ) |
| also known as "Menchito," | ) |
| "Rubencito," "Rojo," "Ruso," | ) |
| "Junior," and "El Nino," | ) |
| | ) |
| | ) |
| **Defendant.** | ) |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S**
**MOTION TO EXCLUDE PROPOSED RULE 404(b) EVIDENCE**

The United States, through undersigned counsel, submits this opposition to Defendant

Ruben Oseguera Gonzalez's Motion to Exclude the United States' Proposed Rule 404(b)

Evidence (Dkt. No. 135, "Motion" or "Mtn."). The evidence that the Defendant challenges in

the Motion is admissible as intrinsic to the charged offenses, or alternatively, admissible for

multiple non-propensity purposes under Rule 404(b). Further, consistent with Rule 403, the

probative value of the evidence is not substantially outweighed by a danger of unfair prejudice.

Accordingly, the Court should deny the Motion.

## I.   BACKGROUND

On February 1, 2017, a federal grand jury sitting in the District of Columbia returned and

filed a Superseding Indictment, charging the Defendant with the following offenses: in Count

One, with conspiracy to distribute five kilograms or more of cocaine and 500 grams or more of

methamphetamine knowing and intending that these controlled substances would be unlawfully

imported into the United States, in violation of 21 U.S.C. §§ 963, 959(a), 960(b)(1)(B)(ii), and

1

960(b)(1)(H); and in Count Two, with using, carrying, brandishing, and possessing a firearm, including a destructive device, in connection with the drug trafficking conspiracy charged in Count One, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i), 924(c)(1)(A)(ii), 924(c)(1)(B)(ii), and 2. Dkt. No. 6.  Each Count charges criminal conduct from 2007 through the date of the Superseding Indictment.  *Id.*

On July 3, 2015, the Defendant was arrested by Mexican authorities on unrelated charges. On February 20, 2020, the Defendant was extradited to Washington, D.C., for this case.  Trial is scheduled to begin on September 9, 2024.

The Government intends to prove at trial that during the course and in furtherance of the charged drug conspiracy, the Defendant was a high-ranking member of the Cartel de Jalisco Nueva Generacion ("CJNG"), a violent Mexico-based drug trafficking organization ("DTO"). The undisputed leader of the CJNG is the Defendant's father, Nemesio Oseguera Cervantes, also known as "El Mencho."  The Government will present evidence at trial that, during the timeframe alleged in the Superseding Indictment, the Defendant and his co-conspirators manufactured and distributed thousands of kilograms of methamphetamine and cocaine for importation into the United States.  As a high-level leader of the cartel, the Defendant gave orders to CJNG "plaza bosses," or local leaders, regarding drug distribution, the movement of narcotics proceeds, and the use of violence.  The Government also will offer evidence that, during the charged timeframe, the Defendant personally carried firearms, including a machinegun, was regularly accompanied by armed bodyguards who reported to the Defendant and his father, and at times was accompanied by subordinates carrying firearms, machineguns, and rocket-propelled grenades ("RPGs"), which are destructive devices.

2

On June 11, 2024, the Government filed a Notice of Rule 404(b) Evidence, informing the Defendant of the Government's intention to offer at trial evidence of the Defendant's: (1) use of violence; (2) use of bribery and corruption; (3) manufacture and/or distribution of fentanyl and marijuana; and (4) continued drug and weapons trafficking and admissions following his arrest. Dkt. No. 132 ("Notice").  The Government explained in the Notice that it considered much of the evidence "simply relevant evidence that forms the context for or integral facts of the offenses charged in the Superseding Indictment," rather than "other acts" evidence under Rule 404(b), but the Government included that information in the Notice "in an abundance of caution."  *Id.* at 1. The Government's anticipated evidence within each category includes the following[1]:

## A. Violence

Multiple witnesses will testify that the Defendant used violence and threats of violence to maintain his position of leadership within the CJNG, prevent the arrest of himself and other CJNG members, control territory, collect debts, and enforce internal discipline.  At least one witness with firsthand knowledge is expected to testify that the Defendant frequently bragged about killing people and showed other CJNG members photographs of dead people whom the Defendant had ordered kidnapped and murdered.  The witness is aware from these interactions and personally observing the Defendant give orders that the Defendant ordered at least 100 people to be murdered.  In one instance, after Mexican law enforcement seized a shipment of

---

[1] The Government has attempted to describe the anticipated testimony, including the witnesses' basis of knowledge, in a manner sufficient to inform the Court's ruling on the Motion and provide reasonable notice to the Defendant while also protecting the witnesses' identities. Should the Court require additional information about the witnesses and their anticipated testimony, the Government will furnish that information to the Court *ex parte*, upon request.  The Government also will furnish a copy of any such filing, along with additional details regarding the anticipated testimony in *Jencks* disclosures, to defense counsel at least two weeks before trial.

chemicals that the CJNG had intended to use to manufacture methamphetamine, the Defendant ordered those responsible for transporting the chemicals to be tied up and drowned in a swimming pool.  In another instance, the Defendant participated in the torture of two men suspected of providing information about the CJNG to Mexican law enforcement and later displayed photos of the men's dead bodies to other CJNG members.

Witnesses will testify based on personal observations, the Defendant's statements, and co-conspirator statements in furtherance of the conspiracy that in May of 2015, the Defendant directed subordinates to shoot down a Mexican Marine helicopter in Jalisco, Mexico, so that the Defendant and his father could avoid capture.  Witnesses also will testify, based on the same sources, that the helicopter was struck by an RPG and a 0.50 caliber machinegun, and members of the Mexican military and federal police died as a result of the attack.  Items bearing the Defendant's nickname "JR," an RPG, a 0.50 caliber machinegun, and other weapons were recovered near the helicopter crash site.

Witnesses will testify that the Defendant personally killed at least seven people, including a member of a rival DTO, a subordinate who disobeyed the Defendant's orders, and five men who owed the Defendant money.  The Defendant used a firearm to kill two of these people.  The witnesses will testify based on the Defendant's statements and personal observation of the murders.[2]

In BlackBerry Messenger ("BBM") communications intercepted pursuant to a Title III investigation in June of 2013, the Defendant and his uncle, Abigael Gonzalez Valencia[3],

---

[2] This supplements the notice previously provided, which only accounted for the Defendant personally killing two people.
[3] Abigael Gonzalez Valencia is charged with continuing criminal enterprise, distribution of cocaine and methamphetamine for unlawful importation into the United States, and use and

coordinated the kidnapping of a "thief" from Manzanillo, Mexico.[4]  The Defendant informed his uncle that the Defendant "already ha[d] the prey put away," and directed his uncle to "throw away the phones the guy has, because an Iphone he has is being tracked."

Multiple witnesses will testify that the CJNG's threats of violence and use of force are essential to its drug trafficking operation.  All proffered acts of violence occurred during the timeframe charged in the Superseding Indictment.

### B. Corruption

Multiple witnesses will testify based on personal observations and the Defendant's statements that, during the timeframe charged in the Superseding Indictment, the Defendant arranged bribes to uniformed and armed law enforcement officers and directed them to assist with the transportation and protection of drugs, money, and CJNG members within Mexico.  The witnesses will further testify that bribing law enforcement at multiple levels of government was critical to the CJNG's drug trafficking operation.

### C. Fentanyl and Marijuana

Multiple witnesses are expected to testify, based on personal observations and the Defendant's statements, that the Defendant was involved in manufacturing and distributing fentanyl for importation into the United States.  Specifically, during the timeframe charged in the Superseding Indictment, the Defendant encouraged his father to expand the CJNG's operations into fentanyl production and distribution.  Prior to his arrest in 2015, the Defendant showed a

---

possession of a firearm during and in relation to a drug trafficking crime.  *United States v. Gonzalez Valencia*, Case No. 1:14-cr-00051 (D.D.C.), Dkt. No. 1.  He is detained pending extradition from Mexico.

[4] The original intercepted BBM communications were in Spanish. Quotes included herein are draft English translations.

witness blue fentanyl pills and said that he was distributing fentanyl because he could make more money selling fentanyl, as opposed to other drugs, in the United States.

In the Defendant's BBM communications intercepted in October 2013, the Defendant agreed to release a chemist who had been kidnapped because the chemist could assist the Defendant with manufacturing "oxycotone" (oxycodone), a prescription opioid.  Referring to the chemist, the Defendant informed his co-conspirator, "I'm going to release him, brother.  I'm just going to reach an agreement with him, so that he works with me."  Cooperating witnesses and a DEA drug expert will testify that fentanyl is often pressed into pills made to look like oxycodone.

At least one witness is anticipated to testify that the Defendant was involved in distributing marijuana for importation into the United States.  Specifically, during the timeframe of approximately 2007 to 2010, the Defendant helped his father manage the Puerta Vallarta plaza, which involved the distribution of large quantities of marijuana and cocaine.  The witness also was involved in distributing these drug shipments.

### D.  Post-Arrest Conduct

Witnesses incarcerated with the Defendant in Mexico are expected to testify based on personal observations and the Defendant's statements that while the Defendant was detained in Mexico, he continued to engage in drug and weapons trafficking.  One witness, who testified at a Rule 15 deposition, explained that he was housed with the Defendant at ██████ prison and a detention facility in ██████, Mexico, between 2013 and December 2017.  At ██████ and prior

to his transfer to ███ after July 2015[5], the witness observed the Defendant negotiate the sale of one ton of cocaine by the CJNG to members of a Mexico-based DTO at the price of $15,000 (USD) per kilogram.  The witness stated that in the year and a few months that the witness was housed in ███, the Defendant sought to acquire 0.50 caliber and M60 machineguns from the witness and requested a 0.50 caliber machinegun from another inmate. ██████████ █████████████████████████████████████████ ████████████  The witness further testified that while detained in ███, the Defendant admitted to this witness that he was present during the shootdown of the Mexican Marine helicopter in 2015.

Another witness incarcerated with the Defendant in Mexico in approximately 2017 is expected to testify that the Defendant told the witness that the CJNG had an arsenal of weapons capable of combatting rival cartels, including one or more 0.50 caliber sniper rifles, 40 mm automatic grenade launchers, machineguns, and shoulder-fired rocket launchers.  The witness will further testify that, while he was detained with the Defendant, the Defendant told the witness that he brokered and authorized the purchase of weapons from a Russian with a military background, who also was providing weapons training to the CJNG.  The Defendant explained to the witness that the Defendant would approve the weapons purchase orders through an individual who visited the Defendant at the detention facility.[6]

---

[5] The witness did not recall the exact date of the transfer, but stated it was after "Joaquin" Guzman Loera, also known as "El Chapo," escaped from Altiplano.  A law enforcement agent familiar with the incident will testify that the escape occurred in July of 2015.

[6] In an effort to narrow its witness list, the Government no longer intends to call the witness who provided the following information: "While the Defendant was in prison, the Defendant invested in multiple shipments of cocaine from Colombia. The shipments consisted of up to 2000 kilograms of cocaine, which was transported in boats to a location off the coast of Mazatlán,

Witnesses incarcerated with the Defendant also will testify, based on personal observations and discussions with the Defendant, that the Defendant attempted to recruit others to join the CJNG while in prison.  One of the individuals whom the Defendant attempted to recruit was a person who had used extreme violence to exert control over a location that the Defendant wanted to use for trafficking drugs to the United States.

## II.  LEGAL STANDARD

Rule 404(b) of the Federal Rules of Evidence, entitled "Other Crimes, Wrongs, or Acts," provides in relevant part:

> **(1) Prohibited Uses.** Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.
>
> **(2) Permitted Uses.** This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

Fed. R. Evid. 404(b)(1)–(2) (2024).  "Rule 404(b) is a rule of inclusion rather than exclusion." *United States v. Machado-Erazo*, 47 F.4th 721, 728 (D.C. Cir. 2018) (quoting *United States v. Bowie*, 232 F.3d 923, 929 (D.C. Cir. 2000)).  The list of permissible purposes for the introduction of "bad acts" evidence in Rule 404(b)(2) is "not exhaustive."  *United States v. Miller*, 895 F.2d 1431, 1435 (D.C. Cir. 1990).  "In other words, under Rule 404(b), any purpose for which bad-acts evidence is introduced is a proper purpose so long as the evidence is not offered solely to prove character."  *Id.* at 1436.

---

Mexico.  After the Defendant was extradited, his father, Mencho, took control of the cocaine shipments and cocaine supply line in which the Defendant had invested."  Notice at 5.

Rule 404(b) "excludes only evidence 'extrinsic' or 'extraneous' to the crimes charged, not evidence that is 'intrinsic' or 'inextricably intertwined.'" *United States v. Allen*, 960 F.2d 1055, 1058 (D.C. Cir.), *cert. denied*, 506 U.S. 881 (1992); *see also United States v. Gartmon*, 146 F.3d 1015, 1020 (D.C. Cir. 1998) (holding evidence that defendant charged with fraud had threatened co-conspirator was not "other crimes evidence" but instead "inextricably intertwined" with charged offense).  Thus, "a threshold question in determining the admissibility of evidence of other crimes and bad acts is whether the evidence, in actuality, relates to acts unconnected with those for which the defendant is charged, or instead is intertwined with the commission of charged crimes." *Machado-Erazo*, 47 F.4th at 728.

"Intrinsic evidence is limited to acts that are 'part of the charged offense' itself or that are 'performed contemporaneously with the charged crime . . . if they facilitate the commission of the charged crime.'" *United States v. McGill*, 815 F.3d 846, 883 (D.C. Cir. 2016) (quoting *Bowie*, 232 F.3d at 929)).  "[I]f evidence is offered as direct evidence of a fact in issue, not as circumstantial evidence requiring an inference regarding the character of the accused, 'it is properly considered intrinsic.'" *United States v. Alexander*, 331 F.3d 116, 126 (D.C. Cir. 2003) (quoting *Bowie*, 232 F.3d at 929).

Intrinsic evidence is admissible as direct evidence of the crimes charged and not subject to analysis under Rule 404(b).  Because intrinsic evidence, "by its very nature, does not involve other crimes, wrongs or bad acts . . . there is no concern that it might be used as improper character evidence," *United States v. Lerma-Plata*, 919 F. Supp. 2d 152, 156 (D.D.C. 2013), and therefore, Rule 404(b) does not apply.

"As a general matter, '[w]hen [the] indictment contains a conspiracy charge, uncharged acts may be admissible as direct evidence of the conspiracy itself.'" *McGill*, 815 F.3d at 881

(quoting *United States v. Thai,* 29 F.3d 785, 812 (2d Cir. 1994)).  "In conspiracy prosecutions, the prosecution is usually allowed considerable leeway in offering evidence of other offenses to inform the jury of the background of the conspiracy charged . . . and to help explain to the jury how the illegal relationship between the participants in the crime developed."  *United States v. Mathis*, 216 F.3d 18, 26 (D.C. Cir. 2000) (internal citations and quotations omitted); *see also United States v. Mosquera-Murillo*, 153 F. Supp. 3d 130, 181 (D.D.C. 2015), *aff'd*, 902 F.3d 285 (D.C. Cir. 2018) ("Other crimes evidence is broadly admissible to explain and demonstrate the contours of a charged conspiracy.").  "Other acts" evidence is admissible in conspiracy cases "to link a defendant to other defendants and drug transactions for which the conspiracy was responsible; to show the nature of a conspiracy and 'the kind of organizational control' a defendant exercised; and to show the defendants' intent to act in concert."  *Machado-Erazo*, 47 F.4th at 728–29 (internal citations omitted).

Whether evidence is admissible as intrinsic to the charged crimes or as "other acts" evidence under Rule 404(b), the evidence is subject to the Rule 403 balancing test.  *Lerma-Plata*, 919 F. Supp. 2d at 157.  That is, the "probative value" of relevant evidence may not be "substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.

## III. ARGUMENT

Evidence of the Defendant's use of violence, use of bribery and corruption, fentanyl trafficking, and post-indictment cocaine deals, attempted weapons acquisitions, and statements in prison are direct evidence of, or otherwise intrinsic to, the offenses charged in the Superseding Indictment.  Alternatively, this evidence is admissible under Rule 404(b) for multiple non-

10

propensity purposes.  Evidence of the Defendant's marijuana distribution early in the charged

conspiracy and post-indictment weapons deals and cartel recruitment in prison also are

admissible under Rule 404(b).  This evidence passes the Rule 403 balancing test.  It is highly

probative of material issues, including the Defendant's knowledge, intent, and use of weapons,

and it is not unduly prejudicial because it is direct evidence of, or bears a close relationship to,

the charged offenses.  The Defendant's Motion therefore should be denied.

### A.  Violence

The proffered evidence of the Defendant's use of violence is direct evidence of the

Defendant's participation in the conspiracy charged in Count One and the Defendant and his

subordinates using, carrying, brandishing, and possessing firearms, including destructive devices,

as charged in Count Two.

The acts of violence were performed contemporaneously with the charged crime—

specifically, while the Defendant was a member of the CJNG and during the timeframe charged

in the Superseding Indictment.  The proffered acts of violence all relate to the charged drug

trafficking conspiracy and facilitated the commission of the drug trafficking offense.  Violence is

critical to the CJNG's maintenance of power and territorial control, both of which are necessary

for the DTO to transport tons of cocaine and methamphetamine to the United States.  Violence is

used to ward off competition, theft, detection, seizure, and prosecution from law enforcement,

and to assure order and discipline within the DTO.  Violence also was central to the Defendant's

power within the CJNG.  The murders of those who disobeyed the Defendant's orders, failed to

successfully deliver drugs or precursor chemicals, failed to pay a drug debt, provided

information to law enforcement, or worked for a rival cartel demonstrated the Defendant's

leadership role within the DTO, helped maintain order among his subordinates, helped ensure payment, and allowed him to continue drug trafficking without interference by law enforcement.

The Defendant's use of firearms to commit acts of violence, both personally and through his subordinates, and his order to shoot down a Mexican Marine helicopter in May of 2015 are admissible as "part of the charged offense" in Count Two. *Bowie*, 232 F.3d at 929. Under *Pinkerton v. United States*, 328 U.S. 640, 647–48 (1946), the Defendant is liable for the acts of his co-conspirators under 18 U.S.C. § 924(c) "[a]s long as the use or carrying of a firearm in relation to a drug trafficking offense was done in furtherance of the conspiracy and was reasonably foreseeable" to the Defendant. *United States v. Washington*, 106 F.3d 983, 1011 (D.C. Cir. 1997). Government witnesses are anticipated to testify that, at the Defendant's direction, the Defendant's subordinates used firearms, including an RPG, which is a destructive device, and a 0.50 caliber machinegun to shoot down the helicopter. The witnesses are further expected to testify that the purpose of the attack was so that the Defendant and his father could evade capture by law enforcement and continue drug trafficking. Thus, evidence of the helicopter attack is direct evidence of the Defendant using, carrying, brandishing, and possessing firearms, including a destructive device, during and in furtherance of the drug trafficking conspiracy, as charged in Count Two.

The Defendant argues that evidence of the Defendant's use of violence was not part of the offenses charged because the Superseding Indictment did not specifically charge the Defendant with a violent crime or state that his crimes were committed on behalf of the CJNG. Mot. at 6. However, uncharged evidence of violence may be admissible as direct evidence of the conspiracy where, as here, "[t]he conspiracy charged . . . had a broad scope that encompassed acts of violence for multiple purposes, such as enriching the conspiracy's members, enhancing

their reputations, safeguarding them from apprehension by law enforcement or prosecution, protecting them from violence threatened by third parties, collecting debts, and enforcing internal discipline." *McGill*, 815 F.3d at 881 (finding evidence of violence properly admitted as intrinsic where defendants were charged with participation in Racketeer Influenced and Corrupt Organizations Act (RICO) and narcotics conspiracies and other offenses in furtherance of those conspiracies); *see also United States v. Miller*, 116 F.3d 641, 682 (2d Cir. 1997) (finding evidence of uncharged murders properly admitted as proof of existence of RICO enterprise alleged in indictment, which used violence in furtherance of its narcotics conspiracy).

To the extent proffered acts of violence are not intrinsic, the Government seeks to admit them pursuant to Rule 404(b). "Courts in this circuit have repeatedly allowed evidence of violence and weapons pursuant to Rule 404(b) to show non-propensity purposes." *United States v. Lorenzana-Cordon*, 141 F. Supp. 3d 35, 44 (D.D.C. 2015) (citations omitted). In *Lorenzana-Cordon*, for example, the defendant was charged with a single-count drug distribution conspiracy but, unlike this Defendant, was not charged with a firearm offense. *Id.* The court found the defendant's "possession and use of rockets to shoot down law enforcement aircraft constitute[d] 'other acts' evidence admissible under Rule 404(b)" because it "explain[ed] the circumstances around the alleged conspiracy by providing content and background to the jury." *Id.* Even if the Court were to find that the proffered acts of violence are not intrinsic, they are nonetheless admissible to prove the Defendant's knowing and willful participation in the conspiracy; intent to further its drug trafficking objectives; identity as a leader responsible for the reasonably foreseeable acts of his subordinates; absence of mistake or accident in joining and continuing to

13

participate in the conspiracy; and other non-propensity purposes, such as motive, opportunity, and preparation.[7]

### B. Corruption

Evidence that the Defendant arranged bribes to uniformed and armed law enforcement officers to assist with the transportation and protection of drugs, money, and CJNG members within Mexico prior to February 2017 constitutes acts in furtherance of the conspiracy, and therefore is direct evidence of the Defendant's knowing participation in the drug conspiracy with intent to further its unlawful purpose. The evidence is intrinsic to the overall conspiracy and the Defendant's role therein. The bribery occurred during the timeframe of the Superseding Indictment and therefore was contemporaneous with the drug trafficking conspiracy charged in Count One. The bribery also facilitated the drug trafficking. Multiple witnesses can testify that, like the use of violence, bribery and corruption are necessary for the CJNG to maintain the size and scale of its drug trafficking operation. In this case, bribery facilitated the drug trafficking not only by encouraging law enforcement to turn a blind eye to the criminal conduct, but also by encouraging them to use their positions of authority to disguise the criminal nature of the DTO's activities.

Alternatively, the evidence of bribe payments and corruption is admissible under Rule 404(b). "[E]vidence of bribes paid during the alleged conspiracy is certainly considered 'other

---

[7] To the extent the Defendant has argued that the Government's notice insufficiently specified the non-propensity purposes for which it seeks to introduce the proffered evidence, *see* Mot. at 13–15, this Opposition filed seven weeks before trial provides sufficient additional notice. *See United States v. Vazquez*, No. CR 21-597 (BAH), 2023 WL 4488910, at *5 (D.D.C. July 12, 2023) (finding government provided "reasonable notice" when it filed Rule 404(b) motion approximately one month before trial and informed defense counsel of its intent to introduce evidence under Rule 404(b) prior to filing motion).

acts' evidence admissible under 404(b)" because it is "probative of Defendant['s] knowledge and absence of mistake within the conspiracy." *Lorenzana-Cordon*, 141 F. Supp. 3d at 42 (citing *United States v. Larrahondo*, 885 F. Supp. 2d 209, 228 (D.D.C. 2012)) (conditionally admitting evidence relating to payment of bribes by defendants and other co-conspirators under Rule 404(b)).  As with acts of violence, the Defendant's arrangement of bribes and direction of law enforcement to assist with the transportation and protection of drugs, money, and CJNG members is admissible to establish the Defendant's knowing and willful participation in the conspiracy; intent to further its drug trafficking objectives; absence of mistake or accident within the conspiracy; identity as a leader responsible for the reasonably foreseeable acts of his subordinates; and other non-propensity purposes, such as motive, opportunity, and preparation.

### C.  Other Controlled Substances

Evidence of the Defendant's fentanyl manufacture and distribution is admissible as intrinsic evidence because it was contemporaneous and shows both the nature of the conspiracy and "the kind of organizational control" the Defendant exercised within the cartel.  *See United States v. Mahdi*, 598 F.3d 883, 891 (D.C. Cir. 2010) (finding evidence that defendant threatened subordinates intrinsic to establish existence of enterprise and defendant's organizational control). The Defendant has sought to minimize his role within the conspiracy and distance himself from the acts he committed in furtherance of that conspiracy.  Testimony that the Defendant encouraged and successfully convinced his father, the CJNG's top leader, to expand the CJNG's operations into fentanyl production and distribution because it was more profitable than producing and distributing cocaine and methamphetamine demonstrates that the Defendant held a position of authority within the cartel and was actively trying to expand the cartel's operations and profits.  The evidence that the Defendant agreed to release an individual who had been

kidnapped by the cartel in exchange for the individual's assistance with manufacturing fentanyl also demonstrates that the Defendant held a position of authority within the cartel. The evidence further demonstrates the nature of the conspiracy, which involved the mass production of synthetic drugs in Mexico for distribution to the United States.

Alternatively, evidence that the Defendant was involved in the manufacture and distribution of drugs other than cocaine and methamphetamine during the timeframe charged in the Superseding Indictment is admissible for several non-propensity purposes under Rule 404(b). *See Vazquez*, 2023 WL 4488910, at *5 ("Evidence of … other-drug shipments [is] clearly admissible under Fed. R. Evid. 404(b)."). The Defendant's manufacture and distribution of fentanyl and admission that he could get a higher price for fentanyl than other drugs in the United States shows not only the Defendant's willing and knowing participation in an international, multi-drug conspiracy, but also his knowledge and intent that the drugs he distributed would be imported into the United States. The Defendant's access to the chemicals and chemists needed to manufacture fentanyl, including the kidnapped chemist described in the Defendant's BBM messages, demonstrates the Defenant's ability and opportunity to manufacture and distribute other synthetic drugs, including methamphetamine. The fentanyl evidence shows the Defendant's motive was, at least in part, financial gain. Additionally, testimony that the Defendant encouraged his father to expand the CJNG's operations into fentanyl production and distribution demonstrates his identity as a leader with decision-making authority, or at least an important advisory role, within the cartel and that his participation in the conspiracy was fully intentional, not by accident or mistake.

Evidence of the Defendant's marijuana distribution with his father early in the charged conspiracy helps explain how the Defendant became involved in the conspiracy, his working

relationship with his father, how he is linked to other members of the conspiracy including testifying witnesses, and his knowledge of drug distribution within Mexico. "Such 'completing the story' evidence . . . may properly be admitted under 404(b) for any non-propensity purpose." *Lorenzana-Cordon*, 141 F. Supp. 3d at 44 (citing *Bowie,* 232 F.3d at 929).  Acceptable purposes include "to inform the jury of the background of the conspiracy charged . . . and to help explain to the jury how the illegal relationship between the participants in the crime developed." *Mathis*, 216 F.3d at 26 (internal citations and quotations omitted).  As with evidence of the Defendant's fentanyl trafficking, the Defendant's distribution of marijuana for importation to the United States is probative of his knowledge and intent regarding the ultimate destination of the cocaine and methamphetamine, his willful participation in a large-scale drug trafficking conspiracy, and his lack of accident or mistake in doing so.  The Defendant's distribution of marijuana with his father early in his involvement in the conspiracy helps demonstrate the Defendant's increasing responsibility within the DTO over time as well as the Defendant's ability, opportunity, and preparation to distribute large quantities of cocaine and methamphetamine for the CJNG.

### D.  Post-Arrest Conduct and Statements

Some of the Defendant's post-arrest criminal conduct in the Notice occurred within the timeframe of the charged conspiracy—i.e., prior to February 2017—including his negotiation of the sale of one ton of cocaine by the CJNG to another DTO.[8]  The Defendant's attempted acquisition of machine guns from other inmates and his admission to being present during the helicopter attack in 2015 also likely occurred prior to February 2017—that is, in the year and a few months that the Rule 15 deposition witness was detained in ███ post-July 2015.  Such

---

[8] The Defendant's claim that none of the proffered conduct or statements were performed contemporaneous to the charged offense is factually inaccurate.  *See* Mot. at 10.

conduct is part of the charged offenses and direct evidence of the Defendant's involvement in the drug conspiracy charged in Count One and the firearms offense charged in Count Two.

The Defendant incorrectly argues that his post-arrest admission to a fellow inmate that he was present for the shootdown of the helicopter in 2015 cannot be direct evidence because the Government learned of the admission after the date of the Superseding Indictment.  *See* Mot. at 10.  A defendant's voluntary, post-indictment admission to a fellow inmate about charged conduct, while the inmates were housed together by happenstance, is admissible to prove the charged offense.  *United States v. Watson*, 894 F.2d 1345, 1347–48 (D.C. Cir. 1990) (affirming district court's admission during Government rebuttal of defendant's post-indictment statements to fellow inmate about charged cocaine offense); *see also United States v. Love,* 134 F.3d 595, 604 (4th Cir. 1998) (affirming admission of defendant's post-indictment statement to fellow inmate); *United States v. Hicks,* 798 F.2d 446, 448–49 (11th Cir. 1986) (affirming admission of defendant's incriminating statement to fellow inmate while housed together by "luck or happenstance" after right to counsel attached).  The Defendant's voluntary admission to being at the scene of the helicopter attack in 2015, during the charged timeframe, is relevant direct evidence regardless of when the statement was made or when the Government learned of it.  The Rule 15 deposition testimony indicates that the Defendant likely made the statement during the charged time period, but even if the Defendant had made the admission following the Superseding Indictment, it nevertheless would be direct evidence of the firearm offense charged in Count Two.

In the alternative, the proffered testimony regarding the Defendant's conduct between the time of his arrest and the Superseding Indictment is admissible under Rule 404(b) to show the existence of the conspiracy; the Defendant's motive and intent to engage in drug trafficking and

acquire firearms; the Defendant's knowledge of the objects of the conspiracy; his opportunity and ability to acquire cocaine and firearms for the conspiracy; and his identity as a leader with the authority to negotiate drug and weapons transactions on behalf of the DTO.

Additionally, the Defendant's post-indictment conduct—including his approval of firearms purchases while detained in Mexico, recruitment of other inmates to join the CJNG, and statements about the status of the CJNG's weapons arsenal—are admissible as other acts evidence under Rule 404(b). "Rule 404(b) draws no distinction between bad acts committed before and bad acts committed after the charged offense." *United States v. Latney*, 108 F.3d 1446, 1449 (D.C. Cir. 1997) (finding no error in admitting evidence under Rule 404(b) of defendant's drug activity eight months after he was charged of drug crimes to show knowledge and intent). "In each case the question Rule 404(b) poses is whether the bad acts evidence is relevant to something provable other than the defendant's character." *Id.* (citing *United States v. Jenkins,* 928 F.2d 1175, 1180 (D.C. Cir. 1991)).

Here, evidence of the Defendant's post-indictment acquisition of weapons for the CJNG and his recruitment of inmates to the CJNG are indicative of the Defendant's knowing and intentional participation in the conspiracy charged in Count One. The evidence also demonstrates "the scope, persistence, and cohesiveness of the charged conspiracy," *Vazquez*, 2023 WL 4488910, at *5, which continued to coordinate the distribution of drugs and weapons despite the arrest of one of its leaders. Regarding Count Two, testimony that the Defendant authorized the purchase of weapons on behalf of the CJNG while detained—including 40 mm automatic grenade launchers, shoulder-fired rocket launchers, and machineguns—is relevant to show that: (1) the use and possession of firearms, including destructive devices, by the Defendant and his subordinates was knowing, intentional, not by accident or mistake, and in

relation to the drug conspiracy; (2) the Defendant had the opportunity and ability to acquire such military-grade weapons; and (3) the Defendant held a position of leadership within the conspiracy such that he could give orders regarding the use of firearms and his subordinates' use of those firearms were reasonably foreseeable to him.

### E.  Rule 403

Finally, the risk of unfair prejudice does not substantially outweigh the probative value of the proffered evidence under Rule 403.  "Rule 403 tilts, as do the rules as a whole, toward the admission of evidence in close cases, even when other crimes evidence is involved." *United States v. Douglas*, 482 F.3d 591, 600 (D.C. Cir. 2007) (citing *United States v. Cassell*, 292 F.3d 788, 795 (D.C. Cir. 2002)) (internal quotation marks omitted).  "In determining whether 'the probative value is substantially outweighed by the danger of unfair prejudice' it is a sound rule that the balance should generally be struck in favor of admission when the evidence indicates a close relationship to the event charged." *United States v. Harrison*, 679 F.2d 942, 948 (D.C. Cir. 1982) (quoting *United States v. Day*, 591 F.2d 861, 878 (D.C. Cir. 1978)).  "Evidence tending to demonstrate 'intent, plan, preparation, and motive . . . is particularly probative where the government has alleged conspiracy.'" *Mathis*, 216 F.3d at 26 (quoting *United States v. Sampol*, 636 F.2d 621, 659 & n.23 (D.C. Cir. 1980)).

The Defendant's use of violence, use of bribery and corruption, manufacture and distribution of other drugs, and post-arrest conduct are all highly probative of the elements of the offenses charged.  "[T]he D.C. Circuit has emphasized that, where the government is required to demonstrate as an element of a charged offense a defendant's intent and knowledge, admission of other crimes evidence is permissible even where the defendant has not affirmatively challenged these elements." *Mosquera-Murillo*, 153 F. Supp. 3d at 183–84 (citing *Douglas,* 482

20

F.3d at 596–97).  As detailed above, the evidence at issue is relevant to the existence of the conspiracy charged in Count One and that the Defendant participated in the conspiracy knowingly and willfully, both of which the Government must prove at trial.  *See* Jury Instr., *United States v. Javier Algredo Vazquez*, No. 21-cr-597-BAH (D.D.C. 2023), ECF No. 117 at 9. The evidence also is relevant to the Defendant using, carrying, brandishing, and possessing firearms, including destructive devices, during and in relation to that conspiracy, as charged in Count Two.  Such evidence is highly probative, particularly given that the Defendant has not given notice of any affirmative defenses and instead appears to challenge the sufficiency of the Government's evidence.  *See, e.g.,* Mot. at 18 (alleging lack of corroborating evidence).

The probative value of the evidence is not substantially outweighed by the risk of unfair prejudice, as the Defendant argues.  *See* Mot. at 15–18.  "Rule 403 'does not bar powerful, or even 'prejudicial' evidence'"; rather the Rule focuses on whether the prejudice is "*unfair*." *United States v. Pettiford*, 517 F.3d 584, 590 (D.C. Cir. 2008) (quoting *Gartmon*, 146 F.3d at 1021).  Although the proffered evidence relates to serious topics, such as violence, corruption, and drug trafficking, the Defendant is charged with serious offenses.  He is accused of conspiring to distribute large quantities of cocaine and methamphetamine to import into the United States as part of a violent and powerful cartel and using, carrying, brandishing, and possessing firearms, including destructive devices, as part of that conspiracy.  It is not unfair for the Court to allow the jury to hear and see the full scope of the conspiracy, including all of the violence and corruption the Defendant and his co-conspirators used to achieve the objectives of the conspiracy.  Because the proffered evidence bears a close relationship to the event charged, the Rule 403 balance favors admission.

The Defendant's comparison of his case to that of his sister, Jessica Oseguera Gonzalez, is unpersuasive.  The Government charged Jessica Oseguera Gonzalez with violating economic sanctions—specifically, illegally engaging in transactions with businesses designated by the U.S. Department of Treasury's Office of Foreign Assets Control.  *United States v. Gonzalez*, 507 F. Supp. 3d 137, 166 (D.D.C. 2020).  The Court excluded evidence that Jessica Oseguera Gonzalez kept drug ledgers for the CJNG because, in part, there was a "substantial risk" that a jury would improperly focus on her "uncharged personal involvement with the CJNG."  *Id.* at 145.  In contrast, the Defendant's charged conduct *is* his personal involvement with the CJNG and its members.  Therefore, the Government's proffered evidence relating to the Defendant's conduct on behalf of the CJNG does not carry the same risk of unfair prejudice.

Contrary to the Defendant's speculation, the proffered evidence is not "egregiously unreliable" "hearsay upon hearsay."  Mot. at 13.  Cooperating witnesses are prepared to testify based on their personal observations of the Defendant's actions, contemporaneous statements of the Defendant, and his subsequent admissions.  Notably, these witnesses corroborate each other.  Although the witnesses may not all have personally observed the same specific acts in every instance, the consistency in their accounts that the Defendant directed or personally committed acts of violence, engaged in corruption, and distributed drugs other than methamphetamine and cocaine undermines the Defendant's claims that their testimony regarding the proffered evidence is unreliable.  Further, the witness testimony will be corroborated by the Defendant's BBM communications, photographs, documents, and physical evidence.

Finally, although the Defendant summarily claims that the witness who testified during a Rule 15 deposition provided false testimony, he fails to identify what, if any, testimony was

untrue and why. *See* Mot. at 18.[9]  The mere fact that the witness is cooperating in hopes of receiving a reduced sentence does not inherently make his testimony false. *See Kansas v. Ventris*, 556 U.S. 586, 594, n. * (2009).  And in any event, the Supreme Court has declined to "craft a broa[d] exclusionary rule for uncorroborated statements obtained [from jailhouse snitches]" because "[o]ur legal system . . . is built on the premise that it is the province of the jury to weigh the credibility of competing witnesses." *Id.*

## IV. CONCLUSION

For the foregoing reasons, the Defendant's Motion should be denied.

Respectfully submitted this 22nd day of July 2024.

MARLON COBAR, Chief
Narcotic and Dangerous Drug Section
Criminal Division
United States Department of Justice

By:     /s/ *Kaitlin Sahni*
Kaitlin Sahni, Acting Deputy Chief
Jonathan Hornok, Trial Attorney
Kate Naseef, Trial Attorney
Lernik Begian, Trial Attorney
United States Department of Justice
Narcotic and Dangerous Drug Section
145 N Street, Northeast
East Wing, Second Floor
Washington, D.C. 20530
Kaitlin.Sahni@usdoj.gov
(202) 514-0917

---

[9] ████████████████████████████████████████

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing was sent via email, to counsel of record for the Defendant, on July 22, 2024.


By:    <u>/s/   *Kaitlin Sahni*</u>
            Kaitlin Sahni
            Acting Deputy Chief
            Narcotic and Dangerous Drug Section
            U.S. Department of Justice