## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal No.: 16-CR-229 (BAH) |
| | ) | |
| v. | ) | |
| | ) | |
| RUBEN OSEGUERA-GONZALEZ, | ) | |
| also known as "Menchito," "Rubencito," | ) | |
| "Rojo," "Ruso," "Junior," and "El Nino," | ) | |
| | ) | |
| Defendant. | ) | |

## JOINT PRETRIAL STATEMENT

The United States and defendant Ruben Oseguera Gonzalez, through undersigned counsel, respectfully submit this Joint Pretrial Statement as required by the Court's Standing Order in Criminal Cases, Dkt. No. 5 ("Standing Order").

### I.    Written Statements Regarding Plea Communications

Pursuant to paragraph 8(a) of the Court's Standing Order, the government's statement regarding the terms of its plea offer to the defendant are set forth in Exhibit 1 hereto.

### II.    Joint Statement of the Case

Pursuant to paragraph 8(b) of the Standing Order, the government proposes the following statement of the case to be read to prospective jurors:

> The defendant, Ruben Oseguera Gonzalez, is charged with one count of conspiring to distribute five kilograms or more of cocaine and five hundred grams or more of methamphetamine, knowing and intending that the cocaine and methamphetamine would be unlawfully imported into the United States. The defendant is also charged with one count of using, carrying, and brandishing firearms, including destructive devices, during and in relation to a drug trafficking crime and possessing firearms, including destructive devices, in furtherance of a drug trafficking crime. *In this case, the government alleges that the defendant was a member of a drug trafficking organization based in Mexico known as the New Generation Jalisco Cartel, which is also known by the Spanish acronym CJNG, that*

> *manufactured and distributed controlled substances destined for the United States. The government further alleges that the defendant and other members of the CJNG possessed, used, carried, and brandished firearms in connection with their drug trafficking activities, including grenade launchers and rocket propelled grenades.* The defendant denies the government's allegations and maintains his innocence.

The Defendant objects to the italicized sentences.

### III.    Proposed *Voir Dire* Questions

Pursuant to paragraph 8(c) of the Standing Order, proposed *voir dire* questions are set forth in Exhibit 2 hereto, which notes both the questions on which the parties agree as well as the questions on which the parties disagree.

### IV.    Proposed Jury Instructions

Pursuant to paragraph 8(d) of the Standing Order, proposed jury instructions are set forth in Exhibit 3 hereto, which indicates the instructions on which the parties disagree as well as differing proposals and citations to appropriate authority in the event of disagreement.

### V.    Expert Witnesses

Pursuant to paragraph 8(e) of the Court's Standing Order, the government submits this list of expert witnesses. A brief description of each witness's area of expertise and expected testimony can be found in the government's Supplemental Notice of Expert Testimony, Dkt. No.153.

1.    ATF Firearms Enforcement Officer John W. Miller

2.    DEA Special Agent Steve Paris

3.    DOJ Linguist Judi O'Brien

### VI.  Motions *in Limine*

Pursuant to paragraph 8(f) of the Court's Standing Order, the government submits this list of motions in limine:

On July 8, 2024, the government filed a motion in limine to admit the defendant's signed statement of facts, Dkt. No. 146; a motion in limine to preclude improper use of agent interview reports and notes, Dkt. No. 140; and a motion in limine for witnesses to testify in pseudonym, Dkt. No. 141.

On June 27, 2024, the defendant filed a motion in limine to exclude 404(b) evidence, Dkt. No. 135; on July 1, 2024, the defendant filed a motion in limine to preclude use of the defendant's statements, Dkt. No. 137; and on July 8, 2024, the defendant filed motions in limine to exclude expert testimony, Dkt. No. 138, to suppress Title III evidence, Dkt. No. 139, and on miscellaneous topics, Dkt. No. 143.

### VII.    Prior Convictions

The government does not anticipate offering any prior convictions in evidence.

### VIII.    Government's Exhibit List

Pursuant to paragraph 8(h) of the Court's Standing Order, a list of exhibits that the government expects to offer at trial is attached hereto as Exhibit 4.

### IX.    Stipulations

Pursuant to paragraph 8(i) of the Court's Standing Order, a list of joint stipulations is attached hereto as Exhibit 5.

### X.    Proposed Verdict Form

A proposed verdict form is set forth in Exhibit 6 hereto, which indicates any disagreements between the parties.

Respectfully submitted this 31st day of July, 2024.

Law Office of Anthony E. Colombo Jr.

_____/s/_____
Anthony E. Colombo Jr.
Counsel for Defendant

105 West F Street, Third Floor
San Diego, CA 92101
anthonycolombolegal@gmail.com
619-236-1704


Law Offices of Ronis & Ronis

_____/s/_____
Jan Edward Ronis
Counsel for Defendant

105 West F Street Third Floor
San Diego, CA 92101-6036
jan@ronisandronis.com
619-236-8344

Marlon Cobar, Chief
Narcotic and Dangerous Drug Section
Criminal Division
U.S. Department of Justice

_/s/ Kate Naseef_
Kate Naseef
Jonathan Hornok
Kaitlin Sahni
Trial Attorneys
Narcotic and Dangerous Drug Section
Criminal Division
U.S. Department of Justice
145 N Street NE, 2nd Floor East
Washington, D.C. 20530
(202) 794-4953
Kate.Naseef@usdoj.gov

# EXHIBIT 1

Pursuant to paragraph 8(a)(i) of the Court's Standing Order, *see* Dkt. No. 5, the government submits this summary of plea offers made to the defendant.

First Offer

On March 28, 2023, the government presented a proposed plea agreement to prior defense counsel pursuant to which the defendant would plead guilty to both counts of a Superseding Information, Dkt. No. 48. Count One of the Superseding Information was identical to Count One of the Superseding Indictment, Dkt. No. 6, but Count Two of the Superseding Information removed the destructive device enhancement in the Superseding Indictment, which carries a mandatory minimum consecutive sentence of 30 years' imprisonment pursuant to 18 U.S.C. § 924(c)(1)(B)(ii). Pursuant to this agreement, the defendant would: 1) agree that a Base Offense Level of 38 applies at sentencing pursuant to U.S. Sentencing Guideline ("U.S.S.G.") § 2D1.1 (450 kilograms or more of cocaine and 45 kilograms or more of methamphetamine); 2) agree that his conduct warrants a two-level increase to the Guidelines level for each of the following—use of violence, credible threat to use violence, or directing the use of violence, pursuant to U.S.S.G. § 2D1.1(b)(2); importation of methamphetamine, pursuant to U.S.S.G. § 2D1.1(b)(5); and bribing, or attempting to bribe, a law enforcement officer, pursuant to U.S.S.G. § 2D1.1(b)(11); 3) agree that his conduct warrants a four-level increase for his role as an organizer or leader of criminal activity involving five or more participants, pursuant to U.S.S.G. § 3B1.1(a); 4) agree not to seek any additional Guidelines departure at sentencing other than the departure for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a) and (b); 5) agree that his Criminal History Category is I; and 6) waive appellate and collateral attack claims and rights to the extent and in the format permitted by law, except as set forth below.

6

In return, the government proposed that it would: 1) agree not to seek any sentencing enhancements other than as set forth above, for an offense level of 48 prior to application of the departure for acceptance of responsibility set forth below; 2) agree that the defendant's plea demonstrates acceptance of responsibility for his offense consistent with U.S.S.G. § 3E1.1(a) and (b), and therefore merits a three-level decrease at sentencing, for a final offense level of 45 (life imprisonment); 3) agree that, although the plea agreement will waive appellate and collateral attack claims, the defendant will be permitted to appeal a sentence that exceeds the maximum permitted by statute, or results from an upward departure from the Guidelines range established by the Court at sentencing, and that the defendant will retain the right to collaterally attack his plea and sentence pursuant to 28 U.S.C. § 2255 if the claim is based on newly discovered evidence or on a claim that he received ineffective assistance of counsel in connection with the plea agreement or sentencing; and 4) agree that the defendant would be free to argue for a lower sentence under the 18 U.S.C. § 3553(a) factors.

Through good faith negotiations, the parties prepared a mutually agreeable statement of facts. The government signed the plea agreement and statement of facts on April 4, 2023, and the defendant and his counsel signed the documents on April 6, 2023. The Defendant submitted the fully executed plea agreement documents to the Court, which can be found at Dkt. No. 146 and which the parties incorporate herein by reference. On April 11, 2023, the day before the scheduled change of plea hearing, the government was notified that the defendant had retained new counsel and was not ready to enter a guilty plea. At the status hearing on September 15, 2023, the government notified the defendant and the Court that it would dismiss the Superseding Information if the Defendant did not schedule a change of plea hearing by October 16, 2023. On October 17,

2023, the Defendant had not requested a change of plea hearing, and the government filed a motion to dismiss the Superseding Information, Dkt. No. 73, which the Court granted, Min. Order Oct. 17, 2023.

Second Offer

On May 6, 2024, the government submitted another written plea offer to the defendant, in which the defendant would: 1) plead guilty to Counts One and Two of the Superseding Indictment and execute a mutually agreeable Statement of Facts covering the offense conduct; 2) agree that a Base Offense Level of 38 applies at sentencing pursuant to U.S.S.G. § 2D1.1 (450 kilograms or more of cocaine and 45 kilograms or more of methamphetamine); 3) agree that his conduct warrants a four-level increase to the Guidelines level for his role as an organizer or leader of criminal activity involving five or more participants pursuant to U.S.S.G. § 3B1.1(a); 4) agree not to seek any additional Guidelines departure at sentencing other than the departure for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a) and (b); 5) agree that his Criminal History Category is I; 6) agree to be sentenced to a life term of supervised release following any period of incarceration with a condition that he reside in the United States; 7) agree to surrender a mutually agreed upon amount of funds before sentencing, which would be applied to a forfeiture money judgment; and 8) waive appellate and collateral attack claims and rights to the extent and in the format permitted by law.

In return, the government proposed that it would: 1) agree to recommend a sentence of forty years' imprisonment, the mandatory minimum sentence for a conviction on Counts One and Two of the Superseding Indictment; 2) agree that the defendant's plea demonstrates acceptance of responsibility for his offense consistent with U.S.S.G. § 3E1.1(a) and (b), and therefore merits a

three-level decrease in the applicable Guidelines level at sentencing; and 3) agree to the same appellate and collateral attack waivers contained in the first offer.

At a *Frye/Cooper* hearing held on May 13, 2024, the defendant confirmed that he understood the terms of the offer, and he rejected it on the record.

# EXHIBIT 2

**PROPOSED VOIR DIRE QUESTIONS**

*Unless otherwise noted, the parties agree on the following voir dire statement and questions*:

The process of jury selection is called the *voir dire* process, and its object is to select twelve jurors and two alternates who have no prior knowledge concerning this case and no bias toward either side in this case. In short, it is our aim to select a jury that will reach a verdict based solely upon the evidence presented in this courtroom and the law as I instruct you.

[ADDITIONAL INSTRUCTIONS FROM THE COURT ABOUT THE VOIR DIRE PROCESS]

*Voir Dire* Questions

1. From what I have told you so far, have you heard or read about this matter before coming to court or do you believe you know anything about the facts and circumstances of the case?

2. The United States is represented in this case by Department of Justice Trial Attorneys Kaitlin Sahni, Kate Naseef, and Jonathan Hornok. PLEASE STAND. Do you know any of these attorneys? Also present for the government are Paralegal Angela Ancalle-Jimenez and DEA Special Agent Kevin Novick.  PLEASE STAND.  Do you know any of these individuals?  The government may also be joined at counsel table by DEA Special Agent Kyle Mori, who is not here today.  Do you know this individual?

3. The defendant at trial is Ruben Oseguera Gonzalez. PLEASE STAND. Do you know the defendant, or have you had any contact with the defendant?

4. Ruben Oseguera Gonzalez is represented in this case by Anthony E. Colombo Jr. of the Law Office of Anthony E. Colombo Jr. and Jan Ronis of the Law Offices of Ronis & Ronis. PLEASE STAND. Do you know these individuals, either personally or professionally, or have any affiliation with the Law Office of Anthony E. Colombo Jr. or the Law Offices of Ronis & Ronis?

11

5. You may hear testimony from or about a number of people during the course of this trial. The attorneys will now identify for you the names of people who may testify.  Listen carefully and, if you recognize or know any of the people named, please mark your paper beside the number 5.  The Government's counsel may go first, and then the defense counsel may list any additional names.

6. Please look around you. Do you know or recognize any other member of the prospective jury panel, any member of the courtroom staff, or me, the Judge?

7. The lawyers predict that the presentation of evidence in this trial should last approximately three to four weeks, and I think this is a fair estimate, but it could run shorter or longer. The jury will sit Monday through Friday from 9:15 a.m. to 5:00 p.m. for as long as it takes to hear the evidence in the case. The length of jury deliberations following the presentation of evidence at trial will be determined by the jury itself. Do you have an urgent or extremely important matter to attend to, such that you could be faced with a hardship if selected for the jury in this case?

8. Do you have any vision or hearing problems, or any other physical or medical problems, that might interfere with your ability to hear or understand what the witnesses say in this case or to give your full attention to the case?

9. Do you have any difficulty in reading, speaking, or understanding English?

10. The evidence you are to consider is only provided in English, either through the official court interpreter when a witness testifies in a foreign language, or as presented in translated exhibits. Although some of you may know Spanish, you must not rely on your own interpretation. You

will be required to accept the English interpretation and consider only the English portion of the written translations. Would you have any difficulty adhering to this instruction?

11. Have you, any members of your family, or any close friends ever studied law, had any legal training, or been employed by a lawyer or a law firm, worked in a courthouse, been a paralegal, served as a legal secretary, or performed legal investigative work?

12. Do you have any personal, moral, religious, or ethical beliefs that prevent you from sitting in judgment of another person?

13. If you ever served before as a juror at a civil or criminal trial, or on a grand jury, was there anything about your service that might affect your ability to serve fairly and impartially as a juror at this trial?

14. Have you, any members of your family, or any close friends ever been employed by a local, state, or federal law enforcement agency, a private security company, or a correctional facility, or ever applied for such employment? For example, this includes work at a police department, Federal Bureau of Investigations, sheriff's department, Department of Justice, Drug Enforcement Administration, Marshals Service, Department of Homeland Security, U.S. Customs and Border Patrol, a local jail, a state or federal prison, or the like.

15. Have you, any members of your family, or any close personal friends had any experiences with any law enforcement agency or the government that might cause you to favor or disfavor the government or law enforcement?

16. Have you ever filed a complaint against a police officer or anyone in law enforcement?

17. Have you, any member of your family, or close friend ever been the subject of a criminal investigation, accused of criminal conduct, or arrested or prosecuted for a crime?

18. Have you, any member of your family, or close friend ever been a victim of a crime, a witness to a crime, or testified in court or before a grand jury as a witness to a crime?

19. Do you have any opinions about prosecutors or defense attorneys that might affect your ability to serve fairly and impartially at this trial?

20. Do you or a close friend or family member belong to any group or organization that is active in law enforcement or crime victim prevention matters? Examples of such organizations include: Fraternal Order of Police, Crime Watch, Neighborhood Watch, Crime Stoppers, Orange Hats, or other organizations, including any groups online, that monitor or discuss neighborhood crime issues.

21. Do you or a close friend or family member belong to any group or organization that advocates for law enforcement reform?

22. The prosecution has the burden of proof. This means that the jury cannot return a guilty verdict against a defendant unless the prosecution has proven beyond a reasonable doubt that the defendant is guilty of the crime charged. Would you have any difficulty accepting and applying this legal instruction?

23. The defendant in this case, just as every defendant in a criminal trial, is presumed innocent and, therefore, has no obligation to testify or present any evidence in the case. Would you have any difficulty accepting and applying this legal instruction?

24. The defendant, Ruben Oseguera Gonzalez, is a United States citizen and a resident of Mexico. Do you have any particular opinions or beliefs regarding residents of Mexico that might make it difficult for you to be a fair and impartial juror in this case?

25. Some evidence collected by the Government of Mexico may be presented during the trial. Do you have any bias or concerns relating to the Government of Mexico that would make it difficult for you to evaluate that evidence fairly?

26. The defendant is charged with conspiring with others to commit illegal acts, but those other alleged coconspirators are not on trial here, and you may not speculate as to the reasons why those individuals are not on trial. Would you have any difficulty following that instruction?

27. The defendant is charged with aiding and abetting the illegal acts of others and with conspiring with others to commit illegal acts. As I will instruct you at the end of the trial, in some situations the law holds a defendant responsible the illegal acts of others. Would you have any difficulty following my instructions regarding the liability of a defendant for the illegal acts of others?

28. Have you, any member of your family, or a close friend had their lives seriously or adversely affected by drug or substance abuse such that this could interfere with your duty to be a fair and impartial juror in this case?

29. Evidence will be presented in this case regarding the distribution of controlled substances. Do you have strong feelings about narcotics distribution that could interfere with your duty to be a fair and impartial juror in this case?

30. Do you now belong, or have you within the past five years belonged to or participated in, any groups or organizations that advocate for changes in drug control laws?

31. Evidence will be presented in this case regarding the use of firearms. Do you have strong feelings about the use or possession of firearms that could interfere with your duty to be a fair and impartial juror in this case?

32. Do you now belong, or have you within the past five years belonged to or participated in, any groups or organizations that advocate for gun rights or changes to gun laws?

33. Have you read any books or articles or watched any movies or TV shows about drug trafficking in Latin America, or particularly about the Cartel de Jalisco Nueva Generacion, or CJNG, that would make it difficult for you to decide this case based only on the evidence presented during the trial and the law as I give it to you?

34. During this trial, you may hear testimony regarding electronic communications intercepted by the government with a judge's approval. I will instruct you fully at the end of the trial, but it will be up to you to give this evidence the weight it deserves in your judgment. Is there anyone who believes they would not be able to follow the Court's instructions or have difficulties considering this evidence due to your own beliefs regarding judge-approved interception of electronic communications?

35. Your function as a juror is to decide questions of fact, and the Court's job is to instruct you on the law to be applied in this case. You are bound by those instructions and cannot substitute your own notions of what you think the law is or should be. Would you have any difficulty following the law as instructed by the Court?

36. Do you know of any reason, or has anything occurred to you during this questioning, that might in any way prevent you from following my instructions on the law and being completely fair and impartial as a juror in this case?

The Defendant objects to voir dire questions 26, 27, and 34.

# EXHIBIT 3

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal No.: 16-CR-229 (BAH) |
| | ) | |
| v. | ) | |
| | ) | |
| RUBEN OSEGUERA-GONZALEZ, | ) | |
|     also known as "Menchito," "Rubencito," | ) | |
|     "Rojo," "Ruso," "Junior," and "El Nino," | ) | |
| | ) | |
| Defendant. | ) | |

## PROPOSED JURY INSTRUCTIONS

The parties respectfully submit this set of proposed jury instructions. Pursuant to the Court's Standing Order in Criminal Cases, *see* Dkt. No. 5, this proposed set of instructions sets each proposed instruction on a new page and indicates any objections or disagreement by the parties. Where the specific objection or disagreement listed requires a substantial edit or change in wording that the objecting party is proposing and cannot be easily captured in the written objection alone, the parties have included herein a separate, competing instruction.

The first part of this set of proposed jury instructions consists of standard instructions on which the parties largely agree (*i.e.* common jury instructions largely taken from the "Red Book"), with objections noted. The second part consists of substantive offense instructions, and with respect to which the parties have some disagreement. The parties reserve the right to propose other instructions as may become appropriate during the course of the trial.

18

**Part I: Standard Instructions**

The parties request that the Court charge the jury in accordance with the *Criminal Jury Instructions for the District of Columbia* (the "Red Book") or otherwise in its usual manner on the subjects listed below. Although taken from the Red Book when possible, these instructions are reproduced in pertinent part in this set of proposed instructions. Any objections are noted in the attached reproduction of the instructions.

(1)    Preliminary Instructions and Instructions During Trial (Red Book 1.101, 1.102, 1.103, 1.104, 1.105, 1.106, 1.107, 1.108, 1.110, 1.201 (if applicable), 1.202, 1.204 (if applicable))[1]

(2)    Function of the Court and the Jury (Red Book 2.101, 2.102)

(3)    Jury's Recollection (Red Book 2.103)

(4)    Evidence by Judicial Notice and Stipulation (Red Book 2.104)

(5)    Statements of Counsel (Red Book 2.105)

(6)    Indictment Not Evidence (Red Book 2.106) (if applicable)

(7)    Presumption of Innocence (Red Book 2.107)

(8)    Burden of Proof and Reasonable Doubt (Red Book 2.108)

(9)    Direct and Circumstantial Evidence (Red Book 2.109)

(10)    Nature of Charges Not to Be Considered (Red Book 2.110)

(11)    Number of Witnesses (Red Book 2.111)

(12)    Inadmissible and Stricken Evidence (Red Book 2.112)

(13)    Credibility of Witnesses (Red Book 2.200)

(14)    Witness With A Plea Agreement (Red Book 2.203) (if applicable)

(15)    Informer's Testimony (Red Book 2.205) (if applicable)

---

[1] Because preliminary instructions and instructions during trial tend to vary among judges, the parties have not reproduced them here and defer to the Court for their specific wording.

19

(16)     Law Enforcement Officer's Testimony (Red Book 2.207)

(17)     Right of Defendant Not To Testify (Red Book 2.208) (if applicable)

(18)     Defendant as Witness (Red Book 2.209) (if applicable)

(19)     Effect of Refusal of Witness to Answer Question (Red Book 2.211) (if applicable)

(20)     Expert Testimony (Red Book 2.215)

(21)     Evaluation of Prior Inconsistent Statement of a Witness (Red Book 2.216)

(22)     Impeachment by Proof of Conviction of a Crime-Witness (Red Book 2.218) (if applicable)

(23)     Impeachment by Proof of Pending Case, Probation or Parole-Witness (Red Book 2.219) (if applicable)

(24)     Statement of the Defendant-Substantive Evidence (Red Book 2.305) (if applicable)

(25)     Other Crimes Evidence (Red Book 2.321) (if applicable)

(26)     Translation of Foreign Language Documents (Red Book 2.311)

(27)     Multiple Counts (Red Book 2.402)

(28)     Proof of State of Mind (Red Book 3.101)

(29)     Proof of "On or About" Dates (Red Book 3.103)

(30)     Furnishing the Jury with a Copy of the Instructions (Red Book 2.100)

(31)     Unanimity (Red Book 2.405, 2.406)

(32)     Verdict Form Explanation (Red Book 2.407)

(33)     Instructions as to Deliberation: Redacted Exhibits (Red Book 2.500)

(34)     Instructions as to Deliberation: Exhibits During Deliberations (Red Book 2.501)

(35)     Instructions as to Deliberation: Selection of Foreperson (Red Book 2.502)

(36)     Instructions as to Deliberation: Possible Punishment Not Relevant (Red Book 2.505)

(37)     Instructions as to Deliberation: Witness's and Defendant's Use of Interpreter (Red Book 2.507)

(38)    Instructions as to Deliberation: Cautionary Instruction on Publicity, Communication, and Research (Red Book 2.508)

(39)    Instructions as to Deliberation: Communications Between Court and Jury (Red Book 2.509)

(40)    Instructions as to Deliberation: Attitude and Conduct of Jurors (Red Book 2.510)

(41)    Excusing Alternate Jurors (Red Book 2.511)

**Proposed Instruction No. 1**

**Preliminary Instructions and Instructions During Trial**

Because preliminary instructions and instructions during trial tend to vary among judges, the parties have not reproduced them here and defer to the Court for their specific wording.

*Source: Red Book 1.101, 1.102, 1.103, 1.104, 1.105, 1.106, 1.107, 1.108, 1.110, 1.201 (if applicable), 1.202, 1.204 (if applicable)*

**Proposed Instruction No. 2**

**Function of the Court and the Jury**

My function is to conduct this trial in an orderly, fair, and efficient manner; to rule on questions of law; and to instruct you on the law that applies in this case.

It is your duty to accept the law as I instruct you. You should consider all the instructions as a whole. You may not ignore or refuse to follow any of them.

Your function, as the jury, is to determine what the facts are in this case. You are the sole judges of the facts. While it is my responsibility to decide what is admitted as evidence during the trial, you alone decide what weight, if any, to give to that evidence. You alone decide the credibility or believability of the witnesses.

As human beings, we all have personal likes and dislikes, opinions, prejudices, and biases. Generally, we are aware of these things, but you also should consider the possibility that you have implicit biases, that is, biases of which you may not be consciously aware. Personal prejudices, preferences, or biases have no place in a courtroom, where our goal is to arrive at a just and impartial verdict. All people deserve fair treatment in our system of justice regardless of any personal characteristic, such as race, national or ethnic origin, religion, age, disability, sex, gender identity or expression, sexual orientation, education, or income level. You should determine the facts solely from a fair consideration of the evidence. You should decide the case without prejudice, fear, sympathy, favoritism or consideration of public opinion.

You may not take anything I may have said or done as indicating how I think you should decide this case. If you believe that I have expressed or indicated any such opinion, you should ignore it. The verdict in this case is your sole and exclusive responsibility.

*Source: Red Book 2.101, 2.102*

**Proposed Instruction No. 3**

**Jury's Recollection**

If any reference by me or the attorneys to the evidence is different from your own memory of the evidence, it is your memory that should control during your deliberations.


*Source: Red Book 2.103*

**Proposed Instruction No. 4**

**Evidence by Judicial Notice and Stipulation**

During your deliberations, you may consider only the evidence properly admitted in this trial. The evidence in this case consists of the sworn testimony of the witnesses, the exhibits that were admitted into evidence, [*if applicable:* the facts of which I took judicial notice], [*if applicable*: and the facts and testimony stipulated to by the parties].

[*If applicable:* I may take what is called "judicial notice" of public acts, places, facts, and events that I consider to be matters of common knowledge or matters that can be determined easily through undisputed sources. In this case, I took judicial notice of [describe fact of which the court took judicial notice]. When I take judicial notice of a particular fact, you may [if you choose to do so] regard that fact as proven evidence. [Because you are the sole judges of the facts, however, you are not required to accept any fact that is judicially noted.]]

[*If applicable*:  During the trial, you were told that the parties had stipulated—that is, agreed—to certain facts. You should consider any stipulation of fact to be undisputed evidence.]

[*If applicable:* During the trial, you were told that the parties had stipulated—that is, agreed—to what testimony [name of witness] would have given if s/he had testified in this case. You should consider this stipulated testimony to be exactly what s/he would have said had s/he testified here.]

When you consider the evidence, you are permitted to draw, from the facts that you find have been proven, such reasonable inferences as you feel are justified in the light of your experience. You should give any evidence such weight as in your judgment it is fairly entitled to receive.

*Source: Red Book 2.104*

25

**Proposed Instruction No. 5**

**Statements of Counsel Not Evidence**

The statements and arguments of the lawyers are not evidence. They are only intended to assist you in understanding the evidence. Similarly, the questions of the lawyers are not evidence.

*Source: Red Book 2.105*

**Proposed Instruction No. 6**

**Indictment Not Evidence**

You have heard mention of an indictment in this case. The indictment is merely the formal way of accusing a person of a crime. You must not consider the indictment as evidence of any kind—you may not consider it as any evidence of Ruben Oseguera Gonzalez's guilt or draw any inference of guilt from it.

*Source: Red Book 2.106*

**Proposed Instruction No. 7**

**Presumption of Innocence**

Every defendant in a criminal case is presumed to be innocent. This presumption of innocence remains with the defendant throughout the trial unless and until the government has proven he is guilty beyond a reasonable doubt. This burden never shifts throughout the trial. The law does not require Ruben Oseguera Gonzalez to prove his innocence or to produce any evidence at all. If you find that the government has proven beyond a reasonable doubt every element of a particular offense with which Ruben Oseguera Gonzalez is charged, it is your duty to find him guilty of that offense. On the other hand, if you find the government has failed to prove any element of a particular offense beyond a reasonable doubt, it is your duty to find Ruben Oseguera Gonzalez not guilty of that offense.

*Source: Red Book 2.107*

**Proposed Instruction No. 8**

**Burden of Proof and Reasonable Doubt**

The government has the burden of proving Ruben Oseguera Gonzalez guilty beyond a reasonable doubt. In civil cases, it is only necessary to prove that a fact is more likely true than not, or, in some cases, that its truth is highly probable. In criminal cases such as this one, the government's proof must be more powerful than that. It must be beyond a reasonable doubt. Reasonable doubt, as the name implies, is a doubt based on reason—a doubt for which you have a reason based upon the evidence or lack of evidence in the case. If, after careful, honest, and impartial consideration of all the evidence, you cannot say that you are firmly convinced of the defendant's guilt, then you have a reasonable doubt.

Reasonable doubt is the kind of doubt that would cause a reasonable person, after careful and thoughtful reflection, to hesitate to act in the graver or more important matters in life. However, it is not an imaginary doubt, nor a doubt based on speculation or guesswork; it is a doubt based on reason. The government is not required to prove guilt beyond all doubt, or to a mathematical or scientific certainty. Its burden is to prove guilt beyond a reasonable doubt.

*Source: Red Book 2.108*

**Proposed Instruction No. 9**

**Direct and Circumstantial Evidence**

There are two types of evidence from which you may determine what the facts are in this case—direct evidence and circumstantial evidence. When a witness, such as an eyewitness, asserts actual knowledge of a fact, that witness's testimony is direct evidence. On the other hand, evidence of facts and circumstances from which reasonable inferences may be drawn is circumstantial evidence.

Let me give you an example. Assume a person looked out a window and saw that snow was falling. If he later testified in court about what he had seen, his testimony would be direct evidence that snow was falling at the time he saw it happen. Assume, however, that he looked out a window and saw no snow on the ground, and then went to sleep and saw snow on the ground after he woke up. His testimony about what he had seen would be circumstantial evidence that it had snowed while he was asleep.

The law says that both direct and circumstantial evidence are acceptable as a means of proving a fact. The law does not favor one form of evidence over another. It is for you to decide how much weight to give to any particular evidence, whether it is direct or circumstantial. You are permitted to give equal weight to both. Circumstantial evidence does not require a greater degree of certainty than direct evidence. In reaching a verdict in this case, you should consider all of the evidence presented, both direct and circumstantial.

*Source: Red Book 2.109*

30

**Proposed Instruction No. 10**

**Nature of Charges Not to Be Considered**

One of the questions you were asked when we were selecting this jury was whether the nature of the charges itself would affect your ability to reach a fair and impartial verdict. We asked you that question because you must not allow the nature of a charge to affect your verdict. You must consider only the evidence that has been presented in this case in reaching a fair and impartial verdict.

*Source: Red Book 2.110*

**Proposed Instruction No. 11**

**Number of Witnesses**

The weight of the evidence is not necessarily determined by the number of witnesses testifying for each side.  Rather, you should consider all the facts and circumstances in evidence to determine which of the witnesses you believe.  You might find that the testimony of a smaller number of witnesses on one side is more believable than the testimony of a greater number of witnesses on the other side or you might find the opposite.

*Source: Red Book 2.111*

**Proposed Instruction No. 12**

**Inadmissible and Stricken Evidence**

The lawyers in this case sometimes objected when the other side asked a question, made an argument, or offered evidence that the objecting lawyer believed was not proper.  You must not hold such objections against the lawyer who made them or the part s/he represents.  It is the lawyers' responsibility to object to evidence that they believe is not admissible.

If, during the course of the trial, I sustained an objection to a lawyer's question, you should ignore the question, and you must not speculate as to what the answer would have been.  If, after a witness answered a question, I ruled that the answer should be stricken, you should ignore both the question and the answer and they should play no part in your deliberations.  Likewise, exhibits as to which I have sustained an objection or that I ordered stricken are not evidence, and you must not consider them in your deliberations.

*Source: Red Book 2.112*

## Proposed Instruction No. 13

### Credibility of Witnesses

In determining whether the government has proved the charges against the defendant beyond a reasonable doubt, you must consider the testimony of all the witnesses who have testified.

You are the sole judges of the credibility of the witnesses. You alone determine whether to believe any witness and the extent to which a witness should be believed. Judging a witness's credibility means evaluating whether the witness has testified truthfully and also whether the witness accurately observed, recalled, and described the matters about which the witness testified.

You may consider anything that in your judgment affects the credibility of any witness. For example, you may consider the demeanor and the behavior of the witness on the witness stand; the witness's manner of testifying; whether the witness impresses you as a truthful person; whether the witness impresses you as having an accurate memory; whether the witness has any reason for not telling the truth; whether the witness had a meaningful opportunity to observe the matters about which he or he has testified; whether the witness has any interest in the outcome of this case, stands to gain anything by testifying, or has friendship or hostility toward other people concerned with this case.

In evaluating the accuracy of a witness's memory, you may consider the circumstances surrounding the event, including the time that elapsed between the event and any later recollections of the event, and the circumstances under which the witness was asked to recall details of the event.

You may consider whether there are any consistencies or inconsistencies in a witness's testimony or between the witness's testimony and any previous statements made by the witness. You may also consider any consistencies or inconsistencies between the witness's testimony and any other evidence that you credit. You may consider whether any inconsistencies are the result of lapses in memory, mistake, misunderstanding, intentional falsehood, or differences in perception.

You may consider the reasonableness or unreasonableness, the probability or improbability, of the testimony of a witness in determining whether to accept it as true and accurate. You may consider whether the witness has been contradicted or supported by other evidence that you credit.

If you believe that any witness has shown him or himself to be biased or prejudiced, for or against either side in this trial, or motivated by self-interest, you may consider and determine whether such bias or prejudice has colored the testimony of the witness so as to affect the desire and capability of that witness to tell the truth.

34

You should give the testimony of each witness such weight as in your judgment it is fairly entitled to receive.

*Source: Red Book 2.200*

**Proposed Instruction No. 14**

**Witness with a Plea Agreement**

You have heard evidence that [name of witness] entered into a plea agreement with the government pursuant to which [name of witness] agreed to testify truthfully in this case and the government agreed to [dismiss a charge against him/her] [and] [decline prosecution of a charge against him/her] [and] [bring [name of witness's] cooperation to the attention of his/her sentencing judge] [and] [consider filing papers with his/her judge which would permit that judge to impose a more lenient sentence than that judge might otherwise be able to impose].

The government is permitted to enter into this kind of plea agreement. You, in turn, may accept the testimony of such a witness and convict the defendant on the basis of this testimony alone, if it convinces you of the defendant's guilt beyond a reasonable doubt. A witness who has entered into a plea agreement is under the same obligation to tell the truth as is any other witness; the plea agreement does not protect him/her against a prosecution for perjury or false statement, should s/he lie under oath.

However, you may consider whether a witness who has entered into such an agreement has an interest different from other types of witnesses. You may consider whether the plea agreement the witness entered into with the government has motivated him/her to testify falsely against the defendant. The testimony of a witness who has entered into a plea agreement should be considered with caution. You should give the testimony as much weight as in your judgment it deserves.

*Source: Red Book 2.203*

36

**Proposed Instruction No. 15**

**Informer's Testimony**

You have heard evidence that [name of witness] is an informer. S/he has an arrangement with the government [to help the government obtain introductions to persons suspected of violating the law] [and] [to help the government obtain information]. In exchange, s/he receives [a benefit in a pending case] [money] [and] [other personal benefit]. The use of such persons is a recognized means of detecting criminal conduct and the government is permitted to call such persons as witnesses.

However, when an informer testifies, his/her testimony should be considered with caution. You may consider whether the benefit this person receives from the government has motivated him/her to testify falsely against the defendant. You should give the testimony as much weight as in your judgment it deserves.

*Source: Red Book 2.205*

**Proposed Instruction No. 16**

**Law Enforcement Officer's Testimony**

A law enforcement officer's testimony should be evaluated by you just as any other evidence in the case. In evaluating the officer's credibility, you should use the same guidelines that you apply to the testimony of any witness. In no event should you give either greater or lesser weight to the testimony of any witness merely because s/he is a law enforcement officer.

*Source: Red Book 2.207 (modified "police" to "law enforcement")*

**Proposed Instruction No. 17**

**Right of Defendant Not To Testify**

Every defendant in a criminal case has an absolute right not to testify. Ruben Oseguera Gonzalez has chosen to exercise this right. You must not hold this decision against him/her, and it would be improper for you to speculate as to the reason or reasons for his decision. You must not assume the defendant is guilty because he chose not to testify.

*Source: Red Book 2.208*

**Proposed Instruction No. 18**

**Defendant as Witness**

A defendant has a right to become a witness in his own behalf. His testimony should not be disbelieved merely because he is the defendant. In evaluating his testimony, however, you may consider the fact that the defendant has a vital interest in the outcome of this trial. As with the testimony of any other witness, you should give the defendant's testimony as much weight as in your judgment it deserves.

*Source: Red Book 2.209*

**Proposed Instruction No. 19**

**Effect of Refusal of Witness to Answer Question**

The law requires every witness to answer all questions put to him/her, unless the court rules otherwise. In this case, [name of defendant] [name of witness] refused to answer a question after being instructed by the court to do so. You must not guess what [name of defendant] [name of witness] would have said if s/he had not refused to answer the question. However, in determining what weight to give the [defendant's] [witness's] other testimony, you may consider that the [name of defendant] [name of witness] refused to answer [a] [some] question[s].

*Source: Red Book 2.211*

**Proposed Instruction No. 20**

**Expert Testimony**

In this case, you heard the testimony of Steve Paris, who expressed opinions concerning common means and methods of drug trafficking organizations and their use of coded language in communications.

You also heard the testimony of John Miller who expressed opinions concerning the use of firearms by drug trafficking organizations and identification of particular kinds of firearms.

You also heard the testimony of Judi O'Brien who expressed opinions concerning the translation of documents and communications from Spanish to English.

If scientific, technical, or other specialized knowledge might assist the jury in understanding the evidence or in determining a fact in issue, a witness who possesses knowledge, skill, experience, training, or education may testify and state an opinion concerning such matters. You are not bound to accept this witness's opinion. If you find that the opinion is not based on sufficient education or experience, that the reasons supporting the opinion are not sound, or that the opinion is outweighed by other evidence, you may completely or partially disregard the opinion. You should consider this evidence with all the other evidence in the case and give it as much weight as you think it fairly deserves.

*Source: Red Book 2.215*

## Proposed Instruction No. 21

## Evaluation of Prior Inconsistent Statement of a Witness

The law treats prior inconsistent statements differently depending on the [nature of the statements and the] circumstances in which they were made. I will now explain how you should evaluate those statements.

**PART A (for use when prior statements not made under oath are introduced):**
You have heard evidence that [name of witness] made a statement on an earlier occasion and that this statement may be inconsistent with his/her testimony here at trial. It is for you to decide whether the witness made such a statement and whether in fact it was inconsistent with the witness's testimony here. If you find such an inconsistency, you may consider the earlier statement in judging the credibility of the witness, but you may not consider it as evidence that what was said in the earlier statement was true.

**PART B (for use when prior statements made under oath are introduced):**
You [also] have heard evidence that [name of witness] made an earlier statement under oath, subject to the penalty of perjury at [a prior proceeding] [the grand jury] [a deposition] and that this statement may be inconsistent with [his] [her] testimony here at trial. If you find that the earlier statement is inconsistent with the witness's testimony here in court, you may consider this inconsistency in judging the credibility of the witness. You also may consider this earlier statement as evidence that what was said in the earlier statement was true.

**PART C (for use when prior identification statements are used to impeach a witness):**
You [also] have heard evidence that [name of witness] [made an identification] [provided a description] on an earlier occasion, and that his/her testimony here at trial may be inconsistent with that [identification] [description]. It is for you to decide whether s/he [made such an identification] [provided such a description] and whether his/her testimony here was, in fact, inconsistent with it. If you find such an inconsistency, you may consider this inconsistency in judging the credibility of [name of witness]. You also may consider the earlier [identification] [description] as evidence that what was said in the prior [identification] [description] was true.

*Source: Red Book 2.216*

**Proposed Instruction No. 22**

**Impeachment by Proof of Conviction of a Crime-Witness**

You have heard evidence that [name of witness] has been convicted of a crime. You may consider this conviction only in evaluating the credibility of that witness's testimony in this case.

*Source: Red Book 2.218*

**Proposed Instruction No. 23**

**Impeachment by Proof of Pending Case, Probation or Parole-Witness**

You have heard evidence that [name of witness] is [on probation] [on parole] [on supervised release] [charged with a crime] [awaiting sentence] [under investigation]. You may consider this evidence when deciding whether the witness has a bias in favor of one of the parties that may affect his/her willingness to tell the truth.

*Source: Red Book 2.219*

**Proposed Instruction No. 24**

**Statement of the Defendant-Substantive Evidence**

You have heard evidence that Ruben Oseguera Gonzalez made statements to law enforcement officers about the crime charged. You should consider all the circumstances, [including whether law enforcement recorded the statement], in deciding whether he made the statement. If you find that he did make the statement, you must decide how much weight to give the statement. For example, you may consider whether he made the statement voluntarily and understood what he was saying. You may consider whether he was forced, threatened, or pressured, either physically or psychologically, and whether he was promised any reward or benefit for making the statement. You may consider all the conversations between him and the police. [You may consider whether the police warned him of his rights.] You may consider where and when the statement was given; the duration of any questioning; who was present during some or all of the questioning of the defendant; [and whether law enforcement officers recorded some or all of the conversations]. You may consider the age, education, experience, intelligence and the physical and mental condition of the defendant.

*Source: Red Book 2.305 (modified "police" to "law enforcement")*

**Proposed Instruction No. 25**

**Other Crimes Evidence**

You have heard evidence that Ruben Oseguera Gonzalez [describe other crimes evidence]. It is up to you to decide whether to accept that evidence.

You must first decide, without considering [describe other crimes evidence] at all, whether the government has proved beyond a reasonable doubt that an agreement existed to knowingly or intentionally distribute cocaine and methamphetamine knowing or intending that the drugs would be unlawfully imported into the United States.  If you find that the government has proved beyond a reasonable doubt that an agreement existed, then you may consider the evidence that the defendant [describe other crimes evidence].

If you find that Ruben Oseguera Gonzalez [describe other crimes evidence], you may use this evidence for the limited purpose of determining whether the government has proved beyond a reasonable doubt that Ruben Oseguera Gonzalez knew of the unlawful purpose of the agreement and that he joined in the agreement knowingly and willfully, that is, with the intent to further its unlawful purpose.

If you find that Ruben Oseguera Gonzalez [describe the other crimes conduct], you also may use this evidence for the limited purpose of deciding whether

- [1. Ruben Oseguera Gonzalez had a motive to commit the charged offenses.]

- [2.The defendant was a leader within the conspiracy with decision-making authority, or at least an important advisory role, such that he was responsible for the reasonably foreseeable acts of his subordinates.]

If you conclude that

- [1. Ruben Oseguera Gonzalez had such a motive.]

- [2.The defendant was a leader within the conspiracy with decision-making authority, or at least an important advisory role, such that he was responsible for the reasonably foreseeable acts of his subordinates.]

You may use this evidence in determining whether the government has proved beyond a reasonable doubt that Ruben Oseguera Gonzalez committed the charged offenses.

You may not use [describe other crimes evidence] for any other purpose. Ruben Oseguera Gonzalez is only on trial for the crimes charged. Ruben Oseguera Gonzalez is not charged in this case with any offense relating to [describe the other crimes conduct], and you may not use this evidence to conclude that s/he has a bad character, or that Ruben Oseguera Gonzalez has a criminal personality. The law does not allow you to convict Ruben Oseguera Gonzalez simply because you believe he may have done bad things not specifically charged as crimes in this case.

*Source: Red Book 2.321 (modified to combine Parts A and B and to remove references to "indictment")*

**Proposed Instruction 26**

**Translation of Foreign Language Documents**

[*The Government proposes that a version of this instruction also be given when the first translated document is introduced at trial.*]  In this trial, I admitted into evidence documents in the Spanish language along with English translations.

Although some of you may know Spanish, it is important that all jurors consider the same evidence. Therefore, you must accept the English translation contained in the transcript.

If, however, you have a question as to the accuracy of the English translation, you should bring this matter to my attention immediately. You should not ask your question or make any comment about the translation in the presence of the other jurors, or otherwise share your question or concern with any of them. I will take steps to see if your question can be answered and any discrepancy resolved. If, however, after such efforts a discrepancy remains, you must rely only upon the official English translation and not on your own translation.

*Source: Red Book 2.311*

**Proposed Instruction No. 27**

**Multiple Counts**

Each charge in Counts One and Two is a separate offense. You should consider each offense, and the evidence which applies to it, separately, and you should return separate verdicts as to each count. The fact that you may find the defendant guilty or not guilty on any one count should not influence your verdict with respect to any other count.

*Source: Red Book 2.402 (modified to remove references to "indictment")*

## Proposed Instruction No. 28

### Proof of State of Mind

Someone's willfulness or knowledge ordinarily cannot be proved directly, because there is no way of knowing what a person is actually thinking, but you may infer someone's willfulness or knowledge from the surrounding circumstances. You may consider any statement made or acts done or omitted by Ruben Oseguera Gonzalez, and all other facts and circumstances received in evidence which indicate his willlfulness or knowledge.

You may infer, but are not required to infer, that a person intends the natural and probable consequences of acts he intentionally did or intentionally did not do. It is entirely up to you, however, to decide what facts to find from the evidence received during this trial. You should consider all the circumstances in evidence that you think are relevant in determining whether the government has proved beyond a reasonable doubt that Ruben Oseguera Gonzalez acted with the necessary state of mind.

The word "knowingly," as that term is used in these instructions, means that the act was done voluntarily and intentionally, not because of mistake or accident.

*Source: Red Book 3.101 (modified to include "willfulness"); Pattern Crim. Jury Instrs. (Criminal Cases), Fifth Circuit (2019 ed.), 1.41.*

**Proposed Instruction No. 29**

**Proof of "On or About" Dates**

The defendant is charged with the offenses of conspiring to distribute five kilograms or more of cocaine and five hundred grams or more of methamphetamine for importation into the United States; using, carrying, and brandishing firearms during and in relation to the drug trafficking conspiracy; and possessing firearms in furtherance of the drug trafficking conspiracy beginning "in or about" 2007. The proof need not establish with certainty the exact date of the alleged offense. It is sufficient if the evidence in the case establishes beyond a reasonable doubt that the offense was committed on a date reasonably near the date alleged.

*Source: Red Book 3.103 (modified to remove reference to "indictment")*

**Proposed Instruction No. 30**

**Providing Jury with Copy of Instructions**

I will provide you with a copy of my instructions. During your deliberations, you may, if you want, refer to these instructions. While you may refer to any particular portion of the instructions, you are to consider the instructions as a whole and you may not follow some and ignore others. If you have any questions about the instructions, you should feel free to send me a note. Please return your instructions to me when your verdict is rendered.

*Source: Red Book 2.100*

## Proposed Instruction No. 31

### Unanimity

A verdict must represent the considered judgment of each juror, and in order to return a verdict, each juror must agree on the verdict. In other words, your verdict on each count must be unanimous.

*Source: Red Book 2.405*

**Proposed Instruction No. 32**

**Verdict Form Explanation**

You will be provided with a Verdict Form for use when you have concluded your deliberations. The form is not evidence in this case, and nothing in it should be taken to suggest or convey any opinion by me as to what the verdict should be. Nothing in the form replaces the instructions of law I have already given you, and nothing in it replaces or modifies the instructions about the elements which the government must prove beyond a reasonable doubt. The form is meant only to assist you in recording your verdict.

*Source: Red Book 2.407*

**Proposed Instruction No. 33**

**Instructions as to Deliberation: Redacted Exhibits**

During the course of this trial, a number of exhibits were admitted in evidence. Sometimes only portions of an exhibit were admitted, such as a document with some words or pictures blacked out or otherwise removed. There are a variety of reasons why only a portion of an exhibit is admitted, including that the other portions are inadmissible or implicate an individual's privacy. As you examine the exhibits, and you see or hear portions where there appear to be omissions, you should consider only the portions that were admitted. You should not guess as to what has been taken out or why, and you should not hold it against either party. You are to decide the facts only from the evidence that is before you.

*Source: Red Book 2.500*

**Proposed Instruction No. 34**

**Instructions as to Deliberation: Exhibits During Deliberations**

I will be sending into the jury room with you the exhibits that have been admitted into evidence. You may examine any or all of them as you consider your verdict. Please keep in mind that exhibits that were only marked for identification but were not admitted into evidence will not be given to you to examine or consider in reaching your verdict.

*Source: Red Book 2.501*

**Proposed Instruction No. 35**

**Instructions as to Deliberation: Selection of Foreperson**

When you return to the jury room, you should first select a foreperson to preside over your deliberations and to be your spokesperson here in court. There are no specific rules regarding how you should select a foreperson. That is up to you. However, as you go about the task, be mindful of your mission—to reach a fair and just verdict based on the evidence. Consider selecting a foreperson who will be able to facilitate your discussions, who can help you organize the evidence, who will encourage civility and mutual respect among all of you, who will invite each juror to speak up regarding his or his views about the evidence, and who will promote a full and fair consideration of that evidence.

*Source: Red Book 2.502*

**Proposed Instruction No. 36**

**Instructions as to Deliberation: Possible Punishment Not Relevant**

The question of possible punishment of the defendant in the event a conviction is not a concern of yours and should not enter into or influence your deliberations in any way. The duty of imposing sentence in the event of a conviction rests exclusively with me. Your verdict should be based solely on the evidence in this case, and you should not consider the matter of punishment at all.

*Source: Red Book 2.505*

**Proposed Instruction No. 37**

**Instructions as to Deliberation: Witness's and Defendant's Use of Interpreter**

Ruben Oseguera Gonzalez used the services of an interpreter in this trial. As I have previously instructed you, you should not be biased for or against Ruben Oseguera Gonzalez for using an interpreter. Do not permit that fact to influence you in any way.

The fact that the court has provided an interpreter to Ruben Oseguera Gonzalez does not mean that the court has made a ruling on the extent of his ability to speak or understand the English language. Use of an interpreter should not be considered evidence in this case.

You have heard testimony from [name of witness], who communicated through an interpreter in this trial.

[*The Government proposes that a version of the remaining parts of this instruction also be given when the first Spanish speaking witness testifies at trial.*] You are to consider only the evidence provided through the official court interpreters. Although some of you may know Spanish, it is important that all jurors consider the same evidence. Therefore, you must base your decision on the evidence presented in the English interpretation. You must disregard any different meaning.

As I have previously instructed you, you should not be biased for or against anyone who uses an interpreter. Do not permit the fact that [name of witness] used the services of an interpreter to influence you in any way.

You should not consider the mere fact that [name of witness] was provided an interpreter in evaluating his credibility. You must evaluate interpreted testimony as you would any other testimony. That is, you must not give interpreted testimony any greater or lesser weight than you would if the witness had spoken English.

If you observed that the witness nodded his/her head during interpretation, you should consider that this did not necessarily indicate agreement or an affirmative answer but may have only indicated that the witness was following the translation.

Even though you may not be able to understand what [name of witness] said, you may consider the demeanor, tenor, tone, and cadence of the witness in combination with the English translation when evaluating his/her credibility.

*Source: Red Book 2.507; Terry v. Hooper, 85 F.4th 750, 757 (5th Cir. 2023), cert. denied, 144 S. Ct. 1074 (2024).*

**Proposed Instruction No. 38**

**Instructions as to Deliberation: Cautionary Instruction on Publicity, Communication, and Research**

I would like to remind you that, in some cases, although not necessarily this one, there may be reports in the newspaper or on the radio, internet, or television concerning this case. If there should be such media coverage in this case, you may be tempted to read, listen to, or watch it. You must not read, listen to, or watch such reports because you must decide this case solely on the evidence presented in this courtroom. If any publicity about this trial inadvertently comes to your attention, do not discuss it with other jurors or anyone else. Just let me or my clerk know as soon after it happens as you can, and I will then briefly discuss it with you.

As you retire to the jury room to deliberate, I also wish to remind you of an instruction I gave you at the beginning of the trial. During deliberations, you may not communicate with anyone not on the jury about this case. This includes any electronic communication such as email or text or any blogging about the case. In addition, you may not conduct any independent investigation during deliberations. This means you may not conduct any research in person or electronically via the internet or in another way.

*Source: Red Book 2.508*

**Proposed Instruction No. 39**

**Instructions as to Deliberation: Communications Between Court and Jury**

If it becomes necessary during your deliberations to communicate with me, you may send a note by the clerk or marshal, signed by your foreperson or by one or more members of the jury. No member of the jury should try to communicate with me except by such a signed note, and I will never communicate with any member of the jury on any matter concerning the merits of this case, except in writing or orally here in open court.

Bear in mind also that you are never, under any circumstances, to reveal to any person—not the clerk, the marshal or me—how jurors are voting until after you have reached a unanimous verdict. This means that you should never tell me, in writing or in open court, how the jury is divided on any matter—for example, 6-6 or 7-5 or 11-1, or in any other fashion—whether the vote is for conviction or acquittal or on any other issue in the case.

*Source: Red Book 2.509*

**Proposed Instruction No. 40**

**Instructions as to Deliberation: Attitude and Conduct of Jurors**

The attitude and conduct of jurors at the beginning of their deliberations are matters of considerable importance. It may not be useful for a juror, upon entering the jury room, to voice a strong expression of an opinion on the case or to announce a determination to stand for a certain verdict. When one does that at the outset, a sense of pride may cause that juror to hesitate to back away from an announced position after a discussion of the case. Furthermore, many juries find it useful to avoid an initial vote upon retiring to the jury room. Calmly reviewing and discussing the case at the beginning of deliberations is often a more useful way to proceed. Remember that you are not partisans or advocates in this matter, but you are judges of the facts.

*Source: Red Book 2.510*

**Proposed Instruction No. 41**

**Excusing Alternate Jurors**

The last thing I must do before you begin your deliberations is to excuse the alternate jurors. As I told you before, the selection of alternates was an entirely random process; it's nothing personal. We selected [two] [insert other number as appropriate] seats to be the alternate seats before any of you entered the courtroom. Since the rest of you have remained healthy and attentive, I can now excuse those jurors in seats [insert seat numbers].

Before you [two] [insert other number as appropriate] leave, I am going to ask you to tear out a page from your notebook, and to write down your name and daytime phone number and hand this to the clerk. I do this because it is possible, though unlikely, that we will need to summon you back to rejoin the jury in case something happens to a regular juror. Since that possibility exists, I am also going to instruct you not to discuss the case with anyone until we call you. My earlier instruction on use of the Internet still applies; do not research this case or communicate about it on the Internet. In all likelihood, we will be calling you to tell you there has been a verdict and you are now free to discuss the case; there is, however, the small chance that we will need to bring you back on to the jury. Thank you very much for your service, and please report back to the jury office to turn in your badge on your way out.

*Source: Red Book 2.511*

**Part II: Substantive Offense Instructions**

The parties request that the Court charge the jury as to the substantive offenses charged in accordance with the instructions proposed herein.  Where the parties have not been able to agree, they have submitted alternative instructions, noting objections and responses where appropriate. To aid the Court's review of the differences between the parties' proposed instructions, the defendant's alternate proposed instructions are included herein with a "redline" comparison.

(42)   Conspiracy

(43)   Conspiracy to Distribute a Controlled Substance For Importation

(44)   Firearms—Possession in Furtherance of a Drug Trafficking Offense

(45)   Definition of Possession (Red Book 3.104(c))

(46)   Aiding and Abetting (Red Book 3.200)

(47)   Willfully Causing an Act to be Done (Red Book 3.102)

(48)   Coconspirator Liability

(49)   Multiple Conspiracies

**Proposed Instruction No. 42**

**Conspiracy**

Count One charges that Ruben Oseguera Gonzalez and others did knowingly, intentionally, and willfully conspire to commit a crime.

I'm going to start with describing what a conspiracy is. A conspiracy is a combination of two or more people to accomplish an unlawful purpose. The essence of the crime of conspiracy is an unlawful agreement or understanding between two or more people to violate the law. It is against the law to conspire, or agree, with someone to commit a crime even if that crime was never committed or completed. The conspiracy or agreement itself is a separate offense from the crime that allegedly was planned. So, the government does not have to prove that the objective was achieved.

To constitute a conspiracy agreement, an agreement does not have to be in writing, does not have to be an express or formal plan in which everyone who was involved sat down together and worked out all the details. This, of course, rarely, if ever, happens when illegal purposes are involved. On the other hand, it does not follow from the fact that people get together and talk about common interests, or do similar things, that an illegal agreement exists. The government must prove beyond a reasonable doubt that there was a common understanding or common undertaking among two or more people to commit the crime of distribution of a controlled substance knowing and intending that the controlled substance would be unlawfully imported into the United States.

A conspiracy can be proved indirectly, by facts and circumstances that lead to a conclusion that a conspiracy existed. The government must prove that such facts and circumstances existed and that they lead to the conclusion that a conspiracy existed. It is not essential that the government prove that the conspiracy began or ended on the specific date set forth in the charges. Rather, the government is required to prove beyond a reasonable doubt that, in fact, a conspiracy existed for some time within the period set forth in the charges. The government has to prove the defendant intentionally joined in that agreement.

To be a member of the conspiracy, the defendant need not know the identities or the number of all the other members of the conspiracy, nor all of the details of the conspiracy, or the means by which its purposes were to be accomplished. The defendant may be found to have been a member of the conspiracy even though he was not apprised of all the activities of the other members. Furthermore, the defendant need not have been informed of the full scope of the conspiracy, nor need he have joined in all of the conspiracy's unlawful objectives in order for you to infer that he joined the conspiracy knowingly. However, the defendant had to know or intend that the controlled substances would be imported into the United States because without that element there is no crime against the United States.

Each member of the conspiracy may perform separate and distinct acts. It is not necessary that the government prove that a particular alleged conspirator, from the beginning, was aware of the

common purpose, had knowledge that the conspiracy existed, and was a member of the conspiracy.

Different persons may become members of the conspiracy, at different times. Moreover, it is not necessary, in order to convict the defendant of conspiracy, that the objectives or purposes of the conspiracy have been achieved or accomplished.

In determining whether a conspiracy existed and whether the defendant was a member, you may consider the acts and statements of any other member of the alleged conspiracy, done or made during the course of and in furtherance of the conspiracy, as evidence against the defendant. When persons enter into a conspiracy, they become agents for each other, so that the act or statement of one conspirator in furtherance of the conspiracy is considered the act or statement of all the other conspirators and is evidence against each and all of them. In such cases, such acts or statements of one conspirator during the existence and in furtherance of the conspiracy are considered to be the acts or statements of all the other conspirators and can be regarded as evidence against them all.

You should not base your determination of the guilt or innocence on the extent of the defendant's participation in the alleged conspiracy. The defendant may be convicted as a conspirator even though you may find he played a minor role in the conspiracy, or joined the conspiracy after it was underway, provided that you find beyond a reasonable doubt that the conspiracy existed, and that the defendant knowingly participated in the conspiracy with the intent to advise, encourage, at one time. For the defendant to be convicted as a conspirator, it is sufficient if at some time during the course of the conspiracy, he was a member of the conspiracy.

Mere presence at the scene of the agreement or of the crime, or merely being with the other participants, however, does not show that the defendant knowingly joined in the agreement. Also, unknowingly acting in a way that helps the participants, or merely knowing about the agreement itself, without more, does not make the defendant part of the conspiracy. The government must show that he was part of the conspiracy.

*Source: Adapted from Instructions given in United States v. Javier Algredo Vazquez, No. 21-cr-597-BAH (D.D.C. 2023), ECF No. 117.*

## Proposed Instruction No. 43

## Conspiracy to Distribute a Controlled Substance, Intending It Be Imported (21 U.S.C. §§ 959(a), 960, 963)

Count One charges that, from in or around 2007 and continuing up to and including the time of the charges filed on February 1, 2017, Ruben Oseguera Gonzalez and others did knowingly, intentionally, and willfully conspire to distribute 5 kilograms or more of a mixture or substance containing a detectable amount of cocaine and 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, both schedule II controlled substances, intending and knowing that such cocaine and methamphetamine would be unlawfully imported into the United States, in violation of Title 21, Sections 959(a), 960 and 963, and Title 18, Section 2, of the United States Code.

There are several elements of the crime of conspiracy to distribute a controlled substance for importation into the United States, each of which must be proved beyond a reasonable doubt. The elements are:

*First*, that from on or about the dates alleged in the charge, an agreement existed between the defendant and at least one other person to knowingly or intentionally distribute cocaine and methamphetamine knowing or intending that the drugs would be unlawfully imported into the United States;

*Second*, that the defendant knew of the unlawful purpose of the agreement. This means that the defendant realized what he was doing and was aware of the nature of his conduct, and did not act through ignorance, mistake, or accident; and

*Third*, that the defendant joined in the agreement knowingly and willfully, that is, with the intent to further its unlawful purpose.

The government is not required to prove that the defendant committed an act in furtherance of the conspiracy. The essence of the offense of conspiracy is the agreement to commit a crime, not the commission of overt acts in furtherance of the agreement.

As I have already instructed, a conspiracy is an agreement to commit a crime and, in Count One, the crime that is alleged to be the object of the conspiracy in this case is the distribution of the charged controlled substances knowing or intending that the controlled substances would be unlawfully imported into the United States.

To distribute means: to transfer or attempt to transfer to another person a measurable or detectable amount of a controlled substance, voluntarily and on purpose, not by mistake or accident, and not necessarily in exchange for anything of value.

If you determine that the government has proven beyond a reasonable doubt that the defendant conspired to distribute cocaine and methamphetamine for importation into the United States, you

68

must make a determination as to the quantity of the controlled substances for which the defendant is personally responsible, including controlled substance that were distributed by other conspirators in furtherance of the conspiracy and that were reasonably foreseeable to the defendant. The verdict form I will tell you about a little bit later asks you to determine whether the government has proven beyond a reasonable doubt whether a mixture or substance containing or including cocaine or methamphetamine exceeded specified quantities. Your determination of the quantity of cocaine and methamphetamine involved in the conspiracy must be unanimous, and you must be satisfied that the United States has proven the quantity of cocaine and methamphetamine beyond a reasonable doubt.

The government is not required to show that any of the alleged criminal acts occurred within the District of Columbia. The statute the defendant is charged with violating—Title 21, United States Code, Section 959—is intended to reach acts of "distribution committed outside the territorial jurisdiction of the United States" if the defendant intended or knew that the controlled substances being distributed would be imported into the United States.  Federal law provides that alleged violations of Section 959 can be tried in the District of Columbia.

*Source: Adapted from Instructions given in United States v. Javier Algredo Vazquez, No. 21-cr-597-BAH (D.D.C. 2023), ECF No. 117; United States v. Stoddard, 892 F.3d 1203, 1218–22 (D.C. Cir. 2018).*

## Proposed Instruction No. 44

## Firearms—Possession in Furtherance of a Drug Trafficking Offense (18 U.S.C. § 924(C))

Count Two charges that, from in or about 2007 and continuing up to and including the time of the charges filed on February 1, 2017, Ruben Oseguera Gonzalez did knowingly and intentionally use, carry, and brandish firearms, including destructive devices, during and in relation to the drug trafficking conspiracy charged in Count One; and that he possessed firearms, including destructive devices, in furtherance of the drug trafficking conspiracy charged in Count One, all in violation of Title 18, United States Code, Sections 924(c)(1)(A)(i), 924(c)(1)(A)(ii), 924(c)(1)(B)(ii), and 2.

The crime charged in Count Two has two elements:

*One*, the defendant committed the crime of conspiracy to distribute controlled substances knowing and intending that they would be imported into the United States as charged in Count One; and

*Two*, the defendant either:

> (a)     knowingly used or carried a firearm during and in relation to that crime, or

> (b)     knowingly possessed a firearm in furtherance of that crime.

To "use" a firearm means to employ the firearm actively, such as to brandish, display, strike with, discharge or attempt to discharge it, or even to refer to it in a way calculated to affect the underlying crime.

To "carry" a firearm means to move or transport the firearm on one's person or in a vehicle or container. It need not be immediately accessible.

For either use or carry to be "during and in relation to" a crime, the firearm must have played a role in the crime or must have been intended by the defendant to play a role in the crime. That need not have been its only purpose, however.

A person possesses a firearm "in furtherance of" a crime if the firearm possession made the commission of the underlying crime easier, safer or faster, or in any other way helped the defendant commit the crime. There must be some connection between the firearm and the underlying crime, but the firearm need not have been actively used during the crime.

If you find the defendant guilty of this offense, you must also determine whether the government has proven beyond a reasonable doubt that the firearm was brandished during and in relation to the crime charged in Count One.

The term "brandish" means, with respect to a firearm, to display all or part of the firearm, or otherwise make the presence of the firearm known to another person, in order to intimidate that person, regardless of whether the firearm is directly visible to that person.

If you find the defendant guilty of this offense, you must also determine whether the government has proven beyond a reasonable doubt that the firearm was a destructive device.

A "destructive device" is any explosive, incendiary, or poison gas—that is, bomb, grenade, rocket having a propellant of more than four ounces, missile having an explosive or incendiary charge of more than one-quarter ounce, mine, or device similar to any of the devices described above. It also includes any type of weapon (other than a shotgun or shotgun shell) by whatever name known which will, or which may be readily converted to, expel a projectile by the action of an explosive or other propellant, and which has any barrel with a bore of more than one-half inch in diameter.

*Source: Adapted from Pattern Crim. Jury Instrs. (Criminal Cases), Fifth Circuit (2019 ed.), 2.44A, 2.44B; United States v. Khatallah, No. 14-cr-00141, 2017 WL 5953496 (D.D.C.) (Jury Instruction); Instructions given in United States v. Moya, 5:18-cr-00006-RWS-JBB (E.D.T.X. 2019), ECF No. 130 at 31–32; 18 U.S.C. § 921(a)(4), 924(c)(4).*

**Proposed Instruction 45**

**Possession—Defined**

Possession means to have physical possession or to otherwise exercise control over tangible property. A person may possess property in either of two ways. First, the person may have physical possession of it by holding it in his or her hand or by carrying it in or on his or her body or person. This is called "actual possession." Second, a person may exercise control over property not in his or her physical possession if that person has both the power and the intent at a given time to control the property. This is called "constructive possession."

In addition, the law recognizes the possibility that two or more individuals can jointly have property in their constructive possession. Two or more persons have property in their joint constructive possession when they each have both the power and the intent at a given time to control the property.

Mere presence near something or mere knowledge of location, however, is not enough to show possession. To prove possession of a firearm against Ruben Oseguera Gonzalez in this case, the government must prove beyond a reasonable doubt that he had either actual or constructive possession of it.

*Source: Red Book 3.104(c)*

**Proposed Instruction 46**

**Aiding and Abetting**

You may find Ruben Oseguera Gonzalez guilty of the crime charged in Count Two without finding that he personally committed each of the acts that make up the crime or that he was present while the crime was being committed. Any person who in some way intentionally participates in the commission of a crime can be found guilty either as an aider and abettor or as a principal offender. It makes no difference which label you attach. The person is as guilty of the crime as he would be if he had personally committed each of the acts that make up the crime.

To find that a defendant aided and abetted in committing a crime, you must find that the defendant knowingly associated himself with the commission of the crime, that he participated in the crime as something he wished to bring about, and that he intended by his actions to make it succeed.

Some affirmative conduct by the defendant in planning or carrying out the crime is necessary. Mere physical presence by Ruben Oseguera Gonzalez at the place and time the crime is committed is not by itself sufficient to establish his guilt. It is not necessary that you find that Ruben Oseguera Gonzalez was actually present while the crime was committed.

The government is not required to prove that anyone discussed or agreed upon a specific time or method of committing the crime. The government is not required to prove that the crime was committed in the particular way planned or agreed upon. Nor need the government prove that the principal offender and the person alleged to be the aider and abettor directly communicated with each other.

To find that Ruben Oseguera Gonzalez aided and abetted in committing Count Two, you must find that he personally acted with knowledge that the firearm was used, carried, brandished, or possessed. However, it is not necessary for the government to prove that the defendant knew that one or more of the firearms was a destructive device.

It is not necessary that all the people who committed the crime be caught or identified. It is sufficient if you find beyond a reasonable doubt that the crime was committed by someone and that the defendant knowingly and intentionally aided and abetted in committing the crime.

*Source: Red Book 3.200 (paragraph 5 modified to simplify); United States v. Burwell, 690 F.3d 500, 502, 507 (D.C. Cir. 2012) (en banc) (holding that there is no need to read a mens rea requirement into 18 U.S.C. § 924(c)(1)(B)(ii), which imposes an increased mandatory minimum sentence for use, carry, or possession of a machinegun or destructive device because, inter alia, it is not "unusual to punish individuals for the unintended consequences of their unlawful acts")*

73

**Proposed Instruction 47**

**Willfully Causing an Act to be Done**

You may find Ruben Oseguera Gonzalez guilty of the crime charged in Count Two without finding that he personally committed each of the acts constituting the offense or was personally present at the commission of the offense. A defendant is responsible for an act which he willfully causes to be done if the act would be criminal if performed by him directly or by another. To "cause" an act to be done means to bring it about. You may convict Ruben Oseguera Gonzalez of the offense charged in Count Two if you find that the government has proved beyond a reasonable doubt each element of the offense and that Ruben Oseguera Gonzalez willfully caused such an act to be done, with the intent to commit the crime.

*Source: Red Book 3.102*

**Proposed Instruction 48**

**Conspirator Liability**

You may find Ruben Oseguera Gonzalez guilty of the crime charged in Count Two without finding that he personally committed each of the acts that make up the crime or that he was present while the crime was being committed. A conspirator is responsible for offenses committed by other conspirators if the conspirator was a member of the conspiracy when the offense was committed and if the offense was committed in furtherance of, and as a foreseeable consequence of, the conspiracy. Therefore, if you have first found the defendant guilty of the conspiracy charged in Count One and if you find beyond a reasonable doubt that during the time the defendant was a member of that conspiracy, other conspirators committed the offense in Count Two both in furtherance of and as a foreseeable consequence of that conspiracy, then you may find the defendant guilty of Count Two, even though the defendant may not have participated in any of the acts which constitute the offense described in Count Two.

*Source: Pinkerton v. United States, 328 U.S. 640, 646–48 (1946); United States v. Washington, 106 F.3d 983, 1011 (D.C. Cir. 1997) (holding that Pinkerton liability is applicable to section 924(c)(1) offenses when "the use or carrying of a firearm in relation to a drug trafficking offense was done in furtherance of the conspiracy and was reasonably foreseeable to the co-conspirators"); Pattern Jury Instructions (Criminal), Fifth Circuit § 2.17 and accompanying notes (2019); United States v. Sanjar, 876 F.3d 725, 743 (5th Cir. 2017) (approving the model instruction).*

Defendant objects to this instruction as an inaccurate statement of the law, and it invades the province of the jury.

**Proposed Instruction 49**

**Multiple Conspiracies**

You must decide whether the conspiracy charged in the indictment existed, and, if it did, who at least some of its members were. If you find that the conspiracy charged did not exist, then you must return a not guilty verdict, even though you may find that some other conspiracy existed. Similarly, if you find that the defendant was not a member of the charged conspiracy, then you must find the defendant not guilty, even though the defendant may have been a member of some other conspiracy.

*Source: Pattern Crim. Jury Instrs. (Criminal Cases), Ninth Circuit (2022), 11.3.*

The Government objects as this is an inaccurate statement of the law in this District and it is confusing and misleading for a jury. Courts in the District Columbia, and other districts, have consistently held that an individual may have multiple agreements with multiple people and there is nothing inherently impossible about several conspiracies existing simultaneously.  *See United States v. Wilkerson*, 656 F. Supp. 2d 22, 33 (D.D.C. 2009); *see also United States v. Wilson*, 160 F.3d 732, 737 (D.C. Cir. 1998); *United States v. Thomas*, 525 F. Supp. 2d 17, 28 (D.D.C. 2007) (holding that a single overarching conspiracy can exist even if there is evidence that shows multiple conspiracies within the overall conspiracy).

# EXHIBIT 4

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>**v.**<br><br>**RUBEN OSEGUERA GONZALEZ,**<br>   **also known as "Menchito, "Rubencito," "Rojo,"**<br>   **"Ruso," "Junior," and "El Nino,"**<br><br><br>**Defendant.** | **CRIMINAL NO. 16-CR-229 (BAH)** |

**GOVERNMENT'S TRIAL EXHIBIT LIST**

Government: Kaitlin Sahni, Kate Naseef, Jonathan Hornok, and Lernik Begian

Defendant: Jan Edward Ronis and Anthony E. Colombo Jr.

Current as of: July 30, 2023

| Exhibit Number | Description of Exhibit | Bates No. | Marked For I.D. | Received In Evidence | Witness | Exhibits Sent into Jury (Date and Time) |
|---|---|---|---|---|---|---|
| 1 | Photogragh of Nemesio Oseguera Cervantes and the Defendant | 00072534-00072534 | | | | |
| 2 | Photograph of Nemesio Oseguera Cervates | 00072535-00072535 | | | | |
| 3 | Photograph of Julio Alberto Castillo Rodriguez | 00072752 | | | | |
| 4 | Photograph of Abigael Gonzalez Valencia | 00023508 | | | | |
| 5 | Photograph of Abigael Gonzalez Valencia and others | 00023507 | | | | |
| 6 | Photograph of Abigael Gonzalez Valencia and woman | 00023824 | | | | |
| 7 | Photograph of Abigael Gonzalez Valencia and woman 2 | 00023825 | | | | |
| 8 | Photograph of Abigael Gonzalez Valencia | 00025769 | | | | |

| Exhibit Number | Description of Exhibit | Bates No. | Marked For I.D. | Received In Evidence | Witness | Exhibits Sent into Jury (Date and Time) |
|---|---|---|---|---|---|---|
| 9 | Photograph of Abigael Gonzalez Valencia in Spain | 00002201 | | | | |
| 10 | Photograph of Abigael Gonzalez Valencia with woman 3 | 00007649 | | | | |
| 11 | Photograph of Abigael Gonzalez Valencia with woman 4 | 00007650 | | | | |
| 12 | Photograph of Abigael Gonzalez Valencia with woman 5 | 00029489 | | | | |
| 13 | Photograph of Abigael Gonzalez Valencia with woman 6 | 00029490 | | | | |
| 14 | Photograph of Abigael Gonzalez Valencia with woman 7 | 00029688 | | | | |
| 15 | Ledger: Libro 14 | 00072526 | | | | |
| 15A | Ledger: Libro 14 Translation | 00072722 | | | | |
| 16 | Ledger: Libro 16 | 00072528 | | | | |
| 16A | Ledger: Libro 16 Translation | 00072723 | | | | |
| 17 | BBM Original Discs (For ID only) | | | | | |
| 18 | Disc with 106 BBM Intercepts | | | | | |
| 19 | Demonstrative Chart of BBM PINs | 00072741-00072746 | | | | |
| 20 | BBM Wiretap Intercept Product ID 2931497 | | | | | |
| 20A | Translation of BBM Wiretap Intercept Product ID 2931497 | 00072735-00072737 | | | | |
| 21 | BBM Wiretap Intercept Product ID 2931925 | | | | | |
| 21A | Translation of BBM Wiretap Intercept Product ID 2931925 | 00072739-00072740 | | | | |
| 22 | BBM Wiretap Intercept Product ID 2931927 | | | | | |
| 22A | Translation of BBM Wiretap Intercept Product ID 2931927 | 00072567-00072569 | | | | |

| Exhibit Number | Description of Exhibit | Bates No. | Marked For I.D. | Received In Evidence | Witness | Exhibits Sent into Jury (Date and Time) |
|---|---|---|---|---|---|---|
| 23 | BBM Wiretap Intercept Product ID 3603486 | | | | | |
| 23A | Translation of BBM Wiretap Intercept Product ID 3603486 | 00072575-00072575 | | | | |
| 24 | BBM Wiretap Intercept Product ID 3049603 | | | | | |
| 24A | Translation of BBM Wiretap Intercept Product ID 3049603 | 00072623-00072623 | | | | |
| 25 | BBM Wiretap Intercept Product ID 3851466 | | | | | |
| 25A | Translation of BBM Wiretap Intercept Product ID 3851466 | 00072579 | | | | |
| 26 | BBM Wiretap Intercept Product ID 2407845 and 2407880 | | | | | |
| 26A | Translation of BBM Wiretap Intercept Product ID 2407845 and 2407880 | 00072536-00072537 | | | | |
| 27 | BBM Wiretap Intercept Product ID 2409459 and 2409460 | | | | | |
| 27A | Translation BBM Wiretap Intercept Product ID 2409459 and 2409460 | 00072538-00072539 | | | | |
| 28 | BBM Wiretap Intercept Product ID 2409463 and 2409542 | | | | | |
| 28A | Translation BBM Wiretap Intercept Product ID 2409463 and 2409542 | 00072540-00072542 | | | | |
| 29 | BBM Wiretap Intercept Product ID 4392150 | | | | | |
| 29A | Translation of BBM Wiretap Intercept Product ID 4392150 | 00072729 | | | | |
| 30 | BBM Wiretap Intercept Product ID 4392151 | | | | | |
| 30A | Translation of BBM Wiretap Intercept Product ID 4392151 | 00072730 | | | | |

| Exhibit Number | Description of Exhibit | Bates No. | Marked For I.D. | Received In Evidence | Witness | Exhibits Sent into Jury (Date and Time) |
|---|---|---|---|---|---|---|
| 31 | BBM Wiretap Intercept Product ID 4389600 | | | | | |
| 31A | Translation of BBM Wiretap Intercept Product ID 4389600 | 00072725-00072726 | | | | |
| 32 | BBM Wiretap Intercept Product ID 4392003 | | | | | |
| 32A | Translation of BBM Wiretap Intercept Product ID 4392003 | 00072727-00072728 | | | | |
| 33 | BBM Wiretap Intercept Product ID 4399395 and 4400552 | | | | | |
| 33A | Translation of BBM Wiretap Intercept Product ID 4399395 and 4400552 | 00072724 | | | | |
| 34 | BBM Wiretap Intercept Product ID 4544424 | | | | | |
| 34A | Translation of BBM Wiretap Intercept Product ID 4544424 | 00072580-00072581 | | | | |
| 35 | BBM Wiretap Intercept Product ID 4544430 and 4544434 | | | | | |
| 35A | Translation of BBM Wiretap Intercept Product ID 4544430 and 4544434 | 00072582A-00072583A | | | | |
| 36 | BBM Wiretap Intercept Product ID 2872026, 2872027, and 2872031 | | | | | |
| 36A | Translation BBM Wiretap Intercept Product ID 2872026, 2872027, and 2872031 | 00072731-00072734 | | | | |
| 37 | BBM Wiretap Intercept Product ID 2907154, 2907305, and 2907310 | | | | | |
| 37A | Translation of BBM Wiretap Intercept Product ID 2907154, 2907305, and 2907310 | 00072554-00072558, 00072636-00072637 | | | | |

| Exhibit Number | Description of Exhibit | Bates No. | Marked For I.D. | Received In Evidence | Witness | Exhibits Sent into Jury (Date and Time) |
|---|---|---|---|---|---|---|
| 38 | BBM Wiretap Intercept Product ID 2907528 and 2908041 | | | | | |
| 38A | Translation of BBM Wiretap Intercept Product ID 2907528 and 2908041 | 00072641-00072642 | | | | |
| 39 | BBM Wiretap Intercept Product ID 2908042 | | | | | |
| 39A | Translation of BBM Wiretap Intercept Product ID 2908042 | 00072643-00072646 | | | | |
| 40 | BBM Wiretap Intercept Product ID 2908044 | | | | | |
| 40A | Translation of BBM Wiretap Intercept Product ID 2908044 | 00072649-00072652 | | | | |
| 41 | BBM Wiretap Intercept Product ID 2908242 | | | | | |
| 41A | Translation of BBM Wiretap Intercept Product ID 2908242 | 00072653 | | | | |
| 42 | BBM Wiretap Intercept Product ID 2910500, 2910504, 2910508, 2916325, and 2916329 | | | | | |
| 42A | Translation of BBM Wiretap Intercept Product ID 2910500, 2910504, 2910508, 2916325, and 2916329 | 00072559-00072562, 00072609-00072611 | | | | |
| 43 | BBM Wiretap Intercept Product ID 2969200, 2969339 | | | | | |
| 43A | Translation of BBM Wiretap Intercept Product ID 2969200, 2969339 | 00072570-00072571 | | | | |
| 44 | BBM Wiretap Intercept Product ID 2907156 | | | | | |
| 44A | Translation of BBM Wiretap Intercept Product ID 2907156 | 00072633 | | | | |
| 45 | BBM Wiretap Intercept Product ID 2907304 | | | | | |

| Exhibit Number | Description of Exhibit | Bates No. | Marked For I.D. | Received In Evidence | Witness | Exhibits Sent into Jury (Date and Time) |
|---|---|---|---|---|---|---|
| 45A | Translation of BBM Wiretap Intercept Product ID 2907304 | 00072634-00072635 | | | | |
| 46 | BBM Wiretap Intercept Product ID 2907311 and 2907526 | | | | | |
| 46A | Translation of BBM Wiretap Intercept Product ID 2907311 and 2907526 | 00072639-00072640 | | | | |
| 47 | BBM Wiretap Intercept Product ID 2908043 | | | | | |
| 47A | Translation of BBM Wiretap Intercept Product ID 2908043 | 00072647-00072648 | | | | |
| 48 | BBM Wiretap Intercept Product ID 2908242 | | | | | |
| 48A | Translation of BBM Wiretap Intercept Product ID 2908242 | 00072653 | | | | |
| 49 | BBM Wiretap Intercept Product ID 2928728 | | | | | |
| 49A | Translation of BBM Wiretap Intercept Product ID 2928728 | 00072612-00072613 | | | | |
| 50 | BBM Wiretap Intercept Product ID 2936690 and 2936692 | | | | | |
| 50A | Translation of BBM Wiretap Intercept Product ID 2936690 and 2936692 | 00072614-00072615 | | | | |
| 51 | BBM Wiretap Intercept Product ID 2937151 | | | | | |
| 51A | Translation of BBM Wiretap Intercept Product ID 2937151 | 00072616-00072618 | | | | |
| 52 | BBM Wiretap Intercept Product ID 2938862 and 2938865 | | | | | |
| 52A | Translation of BBM Wiretap Intercept Product ID 2938862 and 2938865 | 00072619 | | | | |
| 53 | BBM Wiretap Intercept Product ID 2918655 | | | | | |

| Exhibit Number | Description of Exhibit | Bates No. | Marked For I.D. | Received In Evidence | Witness | Exhibits Sent into Jury (Date and Time) |
|---|---|---|---|---|---|---|
| 53A | Translation of BBM Wiretap Intercept Product ID 2918655 | 00072620-00072621 | | | | |
| 54 | BBM Wiretap Intercept Product ID 2919290 | | | | | |
| 54A | Translation of BBM Wiretap Intercept Product ID 2919290 | 00072622 | | | | |
| 55 | BBM Wiretap Intercept Product ID 3698814 | | | | | |
| 55A | Translation of BBM Wiretap Intercept Product ID 3698814 | 00072625-00072626 | | | | |
| 56 | BBM Wiretap Intercept Product ID 2407840 and 2407843 | | | | | |
| 56A | Translation of BBM Wiretap Intercept Product ID 2407840 and 2407843 | 00072536-00072537 | | | | |
| 57 | BBM Wiretap Intercept Product ID 2409543 | | | | | |
| 57A | Translation of BBM Wiretap Intercept Product ID 2409543 | 00072543 | | | | |
| 58 | BBM Wiretap Intercept Product ID 2409544 | | | | | |
| 58A | Translation of BBM Wiretap Intercept Product ID 2409544 | 00072544 | | | | |
| 59 | BBM Wiretap Intercept Product ID 2409545 | | | | | |
| 59A | Translation of BBM Wiretap Intercept Product ID 2409545 | 00072545 | | | | |
| 60 | BBM Wiretap Intercept Product ID 2410345 | | | | | |
| 60A | Translation of BBM Wiretap Intercept Product ID 2410345 | 00072546 | | | | |
| 61 | BBM Wiretap Intercept Product ID 2410345 | | | | | |

| Exhibit Number | Description of Exhibit | Bates No. | Marked For I.D. | Received In Evidence | Witness | Exhibits Sent into Jury (Date and Time) |
|---|---|---|---|---|---|---|
| 61A | Translation of BBM Wiretap Intercept Product ID 2410345 | 00072547-00072548 | | | | |
| 62 | BBM Wiretap Intercept Product ID 2898421 | | | | | |
| 62A | Translation of BBM Wiretap Intercept Product ID 2898421 | 00072549-00072553 | | | | |
| 63 | BBM Wiretap Intercept Product ID 2931928 | | | | | |
| 63A | Translation of BBM Wiretap Intercept Product ID 2931928 | 00072661 | | | | |
| 64 | BBM Wiretap Intercept Product ID 2933253 | | | | | |
| 64A | BBM Wiretap Intercept Product ID 2933253 | 00072662 | | | | |
| 65 | BBM Wiretap Intercept Product ID 2933256 | | | | | |
| 65A | Translation of BBM Wiretap Intercept Product ID 2933256 | 00072663 | | | | |
| 66 | BBM Wiretap Intercept Product ID 2980072, 2980254, 2980265, and 2980268 | | | | | |
| 66A | Translation of BBM Wiretap Intercept Product ID 2980072, 2980254, 2980265, and 2980268 | 00072774-00072775 | | | | |
| 67 | BBM Wiretap Intercept Product ID 2982540 | | | | | |
| 67A | Translation of BBM Wiretap Intercept Product ID 2982540 | 00072572 | | | | |
| 68 | BBM Wiretap Intercept Product ID 3003625 and 3003627 | | | | | |
| 68A | BBM Wiretap Intercept Product ID 3003625 and 3003627 | 00072573-00072574 | | | | |
| 69 | BBM Wiretap Intercept Product ID 3778675 | | | | | |

| Exhibit Number | Description of Exhibit | Bates No. | Marked For I.D. | Received In Evidence | Witness | Exhibits Sent into Jury (Date and Time) |
|---|---|---|---|---|---|---|
| 69A | Translation of BBM Wiretap Intercept Product ID 3778675 | 00072576 | | | | |
| 70 | BBM Wiretap Intercept Product ID 3798767 | | | | | |
| 70A | BBM Wiretap Intercept Product ID 3798767 | 00072577-00072578 | | | | |
| 71 | BBM Wiretap Intercept Product ID 3007753 | | | | | |
| 71A | Translation of BBM Wiretap Intercept Product ID 3007753 | 00072656-00072657 | | | | |
| 72 | BBM Wiretap Intercept Product ID 4544435 | | | | | |
| 72A | Translation of BBM Wiretap Intercept Product ID 4544435 | 00072584-00072585 | | | | |
| 73 | BBM Wiretap Intercept Product ID 4807727 and 4807728 | | | | | |
| 73A | Translation of BBM Wiretap Intercept Product ID 4807727 and 4807728 | 00072586A-00072588A | | | | |
| 74 | BBM Wiretap Intercept Product ID 4819889, 4820189, 4820190, 4820191, 4820649, and 4820650 | | | | | |
| 74A | Translation of BBM Wiretap Intercept Product ID 4819889, 4820189, 4820190, 4820191, 4820649, and 4820650 | 00072589A-00072594A | | | | |
| 75 | BBM Wiretap Intercept Product ID 4832118 | | | | | |
| 75A | Translation of BBM Wiretap Intercept Product ID 4832118 | 00072595-00072596 | | | | |
| 76 | BBM Wiretap Intercept Product ID 2913747 | | | | | |
| 76A | Translation of BBM Wiretap Intercept Product ID 2913747 | 00072632 | | | | |

| Exhibit Number | Description of Exhibit | Bates No. | Marked For I.D. | Received In Evidence | Witness | Exhibits Sent into Jury (Date and Time) |
|---|---|---|---|---|---|---|
| 77 | BBM Wiretap Intercept Product ID 2855016 | | | | | |
| 77A | Translation of BBM Wiretap Intercept Product ID 2855016 | 00072654 | | | | |
| 78 | BBM Wiretap Intercept Product ID 3603719 | | | | | |
| 78A | Translation of BBM Wiretap Intercept Product ID 3603719 | 00072660 | | | | |
| 79 | BBM Wiretap Intercept Product ID 3603719 | | | | | |
| 79A | Translation of BBM Wiretap Intercept Product ID 3056011 and 3056164 | 00072658-00072659 | | | | |
| 80 | BBM Wiretap Intercept Product ID 3071315 | | | | | |
| 80A | Translation of BBM Wiretap Intercept Product ID 3071315 | 00072598 | | | | |
| 81 | BBM Wiretap Intercept Product ID 3071386 | | | | | |
| 81A | Translation of BBM Wiretap Intercept Product ID 3071386 | 00072599 | | | | |
| 82 | BBM Wiretap Intercept Product ID 3071388 | | | | | |
| 82A | Translation of BBM Wiretap Intercept Product ID 3071388 | 00072600 | | | | |
| 83 | BBM Wiretap Intercept Product ID 3686682 | | | | | |
| 83A | Translation of BBM Wiretap Intercept Product ID 3686682 | 00072601 | | | | |
| 84 | BBM Wiretap Intercept Product ID 3024583 | | | | | |
| 84A | Translation of BBM Wiretap Intercept Product ID 3024583 | 00072602 | | | | |
| 85 | BBM Wiretap Intercept Product ID 3024797 | | | | | |

| Exhibit Number | Description of Exhibit | Bates No. | Marked For I.D. | Received In Evidence | Witness | Exhibits Sent into Jury (Date and Time) |
|---|---|---|---|---|---|---|
| 85A | Translation of BBM Wiretap Intercept Product ID 3024797 | 00072606-00072607 | | | | |
| 86 | BBM Wiretap Intercept Product ID 3024988 | | | | | |
| 86A | Translation of BBM Wiretap Intercept Product ID 3024988 | 00072608 | | | | |
| 87 | BBM Wiretap Intercept Product ID 3024584 | | | | | |
| 87A | Translation of BBM Wiretap Intercept Product ID 3024584 | 00072603-00072605 | | | | |
| 88 | BBM Wiretap Intercept Product ID 2710221 | | | | | |
| 88A | Translation of BBM Wiretap Intercept Product ID 2710221 | 00072627 | | | | |
| 89 | Translation of BBM Wiretap Intercept Product ID 2889766 | | | | | |
| 89A | BBM Wiretap Intercept Product ID 2889766 | 00072628-00072629 | | | | |
| 90 | BBM Wiretap Intercept Product ID 3706551 | | | | | |
| 90A | Translation of BBM Wiretap Intercept Product ID 3706551 | 00072630 | | | | |
| 91 | BBM Wiretap Intercept Product ID 2931928 | | | | | |
| 91A | Translation of BBM Wiretap Intercept Product ID 2931928 | 00072661 | | | | |
| 92 | BBM Wiretap Intercept Product ID 2933253 | | | | | |
| 92A | Translation of BBM Wiretap Intercept Product ID 2933253 | 00072662 | | | | |
| 93 | BBM Wiretap Intercept Product ID 2933256 | | | | | |
| 93A | Translation of BBM Wiretap Intercept Product ID 2933256 | 00072663 | | | | |

| Exhibit Number | Description of Exhibit | Bates No. | Marked For I.D. | Received In Evidence | Witness | Exhibits Sent into Jury (Date and Time) |
|---|---|---|---|---|---|---|
| 94 | BBM Wiretap Intercept Product ID 2918656 | | | | | |
| 94A | Translation of BBM Wiretap Intercept Product ID 2918656 | 00072563-00072564 | | | | |
| 95 | BBM Wiretap Intercept Product ID 2918667 | | | | | |
| 95A | Translation of BBM Wiretap Intercept Product ID 2918667 | 00072565-00072566 | | | | |
| 96 | BBM Wiretap Intercept Product ID 2931927 | | | | | |
| 96A | Translation of BBM Wiretap Intercept Product ID 2931927 | 00072567-00072569 | | | | |
| 97 | BBM Wiretap Intercept Product ID 5647560 | | | | | |
| 97A | Translation of BBM Wiretap Intercept Product ID 5647560 | 00072597 | | | | |
| 98 | BBM Wiretap Intercept Product ID 2931812 | | | | | |
| 98A | Translation of BBM Wiretap Intercept Product ID 2931812 | 00072738 | | | | |
| 99 | Map of Mexico and surrounding area | 00072763-00072773 | | | | |
| 100 | Photograph of Helicopter Crash site | 00064074 | | | | |
| 101 | Photograph of Helicopter Crash site | 00066444 | | | | |
| 102 | Photograph of Helicopter Crash site | 00066444 | | | | |
| 103 | Photograph of Helicopter Crash site | 00066446 | | | | |
| 104 | Photograph of Helicopter Crash site | 00066446 | | | | |
| 105 | Demonstrative Map of Helicopter Crash Area | 00072753 | | | | |
| 106 | Photograph of Truck with Mount | 00052884 | | | | |
| 107 | Photograph of Truck with Mount | 00052886 | | | | |

| Exhibit Number | Description of Exhibit | Bates No. | Marked For I.D. | Received In Evidence | Witness | Exhibits Sent into Jury (Date and Time) |
|---|---|---|---|---|---|---|
| 108 | Photograph of Truck with Mount | 00052886 | | | | |
| 109 | Photograph of Truck with Mount | 00052888 | | | | |
| 110 | Photograph of Truck with Mount | 00052888 | | | | |
| 111 | Photograph of Browning | 00053176 | | | | |
| 112 | Photograph of Browning | 00053176 | | | | |
| 113 | Photograph of Browning | 00053178 | | | | |
| 114 | Photograph of Browning | 00053178 | | | | |
| 115 | Photograph of Browning | 00053180 | | | | |
| 116 | Photograph of Browning | 00053180 | | | | |
| 117 | Photograph of Browning | 00053182 | | | | |
| 118 | Photograph of Browning | 00053182 | | | | |
| 119 | Photograph of Browning | 00053184 | | | | |
| 120 | Photograph of Browning | 00053184 | | | | |
| 121 | Photograph of Browning | 00053186 | | | | |
| 122 | Photograph of Browning | 00053186 | | | | |
| 123 | Photograph of Browning | 00053188 | | | | |
| 124 | Photograph of Browning | 00053188 | | | | |
| 125 | Photograph of Browning | 00053190 | | | | |
| 126 | Photograph of Browning | 00053190 | | | | |
| 127 | Photograph of Browning | 00053192 | | | | |
| 128 | Photograph of CJNG 79 Weapon | 00053450 | | | | |
| 129 | Photograph of CJNG 79 Weapon | 00053450 | | | | |
| 130 | Photograph of CJNG 79 Weapon | 00053452 | | | | |
| 131 | Photograph of CJNG 79 Weapon | 00053452 | | | | |
| 132 | Photograph of CJNG 79 Weapon | 00053454 | | | | |
| 133 | Photograph of CJNG 79 Weapon | 00053454 | | | | |
| 134 | Photograph of Truck with Mount | 00053456 | | | | |
| 135 | Photograph of RPG with Persians Letters | 00056204 | | | | |
| 136 | Photograph of RPG with Persians Letters | 00056204 | | | | |

90

| Exhibit Number | Description of Exhibit | Bates No. | Marked For I.D. | Received In Evidence | Witness | Exhibits Sent into Jury (Date and Time) |
|---|---|---|---|---|---|---|
| 137 | Photograph of RPG with Persians Letters | 00056206 | | | | |
| 138 | Photograph of RPG with Persians Letters | 00056206 | | | | |
| 139 | Photograph of RPG with Persians Letters | 00056208 | | | | |
| 140 | Photograph of Pistol & Bullets | 00053428 | | | | |
| 141 | Photograph of Pistol & Bullets | 00053428 | | | | |
| 142 | Photograph of Pistol & Bullets | 00053430 | | | | |
| 143 | Photograph of Pistol & Bullets | 00053430 | | | | |
| 144 | Photograph of Pistol & Bullets | 00053432 | | | | |
| 145 | Photograph of Pistol & Bullets | 00053432 | | | | |
| 146 | Photograph of Pistol & Bullets | 00053434 | | | | |
| 147 | Photograph of Pistol & Bullets | 00053434 | | | | |
| 148 | Photograph of Pistol & Bullets | 00053436 | | | | |
| 149 | Photograph of Pistol & Bullets | 00053436 | | | | |
| 150 | Photograph of Pistol & Bullets | 00053438 | | | | |
| 151 | Photograph of Pistol & Bullets | 00053438 | | | | |
| 152 | Photograph of Pistol & Bullets | 00053440 | | | | |
| 153 | Photograph of Pistol & Bullets | 00053440 | | | | |
| 154 | Photograph of Bullets & Rockets | 00053014 | | | | |
| 155 | Photograph of Bullets & Rockets | 00053014 | | | | |
| 156 | Photograph of Bullets & Rockets | 00053016 | | | | |
| 157 | Photograph of Bullets & Rockets | 00053016 | | | | |

| Exhibit Number | Description of Exhibit | Bates No. | Marked For I.D. | Received In Evidence | Witness | Exhibits Sent into Jury (Date and Time) |
|---|---|---|---|---|---|---|
| 158 | Photograph of Bullets & Rockets | 00053018 | | | | |
| 159 | Photograph of Bullets & Rockets | 00053018 | | | | |
| 160 | Photograph of Bullets & Rockets | 00053020 | | | | |
| 161 | Photograph of Bullets & Rockets | 00053020 | | | | |
| 162 | Photograph of Bullets & Rockets | 00053022 | | | | |
| 163 | Photograph of Bullets & Rockets | 00053022 | | | | |
| 164 | Photograph of Bullets & Rockets | 00053024 | | | | |
| 165 | Photograph of Bullets & Rockets | 00053024 | | | | |
| 166 | Photograph of Bullets & Rockets | 00053026 | | | | |
| 167 | Photograph of Bullets & Rockets | 00053026 | | | | |
| 168 | Photograph of Bullets & Rockets | 00053028 | | | | |
| 169 | Photograph of Bullets & Rockets | 00053028 | | | | |
| 170 | Photograph of Bullets & Rockets | 00053030 | | | | |
| 171 | Photograph of Bullets & Rockets | 00053030 | | | | |
| 172 | Photograph of Bullets & Rockets | 00053032 | | | | |
| 173 | Photograph of Bullets & Rockets | 00053032 | | | | |
| 174 | Photograph of Bagging Bullet | 00053098 | | | | |
| 175 | Redacted Photograph of Deceased Gunman #1 | 00053212 | | | | |
| 176 | Photograph of Belt Buckle | 00053216 | | | | |
| 177 | Photograph of Automatic Rifle | 00053218 | | | | |
| 178 | Photograph of Automatic Rifle | 00053218 | | | | |
| 179 | Photograph of Automatic Rifle | 00053220 | | | | |

| Exhibit Number | Description of Exhibit | Bates No. | Marked For I.D. | Received In Evidence | Witness | Exhibits Sent into Jury (Date and Time) |
|---|---|---|---|---|---|---|
| 180 | Photograph of Automatic Rifle | 00053220 | | | | |
| 181 | Photograph of Automatic Rifle | 00053222 | | | | |
| 182 | Photograph of Automatic Rifle | 00053222 | | | | |
| 183 | Photograph of Ammunition and Magazine | 00053224 | | | | |
| 184 | Photograph of Ammunition and Magazine | 00053224 | | | | |
| 185 | Redacted Photograph of Deceased Gunman #2 | 00053236 | | | | |
| 186 | Photograph of Assault Rifle | 00053246 | | | | |
| 187 | Photograph of Assault Rifle | 00053246 | | | | |
| 188 | Photograph of Assault Rifle | 00053248 | | | | |
| 189 | Photograph of Assault Rifle | 00053248 | | | | |
| 190 | Photograph of Assault Rifle | 00053250 | | | | |
| 191 | Photograph of Assault Rifle | 00053250 | | | | |
| 192 | Photograph of Ammunition and Magazine | 00053252 | | | | |
| 193 | Redacted Photograph of Deceased Gunman #3 | 00053266 | | | | |
| 194 | Photograph of Handgun | 00053268 | | | | |
| 195 | Redacted Photograph of Deceased Gunman #3 | 00053268 | | | | |
| 196 | Photograph of Assault Rifle | 00053270 | | | | |
| 197 | Photograph of Assault Rifle | 00053270 | | | | |
| 198 | Photograph of Assault Rifle | 00053272 | | | | |
| 199 | Photograph of Assault Rifle | 00053272 | | | | |
| 200 | Photograph of Assault Rifle | 00053274 | | | | |
| 201 | Photograph of Assault Rifle | 00053274 | | | | |
| 202 | Photograph of Assault Rifle | 00053276 | | | | |
| 203 | Photograph of Assault Rifle | 00053276 | | | | |
| 204 | Photograph of Assault Rifle | 00053278 | | | | |
| 205 | Photograph of Ammunition and Magazine | 00053278 | | | | |
| 206 | Photograph of Handgun | 00053280 | | | | |
| 207 | Photograph of Handgun | 00053280 | | | | |
| 208 | Photograph of Handgun | 00053282 | | | | |
| 209 | Photograph of Handgun | 00053282 | | | | |
| 210 | Photograph of Handgun | 00053284 | | | | |
| 211 | Photograph of Handgun | 00053284 | | | | |

| Exhibit Number | Description of Exhibit | Bates No. | Marked For I.D. | Received In Evidence | Witness | Exhibits Sent into Jury (Date and Time) |
|---|---|---|---|---|---|---|
| 212 | Photograph of Tactical Vest | 00053286 | | | | |
| 213 | Redacted Photograph of Deceased Gunman #3 | 00053286 | | | | |
| 214 | Photograph of CJNG Belt Buckle | 00053288 | | | | |
| 215 | Redacted Photograph of Deceased Gunman #4 | 00053304 | | | | |
| 216 | Photograph of CJNG Rifle | 00053306 | | | | |
| 217 | Photograph of CJNG Rifle | 00053308 | | | | |
| 218 | Photograph of Ammunition and Magazine | 00053308 | | | | |
| 219 | Photograph of Assault Rifle | 00053320 | | | | |
| 220 | Photograph of Assault Rifle | 00053324 | | | | |
| 221 | Photograph of Assault Rifle | 00053324 | | | | |
| 222 | Photograph of Assault Rifle | 00053326 | | | | |
| 223 | Photograph of Assault Rifle | 00053326 | | | | |
| 224 | Photograph of Assault Rifle | 00053328 | | | | |
| 225 | Photograph of Assault Rifle | 00053328 | | | | |
| 226 | Photograph of Assault Rifle | 00053330 | | | | |
| 227 | Photograph of Assault Rifle | 00053330 | | | | |
| 228 | Photograph of Ammunition and Magazine | 00053332 | | | | |
| 229 | Photograph of Handgun | 00053332 | | | | |
| 230 | Photograph of Handgun | 00053334 | | | | |
| 231 | Photograph of Handgun | 00053334 | | | | |
| 232 | Photograph of Handgun | 00053336 | | | | |
| 233 | Photograph of Handgun | 00053336 | | | | |
| 234 | Photograph of Handgun | 00053338 | | | | |
| 235 | Redacted Photograph of Deceased Gunman #6 | 00053354 | | | | |
| 236 | Redacted Photograph of Deceased Gunman #6 | 00053358 | | | | |
| 237 | Photograph of Rifle | 00053358 | | | | |
| 238 | Photograph of Rifle | 00053360 | | | | |
| 239 | Photograph of Rifle | 00053360 | | | | |
| 240 | Photograph of Rifle | 00053362 | | | | |
| 241 | Photograph of Ammunition | 00053362 | | | | |
| 242 | Redacted Photograph of Deceased Gunman #7 | 00053372 | | | | |
| 243 | Photograph of CJNG Hat | 00053382 | | | | |
| 244 | Photograph of CJNG Hat | 00053382 | | | | |
| 245 | Photograph of Rifle | 00053384 | | | | |

| Exhibit Number | Description of Exhibit | Bates No. | Marked For I.D. | Received In Evidence | Witness | Exhibits Sent into Jury (Date and Time) |
|---|---|---|---|---|---|---|
| 246 | Photograph of Rifle | 00053384 | | | | |
| 247 | Photograph of Rifle | 00053386 | | | | |
| 248 | Photograph of Rifle | 00053386 | | | | |
| 249 | Photograph of Rifle | 00053388 | | | | |
| 250 | Photograph of Rifle | 00053388 | | | | |
| 251 | Photograph of Bagged Ammunition | 00053390 | | | | |
| 252 | Photograph of Bagged Ammunition | 00053390 | | | | |
| 253 | Photograph of Tactical Vest | 00053392 | | | | |
| 254 | Photograph of Deceased Gunman #8 | 00053398 | | | | |
| 255 | Photograph of Deceased Gunman #8 | 00053398 | | | | |
| 256 | Photograph of Rifle | 00053404 | | | | |
| 257 | Photograph of Handgun and Holster | 00053404 | | | | |
| 258 | Photograph of Rifle | 00053406 | | | | |
| 259 | Photograph of Rifle | 00053408 | | | | |
| 260 | Photograph of Rifle | 00053408 | | | | |
| 261 | Photograph of CJNG Logo Rifle | 00053410 | | | | |
| 262 | Photograph of CJNG Logo Rifle | 00053410 | | | | |
| 263 | Photograph of Ammunition | 00053412 | | | | |
| 264 | Photograph of Handgun | 00053412 | | | | |
| 265 | Photograph of Handgun | 00053414 | | | | |
| 266 | Photograph of Handgun | 00053414 | | | | |
| 267 | Photograph of Handgun | 00053416 | | | | |
| 168 | Photograph of Handgun | 00053416 | | | | |
| 269 | Photograph of Deceased Gunman #9 and Rifle | 00053754 | | | | |
| 270 | Photograph of Rifle | 00053754 | | | | |
| 271 | Photograph of Deceased Gunman #9 and Rifle | 00053756 | | | | |
| 272 | Photograph of Tactical Vest | 00053756 | | | | |
| 273 | Photograph of Tactical Vest | 00053758 | | | | |
| 274 | Photograph of Tactical Vest | 00053758 | | | | |
| 275 | Photograph of Magazines | 00053760 | | | | |
| 276 | Photograph of Deceased Gunman #9 and Rifle | 00053760 | | | | |

| Exhibit Number | Description of Exhibit | Bates No. | Marked For I.D. | Received In Evidence | Witness | Exhibits Sent into Jury (Date and Time) |
|---|---|---|---|---|---|---|
| 277 | Photograph of Deceased Gunman #9 and Tactical Vest | 00053762 | | | | |
| 278 | Photograph of Tactical Vest | 00053762 | | | | |
| 279 | Photograph of Tactical Vest | 00053764 | | | | |
| 280 | Photograph of Magazines | 00053764 | | | | |
| 281 | Photograph of Deceased Gunman #9 | 00053766 | | | | |
| 282 | Photograph of Ammunition Cartridge | 00053766 | | | | |
| 283 | Photograph of Ammunition Cartridge | 00053768 | | | | |
| 284 | Photograph of Deceased Gunman #9 | 00053768 | | | | |
| 285 | Photograph of Deceased Gunman #9 and Weapon | 00053770 | | | | |
| 286 | Photograph of Deceased Gunman #9 | 00053770 | | | | |
| 287 | Photograph of Ammunition | 00053772 | | | | |
| 288 | Photograph of Ammunition Cartridge | 00053772 | | | | |
| 289 | Photograph of Convoy Vehicles | 00055426 | | | | |
| 290 | Photograph of Convoy Vehicles | 00055426 | | | | |
| 291 | Photograph of Convoy Vehicles | 00055428 | | | | |
| 292 | Photograph of Convoy Vehicles | 00055428 | | | | |
| 293 | Photograph of Convoy Vehicles | 00055430 | | | | |
| 294 | Photograph of Convoy Vehicles | 00055430 | | | | |
| 295 | Photograph of Truck with Mount | 00055516 | | | | |
| 296 | Photograph of Truck with Mount | 00055516 | | | | |
| 297 | Photograph of Truck with Mount | 00055518 | | | | |
| 298 | Photograph of Truck with Mount | 00055518 | | | | |
| 299 | Photograph Damaged Vehicle from Convoy | 00056404 | | | | |

| Exhibit Number | Description of Exhibit | Bates No. | Marked For I.D. | Received In Evidence | Witness | Exhibits Sent into Jury (Date and Time) |
|---|---|---|---|---|---|---|
| 300 | Photograph Damaged Vehicle from Convoy | 00056404 | | | | |
| 301 | Photograph Damaged Vehicle from Convoy | 00056408 | | | | |
| 302 | Photograph Damaged Vehicle from Convoy | 00056408 | | | | |
| 303 | Photograph of JR Belt & Watches | 00056518 | | | | |
| 304 | Photograph of JR Belt | 00056518 | | | | |
| 305 | Photograph of JR Belt | 00056520 | | | | |
| 306 | Photograph of JR Belt & Watches | 00056520 | | | | |
| 307 | Photograph of JR Belt | 00056522 | | | | |
| 308 | Photograph of JR Watches | 00056522 | | | | |
| 309 | Photograph of Watch | 00056524 | | | | |
| 310 | Photograph of Watch | 00056524 | | | | |
| 311 | Photograph of Watch | 00056526 | | | | |
| 312 | Photograph of Watch | 00056526 | | | | |
| 313 | Photograph of Watch | 00056528 | | | | |
| 314 | Photograph of Watch | 00056528 | | | | |
| 315 | Photograph of Watch | 00056530 | | | | |
| 316 | Photograph of Watch | 00056530 | | | | |
| 317 | Photograph of Watch | 00056532 | | | | |
| 318 | Photograph of Watch | 00056532 | | | | |
| 319 | Photograph of Watch | 00056534 | | | | |
| 320 | Photograph of Watch | 00056534 | | | | |
| 321 | Photograph of Belt | 00056536 | | | | |
| 322 | Photograph of Belt Buckle | 00056536 | | | | |
| 323 | Photograph of Belt Buckle | 00056538 | | | | |
| 324 | Photograph of Belt | 00056538 | | | | |
| 325 | Photograph of Bullets in vehicle | 00056236 | | | | |
| 326 | Photograph of Bullets in vehicle | 00056236 | | | | |
| 327 | Photograph of Bullets in vehicle | 00056238 | | | | |
| 328 | Photograph of Bullets in vehicle | 00056238 | | | | |
| 329 | Photograph of Bullets in vehicle | 00056240 | | | | |
| 330 | Photograph of Bullets in vehicle | 00056240 | | | | |

| Exhibit Number | Description of Exhibit | Bates No. | Marked For I.D. | Received In Evidence | Witness | Exhibits Sent into Jury (Date and Time) |
|---|---|---|---|---|---|---|
| 331 | Photograph of Bullets in vehicle | 00056242 | | | | |
| 332 | Photograph of Bullets in vehicle | 00056242 | | | | |
| 333 | Photograph of Bullets in vehicle | 00056244 | | | | |
| 334 | Photograph of Bullets in vehicle | 00056244 | | | | |
| 335 | Photograph of Bullets in vehicle | 00056246 | | | | |
| 336 | Photograph of Bullets in vehicle | 00056246 | | | | |
| 337 | Photograph of Bullets in vehicle | 00056248 | | | | |
| 338 | Photograph of Bullets in vehicle | 00056248 | | | | |
| 339 | Photograph of Bullets in vehicle | 00056250 | | | | |
| 340 | Photograph of Bullets in vehicle | 00056250 | | | | |
| 341 | Photograph of Shoulder-fired launcher | 00056032 | | | | |
| 342 | Photograph of Shoulder-fired launcher instructions | 00056058 | | | | |
| 343 | Photograph of Bullets | 00056058 | | | | |
| 344 | Photograph of 50-caliber rifle | 00056034 | | | | |
| 345 | Photograph of 50-caliber rifle closeup | 00056064 | | | | |
| 346 | Photograph of 50-caliber rifle closeup | 00056064 | | | | |
| 347 | Photograph of 38 super automatic | 00056046 | | | | |
| 348 | Photograph of 38 super automatic closeup | 00056046 | | | | |
| 349 | Photograph of 38 super automatic #2 | 00056078 | | | | |
| 350 | Photograph of 38 super automatic #2 closeup | 00056078 | | | | |
| 351 | Photograph of Grenade | 00056440 | | | | |
| 352 | Photograph of Grenade closeup | 00056440 | | | | |

| Exhibit Number | Description of Exhibit | Bates No. | Marked For I.D. | Received In Evidence | Witness | Exhibits Sent into Jury (Date and Time) |
|---|---|---|---|---|---|---|
| 353 | Photograph of CJNG launcher | 00056464 | | | | |
| 354 | Photograph of CJNG launcher | 00056460 | | | | |
| 355 | Photograph of CJNG launcher | 00056460 | | | | |
| 356 | Photograph of CJNG launcher | 00056504 | | | | |
| 357 | Photograph of CJNG launcher | 00056504 | | | | |
| 358 | Photograph of RPG | 00056048 | | | | |
| 359 | Photograph of RPG | 00056048 | | | | |
| 360 | Photograph of Radios | 00056102 | | | | |
| 361 | Photograph of Radios | 00056102 | | | | |
| 362 | Photograph of CJNG Jerseys | 00055576 | | | | |
| 363 | Photograph of CJNG Jerseys | 00055576 | | | | |
| 364 | Photograph of Special Forces Hat | 00056212 | | | | |
| 365 | Photograph of Special Forces Hat | 00056212 | | | | |
| 366 | Photograph of Helicopter Before | 00064074 | | | | |
| 367 | Photographs of Weapons from Defendant's Arrest | 00072531-00072532 | | | | |
| 368 | Maps and Street View photos of area of Defendant's Arrest | 00072747-00072751 | | | | |
| 369 | Statement of Facts | 00050470-00050476 | | | | |
| 370 | Videos of Rule 15 Deposition | 00050477-00050479 | | | | |
| | | | | | | |

# EXHIBIT 5

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) ) ) |
| v. | ) ) CRIMINAL NO.: 1:16-CR-229 ) |
| RUBEN OSEGUERA-GONZALEZ, also known as "Menchito," "Rubencito," "Rojo," "Ruso," "Junior," and "El Nino," | ) ) ) ) ) ) |
| Defendant. | ) ) ) |

## **STIPULATIONS**

The United States of America, and defendant, RUBEN OSEGUERA GONZALEZ, by and through their respective attorneys, hereby agree and stipulate to the following:

1.  The following government exhibits are authentic under Rule 902 of the Federal Rules of Evidence and their contents are fair, accurate, and unaltered representations of the original records and information. The chain of custody for these exhibits and information is not contested:

    a.  Government Exhibits 4-14 (Photographs intercepted in BBM communications),

    b.  Government Exhibits 17-18 (Discs containing intercepted BBM communications),

    c.  Government Exhibits 20-98 (Intercepted BBM communications), and

    d.  Government Exhibit 99 (Maps of Mexico and surrounding area).

2.  Government Exhibits 15A-16A and 20A-98A are authentic and accurate English translations of the original Spanish communications and documents.

101

3.  The substance methamphetamine, as referenced in Count One of the Superseding Indictment, is a Schedule II controlled substance.

4.  The substance cocaine, as referenced in Count One of the Superseding Indictment, is a Schedule II controlled substance.

5.  One thousand grams equals 1 kilogram.

6.  One kilogram is equal to about 2.2 pounds.

7.  One thousand kilograms is equal to 1 metric ton and about 1.1 U.S. ton.

8.  In the event that the defendant is convicted of Count One of the Superseding Indictment, the parties agree that the Court—not the jury—should make all legal and factual determinations regarding the forfeiture allegations in the Superseding Indictment.

IT IS SO STIPULATED.

Marlon Cobar, Chief
Narcotic and Dangerous Drug Section
Criminal Division
U.S. Department of Justice

By: _____

_____
Law Offices of Anthony E. Colombo Jr.
Anthony E. Colombo Jr.
Counsel for Defendant

105 West F Street, Third Floor
San Diego, CA 92101
anthonycolombolegal@gmail.com
619-236-1704

Law Offices of Ronis & Ronis
Jan Edward Ronis
Counsel for Defendant

105 West F Street Third Floor
San Diego, CA 92101-6036
jan@ronisandronis.com
619-236-8344

_____
Jonathan Hornok
Kaitlin Sahni
Kate Naseef
Trial Attorneys
Narcotic and Dangerous Drug Section
Criminal Division,
United States Department of Justice
Washington, D.C. 20530
Tel: 202-514-0917

_____
Ruben Oseguera Gonzalez
Defendant

# EXHIBIT 6

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA | )   Criminal No.: 16-CR-229 (BAH) |
| | ) |
| v. | ) |
| | ) |
| RUBEN OSEGUERA-GONZALEZ, | ) |
| also known as "Menchito," | ) |
| "Rubencito," "Rojo," "Ruso," | ) |
| "Junior," and "El Nino," | ) |
| | ) |
| Defendant. | |

**PROPOSED VERDICT FORM**

1.  **COUNT ONE: Conspiracy to Distribute a Controlled Substance Intending or Knowing that Such Substance Would be Unlawfully Imported into the United States, 21 U.S.C. §§ 959(a), 960(b)(1)(B), 960(b)(1)(H), and 963.**

    With respect to the charge of conspiracy to distribute cocaine and methamphetamine, intending or knowing that the controlled substances would be imported into the United States, we, the jury, unanimously find the Defendant, Ruben Oseguera Gonzalez:

    NOT GUILTY _____          GUILTY _____

    Amount of Cocaine

    If you found the Defendant guilty of conspiracy to distribute cocaine, then you must indicate the amount of cocaine for which the Defendant was responsible, or which the Defendant knew or reasonably could have foreseen would be distributed by the conspiracy, intending or knowing that it would be imported into the United States. This finding must also be unanimous.

    _____          5 kilograms or more of cocaine

    _____          500 grams or more but less than 5 kilograms of cocaine

    _____          An amount of cocaine less than 500 grams

<u>Amount of Methamphetamine</u>

If you found the Defendant guilty of conspiracy to distribute methamphetamine, then you must indicate the amount of methamphetamine for which the Defendant was responsible, or which the Defendant knew or reasonably could have foreseen would be distributed by the conspiracy, intending or knowing that it would be imported into the United States. This finding must also be unanimous.

_____   500 grams or more of methamphetamine

_____   50 grams or more but less than 500 grams of methamphetamine

_____   An amount of methamphetamine less than 50 grams


If you find the Defendant, Ruben Oseguera Gonzalez not guilty of Count One, then you must find him not guilty of Count Two.


2.   **<u>COUNT TWO</u>: Use or Carry of a Firearm During and in Relation to a Drug Trafficking Crime and Possession of a Firearm in Furtherance of a Drug Trafficking Crime, 18 U.S.C. §§ 924(c)(1)(A)(i), 924(c)(1)(A)(ii), and 924(c)(1)(B)(ii).**

With respect to the offense of use or carry of a firearm during and in relation to a drug trafficking crime or possession of a firearm in furtherance of a drug trafficking crime, we, the jury, unanimously find the Defendant, Ruben Oseguera Gonzalez:


NOT GUILTY _____          GUILTY _____


If you found the Defendant guilty of Count Two, then you must indicate whether a firearm involved in the offense was brandished during and in relation to the drug conspiracy charged in Count Two.  This finding must also be unanimous.

_____   Not brandished

_____   Brandished


106

If you found the Defendant guilty of Count Two, then you must indicate whether at least one firearm involved in the offense was a destructive device.  This finding must also be unanimous.

_____          No firearm was a destructive device

_____          One or more firearms was a destructive device


Foreperson _____          Date _____

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal No.: 16-CR-229 (BAH) |
| | ) | |
| v. | ) | |
| | ) | |
| RUBEN OSEGUERA-GONZALEZ, | ) | |
| also known as "Menchito," | ) | |
| "Rubencito," "Rojo," "Ruso," | ) | |
| "Junior," and "El Nino," | ) | |
| | ) | |
| Defendant. | | |

**<u>FORFEITURE FINDING OF THE JURY</u>**

As to the forfeiture allegation of the Superseding Indictment, we, the jury, find by a preponderance of the evidence that as the result of committing the offense in Count One of the Superseding Indictment, the Defendant, Ruben Oseguera Gonzalez, shall forfeit to the United States the following sum of money in United States currency and all interest and proceeds traceable thereto, representing the amount of proceeds obtained by the Defendant as a result of his commission of the offense in Count One, for which he is personally liable:

_____
($0.00 to [MAX])

This is the unanimous verdict of the jury with respect to the forfeiture allegation of the Superseding Indictment.

Foreperson _____          Date _____

108