UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.   )<br>)<br>RUBEN OSEGUERA-GONZALEZ, )<br>   also known as "Menchito," )<br>   "Rubencito," "Rojo," "Ruso," )<br>   "Junior," and "El Nino," )<br>)<br>)<br>                  Defendant. ) | Criminal No.: 16-CR-229 (BAH) |

**GOVERNMENT'S REPLY IN SUPPORT OF ITS
MOTION *IN LIMINE* TO ADMIT SIGNED STATEMENT OF FACTS**

    The United States respectfully submits this reply to highlight two points in its motion *in limine*. The Government filed its Motion *in Limine* to Admit Signed Statement of Facts on July 8, 2024. *See* Dkt. Nos. ███, 146. The Defendant responded on July 19, 2024. *See* Dkt. No. 148. In his response, the Defendant first argues that the Federal Rule of Criminal Procedure ("FRCP") 11(f) and the Federal Rule of Evidence ("FRE") 410 are broad enough to encompass the statement of facts in this case; however, he relies on an outdated provision, leaving the specific circumstances of this case unaddressed. Second, the Defendant challenges the clarity of the Plea Agreement by focusing on one sentence, but he ignores other provisions that clearly state the consequences of a breach. The Defendant also does not dispute that he voluntarily adopted the statement and reviewed the breach provisions at issue with his attorney. Therefore, and for the reasons stated in Government's motion *in limine*, the Court should admit the statement of facts for all purposes.

**ARGUMENT**

A.   **Defendant's Interpretation of the Rules at Issue Is Overly Broad.**

In its motion *in limine*, the Government argued that FRCP 11(f) and FRE 410 do not apply to the statement of facts at issue because the Defendant adopted it after plea negotiations ended; the statement was therefore not made "*during* plea discussions." Fed. R. Evid. 410 (emphasis added); *see also* Dkt. No. 146, at 8-12.

The Defendant responds that the statement falls under the "any related statement" category of FRCP 11(f) and thus comes within "the scope of the plea discussions and negotiations." *See* Dkt. No. 148, at 4-6. But FRCP 11(f) subjects all such statements to FRE 410, which excludes only statements made "during plea discussions." *See* Fed. R. Crim. P. 11(f) (stating admissibility of "any related statement is governed by Federal Rule of Evidence 410"). Defendant's response misses that distinction and does not address the specific circumstances of this case. Not only did he sign the statement after negotiations ended, but he also sent it to the Court a week in advance of the change-of-plea hearing. Given these specific circumstances, the statement was neither made "*during* plea discussions" or "*with* the prosecuting authority" under FRE 410(a)(4), nor "during a proceeding" under FRE 410(a)(3). *See, e.g.*, *United States v. Davis*, 617 F.2d 677, 684 (D.C. Cir. 1979) (noting FRCP 11's "during proceeding" provision covered "statements made in conjunction with a plea of guilty. . . in open court" such as "defendant's responses to" the court's questions).

The Government also cited *Davis* to support its FRE 410 analysis. There, the D.C. Circuit focused on the *timing* of the grand jury testimony, which "followed all negotiations," and noted: "Excluding testimony made after and pursuant to the agreement would not serve the purpose of encouraging compromise." 617 F.2d at 685. The form of the statement at issue in *Davis*, i.e., the

2

grand jury testimony, was not dispositive to the analysis: "We are not saying that grand jury testimony is admissible in every case in which a defendant renounces his plea bargain, regardless of the circumstances." *Id.* at 686. Rather, the "heart of" the inquiry was whether the testimony was "made 'in connection with' a guilty plea," referring to the then-applicable FRCP 11(e)(6) provision, which has since been amended and narrowed to statements made "during plea discussions." *Id.* (citation omitted); *see also* Dkt. No. 146, at 9 n.8 (noting FRCP 11(e)(6) offered broader protections compared to existing FRE 410 language). In short, the D.C. Circuit in *Davis* admitted the testimony given its timing, noting its exclusion would not serve FRCP 11(e)(6)'s purposes.

The Defendant distinguishes *Davis* from this case because "[h]ere, unlike the grand jury testimony in *Davis*, the statement was 'made in connection with' the plea agreement." Dkt. No. 148, at 4. But the provision the Defendant quotes was amended to "during plea discussions" in 1979. Dkt. No. 146, at 9 n.8 (noting that since *Davis*, both FRCP 11 and FRE 410 have been amended to cover only statements made "during plea discussions"). He also does not address the specific circumstances of this case, nor does he dispute that the statement was voluntary.

Lastly, admitting the statement of facts in this case will not hamper plea negotiations, as the Defendant claims. Dkt. No. 148, at 4. At most, admitting the statement would encourage defendants to sign plea documents during change-of-plea hearings.[1]

For the reasons stated in Government's motion *in limine*, the statement is therefore admissible—under either a strictly textual or a purpose-oriented interpretation of FRE 410. *See*

---

[1] Moreover, defendants would still be able to submit final but partly unexecuted plea documents to courts in advance to assist courts with change-of-plea preparations. The posture of this case limits its implications for other cases.

Dkt. No. 146, at 11-12 (quoting *Davis* and noting the "most significant factor" behind the rules at issue, i.e., "free and open discussion . . . during attempts to reach a compromise").

    **B.**    **The Defendant Ignores Key Plea Agreement Provisions.**

In its motion *in limine*, the Government also argued in the alternative that the Defendant waived his FRCP 11(f) and FRE 410 rights by entering the Plea Agreement and triggered the waiver therein by breaching the agreement. Dkt. No. 146, at 12-18. In response, the Defendant claims he did not know he could face consequences by breaching the agreement before pleading guilty. Dkt. No. 146, at 8 (arguing that his quoted sentence limits admissibility to post-guilty-plea statements because it only mentions statements "made in the course of his guilty plea").

But the Defendant ignores key provisions of the agreement, including his first obligation under the Plea Agreement, i.e., "to plead guilty to the Superseding Information." Dkt. No. 146-2, at 1. In fact, the Defendant concedes that "the Plea Agreement negotiated between the parties *requires* the defendant to enter a plea of guilty"—yet he argues the agreement was nonbinding before a guilty plea. Dkt. No. 148, at 7 (emphasis added). A requirement to plead guilty would have been entirely redundant if the agreement took effect only after a guilty plea.

The Defendant also overlooks the following unequivocal sentence in the agreement:



---

[2] The ███████████████████████ phrase signifies that signing the Plea Agreement alone would entail consequences. Other provisions in the agreement also show its binding effect at signing. For instance, the Plea Agreement provides that "[t]he Defendant acknowledges and *will reaffirm at the time of the plea of guilty* the truth of the facts set forth in the Statement of Facts signed by him." Dkt. No. 146-2, at 1 (emphasis added); *see also id.* at 3 (discussing "conduct following the signing of this Plea Agreement," in the context of demonstrating acceptance of

4



The Defendant does not deny that he discussed the above provisions with his counsel—nor that he voluntarily signed the agreement ▇▇▇ thereby waiving his rights at issue. ▇▇▇

Instead, the Defendant selectively quotes a sentence which *further* explains the consequences of a breach as to a subset of covered statements and seeks to penalize the Government for *emphasizing* specific consequences after mentioning all consequences. *See* Dkt. No. 148, at 8; *see also* ▇▇▇. The sentence the Defendant quotes, however, does not narrow the unequivocal language preceding it—stating that in case of a breach, Defendant's statements, ▇▇▇ would be used against him.[3] The Plea Agreement was clear on the matter. The statement of facts is admissible for all purposes.

I. CONCLUSION

For the foregoing reasons, the Court should admit the statement of facts for all purposes.

Respectfully submitted this 29th day of July 2024.

---

responsibility); *id.* at 4 (discussing "conduct after the date of this Plea Agreement" and "post-agreement" in the context of base offense level calculation).

[3] The Defendant also cites to Paragraph 6 of the Plea Agreement to argue that the waiver ▇▇▇ was contingent on his guilty plea. Dkt. No. 148, at 7. But Paragraph 6 contains the standard trial rights waivers in case of a guilty plea—not waiver of the statutory provisions at issue. ▇▇▇, not Paragraph 6 of the Plea Agreement, is key to the analysis here, and as the Defendant puts it, the latter does not "modify" the former. Dkt. No. 148, at 8.

|  |  |
|---|---|
|  | MARLON COBAR, Chief<br>Narcotic and Dangerous Drug Section<br>Criminal Division<br>United States Department of Justice |
| By: | /s/ *Lernik Begian*<br>Lernik Begian, Trial Attorney<br>Kaitlin Sahni, Acting Deputy Chief<br>Jonathan Hornok, Trial Attorney<br>Kate Naseef, Trial Attorney<br>United States Department of Justice<br>Narcotic and Dangerous Drug Section<br>145 N Street, Northeast<br>East Wing, Second Floor<br>Washington, D.C. 20530<br>Lernik.Begian@usdoj.gov<br>(202) 514-0917 |

## **CERTIFICATE OF SERVICE**

    I hereby certify that a copy of the foregoing was sent via ECF, to counsel of record for the Defendant, on July 29, 2024.

                                By:    /s/ *Lernik Begian*     .
                                          Lernik Begian
                                          Trial Attorney
                                          Narcotic and Dangerous Drug Section
                                          U.S. Department of Justice