**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>RUBEN OSEGUERA-GONZALEZ,<br><br>Defendant. | Criminal Action No. 16-229 (BAH)<br><br>Judge Beryl A. Howell<br><br>**<u>UNDER SEAL</u>** |

**<u>MEMORANDUM OPINION</u>**

As part of a long-term investigation into the drug trafficking activities of the Cártel de Jalisco Nueva Generación ("CJNG"), a large and violent drug trafficking organization based in Jalisco, Mexico, responsible for trafficking bulk quantities of cocaine, methamphetamine, and heroin into the United States, the Drug Enforcement Agency ("DEA") identified defendant Ruben Oseguera-Gonzalez as the son of the leader of the CJNG, Nemesio Oseguera-Cervantes, also known as "Mencho," and as a high-ranking participant in the CJNG's drug trafficking. *See* Gov't's Mot. for Pre-Trial Det. ("Gov't's Det. Mot.") at 2, 6, ECF No. 13. In February 2017, the government filed the operative two-count superseding indictment against defendant, charging him with conspiring, from around 2007 until February 1, 2017, to distribute five kilograms of more of a mixture and substance containing a detectable amount of cocaine, as well as 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, for unlawful importation into the United States, in violation of 21 U.S.C. §§ 959(a), 960, and 963, and 18 U.S.C. § 2 (Count One); and using, carrying, brandishing, and possessing a firearm, including a destructive device, in furtherance of the drug trafficking offense charged in Count One, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i), 924(c)(1)(A)(ii), 924(c)(1)(B)(ii), and 2 (Count Two). *See* Superseding Indictment, ECF No. 6. Defendant was extradited from Mexico

1

to Washington, D.C. on February 20, 2020, to face prosecution on the Superseding Indictment, *see* Gov't's Det. Mot. at 2, and, after over three years of extensive discovery, now faces trial on September 9, 2024.

In compliance with Federal Rule of Evidence 404(b)(3), the government filed, on June 11, 2024, its Notice of Rule 404(b) Evidence ("Gov't's Notice"), ECF No. 132, identifying the following four categories of evidence, "in an abundance of caution," *id.* at 1, that might be subject to Rule 404(b), related to defendant's: (1) use of violence; (2) use of bribery; (3) manufacturing and distribution of fentanyl and marijuana; and (4) post-arrest conduct and statements.  Defendant, in turn, has moved to exclude this evidence, which motion is now ripe for consideration.  *See* Def.'s Mot. to Exclude Proposed Rule 404(b) Evid. ("Def.'s Mot."), ECF No. 135; *see also* Gov't's Opp'n to Def.'s Mot. to Exclude Proposed Rule 404 Evid. ("Gov't's Opp'n"), ECF Nos. 155 (sealed), 156 (public, redacted); Def.'s Reply Supp. Mot. to Exclude Proposed Rule 404 Evid. ("Def.'s Reply"), ECF No. 160.

For the reasons set forth below, defendant's motion is **GRANTED IN PART AND DENIED IN PART**.

## I.    LEGAL STANDARD

Rule 404(b) governs the admissibility of "other crimes, wrongs, or acts."  FED. R. EVID. 404(b) (capitalization omitted).  When conducting a Rule 404(b) analysis, therefore, the threshold question is whether the evidence at issue is an "other" act; that is, "whether the evidence, in actuality, relates to acts unconnected with those for which the defendant is charged, or instead is intertwined with the commission of the charged crimes."  *United States v. Machado-Erazo*, 47 F.4th 721, 728 (D.C. Cir. 2018).  The law is clear that only "[a]cts 'extrinsic' to the crime charged are subject to Rule 404(b)'s limitations; acts 'intrinsic' to the crime are not."  *Id.*

2

Less clear is the distinction between extrinsic and intrinsic acts. *See United States v. Alexander*, 331 F.3d 116, 126 & n.13 (D.C. Cir. 2003) (expressing "dissatisfaction with the extrinsic-intrinsic distinction" and describing the distinction as "plague[d]" with "practical and definitional problems"). The D.C. Circuit has interpreted intrinsic evidence narrowly, limiting it to acts that are "part of the charged offense" or "performed contemporaneously with the charged crime if they facilitate the commission of the charged crime." *United States v. Moore*, 651 F.3d 30, 63 (D.C. Cir. 2011) (alteration in original accepted and citation omitted); *see also United States v. Abou-Khatwa*, 40 F.4th 666, 677 (D.C. Cir. 2022) ("Of course, evidence that constitutes the very crime being prosecuted, by definition is not barred by Rule 404(b)." (alterations in original accepted and citation omitted)); *Alexander*, 331 F.3d at 126 (describing, as an "example" of intrinsic evidence, evidence "offered as direct evidence of a fact in issue, not as circumstantial evidence requiring an inference regarding the character of the accused" (citation omitted)). Evidence that simply "complete[s] the story," "incidentally involve[s] the charged offense," or merely "explain[s] the circumstances" surrounding the charged offense, on the other hand, are not intrinsic. *United States v. Bowie*, 232 F.3d 923, 928 (D.C. Cir. 2000) (citations omitted).

Applicable to only extrinsic acts, Rule 404(b) provides that "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." FED. R. EVID. 404(b)(1). So-called "propensity" evidence is excluded not because it is irrelevant, but because "it is said to weigh too much with the jury and to so overpersuade them as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge." *Michelson v. United States*, 335 U.S. 469, 475–76 (1948). Rule 404(b) thus attempts to head off the risk that, presented with such evidence, "a jury [might] convict for crimes other than those charged—or

that, uncertain of guilt, it will convict anyway because a bad person deserves punishment." *Old Chief v. United States*, 519 U.S. 172, 181 (1997) (citation omitted).

At the same time, Rule 404(b) expressly "permit[s]" the admission of "[e]vidence of any other crime, wrong, or act" for "another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." FED. R. EVID. 404(b)(2). As such, "'Rule 404(b) is a rule of inclusion rather than exclusion,' 'prohibiting the admission of other crimes evidence in but one circumstance—for the purpose of proving that a person's actions conformed to his character.'" *Machado-Erazo*, 47 F.4th at 728 (first quoting *Bowie*, 232 F.3d at 929, then quoting *United States v. Crowder*, 141 F.3d 1202, 1206 (D.C. Cir. 1998) (en banc)); *see also United States v. Miller*, 895 F.2d 1431, 1436 (D.C. Cir. 1990) ("[U]nder Rule 404(b), *any* purpose for which bad-acts evidence is introduced is a proper purpose so long as the evidence is not offered *solely* to prove character."). "'Rule 404(b) thus is not so much a character rule as a special aspect of relevance' because it 'does not prohibit character evidence generally, only that which lacks any purpose but proving character.'" *Machado-Erazo*, 47 F.4th at 728 (quoting *Bowie*, 232 F.3d at 930).

Evidence that withstands scrutiny under Rule 404(b), however, is not automatically admissible. Rather, "[t]he admissibility of Rule 404(b) evidence is also determined by the 'general strictures limiting admissibility such as Rules 402 and 403.'" *United States v. Brown*, 845 F. App'x 1, 5 (D.C. Cir. 2021) (quoting *Miller*, 895 F.2d at 1436). Rule 402 provides that whereas "[i]rrelevant evidence is not admissible," "[r]elevant evidence is admissible" unless the United States Constitution, a federal statute, the Federal Rules of Evidence, or "other rules prescribed by the Supreme Court" "provide[] otherwise." FED. R. EVID. 402; *see also* FED. R. EVID. 401 (explaining that evidence is relevant if "it has any tendency to make a fact more or

4

less probable than it would be without the evidence," and "the fact is of consequence in determining the action").

Rule 403, in turn, provides that a "court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID. 403. Most relevant here, Rule 403 renders relevant evidence inadmissible upon a showing that it presents a risk of "unfair prejudice," *i.e.*, prejudice that is "compelling or unique," *United States v. Mitchell*, 49 F.3d 769, 777 (D.C. Cir. 1995) (citation omitted), or has "an undue tendency to suggest decision on an improper basis," *United States v. Ring*, 706 F.3d 460, 472 (D.C. Cir. 2013) (quoting FED. R. EVID. 403 advisory committee's note). The danger of any potential unfair prejudice, in addition, must "substantially outweigh[]" the evidence's probative value. FED. R. EVID. 403. Put differently, "Rule 403 does not bar powerful, or even prejudicial evidence" and, instead, "focuses on the danger of *unfair* prejudice, and gives the court discretion to exclude evidence only if that danger *substantially* outweighs the evidence's probative value." *United States v. Pettiford*, 517 F.3d 584, 590 (D.C. Cir. 2008) (alteration in original accepted and citations omitted)

"Rule 403 'tilts, as do the rules as a whole, towards the admission of evidence in close cases,' even when other crimes evidence is involved." *United States v. Cassell*, 292 F.3d 788, 795 (D.C. Cir. 2002) (quoting *United States v. Moore*, 732 F.2d 983, 989 (D.C. Cir. 1984)). "In performing the balancing test required under Rule 403, 'it is a sound rule that the balance should generally be struck in favor of admission when the evidence indicates a close relationship to the event charged.'" *Id.* (citation omitted). A court must also "take account of the full evidentiary context of the case as the court understands it." *Old Chief*, 519 U.S. at 182. A calculation of the

probative value and risk of prejudice is thus "affected by the scarcity or abundance of other evidence on the same point." *Id.* at 185 (citation omitted). Given the trial court's familiarity with this full evidentiary context, district judges have "broad discretion to weigh the extent of potential prejudice against the probative force of relevant evidence." *Athridge v. Aetna Cas. & Sur. Co.*, 604 F.3d 625, 633 (D.C. Cir. 2010).

## II.    DISCUSSION

In assessing the applicability of Rule 404(b), the threshold question is whether the proffered evidence is intrinsic or extrinsic to the charged conduct, and thus the start of this analysis is what specifically is charged. The Superseding Indictment against defendant charges him, in Count One, of conspiring, over an approximately decade-long period, from around 2007 to February 1, 2017, to distribute cocaine and methamphetamine for unlawful importation into the United States, and, in Count Two, of using, carrying, brandishing, and possessing a firearm, including a destructive device, in furtherance thereof. Count One requires the government to prove, beyond a reasonable doubt, that (1) from around 2007 to February 1, 2017, an agreement existed between defendant and at least one other person to knowingly or intentionally manufacture or distribute cocaine and methamphetamine knowing, intending, or having reasonable cause to believe that the drugs would be imported into the United States; (2) defendant knew the unlawful purpose of the agreement; and (3) defendant joined in the agreement knowingly and willfully, that is, with the intent to further its unlawful purpose. Count Two requires the government to prove, beyond a reasonable doubt, that defendant (1) knowingly and intentionally (2) used, carried, or possessed a firearm, or a destructive device, (3) in furtherance of the drug trafficking offense charged in Count One.

To support proof regarding defendant's participation in these two charged crimes, the government seeks to introduce evidence of certain other crimes, wrongs, or acts, allegedly committed by defendant in connection with or in furtherance of the charged crimes. This proffered evidence falls into four categories of defendant's alleged: (1) use of violence; (2) use of bribery; (3) manufacturing and distribution of fentanyl and marijuana; and (4) post-arrest conduct and statements. *See* Gov't's Notice at 3–6. In the government's view, this evidence should be admitted as intrinsic to the charged crimes, or "for multiple non-propensity purposes," pursuant to Rule 404(b)(2). Gov't's Opp'n at 10–11. Defendant, in turn, disputes that the evidence qualifies as intrinsic and further argues that all four categories of evidence should be excluded as propensity evidence under Rule 404(b)(1), or as more prejudicial than probative under Rule 403. *See* Def.'s Mot. at 5, 11, 15.

In light of the limited factual record available at this stage of the proceedings, the D.C. Circuit's narrow understanding of intrinsic evidence, and the murky line between intrinsic and extrinsic evidence, the Court assumes, without deciding, that the government's proffered "other" evidence is extrinsic, since the evidence is, in any case, admissible under Rule 404(b)(2) for "another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." FED. R. EVID. 404(b)(2). While passing this evidentiary hurdle, the balancing test of Rule 403 must still be overcome. The government's proffered evidence on defendant's alleged use of bribery, manufacturing and distribution of fentanyl and marijuana, and post-arrest conduct and statements satisfies Rule 403, as does much but not all of its proffered evidentiary examples of defendant's alleged use of violence. The government's four categories of evidence will be discussed *seriatim*.

A.    **Use of Violence**

1.    ***The Government's Proffered Evidence***

The government proposes to introduce evidence, through the testimony of multiple witnesses, that "[d]efendant used violence and threats of violence to maintain his position of leadership within the CJNG, prevent the arrest of himself and other CJNG members, control territory, collect debts, and enforce internal discipline," and that "the CJNG's threats of violence and use of force are essential to its drug trafficking operation." Gov't's Opp'n at 3, 5. At least one witness is expected to testify, based on firsthand knowledge in communications directly with defendant, that defendant "frequently bragged about killing people and showed other CJNG members photographs of dead people whom the Defendant had ordered kidnapped and murdered" and "ordered at least 100 people to be murdered." *Id.* at 3. This witness is expected to describe at least two examples: In one instance, after Mexican authorities seized a shipment of chemicals that the CJNG had intended to use to manufacture methamphetamine, defendant allegedly ordered those responsible for transporting the chemicals "to be tied up and drowned in a swimming pool"; in another instance, defendant tortured two men suspected of providing information about the CJNG to Mexican authorities and then showed photos of their dead bodies to other CJNG members. *Id.* at 3–4.

Other witnesses are expected to testify, based on firsthand experience and statements made by defendant and co-conspirators, that, in May 2015, (1) defendant directed subordinates to shoot down a Mexican Marine helicopter in Jalisco, Mexico, so that he and his father could avoid capture; (2) the helicopter was struck by a RPG and 0.50 caliber machinegun; (3) members of the Mexican military and federal police died as a result of the attack; and (4) items bearing

defendant's nickname "JR," a RPG, a 0.50 caliber machinegun, and other weapons were recovered near the helicopter crash site.  *Id.* at 4.

Witnesses are further expected to testify that defendant personally killed at least seven people, including two with a firearm: a member of a rival DTO, a subordinate who disobeyed defendant's orders, and five men who owed defendant money.  *Id.*

To support the witnesses' testimony, the government also seeks to introduce BlackBerry Messenger ("BBM") communications, intercepted pursuant to a Title III investigation in June 2013, between defendant and his uncle, Abigail Gonzalez Valencia, in which they coordinate the kidnapping of a "thief" from Manzanillo, Mexico, with defendant informing Gonzalez Valencia that defendant "already ha[d] the prey put away," and directing Gonzalez Valencia to "throw away the phones the guy has, because an Iphone [sic] he has is being tracked."  *Id.* at 4–5.[1]

### 2.    *Analysis*

"In conspiracy prosecutions, the prosecution is usually allowed considerable leeway in offering evidence of other offenses to inform the jury of the background of the conspiracy charged and to help explain to the jury how the illegal relationship between the participants in the crime developed."  *Machado-Erazo*, 47 F.4th at 728 (alteration in original accepted and citation omitted).  The D.C. Circuit has thus "permitted the introduction of 'other acts' evidence in conspiracy cases to link a defendant to other defendants and drug transactions for which the conspiracy was responsible; to show the nature of a conspiracy and the kind of organizational control a defendant exercised; and to show the defendants' intent to act in concert."  *Id.* at 729 (citing *United States v. Gaviria*, 116 F.3d 1498, 1532 (D.C. Cir 1997); *United States v. Mahdi*,

---

[1]    Abigail Gonzalez Valencia has been charged in this district and is detained in Mexico pending extradition. *See United States v. Gonzalez Valencia*, No. 14-cr-51 (D.D.C.).

598 F.3d 883, 891 (D.C. Cir. 2010); *United States v. Mathis*, 216 F.3d 18, 26 (D.C. Cir. 2000);

*United States v. Straker*, 800 F.3d 570, 590 (D.C. Cir. 2015)).

In addition, "where the government is required to demonstrate as an element of a charged

offense a defendant's intent and knowledge, admission of other crimes is permissible even where

the defendant has not affirmatively challenged these elements." *United States v. Mosquera-*

*Murillo*, 153 F. Supp. 3d 130, 183–84 (D.D.C. 2015); *see also United States v. Han*, 962 F.3d

568, 572 (D.C. Cir. 2020) (explaining that evidence of "intent" is "central" to the government's

"steep" *mens rea* burden "to demonstrate beyond a reasonable doubt that [defendant] acted

*willfully*"). As the D.C. Circuit has long emphasized, "intent and knowledge are well-established

non-propensity purposes for admitting evidence of prior crimes or acts." *Han*, 962 F.3d at 573

(quoting *Bowie*, 232 F.3d at 930).

Relying on these principles, "[c]ourts in this circuit have repeatedly allowed evidence of

violence and weapons pursuant to Rule 404(b) to show non-propensity purposes." *United States*

*v. Lorenzana-Cordon*, 141 F. Supp. 3d 35, 44 (D.D.C. 2015). Here, the government seeks to

introduce evidence that defendant used violence and threats of violence to ensure order and

discipline within the CJNG, maintain his position of leadership within the CJNG, prevent the

arrest of himself and other CJNG members, by "ward[ing] off competition, theft, detection,

seizure, and prosecution from law enforcement," and protect CJNG territory, personnel, and

goods. Gov't's Opp'n at 11. These multiple and overlapping purposes are highly probative of

defendant's motive, role, intent, and knowledge of and in the charged conspiracy. Testimony

that defendant ordered the tying up and drowning of those responsible for transporting a seized

shipment of precursor chemicals, and tortured two men suspected of providing information about

the CJNG to Mexican authorities, for example, is probative of defendant's willingness to resort

to violence to protect from law enforcement the drug trafficking operation charged in Count One, his desire to minimize the risk of internal leaks of incriminating information, including by resorting to extreme acts of violence against those employees who failed to protect contraband or cooperated with law enforcement, and his leadership and enforcement role in the charged conspiracy. *Cf. United States v. McGill*, 815 F.3d 846, 881–84 (D.C. Cir. 2016) (holding that evidence of violence by defendants was intrinsic to a conspiracy that had as its goals, *inter alia*, collecting debts with violence and enforcing internal discipline, and that evidence of a particular murder was relevant for the non-propensity purpose of establishing defendants' motive for joining in the conspiracy). Testimony that defendant personally killed at least seven people including a member of a rival DTO, subordinate who disobeyed his orders, and five men who owed him money, reinforces defendant's power in and protection over the charged conspiracy. That defendant killed at least two of these people with a firearm connects Counts One and Two, by serving as an example of defendant's use of a firearm in furtherance of his international narcotrafficking. The BBM communications between defendant and Gonzalez Valencia coordinating the kidnapping of a "thief," and in which defendant directs Gonzalez Valencia to "throw away the phones," in addition, is probative of defendant's relationship and authority over other members of the charged conspiracy, his joining in the conspiracy with the intent to further its unlawful purpose, and his persistent efforts, even with significant risk of interdiction and apprehension, to protect the cohesiveness and goals of the conspiracy at all costs.

The government's proffered evidence also includes testimony that defendant directed subordinates to shoot down a Mexican Marine helicopter in Jalisco, Mexico, to avoid the capture of himself and his father, that the helicopter was struck by a RPG and 0.50 caliber machinegun, resulting in numerous deaths, and that items bearing defendant's nickname, along with a RPG

and 0.50 caliber machinegun, were recovered near the helicopter crash site. This evidence is clearly relevant for non-propensity purposes, tying defendant directly to the use and possession of destructive devices, for which he is charged in Count Two. *See id.* at 883 (finding a murder relevant under Rule 404(b) where it directly tied defendant to "an act that occurred during the conspiracy and that was specifically charged in the indictment").

That this evidence is prejudicial is undisputed. Such prejudice, however, is not undue given that defendant is charged with engaging, for over a decade, in large scale drug trafficking and the use, carrying, possession, brandishing, and possession of a firearm, including a destructive device, in furtherance thereof, which charge carries with it, an obvious implication of violence. Any prejudice, in addition, does not substantially outweigh the evidence's high probative value in explaining how defendant contributed to the success of the charged drug conspiracy for over a decade, or its relevance to defendant's knowing and willful participation in the charged conspiracy, his intent to further its drug trafficking objectives by whatever means necessary, including through the use and brandishing of firearms and destructive devices, his identity as a leader within the conspiracy, and the absence of mistake. *See Straker*, 800 F.3d at 591 (affirming the district court's admission of evidence of uncharged kidnappings and emphasizing the government's burden to prove all the elements of a crime beyond a reasonable doubt); *McGill*, 815 F.3d at 883–84 (concluding that "the direct causal relevance" of evidence of a murder "outweighed any unfair prejudice that may have resulted from its introduction"); *cf. Lorena-Cordon*, 141 F. Supp. 3d at 44 (admitting, conditionally, evidence of defendant's "possession and use of rockets to shoot down law enforcement aircraft" because it "explains the circumstances around the alleged conspiracy by providing content and background to the jury"). In sum, presentation of this evidence of violence directly connected with furthering the charged

12

narcotics conspiracy, does not fall outside the parameters of Rule 403 by presenting a serious

risk of *undue* prejudice, confusion, or delay, with appropriate limiting instructions.

While testimony regarding the two specific examples of the murders of transporters of a

seized CJNG shipment of methamphetamine precursor chemicals, and two tortured men

suspected of being informants to Mexican authorities, and other violent acts discussed above, are

admissible, the Rule 403 analysis tilts in the opposite direction for testimony that defendant

allegedly ordered the murder of at least 100 people and bragged about these murders, such as by

showing photos of the murdered individuals.  At the outset, the probative value of the more

general testimony about defendant's responsibility for murdering at least 100 people is slight,

given the lack of explanation by the government tying each of these specific murders or the large

number of murders to the charged crimes.  In contrast, evidence of these more than 100 murders

presents a substantial risk that a jury would focus on these uncharged murders as, for example,

an indication that defendant is a sociopathic serial killer, rather than on the relevant issues at trial

pertaining to defendant's alleged distribution of cocaine and methamphetamine for unlawful

importation into the United States and possession of a firearm in furtherance thereof.[2]  Defendant

is not charged with murder, much less the murder of over 100 people.  The government seeks to

introduce this evidence to show only that defendant was a leader of the CJNG, "used violence

and firearms to control territory for the manufacture and distribution of drugs, compel payment,

maintain order within the cartel, evade capture, and intimidate rivals."  Gov't's Notice at 3–4.

As explained both above and below, the government has other means of introducing evidence of

defendant's leadership role and his use of whatever means necessary to engage in the charged

---

[2]    Although defendant admitted to this large number of murders in his statement of facts, *see* Gov't's Mot. in
Limine to Admit Signed Statement of Facts, Ex. B at 5, ECF No. 146-3, his statement has been excluded as evidence
in the government's case-in-chief, *see* Mem. Op. & Order at 20, ECF No. 163.

conduct. This general testimony about the large number of people defendant has allegedly murdered and his bragging about these murders adds significant "emotional or other pejorative emphasis not already introduced by the evidence of the crime charged in this case." *Straker*, 800 F.3d at 591 (citation omitted). The risk that a jury would "convict for crimes other than those charged—or that, uncertain of guilt, it will convict anyways because a bad person deserves punishment," *Old Chief*, 519 U.S. at 181, is too great relative to what would be only minimal probative value, and in light of the fact that the evidence is needlessly cumulative, would likely "dominate the trial," and is "especially graphic in the context of the crimes" for which defendant is charged, *United States v. Lieu*, 963 F.3d 122, 128 (D.C. Cir. 2020) (citation omitted).

Accordingly, although evidence of defendant's use of violence will not categorically be prohibited, testimony about defendant's involvement in and bragging about committing 100 murders will be excluded under Rule 403. Should defendant open the door to evidence of these 100 murders, however, the government's proffered evidence may become relevant on rebuttal. *See United States v. Oseguera Gonzalez*, 507 F. Supp. 3d 137, 166 (D.D.C. 2020); *see also United States v. Antonakeas*, 255 F.3d 714, 724 (9th Cir. 2001).

### B.    Evidence of Bribery

The government seeks to introduce evidence, through the testimony of multiple witnesses, that, during the charged conspiracy, defendant "arranged bribes to uniformed and armed law enforcement officers and directed them to assist with the transportation and protection of drugs, money, and CJNG members within Mexico," and that "bribing law enforcement at multiple levels of government was critical to the CJNG's drug trafficking operation." Gov't's Opp'n at 5; *see also* Gov't's Notice at 4.

Regardless of whether this evidence is extrinsic, it is certainly admissible under Rule 404(b), as probative of, and thus relevant to, each element of Count One; that is, that an agreement existed between defendant and at least one other person, that defendant intended for the drugs to be unlawfully imported, and that defendant knew of the charged conspiracy's unlawful purpose. *See, e.g.*, *Lorenzana-Cordon*, 141 F. Supp. 3d at 41–42 (admitting, conditionally, evidence of defendant's bribes both before and during the charged conspiracy). Evidence of bribery, in addition, explains the circumstances around the charged conspiracy by providing context and background to the jury, such as by explaining how the illegal relationship between participants of the conspiracy developed and the means and methods by which defendant transported cocaine and methamphetamine for eventual unlawful importation into the United States. Although such "complet[ing] the story" evidence is not admissible as intrinsic evidence, it may be properly admitted under Rule 404(b) for any non-propensity purpose. *See Bowie*, 232 F.3d at 929.

Defendant offers three arguments in response, but none are persuasive.[3]  First, defendant argues that the government's evidence is inadmissible under Rule 104(b) and *Huddleston v. United States*, 485 U.S. 681 (1988). *See* Def.'s Mot. at 12–13. In *Huddleston*, the Supreme Court explained that "similar act evidence is relevant only if the jury can reasonably conclude that the act occurred and that the defendant was the actor." 485 U.S. at 689. "When the relevance of evidence depends on whether a fact exists," Rule 104(b) provides that "proof must be introduced sufficient to support a finding that the fact does exist." FED. R. EVID. 104(b). Defendant argues that the government has not met this burden because "the source of the [government's evidence] is apparently from one or two cooperating witnesses not yet disclosed

---

[3]    Defendant addresses the applicability of Rule 404(b) to all four categories of evidence together. *See* Def.'s Mot. at 13–14.  To avoid repetition, defendant's arguments will be addressed only once herein.

to the defense that are seeking benefits from the [g]overnment." Def.'s Mot. at 12–13. This credibility argument, however, is irrelevant to the Rule 104(b) analysis. Rather, the Supreme Court has made clear that "[i]n determining whether the Government has introduced sufficient evidence to meet Rule 104(b), the trial court neither weighs credibility nor makes a finding that the Government has proved the conditional fact by a preponderance of the evidence." *Huddleston*, 485 U.S. at 690. "The court simply examines all the evidence in the case and decides whether the jury could reasonably find the conditional fact"—here, that defendant bribed law enforcement officials—"by a preponderance of the evidence." *Id.* For the reasons set forth above, a jury could make such finding.

Second, defendant argues that "the nature of the information" that the government's witnesses are expected to testify about "is not from their personal experience or personally witnessing the proffered acts, but rather is from hearsay, and likely hearsay upon hearsay." Def.'s Mot. at 13; *see also* Def.'s Reply at 2. This argument is premature. The government intends to call live witnesses to testify, based on their personal observations and defendant's contemporaneous and subsequent admissions, about its proffered evidence. *See* Gov't's Opp'n at 22. If these witnesses ultimately testify based on hearsay, defendant can renew his objection during trial.

Third, defendant argues that the government has failed to provide the reasonable notice required by Rule 404(b)(3). *See* Def.'s Mot. at 14. Rule 404(b)(3) requires the government to provide, "in writing before trial," "reasonable notice" of Rule 404(b) evidence "that the prosecutor intends to offer at trial, so that the defendant has a fair opportunity to meet it," and to "articulate in the notice the permitted purpose for which the prosecutor intends to offer the evidence and the reasoning that supports the purpose." FED. R. EVID. 404(b)(3). Here, the

government filed its notice almost two months before trial, and defendant has had a fair opportunity to meet it, as evident by defendant's instant motion to exclude.  Although defendant criticizes the government for taking a "shotgun" approach to Rule 404(b)'s notice requirement, "regurgitating all but one of the Rule 404(b) exceptions and asserting in a conclusory way that all of the proffered evidence is inadmissible based on all of those exceptions," Def.'s Mot. at 14–15 (quoting *United States v. Sanchez*, No. 8-cr-836, 2011 WL 6090164, at *8 (C.D. Cal. Dec. 5, 2011)), even a cursory review of the government's notice proves otherwise.  As explained in more detail above, the notice, supplemented by the government's opposition, indicates and explains the specific non-propensity purpose for which each piece of evidence will be used and thus satisfies the government's obligation to provide reasonable pre-trial written notice.  *See, e.g.*, *United States v. Vazquez*, No. 21-cr-597 (BAH), 2023 WL 4488910, at *5 (D.D.C. July 12, 2023) (concluding that notice filed approximately one month before trial was reasonable); *United States v. Dupree*, No. 22-cr-275 (CKK), 2024 WL 2110137, at *4 (D.D.C. May 10, 2024) (explaining that the government's notice can be supplemented by other filings).

Turning, then, to Rule 403, evidence of defendant's bribery is highly probative of the elements of Count One.  Just like the evidence of violence, which the government seeks to introduce to support the proposition that defendant used violence to bolster the CJNG's standing and protect drug trafficking operations from disruption by law enforcement officers, evidence that defendant bribed law enforcement officials to help the CJNG transport their drugs is directly relevant to the charged conspiracy.  "Evidence tending to demonstrate 'intent, plan, preparation, and motive is particularly probative where the government has alleged conspiracy." *Mathis*, 216 F.3d at 26 (alteration in original and citation omitted); *see also United States v. Clark*, 184 F.3d 858, 866 (D.C. Cir. 1999) (observing that evidence of defendant's attempted bribe to police

officer upon finding firearm in defendant's possession "was admissible as evidence of his motive for the attempted bribery—namely, to avoid arrest for that violation" and "as evidence that [defendant] had knowledge of the gun"). This proposition is true even when "defendant concedes an element of an offense" because "the government still has the burden of proving that element to the jury beyond a reasonable doubt," *United States v. Douglas*, 482 F.3d 591, 596 (D.C. Cir. 2007), and thus is especially true here, where defendant has raised no affirmative defenses, and his defense appears to rely on demonstrating that the government has not met its burden of proving the elements of the charged crimes beyond a reasonable doubt. That evidence of bribery is prejudicial is undisputed, but it is not so prejudicial as to justify blanket exclusion. *See* Def.'s Mot. at 18 (defendant "conced[ing]" that bribery "is less inflammatory than the allegations of kidnapping and murder").

Accordingly, the government's proposed evidence of defendant's use of bribery will not be categorically excluded.

### C.    Evidence of Manufacturing and Distribution of Fentanyl and Marijuana

The government proposes to introduce evidence, through the testimony of multiple witnesses, and BBM communications, that "[d]efendant was involved in manufacturing and distributing fentanyl for importation into the United States" and "encouraged his father to expand the CJNG's operations into fentanyl production and distribution." Gov't's Notice at 4. Specifically, the government seeks (1) to elicit, from a witness, evidence that, in 2015, "[d]efendant showed [the] witness blue fentanyl pills and said that he was distributing fentanyl because he could make more money selling fentanyl, as opposed to other drugs, in the United States"; (2) to introduce evidence of defendant's intercepted BBM communications in October 2013, in which defendant "agreed to release a chemist who had been kidnapped because the

chemist could assist the [d]efendant with manufacturing 'oxycotone' (oxycodone), a prescription opioid"; and (3) to elicit, from a witness and DEA drug expert, that "fentanyl is often pressed into pills made to look like oxycodone."  Gov't's Opp'n at 5–6.

The government also intends to introduce evidence, through witness testimony, that defendant "was involved in distributing marijuana for importation into the United States."  *Id.* at 6.  Specifically, the government expects the witness to testify that, from approximately 2007 to 2010, "[d]efendant helped his father manage the Puerta Vallarta plaza, which involved the distribution of large quantities of marijuana and cocaine."  *Id.*

Regardless of whether this evidence is extrinsic or intrinsic, it is clearly admissible under Rule 404(b), as probative of the elements of Count One.  For example, witness testimony that defendant encouraged his father to expand the CJNG's operations into fentanyl production and distribution and that he chose fentanyl specifically because he viewed this drug as profitable in the United States is probative of defendant's intent to engage in international narcotrafficking and to target the United States in particular, as well as defendant's motive of doing so for financial gain.  *See United States v. King*, 254 F.3d 1098, 110 (D.C. Cir. 2001) (explaining that "evidence that [defendant] possessed the same or similar things at other times is often quite relevant to his knowledge and intent with regard to the crime charged").  The intercepted BBM communications, in which defendant discussed releasing a kidnapped chemist so that the chemist could assist defendant with manufacturing "oxycotone," and testimony that fentanyl is often pressed into pills made to look like oxycodone illustrates that defendant had access to, or would do anything to get access to, the chemicals and chemists needed to manufacture narcotics, which is probative of defendant's opportunity, preparation, and plan to engage in the charged drug conspiracy, as well as his knowledge of and desire to further its illegal purpose.  Evidence of

19

defendant's close working relationship with his father, the leader of the CJNG, by encouraging him to expand to fentanyl trafficking or managing, for him, the Puerta Vallarta plaza, which engaged in marijuana and cocaine distribution, is probative of the organizational control that defendant exercised, his relationship with other members of the charged conspiracy, and the fact that his involvement in the conspiracy was not a mistake or accident. *See Straker*, 800 F.3d at 590 (concluding that "[e]vidence that defendants jointly engaged in other criminal activity can be relevant to shed light on how the relationship of mutual trust developed between those individuals," and can "help[] to dispel any doubts as to whether [defendant and his co-conspirators] knowingly and intentionally joined together to carry out these crimes" (citation omitted)); *United States v. Washington*, 969 F.2d 1073, 1081 (D.C. Cir. 1992) (explaining that evidence of other uncharged drug transactions is "probative of intent, knowledge and plan on the part of [defendant]" to engage in the charged drug distribution).

The highly probative nature of this evidence is not substantially outweighed by the risk of unfair prejudice under Rule 403. As explained, defendant's alleged manufacturing and distribution of fentanyl and marijuana may help establish the existence of relationships between members of the charged conspiracy, whether these individuals had a common scheme or plan, defendant's role in the charged conspiracy, and whether he was predisposed or had the motive and means to commit the charged offenses. *See United States v. Bell*, 795 F.3d 88, 100 (D.C. Cir. 2015) (noting the "unique probative value" of alleged conduct that "occurred relatively close in time to the conduct charged in the indictment" (citation omitted)). On the other side of the scale, any prejudice is slight, given that defendant is charged with large-scale trafficking of cocaine and methamphetamine. That he engaged in largely the same conduct, with respect to fentanyl and marijuana, as well, is not likely to be substantially prejudicial. *See Gaviria*, 116

F.3d at 1532 (affirming district court's decision to admit evidence of defendant engaging in heroin transactions, where he admitted to engaging in cocaine transactions).[4]  Accordingly, the government's proposed evidence of defendant's manufacturing and distribution of fentanyl and marijuana will not be categorically excluded.

### D.    Evidence of Post-Arrest Conduct and Statements

The government intends to introduce evidence, through the testimony of multiple witnesses who were incarcerated with defendant in Mexico, that defendant continued to engage in drug and weapons trafficking after he was arrested and detained in Mexico in 2015.  Gov't's Opp'n at 6.  One witness, who testified at a Rule 15 deposition, is expected to testify that (1) he was housed with defendant at Altiplano and at a detention facility in Oaxaca, Mexico, between 2013 and December 2017; (2) he observed defendant, while housed at Altiplano, "negotiate the sale of one ton of cocaine by the CJNG to members of a Mexico-based DTO at the price of $15,000 (USD) per kilogram"; (3) defendant, while detained in Oaxaca, sought to acquire 0.50 caliber and M60 machineguns from the witness and requested a 0.50 caliber machinegun from another inmate, which firearms can allegedly "bring down planes" and "penetrate armor"; and (4) defendant, while detained in Oaxaca, admitted to the witness that he was present during the shootdown of a Mexican Marine helicopter in 2015.  *Id.* at 6–7; *see also* Gov't's Notice at 5.

Another witness is expected to testify that while he was incarcerated with defendant in approximately 2017, defendant told him that (1) the CJNG had "an arsenal of weapons capable of combatting rival cartels, including one or more 0.50 caliber sniper rifles, 40 mm automatic

---

[4]    On the merits, Rule 403 does not require excluding evidence of defendant's alleged distribution of fentanyl and marijuana, but defendant did not conduct a Rule 403 analysis for this category of evidence and thus is also deemed to have conceded this argument.  *See Wannall v. Honeywell, Inc.*, 775 F.3d 425, 428 (D.C. Cir. 2014) ("[I]f a party files an opposition to a motion and therein addresses only some of the movant's arguments, the court may treat the unaddressed arguments as conceded.").

grenade launchers, machineguns, and shoulder-fired rocket launchers"; (2) defendant "brokered and authorized the purchase of weapons from a Russian with a military background, who also was providing weapons training to the CJNG"; and (3) defendant would "approve the weapons purchase orders through an individual who visited the [d]efendant at the detention facility." Gov't's Opp'n at 7; *see also* Gov't's Notice at 5.

Multiple witnesses who were also incarcerated with defendant are expected to testify that, while incarcerated, defendant attempted to recruit CJNG members, including an individual "who had used extreme violence to exert control over a location that the [d]efendant wanted to use for trafficking drugs to the United States." Gov't's Opp'n at 8.

While not disputing that evidence of defendant's conduct after the charged conspiracy is extrinsic, the government argues that defendant's post-arrest conduct and the statements he made while in custody in Mexico and that occurred prior to February 2017, within the timeline of the charged conspiracy, is intrinsic. *See id.* at 17–18. Rather than attempting to parse the government's argument to determine which specific pieces of evidence qualify as intrinsic, the Court again assumes, without deciding, that all the evidence of defendant's post-arrest conduct and statements is extrinsic because, even if extrinsic, this evidence is clearly admissible under Rule 404(b). *See United States v. Latney*, 108 F.3d 1446, 1449 (D.C. Cir. 1997) ("Rule 404(b) draws no distinction between bad acts committed before and bad acts committed after the charged offense. . . . In each case the question Rule 404(b) poses is whether the bad acts evidence is relevant to something provable other than the defendant's character.").

Evidence that defendant continued to engage in drug and weapons trafficking after he was arrested and detained in 2015 is probative of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, and lack of accident. The government seeks to admit

evidence that, while incarcerated, defendant continued to engage in similar conduct for which he is charged in Count One, negotiating in the sale of tonnage quantities of cocaine to a Mexico-based DTO and continuing to recruit members of the CJNG.  This evidence bears on defendant's knowing and intentional participation in the charged drug conspiracy, his role as a high-level member, as well as the scope, persistence, and cohesiveness of the charged conspiracy, which allegedly continued despite the arrest of one of its leaders.  *See United States v. Clarke*, 24 F.3d 257, 259 (D.C. Cir. 1994) (categorizing, as "a straightforward recognition," the proposition that "the intent with which a person commits an act on a given occasion can many times be best proven by testimony or evidence of his acts over a period of time thereto, particularly when the activity involves a continuous course of dealing" (citation omitted)); *Vazquez*, 2023 WL 4488910, at *5 (admitting evidence of post-indictment drug precursor chemical seizures).

The government, in addition, seeks to introduce evidence that defendant sought to acquire machineguns capable of bringing down planes and penetrating armor and allegedly admitted to being present during the shootdown of a Mexican Marine helicopter, brokering and authorizing the purchase of weapons, organizing weapons training for the CJNG, and that the CJNG had an arsenal of weapons capable of combatting rival cartels.  This evidence bears on defendant's opportunity to obtain the types of firearms, and destructive devices, for which he is charged in Count Two, as well as his intent and plan to obtain these weapons to protect himself and the CJNG and in furtherance of the drug trafficking offense charged in Count One.

The highly probative nature of this evidence is not substantially outweighed by the risk of unfair prejudice under Rule 403.  As a reminder, "[u]nfair prejudice within [the Rule 403] context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one."  *Ring*, 706 F.3d at 472 (quoting FED. R. EVID. 403 advisory

committee's notes). Here, the government's proffered evidence, involving defendant's efforts to continue to traffic in drugs and weapons while incarcerated, is similar in kind and close in time to the charged conduct. *See Washington*, 969 F.2d at 1081 ("The similarity of the transactions and the small amount of time separating the events suggest that the prior act is highly probative."). The unindicted conduct is no more serious than that charged in the Superseding Indictment. *See Bell*, 795 F.3d at 99–100 (upholding admissions of other crimes evidence under Rule 404(b) where the contested evidence "did not involve conduct any more sensational or disturbing than the other conduct attributed to" defendant (alteration in original accepted and citation omitted)). Any prejudice is thus not unfair and does not substantially outweigh its highly probative nature.

To the extent defendant responds to any of the government's arguments or discusses the government's proffered evidence of defendant's post-arrest conduct and statements, he addresses only the expected testimony of the witness who previously testified at the Rule 15 deposition in this matter, arguing that this witness's testimony is "so unreliable and untrustworthy that it should be excluded under Rule 403." Def.'s Mot. at 18. At the outset, "unreliability"—which amounts to a credibility assessment—is not a consideration under Rule 403. In any case, the underlying assumption of defendant's position, that cooperators are so inherently unreliable that their testimony should always be excluded as unduly prejudicial has been repeatedly rejected. *See, e.g.*, *Kansas v. Ventris*, 556 U.S. 586, 594 n.* (2009) (rejecting argument that "jailhouse snitches are so inherently unreliable that th[e] [Supreme] Court should craft a broader exclusionary rule for uncorroborated statements obtained by that means"). Rather, "a witness's credibility and the soundness of his judgment always remain for the jury's determination." *Diaz v. United States*, 144 S. Ct. 1727, 1733 (2024) (citation omitted); *see also Ventris*, 556 U.S. at

594 n.* ("Our legal system . . . is built on the premise that it is the province of the jury to weigh the credibility of competing witnesses."); *United States v. Scheffer*, 523 U.S. 303, 313 (1998) ("A fundamental premise of our criminal trial system is that the *jury* is the lie detector. Determining the weight and credibility of witness testimony, therefore, has long been held to be part of every case that belongs to the jury, who are presumed to be fitted for [this task] by their natural intelligence and their practical knowledge of men and the ways of men." (alteration in original accepted and citation omitted)); *Goldman v. United States*, 245 U.S. 474, 477 (1918) (rejecting arguments that, if accepted, would require the court to "invade the province of the jury by determining questions of credibility and weight of evidence"). Defendant's invitation to usurp the jury's role is declined. Accordingly, the government's proposed evidence of defendant's use post-conviction conduct and statements will not be categorically excluded.

## III.    CONCLUSION AND ORDER

For the foregoing reasons, defendant's motion is granted insofar as it seeks to exclude the government's proposed evidence that defendant murdered 100 people and bragged about these murders. Defendant's motion is otherwise denied, and the government's proposed evidence of defendant's other uses of violence, as well as his use of bribery, manufacturing and distribution of fentanyl and marijuana, and post-arrest conduct and statements, will not be categorically excluded.

An Order consistent with this Memorandum Opinion will be filed contemporaneously.

Date:  August 12, 2024

**BERYL A. HOWELL**
United States District Judge