**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | Criminal Action No. 16-229 (BAH) |
| RUBEN OSEGUERA-GONZALEZ, | Judge Beryl A. Howell |
| Defendant. | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Defendant Ruben Oseguera-Gonzalez faces trial on September 9, 2024, on a two-count superseding indictment, arising from his alleged drug trafficking and use and possession of a firearm, including a destructive device, in furtherance thereof. Superseding Indictment, ECF No. 6. Pending before the Court are two pretrial motions filed by the government: (1) Motion *In Limine* to Preclude Improper Use of Agent Interview Reports and Notes ("Gov't's MIL to Preclude Interview Reps."), ECF No. 140; and (2) Motion for Witnesses to Testify in Pseudonym ("Gov't's Mot. for Pseudonym"), ECF No. 141.[1] Defendant has filed no opposition, timely or otherwise, to either motion. For the reasons set forth below, both motions are **GRANTED** as conceded, and in any event, warrant relief on the merits.

---

[1]      In addition to these two motions, the government filed a combined Motion *in Limine* to Admit Signed Statement of Facts and Opposition to Defendant's Motion to Preclude Use of the Same, *see* ECF Nos. 144 (sealed), 146 (public, redacted), which motion was denied by Memorandum Opinion and Order on August 5, 2024, *see* Mem. Op. & Order, ECF No. 163; and defendant has filed five motions: (1) Motion to Preclude the Use of Defendant's Statements Made During the Course of Plea Negotiations, ECF No. 137, which was granted by the same August 5, 2024, Memorandum Opinion and Order, *see id.*; (2) Motion to Exclude Proposed Rule 404(b) Evidence, ECF No. 135, which was granted in part and denied in part on August 12, 2024, *see* Mem. Op., ECF No. 167 (sealed); (3) Motion to Suppress, ECF No. 139, which was denied by Memorandum Opinion and Order on August 13, 2024, *see* Mem. Op. & Order, ECF No. 168 (sealed); (4) Motion to Exclude Expert Testimony, ECF No. 138, and (5) Motion *In Limine* to Exclude Hearsay, Allow Attorney *Voir Dire*, Exclude an Appeal to Passion or Prejudice, Exclude Vouching, and Exclude New Arguments, ECF No. 143, which motions remain pending.

## I.   BACKGROUND

As part of an extensive and long-term investigation into the drug trafficking activities of the Cártel de Jalisco Nueva Generación ("CJNG"), a large and violent drug trafficking organization based in Jalisco, Mexico, responsible for trafficking bulk quantities of cocaine, methamphetamine, and heroin into the United States, the U.S. Drug Enforcement Agency identified defendant as the son of Nemesio Oseguera-Cervantes, also known as "Mencho," who is the leader of the CJNG, and as a high-ranking participant in CJNG's drug trafficking.  *See* Gov't's Mot. for Pre-Trial Det. ("Gov't's Det. Mot.") at 2, 6, ECF No. 13.

In February 2017, the government filed a two-count superseding indictment against defendant, charging him with conspiring, from around 2007 until February 1, 2017, the date of the Superseding Indictment, to distribute five kilograms of more of a mixture and substance containing a detectable amount of cocaine, as well as 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, for unlawful importation into the United States, in violation of 21 U.S.C. §§ 959(a), 960, and 963, and 18 U.S.C. § 2 (Count One); and using, carrying, brandishing, and possessing a firearm, including a destructive device, in furtherance of the drug trafficking offense charged in Count One, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i), 924(c)(1)(A)(ii), 924(c)(1)(B)(ii), and 2 (Count Two).  *See* Superseding Indictment, ECF No. 6. Defendant was extradited from Mexico to Washington, D.C. on February 20, 2020, to face prosecution on the Superseding Indictment.  *See* Gov't's Det. Mot. at 2.

More than seven years after these charges were made public and known to defendant while under arrest in Mexico, four years after defendant's extradition to the United States, and after trial dates in this matter were set—and re-set at defendant's request or with his consent—three separate times, *see* Min. Scheduling Orders (June 1, 2022, Sept. 15, 2023, and Nov. 27, 2023) (scheduling

trial to begin on May 1, 2023, then on Oct. 7, 2024 and, now, on Sept. 9, 2024, respectively), defendant now faces trial on September 9, 2024.  In advance of this trial date, and pursuant to this Court's Scheduling Order—as amended at the parties' request to extend the deadline for the submission of any pre-trial motions, with the concomitant extension for the filing of any oppositions—the parties were directed to file, by July 8, 2024, "any pre-trial motions, including any motions *in limine*, with any oppositions due by July 22, 2024, and any replies due by July 29, 2024."  Amended Scheduling Order (June 28, 2024); *see also* Jt. Mot. for Extension of Time to File Pretrial Mots., ECF No. 136.

Pursuant to this Scheduling Order, the government timely filed, on July 8, 2024, three pretrial motions, one of which has since been denied.  *See* Gov't Mot. *in Limine* to Admit Signed Statement of Facts and Opp'n to Def.'s Mot. to Preclude Use of the Same ("Gov't Signed Statement MIL"), ECF Nos. 144 (sealed), 146 (public, redacted); Gov't MIL to Preclude Interview Reps.; Gov't Mot. for Pseudonym; *see also* Mem. Op. & Order, ECF No. 163 (denying the government's Signed Statement MIL).  Despite defendant's timely filing of an opposition to the government's Motion *In Limine* to Admit Signed Statement of Facts, *see* Def.'s Resp. & Opp'n Gov't's Signed Statement MIL, ECF No. 148, defendant filed no opposition, timely or otherwise, to the government's other two pending pretrial motions.  Hence, these motions are deemed conceded and therefore granted.  *See* D.D.C. LOCAL CRIM. R. 47(b) (providing that if a "memorandum of points and authorities in opposition to [a] motion . . . is not filed within the prescribed time, the Court may treat the motion as conceded").

To ensure clarity about the scope of these motions at trial, however, the merits of each are addressed *seriatim*.

II.     **The Government's Motion *In Limine* To Preclude Improper Use of Agent Interview Reports and Notes (ECF No. 140)**

The government seeks an order (1) "find[ing] that interview reports and notes prepared by investigating agents," which the government will disclose "at least two weeks prior to trial," "are not statements of the person interviewed under the Jencks Act," and (2) "preclud[ing] the defense from introducing the contents of these reports and notes to impeach witnesses during cross examination, publishing the contents of reports and notes to the jury, or otherwise suggesting to the jury that the reports and notes are statements of the witnesses who did not write them or adopt them."  Gov't's MIL to Preclude Interview Reps. at 1, 6.  On the merits, the government's motion seeks nothing more than application of well-settled law, though some guidance on the limits of this ruling *in limine* may be helpful.

"The Jencks Act, 18 U.S.C. § 3500, requires the prosecutor to disclose, after direct examination of a Government witness and on the defendant's motion, any statement of the witness in the Government's possession that relates to the subject matter of the witness' testimony." *United States v. Bagley*, 473 U.S. 667, 670 n.2 (1985); *see also Goldberg v. United States*, 425 U.S. 94, 96–97 (1976).  A "statement" is defined to include: (1) "a written statement made by said witness and signed or otherwise adopted or approved by him," (2) a "recording, or a transcription . . . which is a substantially verbatim recital of an oral statement made by said witness and recorded contemporaneously with the making of such oral statement," or (3) "a statement . . . made by said witness to a grand jury."  18 U.S.C. § 3500(e).  "[O]nly those statements which could properly be called the witness' own words should be made available to the defense for purposes of impeachment."  *Palermo v. United States*, 360 U.S. 343, 352 (1959) (citation omitted); *see also United States v. Oruche*, 484 F.3d 590, 597 (D.C. Cir. 2007) ("notes of a conversation are not generally Jencks Act material (unless they represent a full transcription) . . . but a statement that is

handwritten and approved by the witness is Jencks Act material" (citation omitted)); *United States v. Donato*, 99 F.3d 426, 433 (D.C. Cir. 1996), *as amended* (Jan. 17, 1997) (observing that in *Palermo*, "the Supreme Court explained that the Jencks Act covered statements that could fairly be used by the defense to impeach a government witness" and "[i]n order that this goal be achieved, these statements had to be limited to those that could properly be called the witness' own words" (citing *Palermo*, 360 U.S. at 352)).

The government posits, correctly, that "interview reports and notes prepared by investigating agents are not statements of the person interviewed under the Jencks Act[.]"  Gov't's MIL to Preclude Interview Reps. at 1.  Interview reports written by law enforcement officers, not by the witnesses themselves, "generally do not qualify as Jencks Act statements" since "they are not usually a 'substantially verbatim recital' of the witness's words or 'adopted or approved by' the witness."  *United States v. Moore*, 651 F.3d 30, 75 (D.C. Cir. 2011), *aff'd sub nom. Smith v. United States*, 568 U.S. 106 (2013) (citations omitted).

Set against this well-settled law based on the clear text of the Jencks Act itself, the government argues that the interview notes the government intends to produce prior to trial "do not qualify as statements within the meaning of the Jencks Act" since they "were not taken by the witnesses themselves, but rather by the investigative agents conducting the interviews"; they "have not been adopted by the witnesses"; and "the notes do not qualify as 'substantially verbatim recitals' of the witness' words."  Gov't's MIL to Preclude Interview Reps. at 4.  Should this be the record developed at trial, *i.e.*, that agents' interview notes and reports are not the statements of the witnesses themselves, then the government is entitled to the order sought precluding the defense from "introducing the contents of the reports and notes to impeach witnesses on the basis of inconsistent statements," "publishing the contents of the reports and notes to the jury," or

"otherwise suggesting to the jury that a report or note is a statement of the witness." *Id.* at 4–5; *see, e.g.*, *United States v. Hamead*, No. 20-cr-20162, 2024 WL 1049486, at *3 (E.D. Mich. Mar. 11, 2024) (granting government's motion to preclude use of law enforcement agent interview reports or notes for impeachment and thereby precluding defendants from "using such reports to impeach a witness on cross examination, publishing to the jury, or suggesting to the jury that such summaries are witness statements," since "[i]nterview reports are not witness statements under the Jencks Act" (citing *Palermo*, 360 U.S. at 350)); *United States v. Patel*, No. 19-cr-80181 (RAR), ECF No. 351 (S.D. Fla. Nov. 22, 2022) (holding that "[w]hile defense may ask a witness whether he or she made a statement that is reflected in an agent interview report, defense may not publish, read from, or introduce contents of the report as a prior inconsistent statement" and "may not use an interview report to suggest to the jury that the interview report is a statement of the witness"); *United States v. Starks*, No. 10-cr-160 (SA) (JMV), 2012 WL 12878587, at *2 (N.D. Miss. July 20, 2012) (granting government's "motion to preclude improper cross-examination with agent interview reports" (capitalization omitted)); *United States v. Griffin*, No. 10-cr-160 (SA) (JMV), 2012 WL 12878573, at *2 (N.D. Miss. July 19, 2012) (same).

This ruling is subject to several important caveats.

***First***, the record at trial is yet to be developed.  For this obvious reason, other courts confronted by similar government motions *in limine* have reasonably concluded that the requested relief is premature.  Any concerns about how agent interview reports or notes may be used, presented, or sought to be admitted at trial must be addressed within the specific context in which the issues arise, if at all, at trial.  *See, e.g.*, *United States v. Akula*, No. 21-cr-98, 2023 WL 4235568, at *2 (E.D. La. June 28, 2023) (deferring until trial any ruling on the government's motion to preclude defendant from "introducing interview reports prepared by law enforcement agents for

the purpose of impeaching government witnesses," since "the Court has not been presented with arguments as to any specific witness statements"); *United States v. Schena*, No. 20-cr-425 (EJD), 2022 WL 2910185, at *8 (N.D. Cal. July 23, 2022) (same); *United States v. Fields*, No. 17-cr-169, 2018 WL 4899442, at *1 (E.D. Pa. Oct. 9, 2018) (denying without prejudice motion to preclude defendant from "reading aloud from interview reports written by DEA and IRS agents to impeach witnesses who did not author or adopt the reports," stating, "[t]he Court will not make a broad ruling without seeing how these issues arise, if at all, at trial").

**Second**, the defense may certainly on cross-examination seek to lay a foundation that the witness adopted the substance reflected in the agents' interview notes. In doing so, as the government concedes, "[t]he defense is, of course, free to ask a witness whether he or she made a statement that is reflected in an agent's interview report or note," Gov't's MIL to Preclude Interview Reps. at 5, and "[i]f, during cross examination, the Government believes Defendant is violating the parameters of *Palermo v. United States*, 360 U.S. 343 (1959)," *Schena*, 2022 WL 2910185, at *8, the government may interpose an objection.

**Third**, if the defense lays a proper foundation to establish on cross-examination that the witness interview reports or notes in fact "represent a statement previously made by" the government witness, such materials would be "admissible for impeachment purposes under [Federal Rule of Evidence] 613(a)." *United States v. Brika*, 416 F.3d 514, 529 (6th Cir. 2005) (finding no abuse of discretion in district court ruling permitting government to impeach witness with document that "appears to have been [witness's] prior statement," where document, was "adopted and signed by [the witness]" and "upon examination, [the witness] acknowledged that she recognized the document as the statement she had given to the police" (citations omitted)); *see also Goldberg*, 425 U.S. at 100–01, 111–12 (remanding case for district court to review interview

notes withheld from defense to determine whether such notes contained witness statements within meaning of Jencks Act, where witness testified on cross examination that, during interview with prosecuting attorneys, witness was asked "from time to time" whether he was properly understood and witness provided corrections); *Campbell v. United States*, 373 U.S. 487, 492 (1963) ("Plainly, if [federal agent] in making the oral presentation was in fact reading the notes back to [witness], the latter's adoption of the oral presentation would constitute adoption of a written statement made by him, namely, the notes." (citations omitted)); *United States v. Crinel*, No. 15-cr-61, 2016 WL 6441249, at *4 (E.D. La. Nov. 1, 2016) (recognizing that "if it can be established that a Government witness did adopt a statement or it was recorded verbatim, the interview report may be used for impeachment during the cross-examination of the witness who made the statement" (citation omitted)); *Fields*, 2018 WL 4899442, at *1 (noting that government witnesses may be cross-examined "with interview reports and notes authored by other agents after laying the proper foundation and otherwise fully complying with applicable Federal Rules of Evidence").  The government acknowledges this.  *See* Gov't's MIL to Preclude Interview Reps. at 5.

Any finding at trial that a proper foundation has been laid to pursue use of agents' interview notes for impeachment purposes will be guided by the principles recognizing that "even if the interviewer wrote down a few of the witness's exact words, there is no 'substantially verbatim recital' [under the Jencks Act] if the interviewer engaged in 'substantial selection' in quoting the witness." *Moore*, 651 F.3d at 75 (quoting *Donato*, 99 F.3d at 433 (quoting *Palermo*, 360 U.S. at 352–53)).  Merely because notes are contemporaneously prepared when a witness gives responses during an interview does not mean those notes "become the witness' statement . . . if the agent 'does not read back, or the witness does not read, what the [agent] has written,'" *United States v.*

*Roseboro*, 87 F.3d 642, 645 (4th Cir. 1996) (alteration in original) (quoting *Goldberg*, 425 U.S. at 110 n.19)).

**Fourth**, absent a proper foundation, "the defense is limited to questioning the Government witness about whether he or she talked to the law enforcement agent, and if so, the defense may ask the witness whether he or she made the statement in question to the Government agent," but "may not read directly from the law enforcement agent's report," *Crinel*, 2016 WL 6441249, at *4, nor publish or introduce the reports' contents to the jury.  If the witness's testimony is inconsistent with content in the reports or notes, defense counsel may also call the government agent who authored the reports or notes "and ask whether the witness made the prior statement." *United States v. DaVita Inc.*, No. 21-cr-229 (RBJ), 2022 WL 833368, at *4 (D. Colo. Mar. 21, 2022); *see also Crinel*, 2016 WL 6441249, at *5.  "If the [] agent denies it . . . [the reports and notes] may be used for purposes of impeachment of the [] agent pursuant to [Federal Rule of Evidence] 613(b), not as substantive evidence."  *DaVita Inc.*, 2022 WL 833368, at *4 (citations omitted).

Accordingly, and subject to the caveats summarized above, the government's Motion *In Limine* To Preclude Improper Use of Agent Interview Reports and Notes, ECF No. 140, is **GRANTED**.

### III.    The Government's Motion for Witnesses to Testify in Pseudonym (ECF No. 141)

The government next moves for a protective order authorizing two witnesses, who are Mexican law enforcement officials residing in Mexico, "to testify under pseudonyms; for their names to be disclosed only to defense counsel, but not the defendant; and to preclude examination of government witnesses regarding certain identifying information," such as "home and work addresses, telephone numbers, e-mail addresses, and other identifying information which could be

used to locate the witnesses." Gov't's Mot. for Pseudonym at 1; *see also id.*, Att. 1, Proposed Protective Order. For the reasons summarized below, this motion is well-warranted and the requested protective order will issue.

The Sixth Amendment's Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. While "[i]n general, the Confrontation Clause guarantees a defendant the right to question an adverse witness about identifying information, including his full name and address . . . this right is not absolute," and "a trial court may limit cross-examination if the information sought could endanger the witness." *United States v. Ramos-Cruz*, 667 F.3d 487, 500 (4th Cir. 2012) (quotation marks omitted) (citing *Smith v. Illinois*, 390 U.S. 129, 131 (1968), and *Chavis v. North Carolina*, 637 F.2d 213, 226 (4th Cir. 1980)); *see also Smith*, 390 U.S. at 133–34 (White, J. concurring) (observing that "inquiries which tend to endanger the personal safety of the witness" "may go beyond the bounds of proper cross-examination"). In determining whether to permit a witness to testify under pseudonym, courts "balance[] the . . . dangers to the protected witnesses and their families, and the defense['s] need to prepare to cross-examine the protected witnesses[.]" *United States v. Celis*, 608 F.3d 818, 833 (D.C. Cir. 2010) (per curiam). The government bears the burden of "demonstrat[ing] a threat to the witness's personal safety." *United States v. Gutierrez de Lopez*, 761 F.3d 1123, 1140 (10th Cir. 2014) (collecting cases).

In this case, "balancing the public interest in protecting the flow of information against the [defendant's] right to prepare his defense," *Roviaro v. United States*, 353 U.S. 53, 62 (1957), the government's requested relief is appropriate for several reasons.

***First***, the government has demonstrated that the threat to the Mexican law enforcement officials who testify is "actual and not a result of conjecture." *Ramos-Cruz*, 667 F.3d at 500

(citation omitted).  Citing multiple news reports, the government explains that the CJNG—a large and violent drug trafficking organization based in Jalisco, Mexico, and led by defendant's father, Nemesio Oseguera Cervantes—has been linked to numerous attempted and completed attacks on Mexican public officials, including: (1) the CNJG attempted to assassinate Jalisco's former security secretary and Mexico City's public security secretary, in May 2018 and June 2020, respectively; (2) the CNJG was "likely behind the assassination of former Jalisco governor" in December 2020; and (3) the CNJG  has "target[ed] lower-level government officials involved in investigating or prosecuting the" CJNG.  Gov't's Mot. for Pseudonym at 2–3 (citations omitted). The government advises that since defendant was extradited to the United States in February 2020, "two potential government witnesses in this case have been murdered in Mexico," with at least one witness murdered "in order to prevent [the witness] from testifying against the defendant." *Id.* at 3.  Moreover, the Mexican judge who "presided over the defendant's case in Mexico and ordered the defendant's transfer to a high-security prison in 2018" was murdered in June 2020, within months of defendant's extradition.  *Id.* (citation omitted).

Despite the conceded lack of evidence "linking the defendant to any of these murders," *id.*, "[t]he appropriateness of using pseudonyms to protect witnesses does not depend on whether the threat to the witness comes directly from a defendant or from another source," *Celis*, 608 F.3d at 832; *see also Gutierrez de Lopez*, 761 F.3d at 1141 (same).  Given these recent murders of potential government witnesses in this case and of a Mexican judge who presided over defendant's case in Mexico, together with the CJNG's record of attempted and completed attacks on public officials generally, the government has demonstrated the danger that testifying Mexican law enforcement officials would face if they were to testify under their true names and/or provide other identifying information to anyone other than defense counsel.  *See, e.g.*, *Celis*, 608 F.3d at 829, 832 (in

prosecution for conspiracy to import cocaine, finding protective order permitting government witnesses from Colombia to testify under pseudonym and limit disclosure of their identities to defense counsel and defendant did not infringe on defendants' Confrontation Clause rights, in part where the government described that "the FARC, with which [defendants] were associated in varying degrees, had . . . issued bulletins threatening death to anyone who 'betrayed . . . [defendant] Valderama,' and directly threatened to kill at least two cooperating witnesses" and "the *in limine* motion indicated the FARC had routinely used violence against its enemies").

**Second**, allowing the two Mexican law enforcement officials to testify under pseudonym would not "deprive[] the defendant of an opportunity for effective cross-examination." *Gutierrez de Lopez*, 761 F.3d at 1141 (collecting cases).   The government proposes to disclose the government's witnesses' names to defense counsel, together with all other disclosures required by the Jencks Act, 18 U.S.C. § 3500, "including reports written by the witnesses about their involvement in the investigation," Gov't Mot. for Pseudonym at 6.   In similar circumstances, these disclosures were found sufficient for effective cross examination of the government's witnesses. *See United States v. Machado-Erazo*, 951 F. Supp. 2d 148, 158 (D.D.C. 2013) (authorizing government, in prosecution of members of transnational gang, MS-13, to withhold, from both defendants and defense counsel, the name and identifying information of testifying El Salvadorean police officer, reasoning that the government had disclosed the witness's "expert report, a summary of his qualifications, and his prior testimony" pursuant to Federal Rule of Criminal Procedure 16(a)(1)(G)); *Gutierrez de Lopez*, 761 F.3d at 1146 (in prosecution for conspiracy to transport undocumented aliens, holding defendant "was not deprived of an opportunity for effective cross-examination of the Government's confidential informant" where defendant "was still able to face them before the jury" and "the Government provided defense

counsel with significant impeachment material on each witness"); *Ramos-Cruz*, 667 F.3d at 500–
01 (in prosecution for witness-tampering, murder and possession of a firearm by an illegal alien,
affirming no Confrontation Clause violation occurred where government witnesses "testif[ied]
under pseudonyms and without revealing their names, home and work addresses, or dates and
places of birth" since, prior to trial, the government "disclosed the substance of the testimony the
two witnesses in question would provide at trial," so "defendants were able to 'effectively cross-
examine the witnesses without threatening their safety'" (quoting *United States v. Zelaya*, 336 F.
App'x 355, 358 (4th Cir. 2009)); Order at 2–3, *United States v. Handy*, No. 22-cr-96 (CKK), ECF
No. 358 (D.D.C. Aug. 8, 2023) (in prosecution for conspiracy against civil rights and obstructing
access to a reproductive health clinic, authorizing government's civilian witnesses to testify under
pseudonym since "defense counsel has the true names of all government witnesses" and thus was
"well-armed with information upon which to confront and cross-examine those witnesses"
(citation and quotation marks omitted)).

Here, as noted, the government proposes to disclose not only "reports written by the
witnesses about their involvement in the investigation" and other information required under the
Jencks Act, Gov't's Mot. for Pseudonym at 6, but also the witnesses' identities to defense
counsel—unlike in *Machado-Erazo* and other cases in which the government withheld the
witness's identifying information even from defense counsel.  *See Gutierrez de Lopez*, 761 F.3d
at 1142–43 (collecting Circuit cases in which "[e]ven when the government has not disclosed
witnesses' true identities to defense counsel," courts "concluded defendants were not deprived of
an opportunity for effective cross-examination"); *Machado-Erazo*, 951 F. Supp. 2d at 152, 158–
59.  In addition, the government's witnesses "are not 'insider witnesses' testifying about their own
involvement with the defendant or the CJNG," but rather "foreign law enforcement officials, who

are testifying about information they obtained in the course of their official duties." Gov't Mot. for Pseudonym at 6; *see, e.g.*, *Ramos-Cruz*, 667 F.3d at 501 (affirming ruling permitting witnesses to testify under pseudonyms and "reiterat[ing] the limited focus of the witnesses' testimony," where witnesses "proffered no evidence directly involving [defendant] or his activities" but "merely provided background information about the internal workings of MS–13 generally").

In sum, considering the demonstrated "actual threat" to the government's witnesses should they testify absent a protective order, *Ramos-Cruz*, 667 F.3d at 500 (citation omitted), and the fact that defendant will not be "deprived of an opportunity for effective cross-examination" of these witnesses, *Gutierrez de Lopez*, 761 F.3d at 1146, "the scale tips in favor of maintaining the secrecy of the witnesses' names," *United States v. El-Mezain*, 664 F.3d 467, 492 (5th Cir. 2011), *as revised* (Dec. 27, 2011). Accordingly, the government's Motion for Witness to Testify in Pseudonym, ECF No. 141, is **GRANTED**.

## IV.   CONCLUSION AND ORDER

For the foregoing reasons, it is hereby

**ORDERED** that the government's Motion *In Limine* To Preclude Improper Use of Agent Interview Reports and Notes, ECF No. 140, is **GRANTED**; and it is further

**ORDERED** that the government's Motion for Witnesses to Testify in Pseudonym, ECF No. 141, is **GRANTED**; and it is further

**ORDERED** that the government's request for the entry of a Protective Order, *see* ECF No. 141-1, is **GRANTED**, and a Protective Order will be entered contemporaneously with the Memorandum Opinion and Order.

**SO ORDERED**.

Date: August 13, 2024

_____

**BERYL A. HOWELL**
United States District Judge