# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | Criminal Case No. 16-229 (BAH) |
| RUBEN OSEGUERA-GONZALEZ, | Judge Beryl A. Howell |
| Defendant. | |

## ORDER REGARDING TRIAL PROCEDURES

The Standing Order for Criminal Cases, **ECF No. 5**, already entered in this matter is supplemented as follows:

1. **Trial Schedule**. The trial will begin with jury selection on **Friday, September 6, 2024, at 9:00 a.m. in Courtroom 26A**, and will proceed to opening statements on **Monday, September 9, 2024, at 9:00 a.m**. Unless the parties are otherwise notified, the Court will convene the evidentiary portion of the trial from **9:00 a.m. to 12:30 p.m.** and **1:30 p.m. to as late as 5:30 p.m.**, **Monday through Friday**, with a brief mid-morning and mid-afternoon recess. If jury selection is completed on September 9, 2024, counsel should be prepared to deliver their opening statements promptly after the jury has been selected, sworn-in and preliminary instructions have been delivered by the Court.
   a. Opening statements shall not exceed 30 minutes per party. Any exhibits, charts, or summaries to be used in opening statements must be cleared with opposing counsel prior to the opening statements, and if any party objects, such objections must be submitted to the Court for resolution by **6:00 p.m. on Tuesday, September 3, 2024**, with responses due by **12:00 p.m. on Wednesday, September 4, 2024.**
   b. Immediately after opening statements, the government must be prepared to call its first witness.
   c. Unless otherwise instructed by the Court, counsel and defendant should be present in the courtroom each morning at least fifteen minutes before trial begins to address any preliminary matters. Trial before the jury will convene promptly at the designated time on each trial day to avoid keeping the jury waiting.
   d. To accommodate hearings in other pending matters, the start of the trial may be slightly delayed on **September 13, 20, and 27, 2024.**

2. **General Courtroom Rules**. In addition to exercising civility, counsel shall, unless leave is otherwise granted:
   a. examine witnesses from the lectern and refer to all individual parties and witnesses, over the age of 18, as "Mr." or "Ms." rather than by a first name or nickname;
   b. request permission before approaching a testifying witness;
   c. stand when raising objections;

   d. remain seated when the jury is entering or leaving the courtroom;
   e. direct all statements for the record to the Court rather than to the opposing party.

3. **Jury Selection Process**.  An outline of the jury selection process to be used in this criminal matter is set forth in **Attachment A** to this Order.

4. **Technical Equipment**. Counsel needing technical assistance with courtroom equipment (*e.g.,* overhead projectors, video display monitors) must contact the Courtroom Technology Administrator of the Clerk's office at (202) 354-3019.

5. **Statement of the Case**.  The Court intends to describe the case to the venire panel as follows:

    This is a criminal case.  The United States charges defendant, Ruben Oseguera-Gonzalez, with participating in a conspiracy, from around 2007 to February 1, 2017, to distribute 5 kilograms or more of cocaine and 500 grams or more of methamphetamine, for importation into the United States, and that, in furtherance of this conspiracy, he used, carried, brandished, and possessed firearms, including destructive devices.
    In this case, the government alleges that Mr. Oseguera-Gonzalez was a member of a drug trafficking organization based in Mexico known as the New Generation Jalisco Cartel, which is also known by the Spanish acronym CJNG, that manufactured and distributed controlled substances destined for the United States.  The government further alleges that the defendant and other members of the CJNG possessed, used, carried, and brandished firearms in connection with their drug trafficking activities, including grenade launchers and rocket propelled grenades.  Mr. Oseguera Gonzalez denies the government's allegations and maintains his innocence.

6. ***Voir Dire* Questions**.  The *voir dire* questions that the Court intends to pose to the venire panel collectively are listed in **Attachment B** to this order.

7. **Motions or Objections During Trial**.
    a. **No evidentiary objections shall be argued in the presence of the jury.**  Counsel must state clearly and succinctly the legal basis for any objection in a word or short phrase.  To protect the record for appellate review, counsel may explain or amplify an objection on the record outside the hearing of the jury or after the jury has been excused.  If counsel plans to engage in a line of inquiry that requires judicial pre-approval, counsel may request a bench conference.

    b. **Bench Conferences should be requested only when necessary** because counsel intends to refer to issues requiring pre-clearance (*e.g.*, anticipated questions or testimony may refer to missing witness or potentially inflammatory subject matter).  Counsel should not expect requests for a bench conference to be routinely granted and should, instead, consider whether the issue counsel wishes to address at the bench can wait until the jury is excused for a recess.

8. **Witness Examination**.
    a. A party calling a witness must arrange for the witness's presence until cross-examination is completed.  Failure to have a witness present for cross-examination is grounds for

striking the witness's testimony.  Except in extraordinary circumstances, the trial will not be recessed due to the unavailability of a witness.

    b.  After a non-defendant witness has been tendered for cross-examination and until the witness has been tendered back for redirect, counsel calling that witness (including law enforcement officers or investigators) to testify must have no further discussions with that witness concerning any aspect of the testimony already given or anticipated.  For a defendant-witness, the Court refers the parties to the guidelines set forth in *United States v. McLaughlin*, 164 F.3d 1, 4–7 (D.C. Cir. 1998), *cert. denied*, 526 U.S. 1079 (1999).

9. **Jury Instructions**.  If events during trial necessitate an immediate jury instruction, counsel requesting the instruction must provide the Court with the text of the proposed instruction; otherwise, the request may be considered waived.  If a party would like an instruction included in the Court's final instructions to the jury, that party bears the responsibility of providing the text requested prior to the charging conference for discussion at the charging conference.

10. **Juror Confidentiality**.  The names and personal information of prospective and selected jurors in any trial of this matter shall be kept confidential and not disclosed outside of open court, except upon order of the Court.  *See* D.D.C. LOCAL CRIM. R. 24.1(b); D.D.C. JURY SELECTION PLAN ¶ 18.1 (updated May 17, 2022), available at https://www.dcd.uscourts.gov/jury-selections.  Counsel and parties are cautioned that violation of this directive may result in contempt proceedings.

**Date:** August 16, 2024

 

_____
**BERYL A. HOWELL**
United States District Court Judge

## ATTACHMENT A TO TRIAL ORDER
## Jury Selection Process

1. <u>Number of Jurors Seated</u>.  As required by the Federal Rules of Criminal Procedure, a unanimous verdict must be returned by a jury of **12** members in criminal trials, absent special circumstances. FED. R. CRIM. P. 23(b) and 31(a).  To provide prudently for the sickness or disability of any juror, **two** alternate jurors will also be selected.  FED. R. CRIM. P. 24(c)(1).

2. <u>Venire Panel</u>.  The number of panelists is computed by totaling the following: the number of jurors to be selected, the number of alternates to be selected, and the number of peremptory challenges. Thus, in this single defendant criminal case, in which the defendant has 10 and the government has 6 peremptory challenges, *see* FED. R. CRIM. P. 24(b)(2), plus each side has 1 challenge with respect to alternates, *see* FED. R. CRIM. P. 24(c)(4)(A), individual *voir dire* will be conducted on a sufficient number of prospective jurors to qualify a venire panel, after excusing panelists for cause, of 32 panelists.

3. <u>Location</u>.  The prospective jurors will be seated in Courtroom 26A by the courtroom deputy clerk in the order in which their names appear on the venire list.    The seating arrangement will start with the first-listed prospective juror being placed in the first row of gallery seats located on the left side of the Courtroom 26A (as viewed from the bench looking toward the rear of the courtroom).  Prospective jurors will be seated in the order listed on the venire list in sequential order from the left wall to the center aisle and, if the left-side gallery is full, then from the right wall to the center aisle.

4. <u>Venire List</u>.  Counsel will be provided with the written list of the summoned prospective jurors ("venire list") that is randomly generated.

5. <u>Preliminary Matters and Administration of Oath</u>.  After the prospective jurors are seated, Judge Howell will give a brief introduction, explaining the importance of jury service and the selection process, and the oath will be administered simultaneously to all prospective jurors in Courtroom 26A.

6. <u>General *Voir Dire* Questions Asked Simultaneously to All Prospective Jurors</u>.  Judge Howell will decide what *voir dire* questions will be asked after consideration of the proposed *voir dire* questions submitted by the parties as part of the Joint Pretrial Statement and any supplemental argument at the pretrial conference.  FED. R. CRIM. P. 24(a).  The prospective jurors will be collectively asked the *voir dire* questions in Courtroom 26A.  The jurors will be instructed to mark on the paper provided by the courtroom deputy clerk the number of any question to which the juror has an affirmative answer to facilitate any follow-up questions.

7. <u>Individual Responses to Questioning</u>.  After the collective *voir dire* questions have been asked, prospective jurors will be reseated outside the courtroom. The venire panel will be instructed not to discuss the case or the *voir dire* questions.  Each prospective juror will then be escorted individually by the courtroom deputy clerk into Courtroom 26A in the order listed on the venire list.  Each prospective juror will be asked follow-up questions about any affirmative response indicated on the paper.  Counsel will have the opportunity to request that Judge Howell ask additional pertinent follow-up questions of individual jurors at this time.  FED. R. CRIM. P. 24(a)(2).

8. <u>Strikes for Cause</u>.  Any motion to strike for cause should be made immediately after the individual

questioning of the prospective juror, which motion will be ruled on promptly. Any struck juror will be excused from the courtroom. When 32 prospective jurors have been qualified, following individual *voir dire* and resolution of strikes for cause, the selection process will proceed immediately to the exercise of preemptory challenges.

9. <u>Peremptory Challenges For Regular Jurors</u>. The 32 qualified prospective jurors will be reseated in Courtroom 26A in the order on the venire list. Parties are permitted to challenge only qualified prospective jurors in the venire. For both regular and alternate jurors, the courtroom deputy clerk will provide the parties with a document upon which they may record their respective peremptory strikes in the order outlined below.

    Peremptory challenges are exercised in **six rounds**: in the **first four rounds**, the government exercises one challenge and the defendant exercises two challenges; in the **next two rounds**, each side exercises one challenge, for a total of 6 challenges for the government and 10 challenges for defendant. In each round, the government will exercise its challenge first. A pass by any side counts as a strike. If the government declines to exercise a challenge on a round, and the defendant also declines to exercise a challenge on that same round, the peremptory challenge process for the twelve-person jury will be deemed completed. The qualified prospective jurors, who have not been stricken, in the order their names appear on the venire list will be the regular jury.

10. <u>Peremptory Challenges For Alternate Jurors</u>. The government may exercise one peremptory challenge as to qualified prospective alternate jurors, followed by the defendant, who may do the same. *See* FED. R. CRIM. P. 24(c)(4).

11. <u>Swearing-In Jury</u>. Following the exercise of any peremptory challenges as to the prospective alternate jurors, the courtroom deputy clerk will ask fourteen remaining qualified prospective jurors to be reseated in the jury box in the order their names appear on the venire list, with the last two jurors serving as the alternates. The jury will not be told the seats of the alternates. The jury will then be sworn-in.

12. <u>*Batson* Challenges</u>. Prospective jurors who were stricken on a peremptory challenge will not be excused until the entire selection process has been completed, including the resolution of any challenges pursuant to *Batson v. Kentucky*, 476 U.S. 79 (1986). Counsel are forewarned that should a *Batson* challenge be found to be meritorious, the remedy may be to impanel any improperly stricken juror on the jury and preclude the party who improperly exercised the strike from excluding that juror. Other remedies to address *Batson* violations are also available, including the imposition of monetary sanctions. Counsel should therefore be mindful of the obligation not to exercise peremptory challenges that seek to exclude jurors based on race or gender.

**ATTACHMENT B TO TRIAL ORDER**
*Voir Dire* **Questions**

1. Based upon what I have told you about this case, have you received, heard, or seen any information, from any source about this case or the defendant **RUBEN OSEGUERA GONZALEZ**?

2. The United States is represented in this case by **KAITLIN SAHNI**, **KATE NASEEF**, and **JONATHAN HORNOK**. PLEASE STAND. Do you know or have you had any contact with any of these attorneys? The government will be assisted by paralegal **ANGELA ANCALLE-JIMENEZ** and DEA Special Agent **KEVIN NOVICK**. PLEASE STAND. Do you know or have you had any contact with these individuals? The government may also be joined at counsel table by DEA Special Agent **KYLE MORI**, who is not here today. Do you know or have you had any contact with Agent Mori?

3. The defendant at trial is **RUBEN OSEGUERA GONZALEZ**. PLEASE STAND. Do you know or have you had any contact with **MR. OSEGUERA GONZALEZ**?

4. **Mr. Oseguera Gonzalez** is represented in this case by **ANTHONY E. COLOMBO JR.** of the Law Office of Anthony E. Colombo Jr. and **JAN EDWARD RONIS** of the Law Offices of Ronis & Ronis. PLEASE STAND. Do you know or have you had any contact with these attorneys or their law firms?

5. You may hear testimony from or about a number of people during the course of this trial. The attorneys will now identify for you the names of people who may testify. Listen carefully and, if you recognize or know any of the people named, please mark your paper beside the **number 5**. The government's counsel may go first, and then the defense counsel may list any additional names.

6. Please look around you. Do you know or recognize any other member of the prospective jury panel, any member of the courtroom staff, or me?

7. The lawyers have predicted that the presentation of evidence in this trial should last approximately three weeks, but it could run shorter or longer. The jury will sit Monday through Friday, generally from 9:00 a.m. to about 5:30 p.m., although the starting and ending times may vary. The length of jury deliberations following the presentation of evidence at trial will be determined by the jury itself. Do you have an urgent or extremely important matter to attend to in the next three weeks such that you could be faced with a hardship if selected to serve on the jury in this case?

8. Do you have any vision, language, or hearing problems, or any other physical or medical problems, that might interfere with your ability to hear or understand what the witnesses say in this case, to view exhibits and photographs, or to give your full attention to this case?

9. Have you, close members of your family, or close friends ever studied law, had legal training, or been employed by a lawyer or a law firm, worked in a courthouse, or performed legal investigative work?

10. Do you have any personal, moral, religious, or ethical beliefs that prevent you from sitting in judgment of another person?

11. If you have served before as a juror at a civil or criminal trial, or on a grand jury, was there anything about your service that might affect your ability to serve fairly and impartially as a juror at this trial?

12. Have you, close members of your family, or close friends ever been employed by a local, state, or federal law enforcement agency or a private security company? For example, this includes work at a

**police department, Federal Bureau of Investigations, sheriff's department, Department of Justice, Drug Enforcement Administration, Marshals Service, Department of Homeland Security, U.S. Customs and Border Patrol, a local jail, a state or federal prison, or the like.**

13. Have you, close members of your family, or close friends had any experiences with any law enforcement agency or the government that might cause you to favor or disfavor the government or law enforcement?

14. Have you ever filed a complaint against a police officer or anyone in law enforcement?

15. Have you, close members of your family, or close friends ever been the subject of a criminal investigation, accused of criminal conduct, or arrested or prosecuted for a crime?

16. Have you, close members of your family, or close friends ever been a victim of a crime, a witness to a crime, or testified in court or before a grand jury as a witness to a crime?

17. Do you have any opinions about prosecutors or defense attorneys that might affect your ability to serve fairly and impartially at this trial?

18. Do you, close members of your family, or close friends belong to any group or organization that is active in law enforcement or crime victim prevention matters? Examples of such organizations include: **Fraternal Order of Police, Crime Watch, Neighborhood Watch, Crime Stoppers, Orange Hats, or other organizations, including any groups online, that monitor or discuss neighborhood crime issues.**

19. Do you now belong, or have you within the past five years belonged to or participated in, any groups or organizations that advocate for changes in drug control laws?

20. Do you now belong, or have you within the past five years belonged to or participated in, any groups or organizations that advocate for gun rights or changes to gun laws?

21. Your function as a juror is to decide questions of fact, and the Court's job is to instruct you on the law to be applied in this case.  You are bound by those instructions and cannot substitute your own notions of what you think the law is or should be.  Would you have any difficulty following the legal instructions by the Court?

22. The prosecution has the burden of proof.  This means that the jury cannot return a guilty verdict against a defendant unless the prosecution has proven beyond a reasonable doubt that the defendant is guilty of the crime charged.  Would you have any difficulty following this legal instruction?

23. The defendant in this case, just as every defendant in a criminal trial, is presumed innocent and, therefore, has no obligation to testify or present any evidence in the case.  Would you have any difficulty following this legal instruction?

24. The evidence you are to consider is only provided in English, either through the official court interpreter when a witness testifies in a foreign language, or as presented in translated exhibits.  Some of you may know Spanish, but you must not rely on your own interpretation.  You will be required to accept the English interpretation and consider only the English portion of the written translations.  Would you have any difficulty following this legal instruction?

25. The defendant is charged with conspiring with others and aiding and abetting others to commit illegal acts, but those other alleged persons are not on trial here, and you may not speculate as to the reasons why those individuals are not on trial. Would you have any difficulty following this legal instruction?

26. The defendant in this case is a United States citizen and a resident of Mexico. Do you have any strong opinions or beliefs regarding residents of Mexico that would make it difficult for you to be a fair and impartial juror in this case?

27. Some evidence collected by the Government of Mexico may be presented during the trial. Do you have any strong opinions or beliefs regarding the Government of Mexico that would make it difficult for you to evaluate that evidence fairly?

28. Have you, close members of your family, or close friends had their lives seriously or adversely affected by illegal substance abuse or by use of a gun such that this would make it difficult for you to be a fair and impartial juror in this case?

29. Evidence will be presented in this case regarding the distribution of narcotic controlled substances. Do you have strong opinions or beliefs about narcotics distribution that would make it difficult for you to be a fair and impartial juror in this case?

30. Evidence will be presented in this case regarding the use of firearms. Do you have strong opinions or beliefs about the use or possession of firearms that would make it difficult for you to be a fair and impartial juror in this case?

31. Have you read any books or articles or watched any movies or TV shows about drug trafficking in Latin America, or particularly about the **Cartel de Jalisco Nueva Generacion**, or CJNG, that would make it difficult for you to decide this case based only on the evidence presented during the trial and the law as I give it to you?

32. During this trial, you may hear testimony and review evidence of electronic communications intercepted by the government through use of judge-approved warrants. Do you have strong opinions or beliefs relating to judge-approved interception of electronic communications that would make it difficult for you to evaluate that evidence fairly?

33. Do you know of any reason, or has anything occurred to you during this questioning, that might in any way prevent you from following my instructions on the law and being completely fair and impartial as a juror in this case?