# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | CRIMINAL NO. 16-CR-229-BAH |
| ) | |
| v. ) | |
| ) | |
| RUBEN OSEGUERA-GONZALEZ, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## UNOPPOSED MOTION FOR A PUBLIC OVERFLOW COURTROOM

The United States of America requests that this Court provide an overflow location in the courthouse from which the public can watch a live-stream video of the trial. Given the high-profile nature of this case and thus the expected interest from the public, the press, representatives of the government, and friends and family of the defendant, an overflow location is appropriate to ensure that the defendant enjoys a public trial from the beginning of jury selection through the announcement of a verdict. Counsel for the defendant, Ruben Oseguera-Gonzalez, does not oppose this motion.

The Sixth Amendment guarantees that "the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI. As the Supreme Court has explained, this right "(1) 'ensure[s] that judge and prosecutor carry out their duties responsibly,' (2) 'encourages witnesses to come forward' and (3) 'discourages perjury.'" *United States v. Perry*, 479 F.3d 885, 889 (quoting *Waller v. Georgia*, 467 U.S. 39, 46 (1984)).

"A public-trial violation can occur . . . as it did in [*Presley v. Georgia*, 558 U.S. 209, 209 (2010)], simply because the trial court omits to make the proper findings before closing the courtroom, even if those findings might have been fully supported by the evidence." *Weaver v. Massachusetts*, 582 U.S. 286, 298 (2017). In *Presley*, the court told the defendant's uncle to leave the courtroom during jury selection—inviting him to come back for opening statements—because

the courtroom gallery could only accommodate the jury pool. *Id.* at 210. The Supreme Court overturned the conviction because the court did not "consider all reasonable alternatives to [courtroom] closure." *Id.* at 216.

Closing a courtroom is permissible in certain circumstances. For example, "exclusion of a family member or friend may, in rare circumstances . . . , not implicate the Sixth Amendment public trial guarantee." *Perry*, 479 F.3d at 890 (quoting *Carson v. Fischer*, 421 F.3d 83, 94 (2d Cir. 2005)). "But in those cases, the particular interest, and threat to that interest, must 'be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered.'" *Id.* at 215 (quoting *Press-Enter. Co. v. Superior Ct. of California, Riverside Cnty.*, 464 U.S. 501, 510 (1984)). Thus, in *Perry* the D.C. Circuit affirmed a district court's decision to remove the defendant's son in order to "protect the child's welfare and to prevent [the defendant] from using the child to evoke juror sympathy." 479 F.3d at 888. The court adopted the "triviality standard" articulated by the Second Circuit. *Id.* at 890. Under that standard, "[a] courtroom closing is 'trivial' if it does not implicate the 'values served by the Sixth Amendment' as set forth in Waller." *Id.* In concluding that the boy's removal was trivial, the court reasoned that the child's presence in the courtroom would not "'ensure that judge and prosecutor carry out their duties responsibly' nor 'discourage[] perjury'" nor "'encourage [a] witness[] to come forward.'" *Id.* at 890–91 (quoting *Waller*, 467 U.S. at 46) (alterations in original).

Similarly, in the trial of Joaquin Archivaldo Guzman Loera a.k.a. El Chapo, the district court closed the courtroom to the general public during jury selection. *United States v. Loera*, No. 09-CR-0466 (BMC), 2018 WL 5624143, at *5 (E.D.N.Y. Oct. 30, 2018). In its thorough opinion considering the privacy concerns of the prospective jurors, the interest of the public, the constitutional rights of the defendant, and available alternatives, the court concluded that voir dire

would be conducted one prospective juror at a time and that only three attorneys for each side and five journalists would be allowed to be in the courtroom. *Id.*

During the COVID-19 pandemic, courtroom space and closure became an urgent challenge in this district. For example, in *United States v. Barrow*, to ensure public access to a trial, the court ensured public access to the trial by "providing an overflow courtroom from which individuals authorized by the Court could watch a live-stream video of the trial and by offering a public telephone line from which members of the public could listen to the proceedings." *United States v. Barrow*, No. CR 20-127 (CKK), 2021 WL 3602859, at *1 (D.D.C. Aug. 13, 2021). In denying a defendant's motion for a new trial on the basis that he was denied a public trial, Judge Kollar-Kotelly noted that an "overflow courtroom alone [is] sufficient to guarantee Defendant the safeguards of 'ensuring that judge and prosecutor carry out their duties responsibly,' 'encourag[ing] witnesses to come forward,' and 'discourag[ing] perjury.'" *Id.* at *11 (quoting *Waller*, 467 U.S. at 46). And rejecting a complaint about an imperfect view of the proceedings from the overflow courtroom, the court noted that "a spectator viewing a trial from the courtroom gallery would not have a perfect sight line of each angle of the courtroom." *Barrow* at *11.

These cases demonstrate that a partial or full closure of a courtroom can be permissible, but that doing so requires planning and thorough findings and analysis by the Court.[1] As

---

[1] In addition, government attorneys are limited in how quickly they can seek relief from the Court to address such concerns because a government attorney is not permitted to "move for or consent to the closure of any proceeding, civil or criminal, except with the express authorization of: (1) The Deputy Attorney General" 28 C.F.R. § 50.9(d) (2024); *see also* U.S. Dep't of Just., Just. Manual § 9-5.150 (2020), available at https://www.justice.gov/jm/jm-9-5000-issues-related-trials-and-other-court-proceedings#9-5.150 ("Whenever authorization to close a judicial proceeding is being sought pursuant to 28 C.F.R. § 50.9 in a case or matter under the supervision of the Criminal Division, the request should be directed to the Policy and Statutory Enforcement Unit, Office of Enforcement Operations." "An applicable form is available to Department attorneys."). Such authorization is required even for a partial courtroom closure.

demonstrated in *Barrow*, a publicly available video or audio live-stream of the proceedings is an appropriate solution to ensuring that the public has access to the proceedings—including when space inside the courtroom is at a premium during jury selection. This trial has already garnered significant public interest.[2] And the parties both expect that a significant number of people will be present to observe the proceedings. But there is no way to predict how many members of the public will want to observe the trial and thus whether the space in the courtroom will be sufficient. Providing an overflow courtroom in advance will avoid any delay that may unexpectedly arise if space inside the courtroom unexpectedly becomes insufficient for the members of the public—especially the defendant's friends and family—who wish to observe the trial from jury selection through the announcement of the verdict. An existing overflow courtroom also provides a ready solution for public access should any other concerns arise that require a partial courtroom closure.

Accordingly, the government requests that this Court provide an overflow courtroom from which the public can watch or hear a video or audio live-stream of the trial from the beginning of jury selection through the announcement of a verdict.

---

[2] An internet search for the defendant's name reveals numerous news articles pertaining to the defendant and his trial. *See, e.g.*, *Rubén Oseguera: Mexican-American drug lord*, *Google*, https://www.google.com/search?q=ruben+oseguera+gonzalez (last visited Aug. 23, 2024).

Respectfully submitted,

MARLON COBAR,
Chief, Narcotic & Dangerous Drug Section
Criminal Division
U.S. Department of Justice

*/s/ Jonathan R. Hornok*
Jonathan R. Hornok, Trial Attorney
Kate Naseef, Trial Attorney
Kaitlin Sahni, Acting Deputy Chief
United States Department of Justice
Narcotic and Dangerous Drug Section
145 N Street, Northeast
East Wing, Second Floor
Washington, D.C. 20530
Jonathan.Hornok@usdoj.gov
202.913.4796

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was sent via ECF to counsel of record for the Defendant, this 26th day of August 2024.

                                       By:    /s/ *Jonathan R. Hornok*
                                                    Jonathan R. Hornok
                                                    Trial Attorney
                                                    Narcotic and Dangerous Drug Section
                                                    U.S. Department of Justice