UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | CRIMINAL NO. 16-CR-229-BAH |
| v. | : | |
| **RUBEN OSEGUERA-GONZALEZ**, also known as "Menchito," "Rubencito," "Rojo," "Ruso," "Junior," and "El Nino," | : | |
| **Defendant.** | : | |

## GOVERNMENT'S REPLY TO OPPOSITION TO MOTION FOR FORFEITURE

The United States of America, by and through its counsel, pursuant to Federal Rule of Criminal Procedure 32.2(b)(2), respectfully moves this Court for entry of a Preliminary Order of Forfeiture as to the defendant, Ruben Oseguera-Gonzalez ("Defendant"). *See* Dkt. No. 209-1. As set out in its motion for forfeiture, Dkt. No. 209, the United States seeks entry of a money judgment in the amount of $12,599,026,000. The Defendant opposes that motion. Dkt. No. 227. The Defendant argues that the trial witnesses were not credible and thus that this Court cannot rely on their testimony to determine forfeiture. *See generally id.* As explained in the government's sentencing memo, the Defendant's signed statement of facts, the exhibits admitted during the trial, and the trial witnesses provide credible evidence upon which this Court should rely. Dkt. No. 225 at 8–17. But the Defendant rases two legal arguments that merit a brief response:

**I.    THE DEFENDANT WAS DIRECTLY RESPONSIBLE FOR TRAFFICKING 24,000 KILOGRAMS OF COCAINE AND FOR PRODUCING 1,666 KILOGRAMS OF METHAMPHETAMINE IN OR BEFORE 2009.**

First, the Defendant argues that he should not be held responsible for the 24,000 kilograms of cocaine he trafficked or the 1,666 kilograms of methamphetamine that he manufactured while he was second in command of the Puerta Vallarta Plaza. In support, the Defendant cites *United*

*States v. Cano-Flores*, 796 F.3d 83, 91 (D.C. Cir. 2015), and *United States v. Moya*, 18 F.4th 480, 485-86 (5th Cir. 2021). The Defendant's analogy to these cases is misplaced.

In *Cano-Flores*, the district court ordered the defendant to forfeit $15 billion, which represented the "gross cartel proceeds that were reasonably foreseeable to Cano–Flores." 796 F.3d at 90. The cartel for which Cano-Flores worked, "employed tens of thousands of people." *Id.* But Cano-Flores was only responsible for supporting the cartel's activities in "Los Guerra, a town near Miguel Alemán that also borders Texas." *Id.* at 85. The D.C. Circuit reversed the $15 billion forfeiture order and remanded the case to the district court, which then ordered Cano-Flores to forfeit $21,600,000. *United States v. Cano-Flores*, No. 08-CR-57-16 (BJR), Dkt. No. 311 (D.D.C. 2017). This amount was based on the quantity and value of the drugs that Cano-Flores trafficked. *Id.* Dkt. No. 310.

In *Moya*, the district court ordered the defendant, who lived in rural east Texas, to forfeit $4 million, which represented the total value of the drugs he trafficked for a Mexico-based trafficker called Don Roberto. 18 F.4th at 485. Moya was a courier, who "admitted to transporting ten bundles of narcotics on each of seven trips, receiving up to $1,000 per bundle plus expenses." *Id.* at 482. "Moya made roughly $150,000" for his transportation services, "while the rest of the money flowed south to Don Roberto," *id.* at 485, who was Moya's "'boss down in Mexico.'" *Id.* at 482. In reversing the forfeiture judgment, the Fifth Circuit distinguished *United States v. Leyva*, where the defendant "was 'a leader of [the] organization,' and the forfeiture pertained 'only [to] proceeds from activities directly supervised by [him].'" *Id.* at 486 (quoting *United States v. Leyva*, 916 F.3d 14, 31 (D.C. Cir. 2019) (alterations in original)).

Unlike either Cano-Flores or Moya, the Defendant was not a mid-level manager in a border town or a courier based in rural east Texas. Instead, the Defendant was the "No. 2 in charge of

Puerto Vallarta." *See* Trial Transcript (Sept. 9, 2024, AM) ("Sept. 9 AM Trial Tr.") at 64–65. In this position, the Defendant was "in charge of receiving the drugs that [the Milenio Cartel] were dealing with and, also, selling them to [the cartel]." *Id.* at 66. Similarly, the Defendant and his father "were in charge" of methamphetamine production for the Milenio Cartel and "were managing about five laboratories." *Id.* at 53, 71. In other words, the Defendant "was 'a leader of [the] organization,' and the forfeiture pertained 'only [to] proceeds from activities directly supervised by [him].'" *Moya*, 18 F.4th at 486 (quoting *Leyva*, 916 F.3d at 31 (alterations in original)).

## II.   THE FORFEITURE IS NOT EXCESSIVE UNDER THE EIGHTH AMENDMENT

Second, the Defendant argues that the forfeiture amount is excessive in relation to the maximum fine, which he claims is $10,000,000. Dkt. No. 227 at 10. In support, he cites *United States v. Bajakajian*, 524 U.S. 321 (1998), *Id.*, where the Supreme Court held that the $357,144 forfeiture sought by the government was grossly disproportional to the gravity of the defendant's offense of failing to report that he was transporting more than $10,000 outside the United States. 524 U.S. at 325, 339–40. The Supreme Court reasoned that the forfeiture would be grossly disproportional to the crime, a reporting offense that was unrelated to other illegal activities, the maximum fine authorized by Congress, which is $5000, and the minimal harm caused to the government. *Id.* at 338–339.

Not the same case here. Setting aside the nature of the Defendant's crimes and their economic and societal harm, 21 U.S.C. § 960(b)(1) provides that the fine must not exceed "the greater of that authorized in accordance with the provisions of title 18 or $10,000,000 if the defendant is an individual." And section 3571(d) of Title 18 provides the following:

> If any person derives pecuniary gain from the offense, or if the offense results in pecuniary loss to a person other than the defendant, the defendant may be fined not more than the greater of twice the gross gain or twice the gross loss, unless

   imposition of a fine under this subsection would unduly complicate or prolong the sentencing process.

In *United States v. Carpenter*, 941 F.3d 1, 11 (1st Cir. 2019), the First Circuit rejected an Eighth Amendment challenge on the basis of section 3571(d)'s pecuniary gain provision, citing *Bajakajian*, 524 U.S. at 336. Thus, cartel leaders like Alfredo Beltran Leyva, Joaquin Archivaldo Guzman Loera, aka "El Chapo," Raul Flores Hernandez, No. 1:17-CR-51-BAH, Dkt. No. 89 (D.D.C. Jan. 12, 2024), and the Defendant can properly be ordered to forfeit drug proceeds in excess of $10 million.

               Respectfully submitted,

               MARLON COBAR
               Chief
               Narcotic and Dangerous Drug Section
               Criminal Division
               U.S. Department of Justice

               By: */s/ Jonathan R. Hornok*
               JONATHAN R. HORNOK
               Trial Attorney
               Narcotic and Dangerous Drug Section
               Criminal Division
               U.S. Department of Justice
               145 N Street, NE, Second Floor East
               Washington, D.C. 20530

**CERTIFICATE OF SERVICE**

    I hereby certify that a copy of the foregoing was sent via the Electronic Case Filing (ECF) system with the United States District Court for the District of Columbia to counsel of record for the Defendant on February 27, 2025.

By: */s/ Jonathan R. Hornok*
JONATHAN R. HORNOK
Trial Attorney
Narcotic and Dangerous Drug Section
Criminal Division
U.S. Department of Justice
